## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

SMART & SAFE FLORIDA,
a registered Florida Political Committee,

        Plaintiff,

                                Case No.: _____

v.

CORD BYRD, in his official capacity as
Secretary of State, JAMES UTHMEIER,
in his official capacity as Attorney General,
KIM BARTON, in her official capacity as
Supervisor of Elections for Alachua County;
CHRISTOPHER MILTON, in his official capacity as
Supervisor of Elections for Baker County;
NINA WARD, in her official capacity as
Supervisor of Elections for Bay County;
AMANDA SEYFANG, in her official capacity as
Supervisor of Elections for Bradford County;
TIM BOBANIC, in his official capacity as
Supervisor of Elections for Brevard County;
JOE SCOTT, in his official capacity as
Supervisor of Elections for Broward County;
SHARON CHASON, in her official capacity as
Supervisor of Elections for Calhoun County;
LEAH VALENTI, in her official capacity as
Supervisor of Elections for Charlotte County;
MAUREEN "MO" BAIRD, in her official capacity
as Supervisor of Elections for Citrus County;
CHRIS H. CHAMBLESS, in his official capacity as
Supervisor of Elections for Clay County;
MELISSA BLAZIER, in her official capacity as
Supervisor of Elections for Collier County;
TOMI STINSON BROWN, in her official capacity
as Supervisor of Elections for Columbia County;
DEBBIE WERTZ, in her official capacity as
Supervisor of Elections for DeSoto County;

EXHIBIT
A

DARBI CHAIRES, in her official capacity as
Supervisor of Elections for Dixie County;
JERRY HOLLAND, in his official capacity as
Supervisor of Elections for Duval County;
ROBERT BENDER, in his official capacity as
Supervisor of Elections for Escambia County;
KAITLYN LENHART, in her official capacity as
Supervisor of Elections for Flagler County;
HEATHER RILEY, in her official capacity as
Supervisor of Elections for Franklin County;
KENYA WILLIAMS, in her official capacity as
Supervisor of Elections for Gadsden County;
LISA DARUS, in her official capacity as
Supervisor of Elections for Gilchrist County;
ALETRIS FARNAM, in her official capacity as
Supervisor of Elections for Glades County;
RHONDA PIERCE in her official capacity as
Supervisor of Elections for Gulf County;
LAURA HUTTO, in her official capacity as
Supervisor of Elections for Hamilton County;
DIANE SMITH, in her official capacity as
Supervisor of Elections for Hardee County;
SHERRY TAYLOR, in her official capacity as
Supervisor of Elections for Hendry County;
DENISE LAVANCHER, in her official capacity as
Supervisor of Elections for Hernando County;
KAREN HEALY, in her official capacity as
Supervisor of Elections for Highlands County;
CRAIG LATIMER, in his official capacity as
Supervisor of Elections for Hillsborough County;
H. RUSSELL WILLIAMS, in his official capacity as
Supervisor of Elections for Holmes County;
LESLIE R. SWAN, in her official capacity as Supervisor
of Elections for Indian River County;
CAROL A. DUNAWAY, in her official capacity as
Supervisor of Elections for Jackson County;
MICHELLE MILLIGAN, in her official capacity as
Supervisor of Elections for Jefferson County;
TRAVIS HART, in his official capacity as
Supervisor of Elections for Lafayette County;

ALAN HAYS, in his official capacity as
Supervisor of Elections for Lake County;
TOMMY DOYLE, in his official capacity as
Supervisor of Elections for Lee County;
MARK EARLEY, in his official capacity as
Supervisor of Elections for Leon County;
TAMMY JONES, in her official capacity as
Supervisor of Elections for Levy County;
GRANT CONYERS, in his official capacity as
Supervisor of Elections for Liberty County;
HEATH DRIGGERS, in his official capacity as
Supervisor of Elections for Madison County;
SCOTT FARRINGTON, in his official capacity as
Supervisor of Elections for Manatee County;
WESLEY WILCOX, in his official capacity as
Supervisor of Elections for Marion County;
VICKI DAVIS, in her official capacity as
Supervisor of Elections for Martin County;
ALINA GARCIA, in her official capacity as
Supervisor of Elections for Miami-Dade County;
SHERRI HODIE, in her official capacity as
Supervisor of Elections for Monroe County;
JANET H. ADKINS, in her official capacity as
Supervisor of Elections for Nassau County;
PAUL A. LUX, in his official capacity as
Supervisor of Elections for Okaloosa County;
DAVID MAY, in his official capacity as
Supervisor of Elections for Okeechobee County;
KAREN CASTOR DENTEL, in her official
capacity as Supervisor of Elections for Orange County;
MARY JANE ARRINGTON, in her official
capacity as Supervisor of Elections for Osceola County;
WENDY LINK, in her official capacity as
Supervisor of Elections for Palm Beach County;
BRIAN CORLEY, in his official capacity as
Supervisor of Elections for Pasco County;
JULIE MARCUS, in her official capacity as
Supervisor of Elections for Pinellas County;
MELONY BELL, in her official capacity as
Supervisor of Elections for Polk County;

CHARLES OVERTURF, in his official capacity as
Supervisor of Elections for Putnam County;
TAPPIE VILLANE, in her official capacity as
Supervisor of Elections for Santa Rosa County;
RON TURNER, in his official capacity as
Supervisor of Elections for Sarasota County;
AMY PENNOCK, in her official capacity as
Supervisor of Elections for Seminole County;
VICKY OAKES, in her official capacity as
Supervisor of Elections for St. Johns County;
GERTRUDE WALKER, in her official capacity as
Supervisor of Elections for St. Lucie County;
WILLIAM KEEN, in his official capacity as
Supervisor of Elections for Sumter County;
JENNIFER KINSEY, in her official capacity
as Supervisor of Elections for Suwannee County;
DANA SOUTHERLAND, in her official capacity as
Supervisor of Elections for Taylor County;
DEBORAH OSBORNE, in her official capacity as
Supervisor of Elections for Union County;
LISA LEWIS, in her official capacity as
Supervisor of Elections for Volusia County;
JOSEPH R. MORGAN, in his official capacity
as Supervisor of Elections for Wakulla County;
RYAN MESSER, in his official capacity as
Supervisor of Elections for Walton County;
DEIDRA PETTIS, in her official capacity as
Supervisor of Elections for Washington County,

                    Defendants.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

## Introduction

Florida House Bill 1205 ("HB 1205")[1] is cloaked behind the high-minded principle of ensuring "ballot integrity and a valid election process"[2] as justification to impose draconian restrictions on Floridians' sovereign constitutional right to amend their state constitution via the citizen initiative process. Beware, as Justice Scalia famously remarked, "this wolf comes as a wolf."[3]

HB 1205 recognizes, as it must, that "given its constitutional underpinnings, the right to propose an initiative petition is inherent and absolute, but subject to reasonable regulations as necessary to ensure ballot integrity and a valid election process."[4] That is mere legislative gaslighting as the purported "reasonable regulations" imposed to preserve "integrity" and promote "effectiveness" will effectively destroy the People's right to invoke the citizen initiative.

HB 1205 changes the rules at half-time for those citizen initiatives already well along the regulatory path to the 2026 General Election ballot, including Plaintiff's. Worse, the most burdensome of those changes took effect immediately upon becoming law on May 2, 2025, with no warning nor opportunity to

---

[1] *See* 2025 Leg., Reg. Sess. (Fla. 2025) (Enrolled and Engrossed), attached as **Exhibit 1**, cited as "HB 1205 at [line #s]."

[2] HB 1205 at 355-357; *see also id.* at 234-240.

[3] *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting).

[4] HB 1205 at 353-355.

appropriately prepare. Among other things, HB 1205 enacts the following unconstitutional provisions (the "Challenged Provisions"):

1.    *Ten-Day Delivery Requirement* – Petition sponsors must submit every signed petition it receives to the County Supervisor for the county in which the voter resides, within ten days after the voter signed the form. § 100.371(7)(a), Fla. Stat. (2025); HB 1205 at 714-723. This requirement, shortened from thirty days, (i) requires the redeployment of petition circulators from communicating with the public to processing operations to meet the Ten-Day Delivery Requirement, (ii) effectively precludes sponsors from sending petitions to voters by U.S. mail, and (iii) renders any meaningful quality control impossible, increasing invalidity rates and otherwise exposing sponsors to severe and punitive fines.[5] This artificial deadline has nothing to do with protecting ballot integrity and unduly burdens sponsors' free speech.

---

[5] HB 1205 also mandates that a supervisor of elections notify the Office of Election Crimes and Security ("OCES") where the percentage of petition forms deemed invalid by the supervisor exceeds a total of 25 percent of the petition forms received during the particular reporting period. § 100.371(14)(g), Fla. Stat. (2025); HB 1205 at 939-966. OCES, in turn, "shall conduct a preliminary investigation … to determine whether the invalidated petitions are a result of fraud or any other violation of this section [100.371]." *Id*. HB 1205 authorizes OCES to report its findings to the statewide prosecutor or state attorney for the relevant judicial circuit. *Id*.

2. *Severe and Punitive Fines* –

    a. Failure to submit the petitions within 10 days of the voter's signature subjects the sponsor to strict liability for daily fines of $50 per day per petition without any cap, as well as $2,500 per petition where the circulator acts willfully. § 100.371(7)(a)(1), Fla. Stat. (2025); HB 1205 at 724-730. No exception is provided where the delay is not the sponsor's fault, such as mail delays, or when a voter signs the petition and then fails to mail it back to the sponsor for several days.

    b. Failure to submit signed forms prior to February 1 of the general election year subjects the sponsor to strict liability for daily fines of $100 per day, up to $5,000, per petition. § 100.371(7)(a)(2), Fla. Stat. (2025); HB 1205 at 731-738.

    c. Failure to submit the petition form to the supervisor of elections for the county in which the voter resides subjects the sponsor to a fine of $500 per petition, and $5,000 per petition where the sponsor or petition circulator acted willfully. § 100.371(7)(a)(3), Fla. Stat. (2025); HB 1205 at 739-744. No exception is provided where the voter identifies the wrong county in their petition.

These fines have the effect of chilling sponsors' First Amendment rights.

*3.    Non-Resident Circulator Prohibition* – A person may not collect signatures or initiative petitions if he or she is not a Florida resident. § 100.371(4)(b)3., Fla. Stat. (2025); HB 1205 at 598-603. Not only does this prevent non-residents—as well as residents lacking means to prove residency— from registering as petition circulators, it prevents them from collecting more than 25 petitions on behalf of their friends or co-workers. The prohibition unduly burdens First Amendment rights of sponsors who engage circulators and directly violates sponsors' right of freedom of association.

*4.    FIS Compelled Speech* – For initiatives submitted to the Secretary after May 2, 2025, the Financial Impact Statement ("FIS")—an analysis of the financial impact of a proposed amendment drafted by a government committee (section 100.371(13)(a) (2025))[6]—must be contained on petition forms. The FIS must also be contained on forms for initiatives submitted prior to May 2, 2025, but for which the FIS is remanded by the Florida Supreme Court for redrafting. § 100.371(13)(d), Fla. Stat. (2025); HB 1205 at 1087-1089, 1113-1116. The drafting and content of the FIS is entirely controlled by the government committee. This violates sponsors' First Amendment rights by forcing it to carry the government's message alongside its own.

---

[6] A committee convened by the President of the Senate and the Speaker of the House of Representatives, jointly. § 100.371(16)(c), Fla. Stat. (2025); HB 1205 at 1045-1047.

5.     *Additional Amendment Prohibition* –  HB 1205 prohibits a sponsor from sponsoring more than one amendment. Not only is this an outright ban on core political speech bearing no relation to ballot integrity, the provision is vague and ambiguous. The act provides: "The sponsor of an initiative amendment may not sponsor more than one amendment …." § 100.371(2), Fla. Stat. (2025); HB 1205 at 492-493. It is unclear whether that applies to sponsoring more than one amendment (i) at a given time, (ii) for a particular general election, or (iii) ever. Regardless, this is an outright ban on sponsors' core political speech.

6.     *Mandatory Decertification Provision* – The secretary of state must rescind the certificate of ballot position if an advisory opinion by the Supreme Court deems the initiative petition invalid based upon, among other things, a non-compliant FIS. section 16.061(1). § 100.371(15), Fla. Stat. (2025); HB 1205 at 981-984. Requiring the Secretary to rescind the certificate of ballot position based on the FIS—a statement drafted by the government, over which the sponsor has no control—would impermissibly burden Smart & Safe's free speech on grounds entirely unrelated to protecting ballot integrity.

7.     *Pre-filled Petition Prohibition* – A sponsor may not mail or otherwise provide a petition form upon which any information about a voter has been filled in before it is provided to the voter. Violation of this provision would subject a sponsor to a fine of $50 for each petition that is pre-filled. § 100.371(10), Fla. Stat.

(2025); HB 1205 at 767-773. This restriction prohibits pre-filled fields even if the accuracy of the information is confirmed by the voter prior to signing the petition. This impermissibly burdens sponsors' First Amendment rights to free speech.

Plaintiff Smart & Safe Florida brings this action for declaratory relief finding the Challenged Provisions unconstitutional, and preliminary and permanent injunctive relief enjoining the enforcement of same, and in support of states:

## The Parties

1.      Plaintiff Smart & Safe Florida ("Smart & Safe") is a registered Florida political committee sponsoring the citizen initiative entitled "Adult Personal Use of Marijuana." The Adult Personal Use of Marijuana petition form was approved for use in the 2026 General Election by the Secretary of State pursuant to section 100.371(2) (2024) on January 14, 2025, and assigned Serial No. 25-01. A copy of the approved petition form is attached as **Exhibit 2** ("Petition") and a copy of the full text of the proposed amendment is attached as **Exhibit 3** ("Proposed Amendment").[7]

2.      Smart & Safe is also the sponsor of a second proposed amendment entitled "Home Cultivation of Medical Marijuana," submitted to the Secretary of

---

[7] If adopted by the voters, the Proposed Amendment would amend the Florida Constitution to allow adults 21 years or older to possess, purchase, or use marijuana products and marijuana accessories for non-medical personal use. It would also allow Medical Marijuana Treatment Centers, and other state licensed

State on May 8, 2025, for placement on the 2026 General Election ballot or, if not successful in making that ballot, then on the 2028 General Election ballot. A copy of the submission made pursuant to Rule 1S 2.009, Fla. Admin. Code, is attached as **Exhibit 4** ("Second Proposed Amendment").[8]

3.      Smart & Safe invoked the People's constitutional power to propose revisions to the Florida Constitution by sponsoring the Proposed Amendment and the Second Proposed Amendment. As the sponsor, Smart & Safe has the legal and concomitant financial burden of complying with all statutory prerequisites to achieve ballot placement.

4.      Provisions of HB 1205 directly regulate initiative sponsors who engage in petition circulation and collection. It imposes on sponsors affirmative obligations (the Ten-Day Delivery Requirement), prohibitions (the Non-Resident Circulator and Pre-filled Petition Prohibitions), and draconian fines (the Severe and Punitive Fines). HB 1205 compels the sponsor to engage in some speech (FIS

---

entities, to acquire, cultivate, process, manufacture, sell, and distribute such products and accessories.

[8] If adopted by the voters, the Second Proposed Amendment would amend the Florida Constitution to allow adult qualified patients and their caregivers to cultivate marijuana at home for medical use by the adult qualified patients. The Second Proposed Amendment would limit such home cultivation to the cultivator's home in an enclosed lockable area not visible to or accessible by the public, and would require the Department of Health to establish limits on actively growing marijuana and harvested marijuana.

Compelled Speech), but completely bans other speech (Additional Amendment Prohibition).

5.      As of this filing, Smart & Safe has obtained at least 218,983 verified signatures of Florida voters to secure placement of the Proposed Amendment on the ballot.[9] Smart & Safe continues to actively engage in petition circulation and collection. Smart & Safe has retained non-resident petition circulators, who cannot collect petitions due to the Non-resident Circualtor Prohibition. Smart & Safe has ceased mailing petitions to voters due to the Ten-Day Delivery Requirement and has ceased using pre-filled petition forms due to the Pre-filled Petition Prohibition. Smart & Safe will face Severe and Punitive fines for failure to comply with the Challenged Provisions, even where such violations are caused by circumstances beyond Smart & Safe's control. Smart & Safe will be compelled to carry the state's FIS Compelled Speech on the petition for its Second Proposed Amendment, and on its petition for the Proposed Amendment should the financial impact statement be remanded. And, after going through all the time, expense, and uncertainty of sponsoring the Proposed Amendment, it faces Decertification for reasons unrelated to protecting the integrity of the ballot. As such, Smart & Safe is presently subject to each of the Challenged Provisions.

---

[9]      The current number valid signatures is available at: https://dos.elections.myflorida.com/initiatives/initdetail.asp?account=83475&seqnum=3.

6.    Accordingly, and for the reasons stated in this Complaint, Smart & Safe is covered by the law, and has standing to seek an injunction against each of the Challenged Provisions.

7.    Defendant CORD BYRD, sued in his official capacity as Secretary of State of Florida, is the head of the Florida Department of State ("the Department") and the chief election officer of the state, has numerous responsibilities with respect to HB 1205, and is responsible for ensuring uniform interpretation and implementation of election laws. § 97.012(1)-(2), Fla. Stat. (2024). The Secretary has "general supervision and administration of the election laws." § 15.13, Fla. Stat. (2024). As head of the Department of State, the Secretary oversees the Division of Elections and the Office of Election Crimes and Security. §§ 20.10(2)(a), 97.022, Fla. Stat. (2024). The Secretary is responsible for the placement of constitutional amendments proposed by initiative on ballots, including determining whether certain criteria for ballot placement have been met. § 100.371(1)-(4) Fla. Stat. (2025). The Secretary is charged with ensuring state compliance with election laws and may conduct preliminary investigations into irregularities or fraud involving petition activities. § 97.012(15), Fla. Stat. (2024). Where the Secretary reasonably believes that violations concerning citizen initiative provisions under section 100.371 (2025) have occurred, the Secretary refers such violations to the Attorney General for enforcement. § 100.371(11), Fla.

Stat. (2025). Lastly, the Secretary is responsible for imposing fines incurred for violations of section 100.371 (2025). Fla. Admin. Code R. 1S-2.0091(2)(b).

8.      Defendant JAMES UTHMEIER, sued in his official capacity as the Attorney General of Florida, is the chief state legal officer and maintains the office of the statewide prosecutor. Fla. Const. art. IV, § 4(b). Attorney General Uthmeier is responsible for enforcing HB 1205. The Attorney General may institute a civil action for a violation of Florida Statutes regulating the ballot initiative process. § 100.317(11), Fla. Stat. (2025); HB 1205 at 774-81. The Attorney General also requests opinions from the Florida Supreme Court regarding the validity of initiative petitions. § 16.061, Fla. Stat. (2025); HB 1205 at 408-417; Fla. Const. art. IV, § 10.

9.      Defendants KIM BARTON, in her official capacity as Supervisor of Elections for Alachua County; CHRISTOPHER MILTON, in his official capacity as Supervisor of Elections for Baker County; NINA WARD, in her official capacity as Supervisor of Elections for Bay County; AMANDA SEYFANG, in her official capacity as Supervisor of Elections for Bradford County; TIM BOBANIC, in his official capacity as Supervisor of Elections for Brevard County; JOE SCOTT, in his official capacity as Supervisor of Elections for Broward County; SHARON CHASON, in her official capacity as Supervisor of Elections for Calhoun County; LEAH VALENTI, in her official capacity as Supervisor of

Elections for Charlotte County; MAUREEN "MO" BAIRD, in her official capacity as Supervisor of Elections for Citrus County; CHRIS H. CHAMBLESS, in his official capacity as Supervisor of Elections for Clay County; MELISSA BLAZIER, in her official capacity as Supervisor of Elections for Collier County; TOMI STINSON BROWN, in her official capacity as Supervisor of Elections for Columbia County; DEBBIE WERTZ, in her official capacity as Supervisor of Elections for DeSoto County; DARBI CHAIRES, in her official capacity as Supervisor of Elections for Dixie County; JERRY HOLLAND, in his official capacity as Supervisor of Elections for Duval County; ROBERT BENDER, in his official capacity as Supervisor of Elections for Escambia County; KAITLYN LENHART, in her official capacity as Supervisor of Elections for Flagler County; HEATHER RILEY, in her official capacity as Supervisor of Elections for Franklin County; KENYA WILLIAMS, in her official capacity as Supervisor of Elections for Gadsden County; LISA DARUS, in her official capacity as Supervisor of Elections for Gilchrist County; ALETRIS FARNAM, in her official capacity as Supervisor of Elections for Glades County; RHONDA PIERCE in her official capacity as Supervisor of Elections for Gulf County; LAURA HUTTO, in her official capacity as Supervisor of Elections for Hamilton County; DIANE SMITH, in her official capacity as Supervisor of Elections for Hardee County; SHERRY TAYLOR, in her official capacity as Supervisor of Elections for Hendry County;

DENISE LAVANCHER, in her official capacity as Supervisor of Elections for Hernando County; KAREN HEALY, in her official capacity as Supervisor of Elections for Highlands County; CRAIG LATIMER, in his official capacity as Supervisor of Elections for Hillsborough County; H. RUSSELL WILLIAMS, in his official capacity as Supervisor of Elections for Holmes County; LESLIE R. SWAN, in her official capacity as Supervisor of Elections for Indian River County; CAROL A. DUNAWAY, in her official capacity as Supervisor of Elections for Jackson County; MICHELLE MILLIGAN, in her official capacity as Supervisor of Elections for Jefferson County; TRAVIS HART, in his official capacity as Supervisor of Elections for Lafayette County; ALAN HAYS, in his official capacity as Supervisor of Elections for Lake County; TOMMY DOYLE, in his official capacity as Supervisor of Elections for Lee County; MARK EARLEY, in his official capacity as Supervisor of Elections for Leon County; TAMMY JONES, in her official capacity as Supervisor of Elections for Levy County; GRANT CONYERS, in his official capacity as Supervisor of Elections for Liberty County; HEATH DRIGGERS, in his official capacity as Supervisor of Elections for Madison County; SCOTT FARRINGTON, in his official capacity as Supervisor of Elections for Manatee County; WESLEY WILCOX, in his official capacity as Supervisor of Elections for Marion County; VICKI DAVIS, in her official capacity as Supervisor of Elections for Martin County; ALINA GARCIA, in her official

capacity as Supervisor of Elections for Miami-Dade County; SHERRI HODIE, in her official capacity as Supervisor of Elections for Monroe County; JANET H. ADKINS, in her official capacity as Supervisor of Elections for Nassau County; PAUL A. LUX, in his official capacity as Supervisor of Elections for Okaloosa County; DAVID MAY, in his official capacity as Supervisor of Elections for Okeechobee County; KAREN CASTOR DENTEL, in her official capacity as Supervisor of Elections for Orange County; MARY JANE ARRINGTON, in her official capacity as Supervisor of Elections for Osceola County; WENDY LINK, in her official capacity as Supervisor of Elections for Palm Beach County; BRIAN CORLEY, in his official capacity as Supervisor of Elections for Pasco County; JULIE MARCUS, in her official capacity as Supervisor of Elections for Pinellas County; MELONY BELL, in her official capacity as Supervisor of Elections for Polk County; CHARLES OVERTURF, in his official capacity as Supervisor of Elections for Putnam County; TAPPIE VILLANE, in her official capacity as Supervisor of Elections for Santa Rosa County; RON TURNER, in his official capacity as Supervisor of Elections for Sarasota County; AMY PENNOCK, in her official capacity as Supervisor of Elections for Seminole County; VICKY OAKES, in her official capacity as Supervisor of Elections for St. Johns County; GERTRUDE WALKER, in her official capacity as Supervisor of Elections for St. Lucie County; WILLIAM KEEN, in his official capacity as Supervisor of

Elections for Sumter County; JENNIFER KINSEY, in her official capacity as Supervisor of Elections for Suwannee County; DANA SOUTHERLAND, in her official capacity as Supervisor of Elections for Taylor County; DEBORAH OSBORNE, in her official capacity as Supervisor of Elections for Union County; LISA LEWIS, in her official capacity as Supervisor of Elections for Volusia County; JOSEPH R. MORGAN, in his official capacity as Supervisor of Elections for Wakulla County; RYAN MESSER, in his official capacity as Supervisor of Elections for Walton County; DEIDRA PETTIS, in her official capacity as Supervisor of Elections for Washington County are collectively referred to as the "County Supervisors."

10.     The County Supervisors, sued in their official capacities, administer elections in their respective counties, section 98.015 (2024), and in particular, they collect and verify citizen initiative petition forms, including verification of signatures, provide information to the Division of Elections on petition forms received from petition circulators, and electronically transmit signed petitions to the Division of Elections. § 100.371(6), Fla. Stat. (2025). The County Supervisors are directed to notify the Office of Election Crimes and Security where the percentage of petition forms deemed invalid by the Supervisors exceeds a total of 25 percent of the petition forms received during the particular reporting period. § 100.371(14)(g), Fla. Stat. (2025); HB 1205 at 952-966.

## Jurisdiction and Venue

11.　　The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because the Plaintiff's claims arise under the Constitution and laws of the United States. This Court also has jurisdiction because this is an action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

12.　　Venue is proper in the Northern District of Florida because all of the Defendants are residents of Florida and several of the Defendants reside, or are headquartered, in the district; a substantial part of the events or omissions giving rise to the claim occurred in this district; and the Defendants are subject to this Court's personal jurisdiction. *See* 28 U.S.C. § 1391(b). Additionally, venue in the Tallahassee Division would be proper if the division was a stand-alone district. *See* Local Rule 3.1(B).

13.　　All conditions precedent to the institution of this lawsuit have been, or will be, satisfied or waived.

## The People's Sovereign Right to Amend the Florida Constitution

14.　　The Florida Constitution begins with a foundational premise: "All political power is inherent in the people." Fla. Const. art. I, § 1.

15.　　In 1968 the Florida Constitution was amended to enshrine the people's right to amend their state constitution:

SECTION 3. Initiative.—The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith. It may be invoked by filing with the custodian of state records a petition containing a copy of the proposed revision or amendment, signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole, equal to eight percent of the votes cast in each of such districts respectively and in the state as a whole in the last preceding election in which presidential electors were chosen.

Article XI, § 3 ("Section 3").

16.    To place the citizen initiative in context, the Florida Supreme Court has often noted "that sovereignty resides in the people and the electors have a right to approve or reject a proposed amendment to the organic law of this State." *Limits or Prevents Barriers to Local Solar Elec. Supply*, 177 So. 3d 235, 241-42 (2015).

17.    Florida Justice Canady confirmed that "[o]ne of the most important rights enjoyed by the people of Florida under our constitution is the right to vote on constitutional amendments through the initiative process." *Medical Marijuana I*, 132 So. 3d 786, 819 (Fla. 2014) (Canady, J., dissenting).

18.    The Florida high court has long recognized that determining ballot placement of a citizen initiative "is the most sanctified area in which a court can exercise power." *Right to Treatment & Rehab.*, 818 So. 2d 491, 494 (Fla. 2002). For this reason, the "Court has traditionally applied a deferential standard of review to the validity of a citizen initiative petition and has been reluctant to

interfere with the right of self-determination for all Florida citizens to formulate their own organic law." *Rights of Electricity Consumers*, 188 So. 3d 822, 827 (Fla. 2016). When considering a citizen initiative, the Florida Supreme Court recognizes that it "must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people." *Rights of Electricity Consumers*, 188 So. 3d at 827.

19.     While contextually different, the principles discussed at paragraphs 14-19, above, apply with equal vigor where the Florida Legislature seeks to impose restrictions on one of Floridians' most important sovereign rights—the citizen initiative.

20.     As discussed below, and as particularly relevant here, the United States Supreme Court has made abundantly clear that "the circulation of a [citizen initiative] petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech'" worthy of "First Amendment protection … 'at its zenith.'" *Meyer v. Grant*, 486 U.S. 414, 421–22, 425 (1988) (citations omitted); *see also Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 186 (1999) (quoting *Meyer* and again agreeing that "First Amendment protection for such interaction is 'at its zenith.'"). As this Court has noted, election laws cannot be imposed to discourage participation in

legitimate speech activities. *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155 (N.D. Fla. 2012).

21.    The citizen initiative is the People's means of enacting public policy where their elected leaders are unwilling or unable to do so. The citizen initiative has been invoked to amend the Florida constitution to define marriage, restore voting rights, limit casino gambling, create smoke-free work places, establish a minimum wage, and provide access to medical marijuana for patients suffering from debilitating medical conditions.[10]

22.    It is difficult and expensive to secure ballot placement for an amendment. To do so, a sponsor must secure verified signatures from 8% of the voters in at least one-half of Florida's congressional districts and in the state as a whole as of the last presidential election. *See* Section 3. Thus, Smart & Safe must obtain at least 880,062 signatures verified by the County Supervisors to the Secretary no later than February 1, 2026. Fla. Const. art. XI, § 5(b). The Proposed Amendment must also undergo advisory opinion review by the Florida Supreme Court, which involves extensive and costly briefing and oral argument.[11]

---

[10] Fla. Const., art. I, § 27, art. IV, § 4, and art. X, §§ 30, 20, 24, and 29, respectively.

[11] Reaching the Florida Supreme Court advisory opinion review requires 25% (220,016) of the total required verified signatures. *Section 3*; § 15.21, Fla. Stat. (2024).

23.     Leaving aside the difficulty and expense of getting a proposed amendment onto the ballot, to be adopted, the Proposed Amendment must gain the support of at least 60% of the voters at the 2026 General Election. Fla. Const. art. XI, §5(e). In other words, given historical trends, the initiative would need well in excess of 5 million positive votes, requiring an extensive and expensive statewide campaign utilizing a range of communication means—direct mail, TV, radio, social media, etc.

24.     The Florida Constitution is already (and rightly) very difficult to amend via the citizen initiative. However, the Florida Legislature has increasingly constrained the citizen initiative with burdensome regulations that have significantly raised the cost and barriers to exercising the People's fundamental right to amend the Florida constitution.

25.     The Legislature's assault on the citizen initiative has culminated in HB 1205, which makes it inordinately burdensome, if not impossible, to pursue, without providing any concomitant benefit or protection for the People. For example, the Ten-Day Delivery Requirement reduces the window for sponsors to confirm the petitions' validity by 66.66%, which serves no purpose other than to impose heavy fines on the sponsor when they are unable to complete the process within ten days. As further example, the FIS Compelled Speech provision and

Additional Amendment Prohibition alternatively burden and ban free speech and have nothing to do with preserving ballot integrity.

### Smart & Safe Sponsors an Amendment
### Supported By Millions of Florida Voters

26.     For years after the medicinal value of marijuana was first realized, the Florida Legislature ignored the public's call for medical marijuana. Forced to take matters into their own hands, the People organized a petition drive and passed a constitutional amendment in 2016 authorizing the use of medical marijuana.

27.     After several states successfully approved non-medicinal use of marijuana,[12] the Florida Legislature again ignored the requests of the People for the adult use of marijuana. Being ignored by their elected representatives, the People again took action.

28.     Smart & Safe sponsored a proposed amendment entitled "Adult Personal Use of Marijuana," which was approved by the Secretary of State on August 23, 2022, and designated Serial Number 22-05. Although only 891,523 verified signatures were needed to place the proposed amendment on the ballot, Smart and Safe obtained 1,033,770 verified petitions, and the proposed amendment appeared on the 2024 General Election ballot as "Amendment 3."

---

[12] Marijuana is legal under state law in thirty-nine states, with adult recreational use legal under state law in twenty-four states. *See* https://www.ncsl.org/civil-and-criminal-justice/cannabis-overview, last visited 5/4/2025.

29.     Amendment 3 secured 5,950,589 votes in favor, or 56% of the vote—4% short of the 60% threshold required for passage. That result is remarkable, considering Governor DeSantis and his then Chief of Staff, now Attorney General, James Uthmeier waged a broad campaign, including the deployment of millions of taxpayer dollars, against Amendment 3. *See, e.g., Millions in Florida Taxpayer Cash Fuel DeSantis' Ad War on Pot, Abortion Amendments*, USA Today Network - Florida, John Kennedy, *available at* https://www.tallahassee.com/story/news/politics/elections/2024/11/01/florida-amendments-desantis-abortion-rights-marijuana-measures-election/75944921007/ (Nov. 1, 2024). Those public funds apparently included $10 million dollars diverted from the State's settlement of Medicaid overpayments. *See, e.g., Here's Where $10 Million Donation to DeSantis' Hope Florida Effort Went*, Tampa Bay Times, Lawrence Mower *available at* https://www.tampabay.com/news/florida-politics/2025/04/11/desantis-charity-hope-florida-casey-uthmeier-legislature/ (April 11, 2025).

30.     After expending millions of dollars to sponsor Amendment 3, Smart & Safe seeks again to amend the Florida Constitution via the citizen initiative petition process.

31.     Since the November 2024 General Election, Smart & Safe has expended significant money and resources gathering petitions to place the

Proposed Amendment on the 2026 General Election ballot under the legal requirements then in effect. That is, until they were radically and immediately changed by HB 1205 on May 2, 2025.

32.     The Secretary approved the Proposed Amendment's initiative petition format and issued serial number 25-01 on January 14, 2025, *see* **Exhibit 2**.

33.     To get a proposed amendment on the ballot, Smart & Safe estimates it must collect well over one-million signed petitions in order to account for the unavoidable invalidity of thousands of petitions.[13] While Smart & Safe relies upon volunteers who support the Proposed Amendment to spread its message and gather petitions, no sponsor in recent history has been successful in getting a proposed amendment onto the Florida ballot without professionally trained paid petition circulators.

34.     To get the Proposed Amendment on the 2026 ballot, Smart & Safe retained a field operations firm to solicit, gather, and process petitions for delivery to the County Supervisors for signature verification. Approximately 1400 petition circulators have been hired to circulate the Petition, interact with voters to convey

---

[13] For example, a petition may be rejected as invalid if the signer accidentally wrote down the wrong date, failed to include all of the information required on the petition form, failed to update their voter registration information, or signed the petition so quickly that the signature does not match the one on file with their supervisor of elections.

Smart & Safe's message, and collect signed petitions in support of the Proposed Amendment for processing and delivery to the County Supervisors.

35.     These petition circulators work and will continue to work throughout the state to collect petitions from every county. Circulators collect signed petitions from Florida voters regardless of where they live, and Smart & Safe submits those signed petitions to the County Supervisor for the county in which the voter resides. Smart & Safe has submitted and will continue to submit signed petitions to every County Supervisor in the state of Florida.

36.     Many of Smart & Safe's petition circulators are not Florida residents and travel from out of state to work during Florida's election cycle. Similarly, Florida resident petition circulators travel to other states for work. When work in Florida stops, the petition circulators move on to work in other states; thus, unduly burdensome and uncertain regulations, delays in the process, or punitive fines in Florida will cause Smart & Safe to lose a significant part of its workforce, infringing upon its First Amendment rights to freely associate and engage in core political speech.

37.     Smart & Safe has used the U.S. mail to circulate the Petition to voters in every county in Florida, and would continue to do so if permitted by law.

38.     As of the date of this filing, Smart & Safe has gathered more than 710,000 signed petitions (approximately 80% of the 880,062 necessary for ballot

placement) which have been or are in the process of being submitted for verification to County Supervisors, including 218,893 that have already been verified. The number of verified petitions, totaling at least 880,062, required for ballot placement must be confirmed by the Secretary by February 1, 2026. To ensure timely compliance, Smart & Safe must submit more than 1 million petitions to the County Supervisors by December 1, 2025, to account for the 60-day time period the supervisors are required to complete verification.

39.     Although HB 1205 became law only mere days before this filing, it is already dramatically infringing upon Smart & Safe's core speech. For example, Smart & Safe's workforce is being diminished because non-resident circulators are leaving the State as they will soon be precluded from collecting petitions. Because of HB 1205, Smart & Safe cannot freely associate with non-resident circulators of its choosing.

40.     Furthermore, resident circulators are confused by the new and overly burdensome requirements and are fearful of the punitive impact of HB 1205, causing many to stop working on the Smart & Safe initiative. Fewer circulators means that Smart & Safe is engaging in less speech.

41.     While Smart & Safe has expended millions of dollars to comply with the law in effect up until May 2, 2025, it will now have to raise and expend many

millions more to comply with the new statutory regime in order to engage in its protected core political speech to make the 2026 General Election ballot.

42.    The State of Florida has no legitimate state interest—let alone an important or compelling state interest—necessary to justify HB 1205's draconian requirements, which bear no rational connection to protecting ballot integrity—let alone being narrowly tailored or substantially related to same—particularly this close to the February 1, 2026 deadline to make the 2026 General Election ballot.

## HB 1205's Unconstitutional Assault on the Citizen Initiative

### *1.   The Ten-Day Delivery Requirement and Severe and Punitive Fines Unconstitutionally Chill Core Political Speech*

43.    Florida law requires a sponsor such as Smart & Safe to submit every signed petition it receives to the County Supervisor for the county in which the voter resides, regardless of whether the form contains any defects. HB 1205 reduced the previous thirty-day time period to submit petitions to the County Supervisors to ten (10) days after the voter signs the form. HB 1205 at 714-723. That change went into effect immediately upon becoming law; the Governor signed it within hours of passage by the legislature.

44.    Failure to submit the petitions within 10 days of the voter's signature subjects the sponsor to strict liability for daily fines of $50 *per day per petition*

without any cap, as well as $2,500 per petition where the *circulator* acts willfully.[14] HB 1205 at 724-730.

45.     Other burdensome fines apply for failing to submit signed forms prior to February 1 of the general election year and the failure to submit the petition form to the County Supervisor for the county in which the voter resides (including fines of $5,000 imposed on the sponsor where the circulator acts willfully). HB 1205 at 731-744.

46.     The fines apply to the sponsor regardless of fault or circumstances beyond the sponsor's control,[15] *e.g.*, mail delays, a voter holding a petition received by mail for several days or weeks, or voter input error such as listing the incorrect county. For the later, the Ten-Day Delivery Requirement will prevent the timely re-routing of misdelivered petitions to the correct County Supervisor.

47.     Under the thirty-day time period, Smart & Safe performed important quality control, including identifying defective petitions and segregating them before delivery in order to apprise the County Supervisors of such defects so that invalid petitions are not counted, as well as to avoid claims of fraudulent submissions and incurring penalties for violations.

---

[14] This means the sponsor can be held liable for potentially hundreds of thousands of dollars in enhanced fines despite lacking any willful intent.

[15] A showing by the sponsor that the failure to timely deliver the petitions due to force majeure and impossibility of performance are affirmative defenses. § 100.371(7)(b), Fla. Stat. (2025); HB 1205 at 745-748.

48.     Late delivered petition forms that are otherwise valid are verified and counted towards the sponsor's total. *See* Fla. Admin. Code R. 1S-2.0091(2(b) ("The untimely filing of a form does not invalidate the signature on the form."). Clearly, then, mandating an arbitrary and severely truncated delivery deadline has nothing to do with protecting ballot integrity.

49.     The Ten-Day Delivery Requirement sets sponsors up for failure because it creates unreasonable constraints on the petition gathering process and renders any meaningful quality control impossible—leading to increased invalidity rates, errors, and subsequent punitive fines.

50.     The risk to sponsors is compounded because HB 1205 now mandates that the County Supervisors shall notify the Office of Election Crimes and Security ("OCES") where the percentage of petition forms deemed invalid by the Supervisors exceeds a total of 25 percent of the petition forms received during the particular reporting period. § 100.371(14)(g), Fla. Stat. (2025); HB 1205 at 952-966. OCES, in turn, "shall conduct a preliminary investigation … to determine whether the invalidated petitions are a result of fraud or any other violation of this section [100.371]." *Id*. HB 1205 authorizes OCES to report its findings to the statewide prosecutor of state attorney for the relevant judicial circuit. *Id*.

51.     Not only will the vital quality control function be eviscerated, greatly increasing the risk of fines and potential investigation, the Ten-Day Delivery

Requirement precludes Smart & Safe and other sponsors from using the U.S. mail to solicit petitions or submit signed petitions to County Supervisors.

52.     Smart & Safe frequently receives via mail Petitions that were signed and dated by electors several days to weeks prior to receipt. Such voter delays in mailing their petition can easily cause the petition to arrive too close to—*or after*—expiration of Ten-Day Delivery Requirement.

53.     Numerous petitions are deemed late because the voter writes the wrong date (often the wrong year). Since the section for the signature date appears just below the section for the voter's birth date, voters often mistakenly write the month or date of their birth instead of the date the petition is signed.

54.     Smart & Safe has used the U.S. Mail to deliver batches of signed petitions to County Supervisors which, under the prior thirty-day window was not a problem. That has changed under the Ten-Day Delivery Requirement because significant mail delays are not uncommon. For example, a USPS Audit Report for the Tallahassee area for the period of March 1, 2023 – February 29, 2024, concluded that 10.8% of trips were either late or cancelled. *See Efficiency of Operations at the Tallahassee Processing and Distribution Facility, Tallahassee, Florida*, Report Number 24-084-R24, dated June 7, 2024 ("USPS Tallahassee

Audit"), at p. 4.[16] The audit noted: "When there are late trips, there is an increased risk the mail will not be delivered on time,…" *Id*. Such delays are widespread across the state and are not confined to any locale. *See also Timeliness of First-Class Mail Within Southeast Florida,* Report Number 24-123-R25, dated December 11, 2024 ("USPS SE Florida Audit") (finding that 20.3% of USPS test mail was delivered one to seven days late).[17]

55.　Because of the delays inherent in the mailing process, and the uncapped and punitive nature of the potential fines, Smart & Safe can no longer use the U.S. mail due to the Ten-Day Delivery Requirement. HB 1205 thus chills core speech by effectively eliminating Smart & Safe's ability to mail petitions directly to voters.

56.　The debilitating impact of this drastic reduction of the delivery deadline is not speculative. In the previous election cycle with respect to Amendment 3, under the thirty-day delivery requirement, Smart & Safe was issued a notice of violation by the Department of State for failing to submit petitions within the thirty day period. *See Notice of Violations of Initiative Petition Law*, dated 3/26/2025, attached as **Exhibit 5** ("Notice of Violation"). The Department

---

[16]　*Available at*: https://www.uspsoig.gov/sites/default/files/reports/2024-06/24-084-r24.pdf

[17]　*Available at*: https://www.uspsoig.gov/sites/default/files/reports/2024-12/24-123-r25.pdf

identified 2,437 petitions—*0.2% of the more than 1 million* petitions verified as valid. *Id*. Despite Smart & Safe exercising good faith and due diligence in processing the petitions, the Department issued a fine of $121,850. *Id*.

57.     The increased risk of errors created by the Ten-Day Delivery Requirement and consequent Severe and Punitive Fines has burdened and will continue to burden Smart & Safe's speech for a variety of reasons. To comply with the Ten-Day Delivery Requirement, circulators are being pulled away from talking directly to voters in order to (1) engage in quality control of signed petitions, and (2) deliver signed petitions to County Supervisors. More money will be spent on compliance costs and fines, so Smart & Safe will have less money to hire petition circulators to convey its message. And, the fines are scaring resident circulators who are taking other jobs, including moving out of state to work on other ballot initiatives. Fewer circulators on the ground means less speech for Smart & Safe.

58.     It was debatable that the thirty-day delivery requirement was necessary to protect ballot integrity. However, there can be no legitimate claim that the arbitrary and far more restrictive Ten-Day Delivery Requirement and the inevitable Severe and Punitive Fines are rationally related to protecting ballot integrity and, instead, are designed to significantly chill core political speech expressed via the citizen initiative.

### 2. HB 1205 Unconstitutionally Impairs Smart & Safe's Core Political Speech and Right to Associate with Petition Circulators

59.     HB 1205 prevents registration as a petition circulator where the person is not a Florida resident, is not a U.S. citizen, and is a convicted felon who has not had their right to vote restored. § 100.371(4)(b), Fla. Stat. (2025); HB 1205 at 598-603.

60.     Smart & Safe utilizes hundreds of petition circulators, including hundreds of whom are not Florida residents. Those circulators will be barred from gathering petitions starting July 1, 2025. Smart & Safe's resident and non-resident petition circulators have expressed confusion over the new law's burdensome requirements and fear of the punitive fines attendant to violations of same—particularly where such fines may be imposed despite lack of willful intent.

61.     Petition gathering is a seasonal business, and many paid professional circulators travel state to state following the work. Out of state petition gathering firms are already luring petition circulators from Florida due to HB 1205. Many of Smart & Safe's circulators have left or will soon leave Florida due to the burdens imposed by HB 1205.

62.     In short, HB 1205 is adversely impacting—and reducing—Smart & Safe's workforce, thereby reducing the amount of speech in which Smart & Safe can engage, in turn making it less likely that the Proposed Amendment will garner the signatures necessary to qualify for the ballot. Further, by prohibiting non-

Florida residents from petition circulating, HB 1205 has unconstitutionally interfered with Smart & Safe's right to associate with non-resident petition circulators to carry its message.

### 3. HB 1205 Compels Speech by Mandating that the Financial Impact Statement be Engrafted on Smart & Safe's Petition

63.    A financial impact statement ("FIS") must be provided to the public regarding the probable financial impact of any amendment proposed by citizen initiative petition. Fla. Const. art. XI, § 5(c).

64.    Such notice has been, and continues to be, on the ballot, appearing directly after the ballot title and summary of the proposed amendment. § 101.161(a). The "core purpose of financial impact statements" is to "inform voters so that an educated decision may be made with regard to a proposed amendment." *Standards for Establishing Legis. Dist. Boundaries*, 2 So. 3d 161, 165 (Fla, 2009).[18]

65.    The FIS is prepared by the Financial Impact Estimating Conference ("FIEC"), a group of government personnel appointed by the Governor and presiding Officers of the Florida Senate and House of Representatives; it must be

---

[18] A clear and unambiguous financial impact statement is critical to ensuring that no part of the ballot is misleading and that voters can cast an informed and intelligent ballot. *See, e.g.*, *id*. at 164. "Because the financial impact statement will be printed on the ballot, the same due process concerns that inure to the title and summary of a proposed amendment are also applicable to the financial impact statement." *Id*. (citation omitted).

completed within 75 days and is limited to 150 words (§ 100.371(16)(b), (c)1-2. Fla. Stat. (2025); HB 1205 at 1003-1010, 1053-1073), or double the length of a proposed amendment's 75-word ballot summary (§ 161.101(1), Fla. Stat. (2024)).

66.     Prior to HB 1205 becoming effective on May 2, 2025, petitions were submitted to the FIEC for purposes of preparing the financial impact statement at the same time they were submitted to the Attorney General for purposes of requesting the Florida Supreme Court advisory opinion. § 100.371(13)(a), Fla. Stat. (2024).

67.     Under HB 1205, the financial impact statement now must be completed before the Secretary publishes the petition form and circulation begins, and before the petition is submitted to the Attorney General for purposes of requesting the advisory opinion from the Florida Supreme Court. § 100.371(2), Fla. Stat. (2025); HB 1205, 502-07; § 15.21(1), Fla. Stat. (2025); HB 1205 at 380-87.

68.     The purpose of moving up the timing for submitting the proposed amendment to the FIEC is because petitions submitted to the Secretary after the effective date of the act (May 2, 2025) must separately contain and prominently display the FIS. § 100.371(3)(a)7., Fla. Stat. (2025); HB 1205, 516-29, and § 100.371(16)(d), Fla. Stat. (2025); HB 1205, 1087-89.

69.     For those petitions submitted after May 2, 2025, such as Smart & Safe's Second Proposed Amendment, the sponsor cannot begin to circulate petitions until the FIS is complete and the Secretary publishes the petition forms containing the FIS.[19] § 100.371(c)(2), (3)(4), Fla. Stat. (2025); HB 1205 at 507-510, 516-29.

70.     Sponsors such as Smart & Safe have no control over the creation or content of the FIS, which is created by a government committee.

71.     Despite already being required to be published on the ballot, the FIS must also now be displayed on the petition form. § 100.371(16)(d), Fla. Stat. (2025); HB 1205 at 1087-89.

72.     There is no rational basis to require Smart & Safe to carry the State's message alongside its own on the petition form. Nor can such compelled speech on the petition be deemed the least restrictive means, substantially, or rationally related to protect ballot integrity as the FIS already appears on the ballot.

---

[19] Although the compelled speech requirement to include the FIS will apply to petitions submitted to the Secretary after the effective date of the act (e.g., May 2, 2025), HB 1205 527-529, Smart & Safe has standing to bring this claim with respect to its Proposed Amendment as well for at least two reasons. First, should the financial impact statement for the Proposed Amendment be deemed legally deficient, the Florida Supreme Court must remand to the FIEC for redrafting. Once redrafted, Smart & Safe must include the new FIS on a new petition submitted to the Secretary. Second, should the Proposed Amendment not be adopted at the 2026 General Election, Smart & Safe will pursue the amendment again in 2028.

73.     Compelling a sponsor to carry the State's message on its petition is particularly problematic given the State's recent weaponization of the FIS. *See, e.g.*, *Floridians Protecting Freedom, Inc. v. Financial Impact Estimating Conference*, 2024 WL 3226027 (Fla. Cir. Ct. June 10, 2024) (granting summary judgment and remanding FIS for redrafting).

74.     In *Floridians Protecting Freedom*, the trial court found that the "FIS is inaccurate, ambiguous, misleading, unclear, and confusing, and is not limited to addressing the estimated increase or decrease in revenue or costs to state or local governments. Allowing this impact statement to go before voters is contrary to the core purpose of financial impact statements … and does not inform voters so that an educated decision may be made with regard to a proposed amendment." *Floridians Protecting Freedom*, at *4 (internal quotations and citation omitted).

75.     Of particular note, Judge Cooper remarked: "The **State did not dispute that the FIS was inaccurate or unfair** in its filings. At the hearing, it **did not argue that the FIS complied with the law**. When this Court asked at the hearing whether anyone wanted to be heard in defense of the FIS, **no one accepted the invitation**." *Floridians Protecting Freedom*, at *4.[20]

76.     It is remarkable that the State refused to defend the FIS that it created. But this illustrates the State's plan: use the FIS as a time-bomb set to blow up a

---

[20] Emphasis in quotations is added, unless otherwise noted.

petition and keep it from the ballot. Smart & Safe faces the very real possibility that FIS approval will be weaponized, forcing sponsors to choose between fighting for an accurate FIS or focusing on petition gathering. This plan is laid bare when considering the mandatory ballot decertification detailed in the next section of this Complaint.

### 4. The Mandatory Decertification Provision Impermissibly Burdens Speech

77.    Florida law mandates that: "Constitutional amendments proposed by initiative shall be placed on the ballot for the general election, provided the initiative petition has been filed with the Secretary of State no later than February 1 of the year in which the general election is held." § 100.37(1)(a), Fla. Stat. (2025); HB 1205 at 471-475.

78.    "A petition shall be deemed to be filed by the Secretary of State upon the date the secretary determines that the valid and verified petition forms have been signed by the constitutionally required number and distribution of voters." § 100.37(1)(a), Fla. Stat. (2025); HB 1205 at 475-479.

79.    "Upon a determination that the requisite number and distribution of valid signatures has been obtained, the secretary **shall issue a certificate of ballot position** for that proposed amendment and shall assign a designating number…." § 100.371(15), Fla. Stat. (2025); HB 1205 at 977-981.

80.     The directive to place an initiative receiving the required number and distribution of voter signatures on the ballot is derived from the express text of article XI sections 3 and (5)(b) of the Florida Constitution working in concert, and is self-executing.

81.     Section 3 provides:

> The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, **shall embrace but one subject and matter directly connected therewith**. It may be invoked by filing with the custodian of state records a petition containing a copy of the proposed revision or amendment, **signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole**, equal to eight percent of the votes cast in each of such districts respectively and in the state as a whole in the last preceding election in which presidential electors were chosen.

Relatedly, Article XI, Section 5(b) provides:

> (b)   A proposed amendment or revision of this constitution, or any part of it, by initiative **shall be submitted to the electors at the general election provided the initiative petition is filed with the custodian of state records no later than February 1** of the year in which the general election is held.

82.     From the textual perspective, then, the Florida Constitution requires satisfaction of two criteria for ballot placement: (i) the proposed amendment satisfies the "single-subject" requirement; and (ii) the requisite number and geographic distribution of signed petitions be verified and filed with the Secretary by February 1 of the general election year.

83. The Florida Constitution provides that the Florida Supreme Court "[s]hall, when requested by the attorney general pursuant to the provisions of Section 10 of Article IV, render an advisory opinion of the justices, addressing issues as provided by general law." Fla. Const., art. V, § 3(b)(10). Those "issues as provided by general law" appear in section 16.061 (2025).

84. HB 1205 expands the issues to be addressed pursuant to section 16.061(1) (2025):

> The compliance of the text of the proposed amendment or revision with s. 3, art. XI of the State Constitution, whether the proposed amendment is facially invalid under the United States Constitution, the compliance of the proposed ballot title and substance with s. 101.161, and the compliance of the financial impact statement with s. 100.371(16).[21]

HB 1205 at 411-417 (adding requirement to address compliance of the financial impact statement).

85. Section 16.061(1) (2025) and section 100.371(15) (2025), as amended by HB 1205, combine to impose criteria for ballot placement that do not exist in the constitutional text of Section 3, are not necessary to ensure ballot integrity, and are entirely outside the control of Smart & Safe: compliance of the FIS with section 100.371(16) (2025).

---

[21] Section 3 sets forth the single-subject requirement. Section 101.161 (2024) requires that the ballot title and ballot summary be printed in clear and unambiguous ballot language to help ensure ballot integrity.

86.    The expansion of the Court's advisory opinion review is problematic because HB 1205 now mandates that "[t]he secretary **must rescind** the certificate of ballot position if an advisory opinion by the Supreme Court pursuant to s. 16.061(1) deems the initiative petition invalid," including the FIS. § 100.371(15), Fla. Stat. (2025); HB 1205 at 981-984.

87.    Requiring the Secretary to rescind the certificate of ballot position based on the FIS—a statement drafted by the government, over which the sponsor has no control—would nullify no less than 880,062 signed and verified petitions gathered by Smart & Safe through extensive communications to voters. The Mandatory Decertification Provision thereby impermissibly burdens Smart & Safe's free speech on grounds entirely unrelated to protecting ballot integrity.[22]

### 5.  *The Additional Amendment Prohibition Bans Core Political Speech*

88.    HB 1205 prohibits a sponsor, such as Smart & Safe, from sponsoring more than one petition. Not only is this an outright ban on core political speech bearing zero relation to ballot integrity, the provision is vague and ambiguous. The act provides: "The sponsor of an initiative amendment may not sponsor more than one amendment …." § 100.371(2), Fla. Stat. (2025); HB 1205 at 492-493. It is unclear whether that prohibition applies to sponsoring more than one petition (i) at

---

[22] Ballot placement criteria that are not rooted in the constitutional text or necessary to ensure ballot integrity are unconstitutional. *Browning v. Fla. Hometown Democracy, Inc., PAC*, 29 So. 3d 1053, 1073 (Fla. 2010).

a given time, (ii) for a particular general election, or (iii) ever. Regardless of how the prohibition applies, it has no relation to protecting ballot integrity.

89.    Smart & Safe sponsored a proposed amendment in 2024. For the 2026 general election, Smart & Safe is sponsoring two proposed amendments to the Florida Constitution. HB 1205's prohibition on sponsoring more than one proposed amendment operates as a complete ban on Smart & Safe's First Amendment right to engage in core political speech.

### 6.  Pre-filled Petition Prohibition

90.    HB 1205 prohibits the provision of petition forms pre-filled with the voter's information, by mail or otherwise. § 100.371(10), Fla. Stat. (2025); HB 1205 at 767-773. The value of using pre-filled forms is clear as it promotes greater accuracy and efficiency in the process. And, because such forms are neatly typed, it aids the County Supervisors in their verification review. Using pre-filled forms enhances accuracy, validity rates, verification, and ultimately, integrity.

91.    Smart & Safe has provided pre-filled petition forms to many voters via U.S. mail, but is now prohibited from doing so. Prohibiting the use of pre-filled forms injects greater potential for defects in—and rejection of—the petition, and will in no way protect the integrity of the ballot.

92.    Given the foregoing, there is a bona-fide, actual, ongoing, present practical need for a declaration that HB 1205 is unenforceable under the United

States Constitution and under the Florida Constitution through the exercise of this Court's supplemental jurisdiction.

93.     The declaration concerns a present, ascertained, or ascertainable set of facts, or present controversy to a set of facts.

94.     An immunity, power, privilege, or right of the Plaintiffs are dependent upon the facts or law applicable to the facts.

95.     The Defendants have, or reasonably may have, an actual, present, adverse and antagonistic interest in the subject matter, either in law or fact.

96.     The relief sought is not merely the giving of legal advice or the answers to questions propounded for curiosity.

97.     All conditions precedent have been performed or waived.

## COUNT I

### Infringement of Smart & Safe's First Amendment Rights
### (Undue Burden on Core Political Speech)
### U.S. Const. amends. I, XIV; 42 U.S.C. § 1983

98.     Plaintiff realleges the allegations in paragraphs 1 - 97.

99.     Smart & Safe alleges that the Challenged Provisions are both facially unconstitutional and unconstitutional as applied to Smart & Safe.

100.    The circulation of citizen initiative petitions, including the petitions for Smart & Safe's proposed amendments to the Florida Constitution, implicates the petition sponsor's core political speech protected by the First Amendment.

101. The Challenged Provisions, individually and in combination, chill protected speech and impose unconstitutional barriers to engage in the speech at the heart of the petition gathering process.

102. Specifically, HB 1205 imposes multiple, severe burdens on Smart & Safe's ability to engage in protected speech, specifically (1) the Ten-Day Delivery Requirement, (2) the Severe and Punitive Fines, (3) the Non-Resident Circulator Prohibition, (4) the Compelled Speech Provision, (5) the Additional Amendment Prohibition, (6) the Mandatory Decertification Provision, and (7) the Pre-Filled Petition Prohibition.

103. The State of Florida has no legitimate interest in enacting the Challenged Provisions, as they do nothing to protect the integrity of the ballot.

104. Thus, HB 1205 violates Smart & Safe's rights under the First and Fourteenth Amendments to the United States Constitution.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment as follows:

A. Declare that the following Challenged Provisions of HB 1205 violate the First and Fourteenth Amendments:

    i. the Ten-Day Delivery Requirement (§ 100.371(7)(a), Fla. Stat. (2025); HB 1205 at 714-723);

ii.     the Severe and Punitive Fines (§ 100.371(7)(a)(1)-(3), Fla. Stat. (2025); HB 1205 at 724-744);

iii.    the Non-Resident Circulator Prohibition (§ 100.371(4)(b)3., Fla. Stat. (2025); HB 1205 at 598-603);

iv.    the Additional Amendment Prohibition (§ 100.371(2), Fla. Stat. (2025); HB 1205 at 492-493);

v.     the Mandatory Decertification Provision (§ 100.371(15), Fla. Stat. (2025); HB 1205 at 981-984); and

vi.    the Pre-Filled Petition Prohibition (§ 100.371(10), Fla. Stat. (2025); HB 1205 at 767-773);

B. Preliminarily and permanently enjoin Defendants Secretary of State and Attorney General from enforcing the foregoing Challenged Provisions;

C. Preliminarily and permanently enjoin Defendants County Supervisors from enforcing the Ten-Day Delivery Requirement;

D. Retain jurisdiction to render any further orders that this Court deems necessary;

E. Award Plaintiff its reasonable attorneys' fees and costs as provided by 42 U.S.C. § 1988 and other law as applicable; and

F. Grant any and all other relief as this Court deems necessary and just.

## COUNT II

### Infringement of Smart & Safe's First Amendment Rights:
### Free Association
### U.S. Const. amends. I, XIV; 42 U.S.C. § 1983

105.    Plaintiff realleges the allegations in paragraphs 1 - 97.

106.    Smart & Safe alleges that the Non-Resident Circulator Prohibition is both facially unconstitutional and unconstitutional as applied to Smart & Safe.

107.    The First Amendment prohibits government abridgement of the freedom of association.

108.    The Non-Resident Circulator Prohibition acts as a categorical prohibition against non-Florida residents serving as petition circulators, creating an unconstitutional infringement on sponsors' ability to associate freely for the purpose of petition collection.

109.    This prohibition is unrelated to protecting the integrity of the ballot.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment as follows:

A. Declare that the Non-Resident Circulator Prohibition (§ 100.371(4)(b)3., Fla. Stat. (2025); HB 1205 at 598-603); violates the First and Fourteenth Amendments;

B. Preliminarily and permanently enjoin Defendants Secretary of State and Attorney General from enforcing the foregoing Challenged Provisions;

C. Retain jurisdiction to render any further orders that this Court deems necessary;

D. Award Plaintiff its reasonable attorneys' fees and costs as provided by 42 U.S.C. § 1988 and other law as applicable; and

E. Grant any and all other relief as this Court deems necessary and just.

## COUNT III

**Infringement of Smart & Safe's First Amendment Rights:**
**Substantial Overbreadth**
**U.S. Const. amends. I, XIV; 42 U.S.C. § 1983**

110.　Plaintiff realleges the allegations in paragraphs 1 - 97.

111.　Smart & Safe alleges that the Challenged Provisions are both facially unconstitutional and unconstitutional as applied to Smart & Safe.

112.　The First Amendment prohibits government abridgment of the freedom of speech through the enactment of substantially overbroad laws.

113.　The Challenged Provisions prohibit a substantial amount of protected speech relative to its legitimate sweep.

114.　These restrictions are not narrowly tailored and work together to effectively prevent Smart & Safe, and other sponsors, from engaging in protected speech.

115.　The State has not offered any evidence that these Challenged Provisions are necessary to prevent fraud or abuse in the petition process.

116. No compelling or even substantial governmental interest justifies the Challenged Provisions.

117. The Challenged Provisions work together to chill protected expression and core political speech and risk variable enforcement, and therefore do not survive First Amendment scrutiny.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment as follows:

A. Declare that the following Challenged Provisions of HB 1205 violate the First and Fourteenth Amendments:

    i. the Ten-Day Delivery Requirement (§ 100.371(7)(a), Fla. Stat. (2025); HB 1205 at 714-723);

    ii. the Severe and Punitive Fines (§ 100.371(7)(a)(1)-(3), Fla. Stat. (2025); HB 1205 at 724-744);

    iii. the Non-Resident Circulator Prohibition (§ 100.371(4)(b)3., Fla. Stat. (2025); HB 1205 at 598-603);

    iv. the Additional Amendment Prohibition (§ 100.371(2), Fla. Stat. (2025); HB 1205 at 492-493);

    v. the Mandatory Decertification Provision (§ 100.371(15), Fla. Stat. (2025); HB 1205 at 981-984); and

vi.   the Pre-Filled Petition Prohibition (§ 100.371(10), Fla. Stat. (2025); HB 1205 at 767-773);

B.  Preliminarily and permanently enjoin Defendants Secretary of State and Attorney General from enforcing the foregoing Challenged Provisions;

C.  Preliminarily and permanently enjoin Defendants County Supervisors from enforcing the Ten-Day Delivery Requirement;

D.  Retain jurisdiction to render any further orders that this Court deems necessary;

E.  Award Plaintiff its reasonable attorneys' fees and costs as provided by 42 U.S.C. § 1988 and other law as applicable; and

F.  Grant any and all other relief as this Court deems necessary and just.

## COUNT IV

**Infringement of Smart & Safe's First Amendment Rights:**
**FIS Compelled Speech**
**U.S. Const. amends. I, XIV; 42 U.S.C. § 1983**

118.   Plaintiff realleges the allegations in paragraphs 1 - 97.

119.   Smart & Safe alleges that the FIS Compelled Speech provisions is both facially unconstitutional and unconstitutional as applied to Smart & Safe.

120.   Pursuant to the First and Fourteenth Amendment, the State may not force an individual or group to support certain expression.

121.  Thus, the First Amendment prevents the State from punishing a person for refusing to articulate, advocate, or adhere to the State's approved messages.

122.  The FIS Compelled Speech requires Smart & Safe to articulate the State's message by forcing it to contain the Financial Impact Statement on its petitions for the Proposed Amendment and the Second Proposed Amendment.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment as follows:

A. Declare that the FIS Compelled Speech (§ 100.371(13)(d), Fla. Stat. (2025); HB 1205 at 1087-1089, 1113-1116) violates the First and Fourteenth Amendments;

B. Preliminarily and permanently enjoin Defendant Secretary of State from enforcing the FIS Compelled Speech Provision;

C. Retain jurisdiction to render any further orders that this Court deems necessary;

D. Award Plaintiff its reasonable attorneys' fees and costs as provided by 42 U.S.C. § 1988 and other law as applicable; and

E. Grant any and all other relief as this Court deems necessary and just.

Respectfully submitted this 10th day of May, 2025.

**STEARNS WEAVER MILLER**
**WEISSLER ALHADEFF & SITTERSON, P.A.**

  s/ Glenn Burhans, Jr.
**Glenn Burhans, Jr.**
Florida Bar No. 0605867
**Bridget K. Smitha**
Florida Bar No. 709581
**Christopher R. Clark**
Florida Bar No. 1002388
**Liz Desloge Ellis**
Florida Bar No. 97873
**Hannah E. Murphy**
Florida Bar No. 1032759
**Matthew Bryant**
Florida Bar No. 93190
106 E. College Avenue, Suite 700
Tallahassee, Florida 32301
Telephone: (850) 580-7200
gburhans@stearnsweaver.com
bsmitha@stearnsweaver.com
crclark@stearnsweaver.com
lellis@stearnsweaver.com
hmurphy@stearnsweaver.com
mbryant@stearnsweaver.com
cacosta@stearnsweaver.com
abrantley@stearnsweaver.com
aruddock@stearnsweaver.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 10, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

    s/ Glenn Burhans, Jr.
Attorney