# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

FLORIDA DECIDES HEALTHCARE, INC., et al.

*Plaintiffs,*

v.

No. 4:25-cv-00211-MW-MAF

CORD BYRD, in his official capacity as Secretary of State of Florida, et al.

*Defendants.*

## DECLARATION OF RACHEL PRESTIPINO IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Pursuant to 28 U.S.C. § 1746, I, Rachel Prestipino, declare as follows:

1.     I am over the age of eighteen and fully competent to make this declaration. I have personal knowledge of the facts stated herein and declare the following to be true and correct.

2.     I am a resident of Florida, and currently live in Miami-Dade County.

3.     I am the Vice President of Policy and Community Engagement at Catalyst Miami. Catalyst Miami is a nonprofit organization whose mission is to build power with frontline communities throughout Miami-Dade County to collectively advance justice and achieve shared prosperity.

4.      One of Catalyst Miami's priorities is to support the expansion of Medicaid in Florida, which Catalyst Miami does, in part, by supporting Florida Decides Healthcare, Inc.'s ("FDH") effort to place a proposed constitutional amendment on the ballot in Florida's next general election to expand Medicaid coverage across the state.

5.      Among other things, Catalyst Miami supports the FDH measure by serving as a "hub" for petition collection. A "hub" is a place where volunteers can pick up blank petitions and return completed ones. In addition to receiving returned petitions and sending them to FDH, Catalyst Miami also trains volunteers to collect petitions for the Medicaid expansion effort. I have also personally circulated petitions for this measure as a volunteer.

6.      The passage of HB 1205, however, has severely hurt our ability to collect petitions. Most importantly, the 10-day requirement for returning signed petitions has significantly reduced the number of petitions we are able to collect. For FDH to return signed petitions to the supervisor of elections within 10 days, we now need to receive them within *24 hours* of being signed to allow time for processing and delivery to FDH. Since the enactment of HB 1205, we now only hand out petitions with explicit instructions that they must be returned within 24 hours.

7.      This is a big shift from the previous system. Under the former 30-day rule, we did not have to give such an instruction because there was no time crunch.

2

Volunteers were able to collect signatures at various times and places to carry our message as they went about their daily lives. Now, however, volunteers are much less likely to take petitions and participate in collecting signatures if they know they must be returned within 24 hours. Functionally, they cannot collect signatures from people in the regular course of their lives, but instead we will direct them to collect petitions only at a specific time as part of a defined event where a Catalyst Miami representative will be there to receive them when completed. The result is that we have already seen a substantial drop-off in the number of people who are willing to collect petitions, which will inevitably lead to a corresponding decrease in the number of petitions we will be able to collect.

8.      In addition, many of our volunteers have come to us with questions about how the law works and whether they and we will be able to continue our operations—questions that, at this point, we cannot really answer due to the vagueness regarding the timelines, penalties, and fines established by the law.

9.      The 10-day limit has also increased the costs we face in operating as a hub. Previously, we were able to mail petitions to FDH on a regular schedule every two weeks. Now, we are required to mail petitions more frequently and via expedited delivery, adding to our cost of operation.

10.     As a result of these changes, there is a danger that we will no longer be able to operate as a hub at all if HB 1205 is not enjoined. Should this law stay in

effect, we will be forced to reevaluate whether it makes sense to continue our present operations as a hub.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing is true and correct.

Date: May 14, 2025

Rachel Prestipino

4