# EXHIBIT 1

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

FLORIDA DECIDES HEALTHCARE,
INC., et al.,

*Plaintiffs/Intervenor-Plaintiffs*

v.                                    No. 4:25-cv-211-MW-MAF

CORD BYRD, in his official capacity as
Florida Secretary of State, et al.,

*Defendants*,

REPUBLICAN PARTY OF FLORIDA,

*Proposed Intervenor-Defendant.*

**MEMORANDUM OF LAW IN SUPPORT OF
REPUBLICAN PARTY OF FLORIDA'S MOTION TO INTERVENE**

The Republican Party of Florida ("RPOF") moves to intervene as a defendant in this case. In recent litigation challenging multiple states' election laws, the national, state, or county Republican Party were virtually always granted intervention to protect their interests in the laws and rules governing elections.[1] The Northern District of

---

[1] *See, e.g.*, *Fla. Rising Together, Inc. v. Byrd*, Doc. 82, No. 6:24-cv-1682 (M.D. Fla. Apr. 21, 2025) (granting intervention to the RNC and RPOF); *Democratic Nat'l Comm. v. Hobbs,* Doc. 18, No. 2:22-cv-1369 (D. Ariz. Aug. 24, 2022); *La Union del Pueblo Entero v. Abbott,* 29 F.4th 299, 309 (5th Cir. 2022); *Mi Familia Vota v. Hobbs,* Doc. 53, No. 2:21-cv-1423 (D. Ariz. Oct. 4, 2021); *Ga. State Conf. of NAACP v. Raffensperger,* Doc. 40, No. 1:21-cv-1259 (N.D. Ga. June 4, 2021); *Black Voters Matter Fund v. Raffensperger*, Doc. 42, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020) (granting intervention to the RNC and Georgia Republican Party); *All. for Retired Am.'s v. Dunlap*, No. CV-20-95 (Me. Super. Ct. Aug. 21, 2020) (granting intervention to the RNC, NRSC, and Republican Party of Maine); *Mi Familia Vota v. Hobbs*, Doc. 25, No. 2:20-cv-1903 (D. Ariz. Oct. 5, 2020) (granting intervention to the RNC and NRSC); *Ariz. Democratic Party v. Hobbs*, Doc. 60, No. 2:20-cv-1143 (D. Ariz. June 26, 2020) (granting intervention to the RNC and Arizona Republican Party); *Swenson v. Bostelmann*, Doc. 38, No. 3:20-cv-459 (W.D. Wis. June 23, 2020) (granting intervention to the RNC and Republican Party of Wisconsin); *Edwards v. Vos*, Doc. 27, No. 3:20-cv-340 (W.D. Wis. June 23, 2020) (same); *League of Women Voters of Minn. Educ. Fund v. Simon*, Doc. 52, No. 20-cv-1205 (D. Minn. June 23, 2020) (granting intervention to the RNC and Republican Party of Minnesota); *Priorities USA v. Nessel*, No. 19-13341, 2020 WL 2615504, at *5 (E.D. Mich. May 22, 2020) (granting intervention to the RNC and the Michigan Republican Party); *Thomas v. Andino*, 335 F.R.D. 364, 371 (D.S.C. 2020) (granting intervention to the South Carolina Republican Party); *Corona v. Cegavske*, Order Granting Mot. to Intervene, No. CV 20-OC-000644-1B (Nev. 1st Jud. Dist. Ct. Apr. 30, 2020) (granting intervention to the RNC and Nevada Republican Party); *League of Women Voters of Va. v. Va. State Bd. of Elections*, Doc. 57, No. 6:20-cv-24-NKM (W.D. Va. Apr. 29, 2020) (granting intervention to the Republican Party of Virginia); *Democratic Nat'l Comm. v. Bostelmann*, No. 20-CV-249-wmc, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020) (granting intervention to the RNC and Republican Party of Wisconsin); *Gear v. Knudson*, Doc. 58, No. 3:20-cv-278 (W.D. Wis. Mar. 31, 2020) (same); *Lewis v. Knudson*, Doc. 63, No. 3:20-cv-284 (W.D. Wis. Mar. 31, 2020) (same).

Florida,[2] as well as other district courts throughout the Eleventh Circuit,[3] in recent election cycles, have consistently allowed the Republican Party to intervene in lawsuits

---

[2] *See, e.g.*, *Vote.org v. Byrd*, Doc. 85, No. 4:23-cv-111-AW-MAF (N.D. Fla. May 26, 2023) (granting intervention to RNC and Republican Party of Pasco County); *Fla. Rising Together v. Lee*, Doc. 52, No. 4:21-cv-201-MW-MAF (N.D. Fla. July 6, 2021) (granting intervention to RNC and NRSC); *Harriet Tubman Freedom Fighters Corp. v. Lee*, Doc. 34, No. 4:21-cv-242-MW-MAF (N.D. Fla. July 6, 2021) (granting intervention to RNC and NRSC); *Fla. State Conf. of Branches and Youth Units of the NAACP v. Lee*, No. 4:21-cv-187-MW-MAF, 2021 WL 5014153, at *1-2 (N.D. Fla. June 8, 2021) (granting intervention to RNC and NRSC); *League of Women Voters of Fla. v. Lee*, Doc. 72, No. 4:21-cv-186-MW-MAF (N.D. Fla. June 4, 2021) (granting intervention to RNC and NRSC); *Nielsen v. DeSantis*, No. 4:20-cv-236-RH-MJF, 2020 WL 6589656, *1 (N.D. Fla. May 28, 2020) (granting intervention to the RNC, NRCC, and RPOF); *VoteVets Action Fund v. Detzner*, Doc. 16, No. 4:18-cv-524-MW-CAS (N.D. Fla. Nov. 12, 2018) (granting intervention to the NRSC); *Democratic Exec. Comm. of Fla. v. Detzner*, No. 4:18-cv-520-MW-MJF (N.D. Fla. Nov. 9, 2018) (granting intervention to the NRSC); *Jacobson v. Detzner*, No. 4:18-cv-262-MW-CAS, 2018 WL 10509488, *1 (N.D. Fla. July 1, 2018) (granting intervention to the NRSC and RGA); *Fla. Democratic Party v. Scott*, Doc. 49, No. 4:16-cv-626-MW-CAS (N.D. Fla. Oct. 19, 2016) (granting intervention to RPOF).

[3] *See supra* n.1 (*Fla. Rising Together, Inc. v. Byrd*, Doc. 82, No. 6:24-cv-1682 (granting intervention to the RNC and RPOF); *Black Voters Matter Fund v. Raffensperger*, Doc. 42, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020) (granting intervention to the RNC and Georgia Republican Party)); *see also, e.g.*, *Int'l All. of Theater Stage Emps. Local 927 v. Lindsey*, Doc. 84, No. 1:23-cv-4929 (N.D. Ga. May 3, 2024) (granting intervention to the RNC and Georgia Republican Party); *Asian Ams. Advancing Just.-Atlanta v. Raffensperger*, Doc. 39, No. 1:21-cv-1333 (N.D. Ga. June 4, 2021) (granting intervention to the RNC, NRSC, Georgia Republican Party, and NRCC); *United States v. Georgia*, Minute Order, No. 1:21-cv-2575 (N.D. Ga. July 12, 2021) (granting intervention to the RNC, NRSC, and Georgia Republican Party); *Coal. for Good Governance v. Raffensperger*, Minute Order, No. 1:21-cv-2070 (N.D. Ga. June 21, 2021) (granting intervention to the RNC, NRSC, NRCC, and Georgia Republican Party); *Concerned Black Clergy of Metro. Atlanta v. Raffensperger*, Minute Order, No. 1:21-cv-1728 (N.D. Ga. June 21, 2021) (same); *Sixth Dist. of the African Methodist Episcopal Church v. Kemp*, Minute Order, No. 1:21-cv-1284 (N.D. Ga. June 4, 2021) (same); *Ga. State Conf. of NAACP v. Raffensperger*, Doc. 40, No. 1:21-cv-1259 (N.D. Ga. June 4, 2021) (same); *VoteAmerica v. Raffensperger*, Doc. 50, No. 1:21-cv-1390 (N.D. Ga. June 4, 2021) (same); *Wood v. Raffensperger*, Doc. 14, No. 1:20-

challenging state election laws. This Court should do the same here for two independent reasons.

*First*, RPOF satisfies the criteria for intervention as of right under Federal Rule of Civil Procedure 24(a)(2). This motion is timely. Plaintiffs just filed their complaint a few weeks ago, the pleadings are still open, this litigation is still in its infancy, and no party will possibly be prejudiced. RPOF also has a substantial interest in protecting Republican members, candidates, voters, and resources from Plaintiffs' and Intervenor Plaintiffs' attempts to upend Florida's duly enacted election laws. Finally, no other party adequately represents RPOF's interests. Adequacy is not a demanding standard, and the State and local government Defendants do not share RPOF's unique interests in protecting their resources and helping Republican candidates and voters.

*Second*, in the alternative, the Court should grant RPOF permissive intervention under Rule 24(b). As noted above, this motion is timely. RPOF's defenses share common questions of law and fact with the existing parties, and intervention will not result in delay or prejudice. The Court's resolution of the important questions here will have significant implications for RPOF—and its members, candidates, voters, and resources—as RPOF continues its work to ensure that Florida's citizen initiative process is lawful and free from fraud.

---

cv-5155 (N.D. Ga. Dec. 22, 2020) (granting intervention for the Democratic Party of Georgia and DSCC).

Whether under Rule 24(a)(2) or (b), RPOF should be allowed to intervene as a defendant. Federal district courts in the state of Florida often grant permissive intervention under Rule 24(b), absolving the need to address intervention as of right under Rule 24(a). RPOF maintains it has a right to intervene under Rule 24(a), but also approves of being granted permissive intervention as an efficient resolution here.

## INTERESTS OF PROPOSED INTERVENORS

RPOF is a Florida state political party committee recognized under state and federal law. *See* 11 C.F.R. 100.15; Fla. Stat. §103.091. RPOF is the statewide organization representing Republican candidates at the state and local level in Florida and the more than five and a half million Republican voters throughout the State of Florida. RPOF supports the election of duly nominated Republican candidates through fundraising, voter registration, get-out-the-vote drives, and other campaign activities. RPOF is committed to a fair and open election process and promotes issues in line with the viewpoints of its candidates, members, and the Republican Party. RPOF's membership includes a large state executive committee, all of whom are individuals and registered Republican voters in Florida.

In addition, RPOF has been actively involved on behalf of its members in fighting against citizen initiative petitions that have made it onto Florida's ballot for voters to consider. For example, in 2020, RPOF fought against Amendment 3, "All Voters Vote in Primary Elections for State Legislature, Governor and Cabinet."  Initially, challenging its ballot language in front of the Florida Supreme Court, and then

once the amendment was approved to be placed on the ballot—educating its members on the dangers of the amendment. More recently, in 2024, RPOF fought against Amendment 3, "Adult Personal Use of Marijuana," and Amendment 4, "Amendment to Limit Government Interference with Abortion." In fact, Intervenor-Plaintiff Smart & Safe Florida sponsored the 2024 marijuana citizens' initiative, which (as mentioned above) RPOF actively opposed, and Smart & Safe Florida intends to sponsor two additional citizens' initiatives on the 2026 ballot. ECF No. 50 at 7-8. Intervenor-Plaintiff League of Women Voters of Florida circulated and collected petitions to put the 2024 abortion citizens' initiative, which RPOF also actively opposed, on the ballot. And Intervenor-Plaintiffs FloridaRighttoCleanWater.org and Melissa Martin (cumulatively, "FRCW") are working to add a 444-word amendment to the Florida Constitution via citizens' initiative that would create a private right of action to sue an agency of the State for any actions or inactions that allow harm or threat of harm to Florida waters, complete with entitlement to attorney's fees and costs, but only for trial lawyers representing plaintiffs. ECF No. 116 at 11. Should such a proposed amendment ever make it to the ballot, RPOF would certainly oppose same. Consequently, in addition to concerns about election integrity, RPOF has an interest in ensuring that Plaintiff Florida Decides Healthcare, Intervenor-Plaintiffs Smart & Safe Florida, League of Women

Voters of Florida,[4] and FRCW, and other groups attempting to change the Florida Constitution abide by the laws enacted by the Florida Legislature and are not permitted to relax the requirements in Florida for citizens' initiatives placement on the ballot.

Moreover, citizen initiative petitions are often placed on the ballot by groups affiliated with the Florida Democratic Party (and supported by the Florida Democratic Party itself—such as both Amendments 3 and 4 in 2024) with the specific intent of turning out Democratic voters to vote against Republican candidates. Florida will have a Republican on the 2026 General Election ballot for U.S. Senate, and all 28 of Florida's congressional seats are up for election in 2026. In addition, 2026 will have elections for Florida Governor, Lieutenant Governor, and all three Cabinet offices, as well as numerous Florida Senate and Florida House of Representatives seats, which will have a Republican candidate running in most of those races. Florida also will have numerous local races with Republicans on the ballot next year. Because this case seeks permanent relief, the outcome will impact elections occurring in Florida well beyond 2026. RPOF has interests—its own and those of its members—in how Florida's citizen initiative process is structured and how it is used by third party groups and the Democratic Party in an attempt to negatively influence the election of Republicans throughout the state.

---

[4] RPOF refers to Intervenor-Plaintiffs League of Women Voters of Florida, League of Women Voters of Florida Education Fund, Inc., League of United Latin American Citizens, Cecile Scoon, and Debra Chandler collectively as the League of Women Voters of Florida for ease of reference. *See* ECF No. 88 at 1 n.1.

## ARGUMENT

### I.    RPOF has an unconditional right to intervene.

RPOF is entitled to intervene as a matter of right under Rule 24(a). This Rule is to be "'construed liberally,'" *Adams Offshore, Ltd. v. Con-Dive, LLC*, 2009 WL 2971103, at *1 (S.D. Ala. Sept. 14, 2009) (citation omitted), and "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed interve-nors," *Fed. Sav. & Loan Ins. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993). Such an approach enables efficient resolution of "all related disputes in a single action." *Id.* Under Rule 24(a)(2), this Court must grant intervention by right if four things are true: (1) the motion is timely; (2) RPOF has a legally protected interest in this action; (3) this action may impair or impede that interest; and (4) no existing party adequately represents RPOF's interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). All four are true here.

### A.    The motion is timely.

Timeliness is determined by four factors: (1) the length of time after the movant knew of its interest in the case; (2) any prejudice to the existing parties from undue delay; (3) prejudice to the movant from denying intervention; and (4) any unusual cir-cumstances. *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002). The "convenience" of the parties is irrelevant. *Clark v. Putnam Cnty.*, 168 F.3d 458, 462 (11th Cir. 1999). All four factors favor RPOF.

RPOF filed this motion quickly—only a few weeks after Plaintiffs sued. A mo-tion to intervene can be timely even if submitted seven months after the original

complaint. *Chiles*, 865 F.2d at 1213; *see also Snadon v. SEW-Eurodrive, Inc.*, 2020 WL 13544217, at *1 (N.D. Ga. Nov. 4, 2020) (motion filed more than nine months after case removed to federal court was "not untimely"); *North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012) (motion filed one year after answer not untimely). That the Court has not yet taken "significant action," *U.S. Army Corps of Eng'rs*, 302 F.3d at 1259-60, and "[n]o trial date has been set," *Naples 9, LLC v. EverBank*, 2011 WL 1884628, at *2 (M.D. Fla. May 18, 2011), further confirms the motion is timely.

Nor will RPOF's intervention prejudice the parties. The case is "still at the answer stage," *New Ga. Project*, 2021 WL 2450647, at *2, and no party has filed any briefs or dispositive motions. Neither has this Court issued any substantive rulings. RPOF will comply with all deadlines that govern the parties, will work to prevent duplicative briefing, and will coordinate with the parties on discovery. If RPOF is not allowed to intervene, however, its interests may be irreparably harmed by an order overriding Florida's election laws. There are no unusual circumstances present here. RPOF is filing at the earliest possible opportunity. Therefore, this motion is timely.

### B.    RPOF has protected interests in this action.

As a state-wide party who represents more than 5.5 million registered Florida voters, as well as scores of candidates and voters in every county in Florida, RPOF has "'direct, substantial, legally protectible interest[s] in the proceeding.'" *Chiles*, 865 F.2d at 1213-14 (citation omitted). Specifically, RPOF wants Republican voters to vote, Republican candidates to win, and Republican resources to be spent wisely and not wasted on

diversions. Such interests "are routinely found to constitute significant protectable interests" in election law cases justifying intervention under Rule 24. *Issa v. Newsom*, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020); *see, e.g., La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022); *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 687 (7th Cir. 2023); *Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2001). These interests are at stake in the present case.

To begin, RPOF has an interest in Republican voters voting. This case implicates that legally protectable interest as a ruling in Plaintiffs' and Intervenor-Plaintiffs' favor would do grave damage to the confidence of Republican voters in the integrity of Florida's election system. Defending "the lawfulness" of the election provisions that Plaintiffs and Intervenor-Plaintiffs challenge and "protecting the integrity of [Florida's] elections" alone is a sufficient interest to justify intervention by RPOF in this case. *Black Voters Matter Fund*, Doc. 42 at 5, No. 1:20-cv-4869. Provisions like the ones Plaintiffs and Intervenor-Plaintiffs challenge here serve "the integrity of [the] election process," *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), and the "orderly administration" of elections, *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008). RPOF thus has a "'direct' and 'substantial' interest" in this case because it will "affect" RPOF's "ability to participate in and maintain the integrity of the election process in [Florida]." *La Union del Pueblo Entero*, 29 F.4th at 306 (citation omitted).

Furthermore, safeguarding Republican voter confidence in Florida's electoral process also necessitates RPOF's intervention. This confidence has "independent

significance" as a protectible interest. *Crawford*, 553 U.S. at 197. Such voter confidence "is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). Voter confidence and election integrity also have a direct effect on voter turnout, *see id.*, which is key to the Republican Party's mission to elect Republican candidates.

RPOF also has an interest in Republican resources being spent wisely and not wasted on diversions. If unlawful citizen initiative petitions were placed on the ballot, RPOF would need to divert resources from other mission-critical activities, such as voter registration, get-out-the-vote drives, and helping its candidates win elections, to fight against those initiatives. RPOF's success also depends on its ability to reach voters quickly and accurately with election-related communications. All these activities cost money. Safeguarding RPOF's mission-critical activities from costs associated with sudden court-ordered changes in election procedures is a legitimate "interest" under Rule 24(a)(2). *E.g.*, *Siegel*, 234 F.3d at 1169 n.1; *Issa*, 2020 WL 3074351, at *3; *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*, 2020 WL 5658703, at *11 (S.D.N.Y. Sept. 23, 2020).

This interest is not "generalized" or shared by all Floridians. Not all Floridians have an interest in electing *Republicans* or conserving the resources of the *Republican Party*. As the Democratic Party has explained, political parties "have specific interests and concerns—from their overall electoral prospects to the most efficient use of their limited resources—that neither defendants nor any other party in this lawsuit share."

*Wood*, Doc. 13 at 16, No. 1:20-cv-5155. Plaintiffs invoke a similar interest in support of their standing to file this lawsuit. *See* ECF No. 19 at 68, ¶ 226 (alleging that HB 1205's "Petition Circulator Eligibility provision" "discourages participation, forces organizations to divert scarce resources to compliance and vetting, and stifles protected associational and political activity"). If this interest is sufficient to support Plaintiffs' standing, then it is sufficient to satisfy the Rule 24(a) interest requirement to justify intervention by RPOF. *See Chiles*, 865 F.2d at 1213 ("[A] party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24."). In short, if Plaintiffs have standing to bring this lawsuit, then RPOF has an interest in defending against this lawsuit. *See Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1480 (11th Cir. 1993) ("[A] movant who shows standing is deemed to have a sufficiently substantial interest to intervene."), *abrogated on other grounds by Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1331-32 (11th Cir. 2007). For these reasons, RPOF has "significant interests at stake" in this case. *New Ga. Project*, 2021 WL 2450647, at *2.

### C.    This action threatens to impair RPOF's interests.

Proceeding without RPOF "may as a practical matter impair or impede [RPOF's] ability to protect its interest." Fed. R. Civ. P. 24(a)(2). Given their inherent and intense interest in elections, usually "[n]o one disputes" that political parties "meet the impaired interest requirement for intervention as of right." *Citizens United v. Gessler*, 2014 WL 4549001, *2 (D. Col. Sept. 15, 2014). To prove potential impairment, RPOF "need only show" that if they cannot intervene, "there is a possibility" that their "interest could be

impaired or impeded." *La Union del Pueblo Entero*, 29 F.4th at 307. This is easily accomplished. Plaintiffs' and Intervenor-Plaintiffs' requests to weaken Florida's election laws to make it easier for them to try to amend the Florida Constitution, if granted, would "change what [RPOF] must do to prepare for upcoming elections." *Id.* RPOF will plainly "suffer if the Government were to lose this case, or to settle it against [RPOF's] interests." *Mausolf v. Babbitt*, 85 F.3d 1295, 1302-03 (8th Cir. 1996).

As previously discussed, RPOF has actively fought numerous citizens' initiatives in recent years, including Amendment 3 in 2020, Amendment 3 in 2024, and Amendment 4 in 2024. Florida voters soundly rejected those citizens' initiatives. Now Plaintiff Florida Decides Healthcare (which alleges that it is actively working to sponsor a future citizens' initiative), Intervenor-Plaintiff Smart & Safe Florida (which previously sponsored the 2024 Amendment 3), Intervenor-Plaintiff League of Women Voters of Florida (which previously circulated and collected petitions for the 2024 Amendment 4), and Intervenor-Plaintiff FRCW (which alleges it is actively working to sponsor a future citizens' initiative) bring this suit because they believe they have a right to force the state to change its laws in a way they believe would favor their ability to amend Florida's Constitution. RPOF and many of its members have opposed the initiatives pushed by Plaintiff and Intervenor-Plaintiffs on a policy basis, as they conflict with the values and policies that Republican voters want in Florida's Constitution. The RPOF's interest in this case goes beyond just the policy initiatives of Plaintiff and Intervenor-Plaintiffs in this case. Even individual Republican voters and candidates who may support (and vote

in favor of) Plaintiff and Intervenor-Plaintiffs' constitutional policy initiatives, still have an interest in ensuring that the state's election integrity laws relating to Florida's citizens'-initiative process are upheld and the process for gaining access to Florida's ballot is one that is free from fraud or abuse.

In addition, the weakening of Florida's election laws impacts Republican voter confidence. This, in turn, deters Republicans from turning out to vote for Republican candidates. And, if unlawful citizens' initiatives are placed on the ballot, RPOF has to divert its resources away from its main goals to ensure that groups like Plaintiff and Intervenor-Plaintiffs are not able to clog up Florida's Constitution with a hodge-podge of detached, special-interest funded policy initiatives.

RPOF also plainly opposes the use of citizens' initiatives as a means to increase the turnout of voters who will vote against Republican candidates. Constitutional amendments that are placed on the ballot as a method of turning out Democratic voters to reduce the number of Republican elected officials in this state not only calls into question the integrity of the citizen-initiative process but also directly impairs RPOF's interests in electing more Republicans to federal, state, and local elected offices. Furthermore, "in resolving a motion to intervene," this Court "cannot assume" that Plaintiff and Intervenor-Plaintiffs "will ultimately prevail on the merits." *Pavek v. Simon*, 2020 WL 3960252, at *3 (D. Minn. July 12, 2020). At least for this motion, the Court must accept RPOF's defenses as correct. *Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984).

Moreover, "as a practical matter," Fed. R. Civ. P. 24(a)(2), this proceeding might be the only time that RPOF can litigate Plaintiffs' and Intervenor-Plaintiffs' claims. If Plaintiffs and Intervenor-Plaintiffs receive the permanent injunctive relief they request in their complaints, *see, e.g.*, ECF No. 19 at 73-74, ECF No. 54 at 52, ECF No. 90 at 49-50, and ECF No. 116 at 81, this Court's decision could be the final word on the citizens' initiative laws governing the next election. Because the "very purpose of intervention is to allow interested parties to air their views" before "making potentially adverse decisions," *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014), the "best" course is to give "all parties with a real stake in [the] controversy" an "opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972). That includes RPOF.

## D. Defendants do not adequately represent RPOF's interests.

Inadequacy of representation is not a demanding standard. Rule 24(a)(2) requires this Court to allow RPOF to intervene if existing party representation "'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted). And "the burden of making that showing should be treated as minimal." *Id.* Although courts sometimes presume representation is adequate when "an existing party seeks the same objectives" as the movant, that "presumption is weak and can be overcome if the [movant] present some evidence to the contrary"—for example, a "difference in interests." *Stone v. First Union Corp.*, 371 F.3d 1305, 1311-12 (11th Cir. 2004). Even where an intervenor has "similar, but not identical interests," to the State, the intervenor's "interests are not adequately represented." *Id.* at 1312 (cleaned up); *see also*

*Huff v. Comm'r of IRS*, 743 F.3d 790, 800 (11th Cir. 2014) ("[W]hile the Taxpayers have taken the same litigation position as the [state defendants]," their "interest in their over-all tax liability is *not the same* as the [state defendants'] interest in how the taxes are apportioned." (emphasis added)).

RPOF easily satisfies this minimal standard. No party to this case shares RPOF's interests in promoting Republican candidates' electoral success, supporting Republican voters, and conserving Republican Party resources. Much less does any party adequately represent those interests. Plaintiffs and Intervenor-Plaintiffs oppose the Florida Legislature's election integrity reforms, but RPOF's political interests and the millions of voters who support election integrity reforms related to the citizens'-initiative process are not represented by any party in this lawsuit.

Moreover, Defendants are Florida state and local government officials who must necessarily represent "the public interest." *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. DOI*, 100 F.3d 837, 845 (10th Cir. 1996). By contrast, RPOF's interest is inherently "partisan." *La Union del Pueblo Entero*, 29 F.4th at 309. "Neither the State nor its officials can vindicate such an interest while acting in good faith." *Id.* State Defendants have no interest in the election of Republican candidates, the mobilization of Republican voters, or the costs associated with either, as the RPOF does. Instead, as state and local officials acting on behalf of Florida citizens and the State itself, the State Defendants must consider "a range of interests likely to diverge from those of the intervenors." *Meek*, 985 F.2d at 1478. Those clashing interests include: the interests of

15

Plaintiffs, *In re Sierra Club*, 945 F.2d 776, 779-80 (4th Cir. 1991), "the expense of defending the current [laws] out of [state] coffers," *Clark*, 168 F.3d at 462, and "the social and political divisiveness of the election issue" to the State, *Meek*, 985 F.2d at 1478.

These diverging interests make Defendants less likely to present the same arguments, less likely to exhaust all appellate options, and more likely to settle. *Clark*, 168 F.3d at 461-62. By contrast, RPOF cares about this case's effect on the Republican Party, Republican candidates, and Republican voters. This stark divergence of interests meets the "minimal burden to show that the existing Defendants' representation of their interests, at the very least, *may* be inadequate." *Greene v. Raffensperger*, 2022 WL 1045967, at *4 (N.D. Ga. Apr. 7, 2022).

Additionally, no State Defendant opposes RPOF's intervention. As many courts have stressed, the government's "silence on any intent to defend [the movant's] special interests is deafening." *Conservation Law Found. of N.E., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *accord Utahns for Better Transp. v. DOT*, 295 F.3d 1111, 1117 (10th Cir. 2002). Because State Defendants "nowhere argue[]" that they "will adequately protect [RPOF's] interests," RPOF has "raised sufficient doubt concerning the adequacy of [its] representation." *U.S. House of Representatives v. Price*, 2017 WL 3271445, at *2 (D.C. Cir. Aug. 1, 2017). RPOF thus should be granted intervention under Rule 24(a)(2).

## II.    Alternatively, RPOF is entitled to permissive intervention.

Even if RPOF was not entitled to intervene as a matter of right under Rule 24(a), this Court should grant it permissive intervention under Rule 24(b). Rule 24(b)(1)(B)

gives courts discretion to "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Courts also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). If a court has doubts, "the most prudent and efficient course" is to allow permissive intervention. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States*, 2002 WL 32350046, *2 (W.D. Wis. Nov. 20, 2002).

The requirements of Rule 24(b) are met here. RPOF will raise defenses that share common questions of law and fact with existing parties. Plaintiffs and Intervenor-Plaintiffs allege that the challenged law is unconstitutional and must be enjoined. RPOF will argue that the law is valid, that an injunction is unwarranted, and that Plaintiffs' and Intervenor-Plaintiffs' desired relief would undermine RPOF's interests. This obvious clash is why courts allow political parties to intervene in defense of state election laws. *See, e.g.*, *Swenson*, Doc. 38 at 4, No. 3:20-cv-459 ("[T]he [RNC and Republican Party of Wisconsin] have a defense that shares common questions of law and fact with the main action; namely, they seek to defend the challenged election laws to protect their and their members' stated interests—among other things, interest in the integrity of Wisconsin's elections."); *Priorities USA*, 2020 WL 2615504, at *3, *5 (granting permissive intervention where the RNC "demonstrate[d] that they seek to defend the constitutionality of Michigan's [election] laws, the same laws which the plaintiffs allege are unconstitutional").

Moreover, RPOF's intervention will not unduly delay this litigation or prejudice anyone. There is no undue delay or prejudice where proposed intervenors file their motion when "litigation is in a relatively nascent stage." *Ga. Aquarium, Inc. v. Pritzker*, 309 F.R.D. 680, 691 (N.D. Ga. 2014). "Whatever additional burdens adding the [movant] to this case may pose, those burdens fall well within the bounds of everyday case management." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 200 (2022); *see also Fla. State Conference of Branches & Youth Units of the NAACP*, No. 4:21-cv-187 2021 WL 5014153 ("[E]ven if adding additional defendants creates some delay . . . that delay is marginal when compared to the risk that denying Proposed Intervenors' motion will open the door to delaying the adjudication of this case's merits for months—if not longer—while Proposed Intervenors appeal this Court's decision." (cleaned up)).

In addition, responding to RPOF's arguments will not unduly prejudice Plaintiffs, Fed. R. Civ. P. 24(b)(3), since Plaintiffs "can hardly be said to be prejudiced by having to prove a lawsuit [they] chose to initiate," *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). RPOF also commits to submitting all filings in accordance with whatever briefing schedule the Court imposes, "which is a promise" that undermines claims of undue delay. *Emerson Hall Assocs., LP v. Travelers Cas. Ins. Co. of Am.*, 2016 WL 223794, *2 (W.D. Wis. Jan. 19, 2016).

Allowing RPOF to intervene will allow the Court "to profit from a diversity of viewpoints as [movant] illuminate[s] the ultimate questions posed by the parties." *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017). This Court

has already granted permissive intervention to Intervenor-Plaintiff Smart & Safe Florida, which argued that it would bring "similar . . . but not identical" arguments to this litigation, ECF No. 53; ECF No. 50 at 11, to Intervenor-Plaintiff League of Women Voters of Florida, ECF No 88, and to Intervenor-Plaintiff FRCW, ECF No. 115. In a "challenge to Florida voting procedures," where "the defendants are state and county officials," it "cannot be said with assurance that the existing parties will frame the issues so well that the proposed intervention will add nothing of value. Even good lawyers sometimes miss things." *Nielsen*, 2020 WL 6589656, at *1. Ultimately, where a court has doubts, "the most prudent and efficient course" is to allow permissive intervention. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States*, 2002 WL 32350046, *2 (W.D. Wis. Nov. 20, 2002).

## CONCLUSION

For the foregoing reasons, RPOF respectfully requests that the Court grant this motion and allow RPOF to intervene as a defendant in this case.

19

Dated: May 27, 2025                Respectfully submitted,


                                   /s/ Benjamin J. Gibson
                                   Benjamin J. Gibson (Fla. Bar No. 58661)
                                   Daniel E. Nordby (Fla. Bar No. 14588)
                                   Tara R. Price (Fla. Bar No. 98073)
                                   Nicholas J.P. Meros (Fla. Bar No. 120270)
                                   Kassandra S. Reardon (Fla. Bar No. 1033220)
                                   **SHUTTS & BOWEN LLP**
                                   215 South Monroe Street, Suite 804
                                   Tallahassee, Florida 32301
                                   Tel: (850) 241-1717
                                   bgibson@shutts.com
                                   dnordby@shutts.com
                                   tprice@shutts.com
                                   nmeros@shutts.com
                                   kreardon@shutts.com
                                   chill@shutts.com

                                   *Counsel for Proposed Intervenor-Defendant*
                                   *Republican Party of Florida*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

This document contains 5,336 words, excluding what can be excluded under the Local Rules.

*/s/ Benjamin J. Gibson*


**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)**

Counsel for RPOF conferred with counsel for Plaintiffs, Intervenor-Plaintiffs, and Defendants who have appeared regarding this motion. Plaintiff Florida Decides Healthcare, Inc., and Intervenor Plaintiffs Smart & Safe Florida and FloridaRightto-CleanWater.org oppose the motion. Counsel for Plaintiff-Intervenors League of Women Voters of Florida did not respond to counsel for RPOF's email conferral seeking their position on the motion, which was sent on Thursday, May 22, 2025, at 3:43 p.m.

State Defendants Byrd and Uthmeier do not oppose RPOF's intervention. The Defendant Supervisors of Election who responded to counsel for RPOF's email correspondence, sent the afternoon of Thursday, May 22, 2025, either took no position on the motion or do not oppose RPOF's intervention. Counsel for the State Attorneys did not respond to counsel for RPOF's email conferral seeking their position on the motion, which was sent on Thursday, May 22, 2025, at 4:06 p.m. The other Defendants had not yet appeared when counsel for RPOF sent its email conferrals.

*/s/ Benjamin J. Gibson*

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, I electronically filed this document with the Clerk of the Court by using the CM/ECF system, which will serve all parties whose counsel have entered appearances. Those parties who have not yet appeared will be served via email.

*/s/ Benjamin J. Gibson*