## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

FLORIDA DECIDES HEALTHCARE,
INC., et al.,

                Plaintiffs,

                              Case No.: 4:25-cv-00211-MW-MAF

v.

CORD BYRD, et al.,

                Defendants.
_____/

SMART & SAFE FLORIDA,
a registered Florida Political Committee,

                Plaintiff,

v.

CORD BYRD, et al.,

                Defendants.
_____/

---

## PLAINTIFF SMART & SAFE FLORIDA'S
## EMERGENCY MOTION FOR PRELIMINARY INJUNCTION
## AND INCORPORATED MEMORANDUM OF LAW

---

Plaintiff Smart & Safe Florida ("Smart & Safe") hereby moves the Court, pursuant to Federal Rules of Civil Procedure 65(a) and 65(b), for a preliminary injunction against Cord Byrd, in his official capacity as the Secretary of the State of

1

Florida. Because sections 100.371(4)(b)3., 100.371(4)(c)(8), and 100.371(g) ("Non-Resident Circulator Prohibition") either have already gone into effect, or go into effect on July 1, 2025, Smart & Safe asks for emergency relief pursuant to Northern District of Florida Local Rule 7.1(L). In support thereof, Smart & Safe states as follows:

## **PRELIMINARY STATEMENT**

HB 1205 would **impose a fine of $23,700,000** upon Smart & Safe if it continued to use its 474 experienced and trained petition circulators merely because those circulators are not Florida residents. *See* 100.371(4)(b)3. (prohibiting non-resident circulators); *id.* (4)(g) ("The sponsor of the initiative amendment is liable for a fine in the amount of $50,000 for each person the sponsor allows to collect petition forms on behalf of the sponsor in violation of this subsection."). The Non-resident Circulator Prohibition and resulting outrageous fines impermissibly burden Smart & Safe's protected core speech and freedom of association, and must be enjoined.[1]

HB 1205's total ban on a class of speakers, entirely unrelated to preventing fraud or protecting the integrity of the ballot, is very likely the difference between the Initiative the Adult Personal Use of Marijuana Amendment (the "Initiative")

---

[1] Although this is Smart & Safe's second motion for preliminary relief, absent unforeseen circumstances, this will be its last.

getting on the 2026 General Election ballot or not. Cox Decl. ¶¶ 17-18. Smart & Safe believes it is unclear whether the Non-Resident Circulator Prohibition went into effect on May 2 or goes into effect on July 1. Accordingly, it stopped using non-resident circulators on May 2 out of a reasonable fear of crippling fines; it is thus harmed now and will continue to be harmed unless the Non-Resident Circulator Prohibition is enjoined. Smart & Safe seeks immediate relief from the Non-Resident Circulator Prohibition and asks this Court to set an expedited briefing schedule.

## <u>STATEMENT OF FACTS</u>

Smart & Safe has been using circulators to gather petitions in support of its Initiative since March 2025. Cox Decl. ¶ 4. In that time, it has hired 474 petition circulators who are not residents of the State of Florida, a total 36% of its workforce. Cox Decl. ¶ 12. In the middle of the petitioning cycle, the State of Florida changed the rules of the game, gravely disrupting the signature gathering process. As amended by HB 1205, section 100.371(4)(a)-(b), Florida Statutes, now provides:

> (4)(a) Beginning July 1, 2025, unless registered as a petition circulator with the Secretary of State and issued a petition circulator number, a person may not collect, deliver, or otherwise physically possess more than 25 signed petition forms in addition to his own…
>
> (b) **A person may not collect signatures or initiative petitions if he or she**:
>
> 1. Has been convicted of a felony violation and has not had his or her right to vote restored.
>
> 2. Is not a citizen of the United States.

3. **Is not a resident of this state**.

HB 1205 at lines 584-603.[2]

Section 100.371(4)(c)(8) now requires that an application to register as a petition circulator ask whether the applicant is a Florida resident. HB 1205 lines 650-43. Further, section 100.371(14)(h) now states that "a signed petition form submitted by an ineligible or unregistered petition circulator must be invalidated, and may not be counted toward the number of necessary signatures for placement on the ballot." HB 1205 at lines 967-970,

HB 1205 layers another crippling fine upon a sponsor of "**$50,000 for each person** the sponsor knowingly allows to collect petition forms on behalf of the sponsor in violation of this subsection." HB 1205 at lines 676-679. Additionally, and confusingly, HB 1205 makes violation of section 100.371(4)(a) punishable as a misdemeanor of the second degree and simultaneously a felony of the third degree. HB 1205 at lines 1323-1326 (amending section 104.187)[3] and 1335-1341 (amending section 104.188(2)).[4]

---

[2] Emphasis in quotations is added unless otherwise specified.

[3] "A person who violates s. 100.371(4)(a) s. 100.371(3) commits a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083."

[4] "A person who collects, delivers, or otherwise physically possesses more than 25 signed petition forms in addition to his or her own signed petition form or a signed petition form belonging to an immediate family member, and who is not

On May 2, 2025, when the Governor signed HB 1205 into law, Smart & Safe immediately told its non-resident circulators to stop collecting petitions out of a reasonable fear that their employment as circulators would put the sponsor at risk of a $50,000 per circulator fine.[5] Cox. Decl. ¶ 12. This decrease in the number of circulators—combined with the loss of roughly 600 resident circulators who stopped collecting petitions because they could not comply with the Ten-Day Return Deadline or reasonably feared being subject to the new fines and criminal penalties enacted by HB 1205—has brought Smart & Safe's total petition collection from 78,000 per week to roughly one-third that amount per week. Cox. Decl. ¶¶ 14-16. Although Smart & Safe was on track to collect enough petitions to make it on the ballot by July 1, 2025, it is now unclear whether it will meet the February 1, 2026 deadline. Cox. Decl. ¶ 18.

---

registered as a petition circulator pursuant to s. 100.371(4)(a), commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084."

[5] Based on the structure of the law, Smart & Safe reasonably stopped using non-resident circulators on May 2 rather than risk incurring a fine of $23.7 Million. Rather than address this matter in the First Joint Motion for Preliminary Injunction, and risk derailing the deadlines set by the court and agreed to by Plaintiff FDH and Defendants prior to Smart & Safe's intervention, Smart & Safe agreed to briefly wait to address the Non-Resident Circulator Prohibition in a second motion for preliminary injunction.

# ARGUMENT

## A.    Standard for Preliminary Injunctions.

"A party seeking a preliminary injunction bears the burden of establishing its entitlement to relief." *Scott v. Roberts*, 612 F.3d 1279, 1289-90 (11th Cir. 2010). To obtain such relief, Plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and (4) granting the injunctive relief will not disserve the public interest. *See Otto v. City of Boca Raton*, 981 F.3d 854, 860 (11th Cir. 2020). Here, Plaintiffs have met each of these factors and are thus entitled to the preliminary injunctive relief that they seek.

## B.    Smart & Safe is likely to succeed on its First Amendment claims.

### 1.    Smart & Safe has Article III Standing.

Smart & Safe has standing where it can show: (1) it has suffered an injury-in-fact (2) that is traceable to the defendant, and (3) can likely be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

#### i.    Smart & Safe has suffered an injury-in-fact.

To establish injury in a pre-enforcement challenge, a plaintiff must show (1) that they intend to engage in protected activity that (2) "a law prohibits or otherwise unconstitutionally burdens" and (3) "that a credible threat of prosecution exists

under that law." *HM Fla.-ORL, LLC v. Gov. of Fla.*, No. 23-12160, 2025 WL 1375363, at *3 (11th Cir. May 13, 2025). Smart & Safe has used non-resident petition circulators in the past, and but for the new prohibition in HB 1205, would continue to use them. Cox Decl. ¶¶ 11-13; Wells Decl. ¶ 16; Price Decl. ¶ 15; DeBise Decl. ¶ 14; Graves Decl. ¶ 13. Not only does HB 1205 prohibit non-residents from registering as petition circulators, it also creates criminal penalties for those who collect more than 25 petitions without registering and significant fines for sponsors who knowingly allow a petition circulator to collect petitions in violation of that section. HB 1205 at lines 1323-1326 (amending section 104.187); HB 1205 at lines 1335-1341 (amending section 104.188(2)); HB 1205 at lines 676-679. HB 1205 provides that a sponsor is liable for a fine of "**$50,000 for each person** the sponsor knowingly allows to collect petition forms on behalf of the sponsor in violation of this subsection." HB 1205 at lines 676-679. Smart & Safe had 474 non-resident petition circulators collecting petitions on its behalf before May 2, 2025. Cox Decl. ¶ 12. If Smart & Safe were to be fined for every non-resident petition circulator, it would face a fine of $23,700,000.

Furthermore, similar to the plaintiffs in *Krislov v. Rednour*, by being denied use of non-resident petition circulators, Smart & Safe has been "required to allocate additional campaign resources to gather signatures and were deprived of the [circulators] of their choice. This in itself can be an injury to First Amendment

rights." 226 F.3d 851, 857 (2000) (citing *Meyer v. Grant*, 486 U.S. 414, 424, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988)); Cox Decl. ¶ 17; Wells Decl. ¶¶ 9-11; Davis Decl. ¶¶ 8-10. Second, because Smart & Safe will be prohibited from using non-resident circulators, it is limited in the choice and number of people to carry their message to the public. *Krislov*, 226 F.3d at 857 (citing *Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley*, 454 U.S. 290, 294, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981) ("by collective effort individuals can make their views known, when, individually, their voices would be faint or lost")); Cox Decl. ¶¶ 13-14; Wells Decl. ¶ 10; Davis Decl. ¶ 12. This has injured Smart & Safe, and will continue to injure Smart & Safe, by "limiting the size of the audience [it can] reach and reducing the quantum of speech about the [proposed amendment] that otherwise could be generated." *Krislov*, 226 F.3d at 857 (citing *Meyer*, 486 U.S. at 421–22, 108 S.Ct. 1886); Cox Decl. ¶¶ 15-16; Wells Decl. ¶ 11. Also, Smart & Safe has been deprived of its right to expressively associate with non-resident citizens who were willing to circulate petitions on their behalf. *Krislov*, 226 F.3d at 857; Cox Decl. ¶ 7; Wells Decl. ¶ 16; Davis Decl. ¶ 12.

> ii. Smart & Safe's injury is traceable to the Secretary of State and the Attorney General, and can be redressed by an injunction against them.

Smart & Safe's injuries are traceable to Defendants' threatened enforcement of HB 1205 and redressable by an injunction barring that enforcement. Traceability

and redressability "often travel together." *Support Working Animals, Inc. v. Gov. of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021). For traceability, Smart & Safe must establish causation by showing that its injuries are connected with Defendants' conduct. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019). For redressability, Smart & Safe must establish "whether the injury that a plaintiff alleges is likely to be redressed through the litigation." *Sprint Commc'ns Co., L.P. v. APCC Servs.*, 554 U.S. 269, 287 (2008) (emphasis removed). Under this standard, the injuries imposed on Smart & Safe by the Non-Resident Circulator Prohibition is traceable to the Defendants and redressable through an injunction.

The Secretary is responsible for managing the registration of petition circulators. He is also responsible for creating the application form submitted by potential petition circulators, including asking applicants if they are residents of the state of Florida. HB 1205 at lines 610-643; section 100.371(4)(c)8.; HB 1205, lines 1171-1173 (requiring Department of State to make available the new circulator application forms by June 1, 2025). If the Secretary were enjoined from enforcing the non-resident prohibition in 100.371(4)(b), and required to allow non-residents to apply for and be registered as petition circulators pursuant to 100.371(4)(a), Smart & Safe's injury would be redressed by allowing non-residents to register as petition circulators and avoid any violation of the registration requirements.

Additionally, the Secretary is responsible for imposing fines incurred for violations of section 100.371 (2025). *See e.g.*, Fla. Admin. Code R. 1S-2.0091(2)(b). An injunction barring the Secretary of State from enforcing the $50,000 fine per petition circulator in violation of 100.371(4)(a) would redress Smart & Safe's injury by protecting it from crippling fines.

Finally, the Attorney General—through the Office of Statewide Prosecutor—may prosecute crimes occurring in or affecting two or more judicial districts. Fla. Stat. § 16.56(1)(c). Moreover, the Attorney General has asserted and exercised plenary enforcement power over all crimes relating to elections. As such, an injunction against the Attorney General prohibiting enforcement of the criminal penalties, sections 104.187 and 104.188(2), against petition circulators who fail to register with the Secretary of State would protect non-residents who wish to collect signatures on behalf of Smart & Safe. This would allow non-residents to associate with Smart & Safe and continue to communicate its message to the voters, redressing Smart & Safe's free speech and associational injuries.

## 2. Smart & Safe is likely to succeed on the merits.

Escalating its attack upon the constitutional right to pursue a citizen initiative, HB 1205 unduly restricts both sponsors' and individuals' abilities to communicate with voters and their respective rights of free association by barring swaths of people from serving as petition circulators. *See, e.g.,* Wells Decl. ¶ 16; Davis Decl. ¶12;

Price Decl. ¶ 15; DeBise Decl. ¶14, Graves Decl. ¶ 13. Absent an injunction, Smart & Safe will be prohibited from associating with all of those non-resident circulators who wish to communicate its message to the voters.

The Non-Resident Circulator Prohibition unduly burdens Smart & Safe's speech for two reasons: First, it "limits the number of voices who will convey [Smart & Safe's] message and the hours they can speak and, therefore, limits the size of the audience they can reach. Second, it makes it less likely that [Smart & Safe] will garner the number of signatures necessary to place the matter on the ballot, thus limiting their ability to make the matter the focus of statewide discussion." *Meyer*, 486, U.S. at 422. In addition to hampering Smart & Safe's speech, HB 1205 has also unduly burdened the speech and associational rights of non-resident circulators. *See* Graves Decl. ¶9 ("I believe in the Initiative . . . .  Adults should not be arrested for using marijuana."); DeBise Decl. ¶¶8-9 ("I agreed to travel all the way to Florida because I believe in the personal use of marijuana and do not believe people should be arrested for using it. . . . For me, gathering petitions for the Initiative is not about the money. I chose to come to Florida to circulate petitions because I personally support the Initiative."); Price Decl. ¶¶ 16-17 ("I do not circulate for petitions that I don't believe in. I believe in the recreational use of marijuana for people who cannot

afford a medical card. People shouldn't be jailed for using marijuana."); Davis Decl. ¶ 7 ("I agreed to work on the Initiative because I personally want to see marijuana legalized in Florida.").

While neither the Supreme Court nor the Eleventh Circuit Court of Appeals has explicitly addressed whether non-resident petition circulator prohibitions violate the First Amendment, numerous other circuit courts applying Supreme Court precedent—*Meyer v. Grant*, 486 U.S. 414 (1988); *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182 (1999)—have held such prohibitions unduly burden speech and unconstitutionally restrict association. *See We the People PAC v. Bellows*, 40 F.4th 1 (1st Cir. 2022); *Wilmoth v. Sec'y of New Jersey*, 731 Fed. Appx. 97 (3d Cir. 2018); *Libertarian Party of Virginia v. Judd*, 718 F.3d 308 (4th Cir. 2013); *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000); *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008); *Chandler v. City of Arvada, Colorado*, 292 F.3d 1236 (10th Cir. 2002); *Yes On Term Limits, Inc. v. Savage*, 550 F.3d 1023 (10th Cir. 2008).[6]

_____

[6] Only the Eighth Circuit Court of Appeals has concluded that a non-resident circulator prohibition does not unduly restrict speech. In *Initiative & Referendum Inst. v. Jaeger*, the court reasoned there were plenty of eligible circulators in the state for the sponsor to hire. 241 F.3d 614, 616 (8th Cir. 2001). The court went on to explain "many alternative means remain to non-residents who wish to communicate their views on initiative measures." *Id.* at 617. These conclusions are directly refuted by *Meyer* and *Buckley*. Each rejected the contention that alternative means of engaging in speech "lift[s] the burden on speech at petition circulation time." *Buckley*, 525 U.S. at 195; see also *Meyer*, 486 U.S. at 424. In fact, the Court concluded in *Meyer* that the "burden on First Amendment expression" was not mitigated "because other avenues of expression remain[ed] open." The Constitution

1. *Exacting Scrutiny Applies to the Non-Resident Petition Circulator Prohibition.*

Because HB 1205's complete "ban on non-resident petition circulators restricts First Amendment activity, this court must first ascertain the appropriate standard of scrutiny to apply." *Savage*, 550 F.3d at 1028 (citing *Chandler*, F.3d at 1241); *see also Krislov,* 226 F.3d at 860 (non-resident petition circulator prohibition "burdens [sponsors'] right to associate with a class of circulators; it limits [sponsors'] ability to choose the methods of political speech they consider most effective for their campaigns; and it reduces their ability to disseminate their message to a wider audience"); *Judd,* 718 F.3d at 317 (there is "a general agreement among our sister circuits that residency restrictions bearing on petition circulators

---

protects the right "not only to advocate the[ ] cause but also to select what [the sponsor] believe[s] to be the most effective means for so doing." 486 U.S. at 424.

The *Jaeger* court similarly failed to apply the logic underlying its own precedent from *Bernbeck v. Moore*, which held that "[t]he concerns raised by the prohibition of paid circulators in *Meyer* are identical to the effect of the voter-registration requirement .... In both instances, the laws 'limit[ ] the number of voices who will convey [sponsors'] message and the hours they can speak and, therefore, limit[ ] the size of the audience they can reach,' making it 'less likely that [sponsor] will garner the number of signatures necessary to place the matter on the ballot, thus limiting their ability to make the matter the focus of statewide discussion.'" 126 F.3d 1114 (8th Cir. 1997) (quoting *Meyer,* 486 U.S. at 422-23). That the reasoning underlying the holding by the Eighth Circuit in *Jaeger* is directly contradicted by *Meyer* and *Buckley*, as well as its own precedent, is reason enough to discount it.

and witnesses burden First Amendment rights in a sufficiently severe fashion to merit the closest examination").

Exacting scrutiny applies here. Where the "initiative process substantially restricts political discussion of the issue [the sponsor] is seeking to put on the ballot," the court should apply exacting scrutiny. *Biddulph v. Mortham*, 89 F.3d 1491, 1498 (11th Cir. 1996). Counsel for the Secretary of State said it best:

> [A]s the Eleventh Circuit put it, there's "an explicit distinction between" the regulation of "the initiative process in general and the power to regulate the exchange of ideas about political changes sought through the process." *Id.* at 1498 n.7. The latter kind of laws "dictate[] *who* could speak" or "*how* to go about speaking"—they concern the circulator's interaction with a prospect about an issue. *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1099 (10th Cir. 2006) (en banc). Think of the prohibition on paid circulators in *Meyer* (concerning who can speak) …. These kinds of laws undergo "exacting scrutiny." *Meyer*, 486 U.S. at 420.

ECF No. 105 at 17-18.

Because HB 1205's Non-Resident Circulator Prohibition has "burdened the exchange of ideas" by regulating *who* can speak, exacting scrutiny applies. *Biddulph*, 89 F.3d at 1500.

*2. The Non-Resident Petition Circulator Prohibition Fails Exacting Scrutiny.*

To survive exacting scrutiny, "there must be a substantial relation between the [law] and a sufficiently important governmental interest." *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 607 (2021) (citations and quotations omitted). "While exacting scrutiny does not require that [the law] be the least restrictive means

of achieving [its] ends, it does require that [it] be narrowly tailored to the government's asserted interest." *Id.* at 608.

According to the reports cited by the Secretary in his Response to Plaintiff's First Motion for Preliminary Injunction, Florida asserts that its interests include: (1) preventing election fraud, (2) ensuring the integrity of the ballot, and (3) "maintaining fairness, honesty, and order" in the election process. ECF No. 105 at 21. The Secretary relies on the Office of Election Crimes and Security reports submitted to the Legislature prior to the passage of HB 1205 to demonstrate evidence of the harms the bill allegedly seeks to redress. Those reports fall woefully short of providing any support for the State's asserted interests in banning non-Florida residents from circulating petitions.

The only asserted harm that could remotely be tied to the Non-Resident Circulator Prohibition is the "investigative challenges" allegedly wrought by non-resident petition circulators. ECF No. 103-2 at 8. Evidence of these "challenges" is cited in the OECS Report from January 15, 2025, as appearing in Appendix F.[7]

---

[7] The OECS Report from 2025 also laments sponsors hiring out-of-state contractors who turn out to be "less than helpful" to investigators. ECF No. 103-2 at 8. To the extent the state relies on this as justification for the Non-Resident Circulator Prohibition, it is not supported by the so-called evidence. *See* ECF No. 103-2 at 655-57 (attorney for Floridians Protecting Freedom explaining that FPF had no helpful information because the "contractor" under investigation had no relationship with the sponsor). Further, the harm would not be ameliorated by the Non-Resident Circulator Prohibition. As of the passing of HB 1205, the State appears to have made no effort to address its issue with out-of-state contractors.

Appendix F includes news articles reporting on the fact that two *Florida* residents were arrested for engaging in petition-related forgery that took place in Kansas and Florida. ECF No. 103-2 at 609-10. One was arrested in Florida, and the other was arrested in Nebraska. *Id.* at 616. This total dearth of evidence of any election fraud perpetrated by non-residents—let alone the lack of evidence that non-resident circulators have hampered investigations—undermines the State's claim that it has a sufficiently important government interest served by the Non-Resident Circulator Prohibition. Even if the state did articulate an important government interest in having investigation authority over petition circulators, a prohibition against non-resident petition circulators would in no way have prevented the crimes allegedly committed by these two Florida residents. In fact, this scenario demonstrates that petition circulators that are Florida residents at the time a petition is gathered can just as easily leave the state thereafter, causing the exact same investigation problems the OECS report theorizes. Moreover, any legislative attempt to address the claimed "investigatory challenges" should be directed at the investigatory process and not at restricting the protected speech and free association of sponsors and non-resident circulators.

Predictably, circuit courts applying the logic outlined in *Meyer* and *Buckley* have consistently held that a total ban on non-resident petition circulators is not narrowly tailored. When states relied on "investigative challenges" to justify non-

resident petition circulator prohibitions, courts have held that more narrowly tailored options exist. For example, courts have proposed requiring non-residents to enter into agreements with the state to provide their relevant contact information and agree to return in the event of a protest, and have suggested the state enact criminal penalties for circulators who fail to return when a protest occurs. *Savage*, 550 F. 3d at 1030; *Nader*, 531 F.3d at 1037.

Fortunately, these provisions already exist in Florida Statutes! All registered circulators must provide the state with "[a]n address in this state at which the applicant will accept service of process related to disputes concerning the petition process" and "consent[] to the jurisdiction of the courts of this state in resolving disputes concerning the petition process." *See* Section 100.371(3)(c)-(d), Florida Statutes (2022) (unchanged by HB 1205 at 620-26).[8] These means are much more effective in resolving the investigative challenges articulated in the OECS reports, namely resident petition circulators allegedly committing fraud and then leaving the state. *Chandler*, 292 F.3d at 1244 ("Presently, [if a] resident who circulates a petition … subsequently moves outside the City, [he] is beyond the reach of the City Clerk's subpoena power. If, as suggested, all circulators were required to submit to [the City's] jurisdiction, the City Clerk's reach for petition protest purposes would be

---

[8] This same requirement was originally enacted in 2019 at Section 100.371(4)(c)-(d), Florida Statutes.

assured."); *see also Krislov*, 226 F.3d at 865 ("Because the same ends can be achieved just as easily (and probably more effectively) through other means already in existence, the residency [] requirements are unnecessary."). Accordingly, the Non-Resident Circulator Prohibition is not narrowly tailored to address the claimed "investigative challenges."

Assuming Defendants will rely on other government interests, it is unclear how the Non-Resident Circulator Prohibition would further Defendants' goals of preventing election fraud or ensuring the integrity of the ballot. The Secretary has offered no evidence to suggest that non-resident circulators engage in more fraud than resident circulators. Even if he had, "evidence of the fraudulent practices of a handful of non-resident petition circulators," would "not support the inference that, *as a class,* non-resident circulators are more likely to engage in fraud than resident circulators." *Savage,* 550 F.3d at 1031 (citing *Buckley,* 525 U.S. at 204 n. 23 (evidence that some paid circulators engaged in petition fraud was not enough to conclude with any certainty that paid circulators were more likely to commit fraud than other circulators)). Nor is there any evidence to suggest that non-resident circulators submit more invalid petitions than resident circulators. "[A] resident would likely be at the same risk of obtaining an invalid signature … as would a non-resident." *Krislov*, 226 F.3d at 865.

In fact, it is Smart & Safe's experience that its non-resident circulators are largely professional circulators who have made a career in this field by being invited to carry petitions and communicate with voters in Florida and other states based on the quality and reliability of their work. Cox Decl. ¶¶ 6-13; Wells Decl. ¶¶ 6-8; Davis Decl. ¶¶ 5-8; Price Decl. ¶ 1; DeBise Decl. ¶¶ 5-7; and Graves Decl. ¶¶ 5-6. These circulators tend to have had more experience and training, and tend to collect petitions faster and at a higher validity rate than resident circulators. Cox Decl. ¶¶ 6-13; Wells Decl. ¶ 8; Davis Decl. ¶ 9. In fact, as career circulators, they are incentivized to have high validity rates in order to demonstrate their capability to employers to be invited to work on subsequent campaigns. See Cox Decl. ¶¶ 7-8; Price Decl. ¶ 11; Graves Decl. ¶¶ 5-6, 12; DeBise Decl. ¶¶5, 7. During the current campaign for the Initiative, Smart & Safe's non-resident circulators have a validity rate of 73.91% compared to the slightly lower 72.78% validity rate of its resident circulators. Cox Decl. ¶ 13. Thus, it cannot be said that non-resident circulators pose any greater threat of ballot fraud or to ballot integrity than resident circulators. HB 1205 is having a direct, immediate, and dire impact on the livelihoods of non-resident petition circulators that were forced to stop collecting petitions. *See* Davis Decl. ¶ 12; Price Decl, ¶ 14; Graves Decl. ¶¶13-14; DeBise Decl. ¶13. Beyond the pecuniary benefit, these circulators work on initiatives that they support; they support the Initiative here and want to see it on the ballot. *See* Davis Decl. ¶ 7; Price

Decl. ¶ 17; Graves Decl. ¶ 9; DeBise Decl. ¶¶ 8-10, 12. The Non-Resident Circulator Prohibition prevents them from engaging in the most effective means to spread the Initiative's message. Cox Decl. ¶ 14.

To the extent that Defendants can articulate an important government interest, the remedy imposed by HB 1205 is not only <u>not</u> narrowly tailored, it is ineffective to address the claimed investigative challenges, supposed fraud, and alleged petition validity concerns. Accordingly, the Non-Resident Circulator Prohibition unduly burdens both the sponsors' and non-resident circulators' freedom of speech and association and should be immediately enjoined.

**C. An injunction is necessary to avoid irreparable harm.**

"[D]irect penalization of protected speech, . . . for even minimal periods of time, constitutes a per se irreparable injury." *Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020) (cleaned up). Here, the immediate harm to Plaintiffs is irreparable and urgent. The Non-Resident Petition Circulator Prohibition is either already in effect or will go into effect on July 1, and has already disrupted—and will continue to disrupt—Smart & Safe's efforts to speak to Florida voters, chilled non-resident petition circulators from participating in the citizen initiative process, and irreparably suppressed both Smart & Safe and non-residents' rights to association. Cox Decl. ¶¶ 12, 15-16, 18; Wells Decl. ¶¶ 9, 11; Davis Decl. ¶¶ 7, 12; Price Decl. ¶¶ 15, 17; DeBise Decl. ¶¶ 8-9, 14; Graves Decl. ¶¶ 9, 13. Additionally, there is

evidence that the complete ban on non-resident petition circulators could be the difference between the Initiative making it on the ballot or not. Cox Decl. ¶ 18; Wells Decl. ¶ 11.

### D. The balance of hardships and the public's interest weigh in favor of a preliminary injunction.

The balance of equities and public interest weigh in Smart & Safe's favor because the Secretary of State will suffer no harm if the Court grants the requested relief, and the public interest is served when courts protect constitutional rights. The Court considers these factors jointly when a plaintiff seeks emergency relief against the government. *Otto*, 981 F.3d at 870. As the Eleventh Circuit explained in *Otto*, "neither the government nor the public has any legitimate interest in enforcing [] unconstitutional" laws. *Id.; see also KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) (holding that, in weighing the equities, "even a temporary infringement of First Amendment rights constitutes a serious and substantial injury, [whereas] the city has no legitimate interest in enforcing an unconstitutional ordinance").

Here, the Secretary and Attorney General will suffer no legitimate "injury" if non-residents continue to lawfully collect petitions in support of the Initiative. By contrast, Smart & Safe's hardships are significant. The volume of speech it has been able to engage in has already markedly decreased, the risk of not making it on the 2026 General Election ballot has increased significantly, and it has been and

continues to be denied the opportunity to associate itself with the circulators of its choosing. Cox Decl. ¶¶ 7-14; Wells Decl. ¶ 11; Davis Decl. ¶ 12; Price Decl. ¶ 15; DeBise Decl. ¶ 14; Graves Decl. ¶ 13.

Finally, an injunction is in the public interest. It is always in the public interest to prevent the government from implementing unconstitutional laws. *See Otto*, 981 F.3d at 870. And the public benefits from more speech, not less. If Smart & Safe is not ultimately able to secure a sufficient number of petitions for ballot placement due to the state's complete ban on non-resident petition circulators, the public will be harmed by not having the option to vote in favor of the Initiative.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff Smart & Safe respectfully requests this Court enter a preliminary injunction to accomplish the following:

i.     enjoin Defendant Secretary of State's enforcement of sections 100.371(4)(b)3. and 100.371(4)(c)(8);

ii.    enjoin Defendant Secretary of State's enforcement of section 1003.371(g) to the extent it applies to any sponsor who knowingly allows petition circulators to collect petition forms on its behalf in violation of 100.371(4)(b)3.;

iii.   enjoin Defendant Attorney General's enforcement of sections 104.187 and 104.188(2) to the extent that petition circulators are unable to

register pursuant to 100.371(4)(a) by way of the prohibition outlined in 100.371(4)(b)3.

## ORAL ARGUMENT

Smart & Safe is seeking expedited resolution on this motion. In order to do so, counsel is willing and available to attend a hearing as soon as the Court is available. If the Court wishes to have a hearing, Smart & Safe expects that 45 minutes of oral argument is necessary to address the narrow issues presented herein. That said, considering the many competing schedules of the many parties involved, the Court might wish to rule on the papers—to which Smart & Safe has no objection.

## LOCAL RULE 7.1(B) CERTIFICATION

Plaintiff's counsel, Hannah Murphy, conferred with counsel for the Secretary of State, Mohammad Jazil and Attorney General, William Stafford. Both the Secretary and Attorney General oppose the motion. Furthermore, Smart & Safe proposed an expedited briefing schedule, wherein the Secretary and Attorney General would respond to this motion by June 5—six days after filing—in order to give the Court as much time as necessary to schedule a hearing prior to the Non-Resident Circulator Prohibition's effective date of July 1.[9] Mr. Jazil and Mr.

---

[9] Because HB 1205 cancels the registrations of all petition circulators and creates new training and registration requirements for re-registration, in an effort to make sure that non-resident circulators are ready to get back to work beginning on July 1 should preliminary relief be granted, Smart & Safe requests expedited briefing

Stafford—who plan to file a joint response—requested that they have until June 20 to respond, and that a hearing be set on June 23, 24, or 25, in order to accommodate a trial Mr. Jazil has scheduled for the week of June 9. Because of the narrow issues addressed in this Motion and the current and continuing harm caused by HB 1205, Smart & Safe requests an expedited briefing schedule.

This motion does not seek relief against any of the other Defendants or Defendant-Intervenors, but Plaintiffs have also conferred with counsel for each party involved. As of the time of filing, counsel for the Republican Party of Florida did not return a request for conferral sent by Smart & Safe via email at 3:39 p.m. on May 29.[10]

Smart & Safe received the following responses from the County Supervisors of Elections:

- The Alachua, Brevard, Broward, Charlotte, Collier, Hernando, Indian River, Lake, Lee, Leon, Manatee, Marion, Monroe, Okaloosa, Orange, Pasco, Pinellas, Sarasota, and Seminole County Supervisors of Elections take no

---

so that this Court may have enough time to enter an injunction as far ahead of the July 1 effective date as possible.

[10] When seeking intervention the RPOF committed to not delay these proceedings. ECF No. 147 at 18. ("RPOF also commits to submitting all filings in accordance with whatever briefing schedule the Court imposes, 'which is a promise' that undermines claims of undue delay. E*merson Hall Assocs., LP v. Travelers Cas. Ins. Co. of Am.*, 2016 WL 223794, *2 (W.D. Wis. Jan. 19, 2016).").

position on the motion and have no objection to Smart & Safe's proposed schedule.

- The Clay, DeSoto, Duval, Escambia, Flagler, Gilchrist, Highlands, Jefferson, Liberty, Madison, Martin, Osceola, Palm Beach, Polk, St. Lucie, and Union Supervisors of Elections take no position on the motion.

## LOCAL RULE 7.1(F) CERTIFICATION

The undersigned certifies on this 30th day of May, 2025, that this document complies with word limits set forth in Rule 7.1(F), N.D. Fla. Loc. R., and contains 5,842 words which includes the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

Respectfully submitted this 30th day of May, 2025.

**STEARNS WEAVER MILLER**
**WEISSLER ALHADEFF & SITTERSON, P.A.**

  s/ Glenn Burhans, Jr.
**Glenn Burhans, Jr.**
Florida Bar No. 0605867
**Bridget K. Smitha**
Florida Bar No. 709581
**Christopher R. Clark**
Florida Bar No. 1002388
**Liz Desloge Ellis**
Florida Bar No. 97873
**Hannah E. Murphy**
Florida Bar No. 1032759
**Matthew Bryant**
Florida Bar No. 93190
106 E. College Avenue, Suite 700
Tallahassee, Florida 32301

Telephone: (850) 580-7200
gburhans@stearnsweaver.com
bsmitha@stearnsweaver.com
crclark@stearnsweaver.com
lellis@stearnsweaver.com
hmurphy@stearnsweaver.com
mbryant@stearnsweaver.com
cacosta@stearnsweaver.com
abrantley@stearnsweaver.com
aruddock@stearnsweaver.com
*Counsel for Plaintiff, Smart & Safe Florida*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 30, 2025, I electronically filed the foregoing through the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

  s/ Glenn Burhans, Jr.    
Attorney
