# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

FLORIDA DECIDES HEALTHCARE, INC., *et al.*,

        *Plaintiffs*,

v.

BYRD, *et al.*,

        *Defendants*.

No.: 4:25-cv-00211-MW-MAF

SMART & SAFE FLORIDA, *et al.*,

        *Intervenor-Plaintiff*,

v.

BYRD, *et al.*,

        *Defendants*.

LEAGUE OF WOMEN VOTERS OF FLORIDA, *et al.*,

        *Intervenor-Plaintiffs*,

v.

BYRD, *et al.*,

        *Defendants*.

1

# DECLARATION OF JUAN PROAÑO, ON BEHALF OF PLAINTIFF-INTERVENOR LEAGUE OF UNITED LATIN AMERICAN CITIZENS

I, Juan Proaño, pursuant to 28 U.S.C. § 1746, declare that the following statements are true and correct to the best of my knowledge and belief:

1. I am the Chief Executive Officer of the League of United Latin American Citizens. I have served in this position since November 2023.

2. LULAC is the largest and oldest Hispanic civil rights organization in the United States of America. LULAC's mission is to advance the economic condition, educational attainment, political influence, housing, health and civil rights of the Hispanic population of the United States.

3. LULAC has over 325,000 members in 33 states, the District of Columbia, and Puerto Rico.

4. LULAC has more than 525 councils nationwide, including 17 in the state of Florida.

5. LULAC's state affiliate, LULAC Florida, has thousands of members and operates throughout the state.

6. LULAC operates entirely through volunteers. As a core part of its mission, LULAC advocates for policies that will improve the lives of Hispanic communities. Its advocacy has included support for driver's licenses for all Florida residents regardless of immigration status and fighting back against private utility companies that charge discriminatory rates to Hispanic customers.

7. LULAC has also worked with other organizations to support ballot initiatives in the state of Florida, including the Right to Abortion Initiative and the Rights Restoration for Felons Initiative.

8. Many LULAC members, both inside and outside of Florida, have collected petition forms for initiatives like these and planned to collect petitions in support of the Florida Decides Healthcare initiative.

9. LULAC has never directly collected petitions as an organization. However, it planned to do so for the first time this year to support the FDH initiative.

10. This initiative would extend Medicaid benefits to any individual or family in the state making less than 138% of the federal poverty level.

11. The FDH initiative is important to LULAC's constituents. Many LULAC members fit the eligibility criteria for Medicaid under the proposed expansion. Securing passage of this initiative would mean that our members can reap the benefits of the tax dollars they send to Washington.

12. In preparation for this new petition campaign, LULAC's Florida affiliate was in the process of developing a new membership card that features a member's picture. LULAC intended for members to wear this identification while collecting petition forms. Prominently displaying a LULAC membership card would help earn the trust of voters that members engage by visibly affiliating each member

with LULAC, which is an established and trusted organization in Hispanic communities throughout the state.

13. Unfortunately, the newly-enacted Florida HB 1205 will make it impossible for LULAC to launch its petition efforts.

14. Among a host of new and burdensome requirements for petition gathering, the new Law prohibits noncitizens from collecting petition forms.

15. This particular provision negatively impacts LULAC's ability to rely on its full membership base and its volunteer base. That is because many of its members and its volunteers do not have United States citizenship.

16. LULAC has a large volunteer base that is made up of permanent residents or of people who are on work or student visas. LULAC had hoped to rely on these individuals to help gather petition signatures in support of the Medicaid initiative.

17. Indeed, noncitizen members and LULAC volunteers have previously gathered petitions for the Rights Restoration initiative in 2018, the Reproductive Freedom initiative in 2024, and other initiatives.

18. These individuals have gathered petition forms again in support of the FDH initiative, but since the passage of HB 1205, they have been completely shut out of the process. LULAC also hoped it could rely on these members and on its

large permanent resident and visa-holder volunteer base in general to help gather petitions.

19. HB 1205 prevents them from doing so. LULAC's noncitizen members play an important role in the discussion of issues like the Medicaid expansion. Because HB 1205 excludes them from collecting petition signatures, it has cut off a crucial channel for those members to reach out to voters and discuss this issue.

20. HB 1205 also prevents LULAC from relying on and mobilizing its large volunteer base of lawful permanent resident and visa-holder volunteers. These individuals care deeply about Medicaid expansion and there is no reason to exclude them from the petition gathering process.

21. Not only does HB 1205 harm LULAC's noncitizen members and its volunteer base, it also harms LULAC's citizen members.

22. For instance, HB 1205 requires anyone wishing to collect more than 25 petitions from non-family members to register as a circulator and sign an affidavit with each petition form. Both steps require disclosing the "circulator's" personal information, including their address. Both of these documents then become public records–the new Law does not state that any of this information will be kept private.

23. But many of LULAC's citizen members are from mixed-status households, which include parents, grandparents, siblings, aunts, uncles, or cousins who do not have US citizenship and may be undocumented. This places the citizen

members who want to exercise their voice and engage in basic civic and democratic processes in a bind. Even if they are citizens themselves, they are afraid that disclosing their addresses on a public form, sharing their social security numbers with the State, and having their names associated with supporting controversial initiatives, will invite harassment from state and federal authorities who will use this information to identify, arrest, and deport their undocumented family members.

24. These requirements on anyone who wishes to collect more than 25 petitions are not only onerous and burdensome, but also extremely intimidating. Therefore, LULAC members and volunteers, even if they are citizens themselves, will not sign up to become petition gatherers under HB 1205. And as a result, LULAC, as an organization, will suffer because it will not be able to mobilize any of its members or volunteers to participate in direct democracy.

25. HB 1205's new requirements have also placed significant administrative burdens on LULAC itself. The vague and indecipherable language in the HB 1205 (e.g., the lack of clarity about what "irregularities" means), has hindered LULAC Florida from developing clear guidelines for members. This is because it does not know what conduct is or is not permitted by the Law. Until these ambiguities are resolved, LULAC Florida will not encourage its members and volunteers to gather petitions. The organization assumes responsibility for keeping

7

its members and volunteers safe, and the new law unfortunately exposes LULAC and its members and volunteers to an unacceptable level of risk.

26. In the meantime, LULAC Florida has received many questions from members and it has developed trainings that inform members and volunteers about the law, particularly the risks associated with collecting petitions. The time spent on these trainings has diverted LULAC's attention from other organizational priorities, such as defending its noncitizen members from arrest and deportation by ICE. This diversion of LULAC Florida's resources means that LULAC has fewer resources to defend constituents from immigration enforcement.

27. As a result of HB 1205's burdensome requirements, LULAC has made the decision that, unless the law is enjoined before July 1, 2025, it will not be collecting petition forms in support of the Florida Decides Healthcare initiative, or any other initiative, for the foreseeable future. Nor will it encourage its members or volunteers to collect petitions as it is LULAC's responsibility to protect these individuals from criminal enforcement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 2nd day of June in Washington, DC.

_____
Juan Proaño
Chief Executive Officer
League of United Latin American Citizens