# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

FLORIDA DECIDES HEALTHCARE, INC., *et al.*,

        *Plaintiffs*,

v.

BYRD, *et al.*,

        *Defendants*.

No.: 4:25-cv-00211-MW-MAF

SMART & SAFE FLORIDA, *et al.*,

        *Intervenor-Plaintiff*,

v.

BYRD, *et al.*,

        *Defendants*.

LEAGUE OF WOMEN VOTERS OF FLORIDA, *et al.*,

        *Intervenor-Plaintiffs*,

v.

BYRD, *et al.*,

        *Defendants*.

## DECLARATION OF DEBRA CHANDLER, CO-PRESIDENT OF THE LEAGUE OF WOMEN VOTERS OF FLORIDA, IN HER INDIVIDUAL <u>CAPACITY</u>

I, Debra Chandler, pursuant to 28 U.S.C. § 1746, declare that the following statements are true and correct to the best of my knowledge and belief:

1. I have served as Co-President of the League of Women Voters of Florida since 2023.

2. I am a native resident of Palm Beach County, Florida.

3. I have been a member of the League since October 24, 2015.

4. Prior to joining the League, I worked as an assistant public defender for about 25 years and taught criminal and constitutional law at Florida Atlantic University as an adjunct professor for 10 years.

5. Since joining the League, I have gathered petitions for several ballot initiatives, including the Rights Restoration amendment in 2018, the previous Florida Decides Healthcare amendment in 2019, and the Reproductive Freedom amendment in 2024.

6. Over the course of my time with the League, I have collected hundreds of petitions. I enjoy this work. It gives me an opportunity to speak to voters about issues I care about. I collect petitions whenever I get the chance, often at events and places like book clubs, street fairs, beaches, and other local gathering places.

7. Like door-to-door canvassing, the work of talking to voters about an issue, getting them interested, and encouraging them to help place that issue on the

ballot, is work that has always felt meaningful to me. It represents direct democracy and I've cherished being able to engage in it whenever I want to without having to first get permission from the government.

8. During these campaigns, it was not uncommon for me to collect more than 25 signed petition forms in a single day.

9. The League of Women Voters began collecting petitions in support of the Medicaid and Clean Water initiatives somewhere in the vicinity of early 2024.

10. I have collected Medicaid and Clean Water initiative petitions, but not to the extent I did in prior efforts, due to my busy schedule as Co-President. Even so, I have collected somewhere in the neighborhood of 40 to 50 signed petitions for each initiative from non-family members.

11. I am very concerned about the effect that HB 1205 will have on my ability, and the ability of my fellow League members, to collect petitions in support of citizen-led ballot initiatives.

12. Since HB 1205's enactment, I have not collected any petition forms. While parts of the law appear to go into effect on July 1, others do not have a clear effective date. For instance, Section 6(3)(a) begins with "beginning July 1, 2025." Section 6(3)(d) includes the requirement that circulator and personal use affidavits accompany every petition form. It is unclear whether subsection (a)'s inclusion of a start date applies to subsection (d). The consequence of this ambiguity is that many

of HB 1205's most restrictive provisions (e.g., the requirement of a circulator's affidavit or personal use notice) may already be in effect.

13. As a result, I have already stopped collecting petitions to ensure that I do not accidentally violate the new Law.

14. I want to continue gathering petitions in support of initiatives I care about, including the current Florida Decides Healthcare and Clean Waters initiatives. In fact, I hope to have time to substantially increase my efforts to collect petitions very soon. However, HB 1205 leaves me with no acceptable options for gathering petitions.

15. The Law forces me to ask the government for permission before I can "speak"—while collecting petitions—with more than 25 voters. I have to do this by giving the government the last four digits of my social security number along with other details. And then after I register as a petition circulator, I have to deal with the fact that my information may be public together with information tying me to specific political causes.

16. If I do not register as a petition circulator, then I'm barred from physically possessing more than 25 signed petitions and am subjected to a third-degree felony if I break that rule. But what does "physically possess more than 25 signed petition forms" mean? Does it mean that I can collect 10 petitions in support of the Medicaid Expansion initiative and then collect 20 for the Clean Water

5

initiative and leave them in the back of my car? The law is unclear and it puts me at risk of committing a felony if I guess wrong.

17. If this Court allows the challenged provisions to go into effect in their entirety on July 1, 2025, I will cease to collect petition forms.

*Volunteers and Petition Collection*

18. The League relies exclusively on volunteers to collect petition forms in support of citizen-led ballot initiatives.

19. Even setting aside the regulatory requirements associated with the process, gathering petition forms can be a grueling process. League members sometimes must stand out in the heat, striking up conversations with strangers about ballot initiatives and asking them if they will sign petition forms. This work requires volunteers to be on their feet, sometimes for hours.

20. This work can be especially difficult for League members. Because the League's work requires a significant time commitment, most of our members are retired senior citizens. Many have trouble walking or standing. Others suffer from chronic illnesses that make work like petition gathering particularly onerous, but they do it because they care deeply about the initiatives.

21. When volunteer work is already this taxing, additional burdens like the ones imposed in HB 1205 will push even the most committed volunteers to quit.

Volunteers are already being pushed to their limits; adding potential felony liability for making even minor errors in that activity makes that prospect far worse.

***Registration and Affidavit Requirements***

22. In my several years of collecting petitions in support of ballot initiatives, I have never registered as a circulator. This is because, based on my understanding of the law prior to HB 1205, only paid circulators were required to register. I have never been paid for circulating petitions; like other members of the League, I collect petitions on a volunteer basis.

23. HB 1205 changes that. Now, if I plan on collecting more than 25 petitions, I must register as a petition circulator.

24. To register as a petition circulator, I will need to provide the state with highly sensitive personal identifying information on a form that will become a public record. This includes my Florida driver license number and the last four digits of my social security number, as well as my home address.

25. Likewise, if I register as a circulator, I will need to provide my home address on an affidavit accompanying every petition I collect. This, too, will become a public record.

26. I am very protective of my personal information. My phone was hacked in February of this year and it caused me significant hardship.

7

27. In particular, I am not comfortable with my home address being available to anyone with the ability to look it up. The League has done work on sensitive topics, including abortion, that sometimes provoke violence from extremists. Were they to see my name associated with a petition in support of one of these initiatives, vigilantes might target me at my home. I am an even more vulnerable target because, as Co-President, I am a highly visible League member.

28. As a result of these concerns, I do not plan to register as a petition circulator.

*Personal Use Limit*

29. If I choose not to register as a circulator, I will not have a viable alternative route for collecting petitions. This is due to HB 1205's cap on the number of petitions non-circulators can gather.

30. First, I am unsure how to comply with the Law's "Personal Use" limitations.

31. Even as an attorney with over 40 years of experience, I have trouble understanding what this provision requires. It is unclear to me, for example, what it means to "retain" or "collect" signed petition forms. I also am highly uncertain as to the time period over which the 25-petition limit applies. I do not know whether I am permitted to retain 25 petitions at a time, over the course of a campaign, or some other time period.

8

32. I cannot afford to accidentally transgress this limit. I continue to maintain a law license and even the appearance of malfeasance could put my license at risk.

33. Unsurprisingly, I am not the only League member with these concerns. Since the Law's passage, I have received calls, texts, and emails from panicked members unsure of how many petitions they can collect without registering as a circulator.

34. Second, irrespective of how the 25-petition limit is construed, it will allow me to collect only a small fraction of the number of petitions I collected before the Law's enactment.

35. During petition drives, I usually carry around at least 30 blank petition forms. Whenever my supply of petition forms would drop below 30, I print out new ones.

36. Before HB 1205, it was common for me to collect more than 25 petitions in a single day.

37. This limit will mean that I am unable to collect nearly as many petitions, and therefore will be unable to speak to as many voters about the merits of popular initiatives that I support.

***Conclusion***

38. As a result of HB 1205, League members like me are left with no good options for collecting initiative petitions. I therefore plan to stop collecting petition forms for the foreseeable future if this court does not enjoin the challenged provisions of the law.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 2nd day of June in Lake Worth, Florida.

*Debra Chandler*
Debra Chandler
Co-President
League of Women Voters
of Florida, Inc.