## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**FLORIDA DECIDES HEALTHCARE,**
**INC., et al.,**

       *Plaintiffs/Intervenor-Plaintiffs,*

**v.**                  **Case No.: 4:25cv211-MW/MAF**

**CORD BYRD, et al.,**

       *Defendants.*

_____/

## ORDER ON FIRST MOTION FOR PRELIMINARY INJUNCTION

This case involves a challenge to several recently enacted amendments to Florida's laws governing citizen ballot initiatives.[1] Plaintiffs include several sponsors and supporters of citizen initiatives who work for active petition-gathering

---

[1] This Court recognizes that after this Court took Plaintiffs' first motion for preliminary injunction under advisement, Plaintiffs Florida Decides Healthcare, Simmons, and Emerson filed an amended complaint. ECF No. 170. Inasmuch as the amended complaint does not materially alter the claims as framed in the pending motion for preliminary injunction, ECF No. 92, the amended complaint did not appear to moot the motion. Even so, to the extent the amended complaint adds additional factual allegations and clarification regarding the scope of Plaintiffs' claims, this Court limits its analysis to the arguments as framed in the motion, ECF No. 92. To that end, this Court notes that Plaintiffs' arguments regarding application of the *Meyer-Buckley* framework to the challenged provisions largely focused on the ten-day deadline and associated fines and skipped over any developed analysis concerning the challenged criminal provisions. For example, after explaining why the deadline and fines are not narrowly tailored under *Meyer*, Plaintiffs jump right into their vagueness arguments with respect to the criminal provisions. ECF No. 92-1 at 20, 23. In short, Plaintiffs' focus regarding the challenged criminal provisions was centered on their overbreadth and vagueness claims. So too here. This Court does not develop arguments that Plaintiffs omitted in their motion, ECF No. 92, and instead focuses its merits analysis for the criminal provisions on Plaintiffs' overbreadth and vagueness claims, for which Plaintiffs developed at least some argument in their motion papers.

campaigns seeking to place proposed constitutional amendments on the ballot for next year's general election in Florida. They have moved to enjoin Defendants' enforcement of some amendments that took immediate effect—namely, a new ten-day deadline for sponsors to return signed petitions, fines attendant to late delivery of those signed petitions, fines for delivering signed petitions to the wrong county, fines for filling in missing information on signed petitions, fines for providing pre-filled petitions to voters to sign, and criminal provisions that now prohibit filling in missing information on signed petitions, retaining voters' personal information, and expand the definition of racketeering activity to include violations of Florida's Election Code relating to irregularities or fraud involving petition initiatives. This Court held a hearing on Plaintiffs' motion on May 22, 2025. For the reasons set out below, this Court grants their motion for preliminary injunction in part and denies it in part.

I

Under Rule 65 of the Federal Rules of Civil Procedure, a district court may grant a preliminary injunction "only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*,

234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam). "The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (11th Cir. 1974)).

This Court begins with whether Plaintiffs have shown a substantial likelihood of success on the merits. This Court addresses this factor first because, typically, if a plaintiff cannot "establish a likelihood of success on the merits," this Court "need not consider the remaining conditions prerequisite to injunctive relief." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). And because standing is always "an indispensable part of the plaintiff's case," this Court begins its merits analysis with standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Any evaluation of Plaintiffs' claims necessitates an inquiry into Plaintiffs' ability to bring such claims. Standing is not just some technical hurdle—it concerns a fundamental question about whether this Court has jurisdiction to hear Plaintiffs' constitutional claims. Nor is standing "dispensed in gross." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). Instead, "plaintiffs must demonstrate standing for each claim that they press, against each defendant, and for each form of relief that they seek." *Id*. (internal quotation

marks and citation omitted); *see also CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271–72 (11th Cir. 2006). Accordingly, this Court first considers whether Plaintiffs have met their affirmative burden to demonstrate a substantial likelihood of success in establishing standing against each Defendant as to each claim for which they seek preliminary injunctive relief.

"To meet the injury-in-fact requirement for purposes of seeking injunctive relief, a plaintiff 'must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *LaCroix v. Lee Cnty.*, 819 F. App'x 839, 841 (11th Cir. 2020) (citation and quotation marks omitted). And while "the injury requirement is most loosely applied—particularly in terms of how directly the injury must result from the challenged governmental action—where First Amendment rights are involved," *id*. at 841–42 (citation omitted), "the plaintiff must still demonstrate 'an unambiguous intention at a reasonably foreseeable time to engage in a course of conduct arguably affected with a constitutional interest.' " *Id*. at 842 (quoting *Bloedorn v. Grube*, 631 F.3d 1218, 1228 (11th Cir. 2011)). " '[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of 'actual or imminent' injury that our cases require.' " *Eland v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006) (quoting *Lujan*, 504 U.S. at 564).

The Eleventh Circuit has "found a sufficient imminence of future harm based on past injury," when the plaintiff "alleged *with particularity* that a future injury would likely occur in substantially the same manner as the previous injury." *LaCroix*, 819 F. App'x at 842 (emphasis added). However, when a plaintiff "failed to allege with particularity the location at which he would likely incur a future injury," the Eleventh Circuit has found standing lacking. *Id*. at 843 (citing *Eland*). For instance, when the facts give rise only to a "speculative inquiry of whether the plaintiffs would protest again and 'the unspecified details of where, at what type of event, with what number of people,' and under what conditions the protest would take place," the Eleventh Circuit has found plaintiffs failed to establish an injury in fact. *Id*. (quoting *Eland*, 471 F.3d at 1206–07).

In short, the Eleventh Circuit has made plain that facts matter in challenges to laws arguably implicating First Amendment rights, even when the injury-in-fact requirement is "loosely applied." When plaintiffs seek preliminary injunctive relief in this context, they must be armed with facts demonstrating a substantial likelihood that they face an imminent and cognizable injury. *See Eland*, 471 F.3d at 1207 ("The binding precedent in this circuit is clear that for an injury to suffice for prospective relief, it must be imminent." (citations omitted)). Failure to point to specific facts demonstrating an imminent future harm precludes preliminary injunctive relief.

This Court notes at the top that Plaintiffs make no argument demonstrating that Plaintiff Emerson has standing with respect to the pending motion. Nor have Plaintiffs LULAC or Debra Chandler submitted any evidence in support of standing with respect to the pending motion. And to the extent Ms. Scoon has submitted a declaration in support of the League's standing, her declaration says nothing about her individual role in gathering petitions and thus fails to demonstrate individual standing to the extent Ms. Scoon is also a Plaintiff to this action. Accordingly, the motion, ECF No. 92, is **DENIED** to the extent Mr. Emerson, Ms. Scoon, Ms. Chandler, and LULAC seek preliminary injunctive relief, as none of these Plaintiffs have either submitted evidence or made any argument in support of their standing for preliminary injunctive relief at this juncture. That leaves Plaintiffs Florida Decides Healthcare, Jordan Simmons, Smart & Safe, and the League of Women Voters.[2] Accordingly, this Court turns to the balance of Plaintiffs' claims at issue in the first motion for preliminary injunction, beginning with those claims for which no Plaintiff has demonstrated standing to pursue preliminary injunctive relief.

## A

First, Plaintiffs seek to preliminarily enjoin the enforcement of a new fine for providing pre-filled initiative petitions to voters. *See* ECF No. 92 at 2; *see also* §

---

[2] For ease of reference, this Court refers to both League Plaintiffs as either "the League" or "the League of Women Voters."

6

100.371(10), Florida Statutes (2025). Florida law now prohibits sponsors of initiative petitions or "a person collecting petition forms on behalf of an initiative petition" from mailing or otherwise providing petition forms that have had any information filled in prior to providing the petition form to the voter. § 100.371(10), Fla. Stat. Sponsors of initiative petitions are now liable for $50 for each petition form that violates this prohibition. *Id*.

The problem with Plaintiffs' motion is that no party has submitted evidence demonstrating they face an imminent injury or irreparable harm if enforcement of this provision is not preliminarily enjoined. Instead, the only parties who submitted any evidence pertaining to providing pre-filled petition forms to voters—Smart & Safe and Florida Decides Healthcare—do not say whether they intend to provide pre-filled petition forms in the future. For example, Smart & Safe merely demonstrates that they have, in the past, provided over 5.6 million pre-filled petitions to voters. *See* ECF No. 91-1 ¶ 8. This Court will not fill in the blanks with respect to Smart & Safe's future intentions concerning providing pre-filled petition forms to voters going forward or whether Smart & Safe is now chilled from continuing to provide such forms.

Likewise, Florida Decides Healthcare has not provided any evidence demonstrating that they, as the sponsor of their ballot initiative, nor any "person collecting petition forms on behalf of an initiative petition," has ever provided pre-

filled petition forms to voters or intends to provide pre-filled petition forms to voters. Instead, Florida Decides Healthcare has only demonstrated that a "partner organization" has a platform from which voters may request a pre-filled petition form and Florida Decides Healthcare used to link to this other entity's platform on their website. ECF No. 19-1 ¶ 16. But Florida Decides Healthcare has not demonstrated that it provided or intends to provide pre-filled petition forms to voters but is now chilled from doing due to the challenged provision. Absent any evidence that Florida Decides Healthcare is now chilled from providing pre-filled petitions, or any argument demonstrating that Florida Decides Healthcare can pursue preliminary injunctive relief on behalf of this "partner organization" via third-party standing, Florida Decides Healthcare has not demonstrated standing to challenge a prohibition that, at this juncture, does not appear to apply to any of Florida Decides Healthcare's activities. Accordingly, Plaintiffs' motion, ECF No. 92, is **DENIED** with respect to section 100.371(10)'s fines for providing pre-filled petition forms to voters. No Plaintiff has demonstrated that, absent the challenged provision, they would be providing pre-filled petitions to voters such that they must now change their conduct or face prosecution. In short, Plaintiffs have not demonstrated that they are substantially likely to suffer an imminent injury if the challenged provision is not enjoined.

Next, Plaintiffs challenge new civil and criminal prohibitions on filling in missing information on signed petitions. ECF No. 92 at 2–3; *see also* §§ 100.371(8) and 104.185(2), Fla. Stat. (2025).  Florida law now provides that a person who fills in missing information on a signed issue petition commits a third-degree felony. § 104.185(2), Fla. Stat. Likewise, if the person who fills in missing information on a signed petition is also "a person collecting petition forms on behalf of a sponsor of an initiative petition," the sponsor of the initiative petition is liable for a $5,000 fine for each such petition. § 100.371(8), Fla. Stat.

With respect to Plaintiffs' standing, the problem, again, is that no Plaintiff has provided evidence demonstrating that they ever filled in missing information on signed petitions or that they planned to fill in missing information on signed petitions. Instead, Plaintiffs' evidence demonstrates, without specificity, that some petition circulators who work for Florida Decides Healthcare generally fear accidentally running afoul of HB 1205's many new civil and criminal prohibitions, *see* ECF Nos. 14-2 and 14-3. But such generalized fears are not enough to state a cognizable, imminent injury in fact with respect to this challenged provision. As for the League of Women Voters, Ms. Scoon's declaration demonstrates that some volunteers are concerned that this prohibition would not allow them to assist vision-impaired voters and force them to violate federal disability laws by requiring that they withhold such assistance, ECF No. 93-1 ¶ 21. But the League Plaintiffs have

9

offered no other evidence or argument connecting the dots with respect to how evidence that some volunteers' concerns are sufficient to demonstrate that the League, as an organization, has suffered an injury in fact sufficient for purposes of a preliminary injunction. Nor will this Court make arguments for the League or presume facts not in evidence. Finally, Plaintiff Smart & Safe explicitly does not fill in missing information on signed petitions, ECF No. 124-2 ¶ 20, and has not challenged this prohibition in its complaint. Accordingly, Plaintiffs again fail to demonstrate an imminent, cognizable injury in fact for purposes of seeking a preliminary injunction against the civil and criminal prohibition on filling in missing information on a signed petition. Plaintiffs' motion, ECF No. 92, is **DENIED** with respect to section 100.371(8)'s fine for filling in missing information on a signed petition and section 104.185(2)'s criminal prohibition for filling in missing information on a signed petition.

Finally, Plaintiffs challenge the criminal prohibition on copying or retaining a voter's personal information as unconstitutionally vague under the Fourteenth Amendment. ECF No. 92 at 3; *see also* § 100.371(9), Fla. Stat. With respect to this criminal provision, the only Plaintiff who has submitted evidence demonstrating more than mere generalized fears concerning HB 1205 as a whole is Florida Decides Healthcare. Specifically, Florida Decides Healthcare has demonstrated that, as an accountability measure, its vendors previously scanned and retained copies of signed

initiative petitions before returning them to Supervisors of Elections. ECF No. 91-2 ¶ 21. This would allow Florida Decides Healthcare to address any discrepancies involving petitions that had been submitted, but now their vendors have ceased to scan and retain copies of such petitions for fear of committing a felony in violation of section 100.371(9). *Id*. But without retaining copies of submitted petitions, Florida Decides Healthcare "cannot catch county processing errors or protect [itself] from any future allegations that [it] mishandled a given set of petitions." *Id*.

Nonetheless, at this juncture, Plaintiffs' claims involving section 100.371(9) are pre-enforcement challenges premised on the law's alleged vagueness. This Court may only review a statute on vagueness grounds if a plaintiff has demonstrated that they have suffered either a deprivation of liberty without due process, or, in a pre-enforcement challenge like this one, if the allegedly vague law has caused a separate injury—namely, chilling the plaintiff "from engaging in constitutionally protected activity." *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1350 (11th Cir. 2011). The problem, here, is that inasmuch as this is a pre-enforcement challenge, they have not offered any argument or authority demonstrating that copying or retaining completed initiative petitions to account for processing discrepancies once the petitions are submitted is constitutionally protected activity, nor have they provided evidence demonstrating that any Plaintiff is chilled from gathering petitions because of this provision. *See Indigo Room, Inc. v. City of Ft. Myers*, 710

11

F.3d 1294, (11th Cir. 2013) (plaintiffs failed to demonstrate standing to challenge an allegedly vague ordinance in pre-enforcement challenge when chilled from engaging in certain activities that were not constitutionally protected). In contrast, in a related case involving a similar prohibition with respect to third-party voter registration organizations, the plaintiffs provided ample evidence demonstrating that the retention of certain information was critical to the organizations' get-out-the-vote mission, and thus, the challenged provision's vague language reasonably chilled their First Amendment activities in registering voters and continuing to encourage them to vote following registration. *See Fla. NAACP v. Byrd*, 680 F. Supp. 3d 1291, 1308-10 (N.D. Fla. July 3, 2023). Here, Plaintiffs' scant record and limited argument is not sufficient to demonstrate standing for purposes of pursing a preliminary injunction with respect to section 100.371(9). Their motion, ECF No. 92, is therefore **DENIED** with respect to section 100.371(9)'s criminal prohibition on copying or retaining a voter's personal information.

B

Next, this Court considers those claims for which at least one Plaintiff has demonstrated standing for purposes of a preliminary injunction, starting with Plaintiffs' challenge to the new ten-day return deadline for petitions and attendant fines for petitions that are turned in late or to the wrong county. Plaintiffs seek to preliminarily enjoin Defendants' enforcement of both the new ten-day deadline, and

12

the fines associated with late and erroneous returns, asserting these provisions unconstitutionally burden Plaintiffs' core political speech. *See* ECF No. 92 at 2; *see also* §§ 100.371(7)(a)1.–3., Fla. Stat.

With respect to these provisions, Florida Decides Healthcare has submitted evidence demonstrating that, to avoid violating these provisions when they took immediate effect, it shut down its paid petition circulator program as it could not maintain its volume of operations and comply with the ten-day deadline and avoid fines at the same time. ECF No. 91-2 ¶ 12. In addition, to the extent Florida Decides Healthcare continues to receive signed petitions, it is now forced to ship smaller batches of petitions more frequently and at greater expense to avoid fines for late returns. ECF No. 19-1 ¶ 24. To cover the costs of compliance, Florida Decides Healthcare has had to divert resources away from gathering signed petitions. *Id*. ¶ 25.

Likewise, Plaintiff Smart & Safe has also submitted evidence demonstrating that it has also been forced to divert an undisclosed number of petition circulators from the field to help process and deliver signed petitions on time to avoid fines for late deliveries and for delivering petitions to the wrong county. ECF No. 91-1 ¶¶ 16–19, 24. Now, Smart & Safe must also pay more to deliver signed petitions to county Supervisors of Elections more frequently to avoid fines for late deliveries. *Id*. ¶¶ 25–26, 28.

The direct impact these provisions have on these initiative sponsor's signature gathering constitutes a cognizable injury in fact. Simply put, the challenged provisions have caused an immediate reduction in protected speech in the form of petition gathering. Moreover, this Court is not persuaded by Defendants' argument that Plaintiffs do not face a substantial likelihood of harm given provisions of Florida law that permit the Secretary to waive imposition of fines in the event of the impossibility of performance or self-reporting of violations of section 100.371. *See* ECF No. 105 at 15. As Plaintiffs persuasively point out, the waiver of fines is permissive, not mandatory. And at this juncture, these Plaintiffs have demonstrated that the ten-day deadline and attendant fines for late deliveries and returning petitions to the wrong county have already harmed them by forcing both sponsors to reduce their petition gathering while at the same time spend more resources on expedited shipping and processing to comply with the new provisions.

The injuries caused by the new deadline and attendant fines are traceable to the Secretary, who is empowered to enforce the deadline and county return requirements by imposing fines. *See* Fla. Admin. Code. R. 1S-2.0091(2)(b). And an injunction preventing the Secretary from imposing such fines for late or erroneous returns would likely redress Plaintiffs' injuries. Accordingly, this Court finds, at this juncture, that Plaintiffs Florida Decides Healthcare and Smart & Safe have demonstrated standing for purposes of their first motion for preliminary injunction

14

with respect to the ten-day return deadline and associated fines for late return and returns to the wrong county.

Finally, Plaintiffs' standing as to the remaining criminal provision—namely, the expansion of Florida's definition of racketeering activity, section 895.02(8)(d), which now includes violations of "the Florida Election Code relating to irregularities or fraud involving issue petition activities." § 895.02(8)(d), Fla. Stat. ("Racketeering activity means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit a violation of the Florida Election relating to irregularities or fraud involving issue petition activities."). Plaintiffs Florida Decides Healthcare and Jordan Simmons challenge this provision on overbreadth grounds and Plaintiff Jordan Simmons also challenges this provision on vagueness grounds. Both Plaintiffs have submitted declarations demonstrating that they or their employees and volunteers have been chilled from continuing to gather signed petitions for fear of running afoul of this arguably vague provision and subjecting themselves to arrest and criminal prosecution as a result. *See, e.g.*, ECF No. 14-2 ¶ 6 ("I understand that HB 1205 imposes new criminal penalties and hefty fines for errors and irregularities during the collection and return of petition signatures. I am afraid to engage in circulator activities and interact with voters due to this law. I am afraid that if I make a mistake, I will be sanctioned and possibly charged with a felony."); *id*. ¶ 7 ("I want to continue working for FDH as a petition

collector because I care deeply about helping fellow Floridians get the chance to vote for a Medicaid expansion. However, because of all the scrutiny under HB 1205, and the risk of being targeted for criminal investigation . . . even for inadvertent mistakes or errors, I am planning to look for other potential jobs."); ECF No. 14-3 ¶ 9 ("I am not willing to remain at FDH unless they are able to restructure my role to avoid any direct contact with petitions whatsoever. The law is not clear what I am and am not allowed to do, so I am not willing to take the risk of handling petitions at all."); *id.* ¶ 10 ("I cannot prioritize my passion for this work over my security and livelihood, and I do not want to go to work every day scared that if I make a mistake, it might be a felony.").

This demonstrated chill on petition gathering is a cognizable injury in fact with respect to Plaintiffs' pre-enforcement vagueness and overbreadth challenges to the new racketeering provision. *See Meyer v. Grant*, 486 U.S. 414, (1988) ("[T]he circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.' "). And Plaintiffs have demonstrated that their chilled speech is traceable to a credible threat of enforcement by the Attorney General, *see* ECF No. 92-1 at 18–19, and at least the State Attorneys responsible for prosecuting crimes in Tampa—where Plaintiff Simmons works, and Manatee County—where Plaintiff Florida Decides Healthcare's volunteer "hub" has shut down. *See* ECF No. 91-2 ¶¶ 10-11. However,

Plaintiffs have not demonstrated that their petition circulators have been chilled statewide, such that those injuries could be traced to each State Attorney's enforcement authority in their respective judicial circuits.[3]

Lastly, an injunction preventing the Attorney General and the State Attorney for the Twelfth and Thirteenth Judicial Circuits from enforcing the new racketeering provision would offer at least partial redress for Plaintiff's chilled speech injury, inasmuch as they and their petition circulators would be able to continue working for Florida Decides Healthcare without the fear of arrest and prosecution for violating this provision. Accordingly, for these reasons, Plaintiffs have demonstrated standing for purposes of pursing preliminary injunctive relief against the Attorney General and the State Attorneys for the Twelfth and Thirteenth Judicial Circuit with respect to section 895.02(8)(d)'s expanded definition of "racketeering activity."

Having determined which Plaintiffs have demonstrated standing for preliminary injunctive relief, this Court now turns to the merits of those Plaintiffs' claims, starting with the First Amendment challenge to the new ten-day return deadline and associated fines for late and erroneous returns.

---

[3] For example, although Plaintiffs submitted another petition circulator's declaration identifying a chill on petition gathering, this petition circulator did not provide any information about where he works as a petition circulator, and thus, this Court is left guessing as to which State Attorney would be empowered to prosecute this circulator should he violate the allegedly vague provision. *See* ECF No. 14-2. This is insufficient to demonstrate traceability with respect to the challenged provision.

C

1

First, Plaintiffs assert the ten-day deadline and associated fines, sections 100.371(7)(a)1.–3., unconstitutionally burden their First Amendment rights to free speech. According to Plaintiffs, because these provisions impose a regime of chilling petition-signature gathering, they are subject to—and fail—exacting scrutiny. *See* ECF No. 111 at 5. But this Court is not persuaded that these post-petition-gathering processing requirements cross the line into one of the "narrow circumstances" within which this Court must apply strict scrutiny. *Biddulph v. Mortham*, 89 F.3d 1491, 1500 (11th Cir. 1996) ("We hold that a state's broad discretion in administering its initiative process is subject to strict scrutiny only in certain narrow circumstances.").

This Court recognizes that the circulation of petitions amounts to "core political speech," as it "involves both the expression of a desire for political change and a discussion of the merits of the proposed change." *Meyer*, 486 U.S. at 421–22. However, "[s]tates allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally." *Buckley v. ACLF, Inc.*, 525 U.S. 182, 191 (1999) (citing *Biddulph*, 89 F.3d 1491)). But when a restriction "significantly inhibit[s] communication with voters about proposed political change," *Buckley*, 525 U.S. at

18

192, and poses a "severe burden on speech," *id*. at 192 n.12, it must be narrowly tailored to serve a compelling state interest to avoid violating the First Amendment.

In *Meyer* and *Buckley*, the Supreme Court emphasized the burdens on the direct one-on-one communication between petition gatherers and voters. *See, e.g.*, *id*. at 199 (noting that challenged name-badge requirement compelled "personal name identification at the precise moment when the circulator's interest in anonymity is greatest"); *id*. at 194 –95 (quoting *Meyer* and noting that registration requirement for petition circulators limited "the number of voices who will convey the initiative proponents' message and, consequently, cut down the size of the audience proponents can reach"). In turn, the Eleventh Circuit has identified only a handful of circumstances where *Meyer*'s call for heightened scrutiny applies to restrictions on the initiative process—namely, (1) where a state enacts initiative regulations that are content based or have a disparate impact on certain political viewpoints; (2) where a state applies facially neutral regulations in a discriminatory manner; and (3) where a state impermissibly burdens the free exchange of ideas about the objective of an initiative proposal. *Biddulph*, 89 F.3d at 1500.

Here, Plaintiffs have not suggested that the challenged provisions are content based, have a disparate impact on certain political viewpoints, or are being applied in a discriminatory manner. Instead, Plaintiffs contend these provisions amount to impermissible burdens on the free exchange of ideas about the objectives of their

respective initiative proposals. The problem is that the record before this Court does not demonstrate that Plaintiffs' protected speech has been severely burdened because of the new deadline and fines. Instead, the record shows that these provisions simply make the process of getting their proposed initiatives on the ballot more expensive and less efficient for Plaintiffs. *See, e.g.*, ECF No. 91-1 ¶¶ 28–29 (noting "Smart & Safe must now pay approximately $3.42 more per petition (an increase of 370%) to perform expedited processing and quality control, increasing the costs budgeted prior to HB 1205 by approximately $1.4 million. . . . As a direct result of the expenses that increased in response to HB 1205, Smart & Safe will have less money to spend on communicating its message to the voters."); ECF No. 91-2 ¶¶ 18–22 (explaining how the new provisions have required Florida Decides Healthcare to "streamlin[e] (and worsen[])" its internal processes to have signed petitions returned to the appropriate Supervisors of Elections). And the Eleventh Circuit has made plain that "the Constitution does not require Florida to structure its initiative process in the most efficient, user-friendly way possible." *Biddulph*, 89 F.3d at 1500–01.

In so stating, this Court is not suggesting that Plaintiffs are not likely to succeed on their First Amendment challenges to the new deadline and associated fines simply because these provisions represent a "process" regulation. This Court rejects the argument that counsel for Defendant Byrd presented at the hearing on Plaintiffs' motion to the extent that any "process" regulation, however burdensome,

is always subject to rational basis review. Indeed, this Court can imagine a scenario where the State imposes a 24-hour return deadline coupled with a million dollar fine for late returns that would make any petition initiative campaign all but impossible to sustain, thus imposing a truly severe burden on the exchange of protected speech.[4] But that is not this case. Here, the new deadline and fines have certainly injured Plaintiffs Florida Decides Healthcare and Smart & Safe such that they have standing sufficient to present their constitutional challenge. But an injury in fact does not automatically transform the asserted burdens into a constitutional violation. Here, aside from demonstrating they have suffered an injury in fact, Plaintiffs' record only goes so far to show that the process of gathering signed petitions has become more expensive and less efficient, not that these post-petition-gathering regulations have severely burdened Plaintiffs from speaking such that the challenged regulations must survive heightened scrutiny to pass constitutional muster.

---

[4] In using this extreme hypothetical, this Court is not suggesting a "process" restriction must effectively eliminate the ability to engage in the citizen initiative process to trigger strict scrutiny under *Meyer*. This Court only means to illustrate how a "process" regulation could effectively burden protected speech. But based on this record, Plaintiffs have not demonstrated how their speech is, in fact, severely burdened by the new deadline and associated fines. Instead, Plaintiffs' evidence addresses the disruption these provisions have had on their internal processes and quality control measures that kick in after petition circulators have already engaged with voters and gathered completed petitions. To the extent Plaintiffs have shifted personnel from petition gathering to increase quality control on the back end, Plaintiffs have not demonstrated, beyond the constitutional minimum to demonstrate an injury in fact, that this shift has severely burdened their core political speech by significantly inhibiting their ability to communicate with voters.

Accordingly, this Court concludes that, based on this record—and without any argument from Plaintiffs concerning the level of scrutiny that should apply if the *Meyer-Buckley* framework is inapplicable—the challenged deadline and fine provisions are subject only to rational basis review. The question is whether the new deadline and associated fines are rationally related to a legitimate government interest. *See Alachua Cnty. Educ. Ass'n v. Carpenter*, 741 F. Supp. 3d 1202, 1231, 1246 (N.D. Fla. July 24, 2024). As discussed on the record at the hearing, the Florida Legislature explicitly stated its intent with respect to the new provisions enacted in HB 1205—including to "increase transparency and accountability for sponsors of initiative petitions." Ch. 2025-21 § 1(2), Laws of Fla. Here, notwithstanding Plaintiffs' persuasive policy arguments demonstrating that the challenged provisions arguably make petition gathering a riskier, more expensive endeavor that is also counterproductive when it comes to increasing accountability, Plaintiffs have not demonstrated that the new deadline and fines provisions are not rationally related to the legitimate government interest of making sponsors more accountable for the prompt return of completed petitions. For these reasons, Plaintiffs have not met their burden of demonstrating they are substantially likely to succeed on the merits of their First Amendment challenge to the new deadline and return provisions under

section 100.371, Florida Statutes.[5] Their motion with respect to these provisions, ECF No. 92, is **DENIED**.

2

Next, this Court considers Plaintiffs' vagueness and overbreadth challenges with respect to the expansion of Florida's definition of "racketeering activity." This Court addresses the vagueness claim first. At the hearing, Defense counsel admitted this claim was "the hardest one for us," ECF No. 132 at 79, and for good reason.

Florida law makes it a first-degree felony, punishable by up to thirty years in prison, to engage in certain conduct involving "a pattern of racketeering activity," including receiving proceeds derived directly or indirectly from such racketeering activity or being employed by or associating with any enterprise and participating in such enterprise "through a pattern of racketeering activity." *See* §§ 895.03 and 895.04, Fla. Stat. Relevant here, "racketeering activity" now includes "to commit . . . a violation of the Florida Election Code relating to irregularities or fraud involving issue petition activities." § 895.02(8)(d), Fla. Stat. The Florida Election Code is made up of Chapters 97 through 106 of the Florida Statutes, including many of the provisions at issue in section 100.371, which HB 1205 amended. With respect to

---

[5] Of course, a law subject to rational basis review does not automatically pass constitutional muster. *See Doe v. Ladapo*, 737 F. Supp. 3d 1240, 1265 (N.D. Fla. 2024) (Hinkle, J.) ("[R]ational-basis review no longer means virtually no review."). But here, just because Plaintiffs have identified ways the challenged provisions may cause outcomes that run counter to the stated intent of the Florida Legislature, this does not mean the challenged provisions are wholly irrational and unconstitutional.

23

"issue petition activities," the Florida Election Code imposes regulations on sponsors of issue petitions, who can circulate petitions on behalf of sponsors, what must be filled out on petitions, who can fill out petitions, when that information can be filled out, when completed petitions must be returned, and to whom they must be returned, just to name a few examples of requirements that may ultimately be "violated."

The question for this Court is whether Florida's expansion of its RICO statute to prohibit committing violations "of the Florida Election Code relating to irregularities or fraud involving issue petition activities" is "so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1320 (11th Cir. 2017) (Marcus, J.) (quoting *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1311 (11th Cir. 2009)). Given that the challenged provision regulates in the heartland of First Amendment freedoms—namely, core political speech involved in circulating issue petitions—"rigorous adherence" to the dual due process concerns of fair notice to the public and clear standards for law enforcement "is necessary to ensure that ambiguity does not chill protected speech." *Wollschlaeger*, 848 F.3d at 1320 (quoting *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012)).

Plaintiffs contend this definition is void for vagueness as there is no telling what violations of the Florida Election Code give rise to a first-degree felony charge or arrest—i.e., is there a difference between a "violation" and an "irregularity" and how are Plaintiffs, their employees and volunteers, and law enforcement supposed to know when "racketeering activity" has occurred with respect to "issue petition activities?" For example, if a petition circulator returns too many petitions after the ten-day deadline has expired or to the wrong Supervisor of Elections office, is that now considered "racketeering activity?" How many late petitions are too many? Who gets to decide and based on what standard?

Defendants contend the definition is clear—you just need to patch together its meaning from several state appellate court decisions that have used the term "irregularity" in some other election-related context. ECF No. 105 at 26. In so doing, Defendants apparently concede the statute is not clear. *Id*. ("After all, case law can clarify a statutory term's meaning."). Nonetheless, Defendants assert that "irregularity" when used in the challenged statute is "best understood" to mean " 'substantial [non]compliance' with provisions of the election code." *Id*. at 27 (quoting *Boardman v. Esteva*, 323 So. 2d 259, 267-68 (Fla. 1st DCA 1975)). But this proffered definition only adds another unworkable standard—when do so many technical violations constitute "substantial noncompliance" with the Florida Election Code as to tip the scale towards a RICO violation? Defense counsel could

not provide this Court with a satisfactory answer at the hearing, instead suggesting it is within law enforcement's discretion to determine when "substantial noncompliance" has occurred. ECF No. 132 at 82. But such a standardless and discretionary determination only lends itself to the mischief associated with an unconstitutionally vague statute that allows for arbitrary and discriminatory enforcement.

If the Florida Legislature intended for law enforcement to prosecute RICO violations predicated only on fraud relating to issue petitions or those violations already delineated by statute, *see* § 104.186, Fla. Stat. ("Initiative Petitions; Violations")[6], it would have said so. Instead, the Florida Legislature also included violations of the Florida Election Code "relating to irregularities . . . involving issue petition activities." What this means is anyone's guess—and it is inconsistent with the commands of the First and Fourteenth Amendments. This Court concludes that Plaintiff Simmons has demonstrated that he is substantially likely to succeed on the merits of his Fourteenth Amendment claim with respect to section 895.02(8)(d)'s expanded definition of "racketeering activity."

---

[6] Notably, the Florida Legislature enacted an entire chapter on election code violations in Chapter 104, Florida Statutes. Chapter 104 explicitly identifies an "initiative petition violation" in section 104.186—namely, compensating petition circulators based on the number of petition forms gathered. But this fails to explain what constitutes a violation relating to an "irregularity" involving issue petitions, and the Florida Legislature offers no clarification in the text of section 895.02(8)(d). Nor does Chapter 104 define "irregularity" or "a violation of the Florida Election Code relating to an irregularity."

As for Plaintiffs' overbreadth claim, Plaintiffs must show that section 895.02(8)(d) "punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep.' " *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003). "Substantial overbreadth" is not "readily reduced to an exact definition." *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). But the Supreme Court has recognized that "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Id.* So the question is not whether this Court can conceive of *any* hypothetical situation in which section 895.02(8)(d) would violate the Constitution. Instead, this Court must ask whether section 895.02(8)(d) prohibits a substantial amount of activity protected by the First Amendment relative to the amount of unprotected activity it prohibits.

The first step, then, is to figure out what the statute prohibits. *United States v. Williams*, 553 U.S. 285, 293 (2008). At this step, this Court "should, of course, construe the statute to avoid constitutional problems, if the statute is subject to such a limiting construction." *New York v. Ferber*, 458 U.S. 747, 769 n.24 (1982). But this Court cannot twist itself into a pretzel to save an otherwise invalid statute. *See Boos*, *Boos v. Barry*, 485 U.S. 312, 330 (1988) ("[F]ederal courts are without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent."). Assuming the statute is not subject to a limiting

27

construction, the next question is whether the statute "criminalizes a substantial amount of protected expressive activity." *Williams*, 553 U.S. at 297. "In making that determination, a court should evaluate the ambiguous as well as the unambiguous scope of the enactment." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 n.6 (1982). If the statute is overbroad, this Court must ask whether it can sever the problematic provision from the rest of the statute. *New York v. Ferber*, 458 U.S. 747, 769 n.24 (1982).

First, as explained above, the statute is vague as it provides no fair notice of what is prohibited as a violation of the election code relating to irregularities involving issue petition activities. It is also not subject to a limiting construction. Indeed, the Defendants' proffered construction with respect to the meaning of "irregularity" is not reasonable and readily apparent from the text of the statute, and this Court cannot encroach upon the domain of the Florida Legislature to rewrite the statute for them.

However, even when considering the statute's ambiguous scope, Plaintiffs have not demonstrated that the expanded definition of "racketeering activity" prohibits a substantial amount of activity protected by the First Amendment relative to the amount of unprotected activity it prohibits. Indeed, Plaintiffs focus on the numerous technical violations that the definition arguably sweeps within reach— such as the failure to timely return completed petitions—but Plaintiffs fail to explain

how arguably criminalizing untimely returns of petitions *prohibits* protected speech. *See* ECF No. 92-1 at 28. Plaintiffs spend only a paragraph arguing how the challenged provision prohibits substantially more protected speech than unprotected speech, but fail to articulate what protected speech is, in fact, prohibited by the new definition of "racketeering activity." Moreover, the expanded definition of "racketeering activity" appears to criminalize a large amount of unprotected activity—including fraudulently signing petitions, among other delineated violations of the Florida Election Code. Given the short shrift Plaintiffs give to arguing the merits of this claim, this Court is not persuaded that Plaintiffs have met their burden to demonstrate they are substantially likely to succeed on the merits of their overbreadth claim challenging the "racketeering activity" definition.

Accordingly, for the reasons set out above, this Court concludes that only Plaintiff Simmons has demonstrated a substantial likelihood of success on the merits of his vagueness claim challenging section 895.02(8)(d)'s expanded definition of "racketeering activity."[7]

---

[7] Finally, this Court notes that Plaintiffs' motion also includes a request for preliminary injunction against enforcement of section 100.371(4)(g), Fla. Stat. (2025), ECF No. 92 at 2, but their memorandum in support of the motion and their reply do not include any argument whatsoever with respect to this provision. Nor did counsel address any argument relating to this provision at the hearing on May 22, 2025. The inclusion of this provision in the first motion for preliminary injunction appears to be a scrivener's error, given the absence of any argument in support of a preliminary injunction with respect to this provision. Defendants apparently agree with this reading of the motion and request for relief. *See* ECF No. 3 n.1. Accordingly, this Court does not address this provision in this Order.

II

Plaintiff Simmons has also satisfied the remaining requirements for preliminary relief. Mr. Simmons faces irreparable injury because the law forces him to choose between curtailing his First Amendment rights to engage in core political speech via petition circulation or risk arrest and prosecution for a felony charge that could result in up to thirty years in prison. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *accord Honeyfund.com v. Governor of Fla.*, 94 F.4th 1272, 1283 (11th Cir. 2024).

The balance of the equities and the public interest also favor preliminary relief. The irreparable injury Mr. Simmons faces is "not outweighed by any threatened harm to Florida because the government has no legitimate interest in enforcing an unconstitutional law," and "an injunction is not contrary to the public interest because it is in the public interest to protect First Amendment rights." *Honeyfund.com*, 94 F.4th at 1283 (internal quotation marks omitted). Defendant's argument that preliminary relief will hamstring the State from stopping fraud, forgery, and bad actors is unpersuasive. Even if the Attorney General and State Attorney are enjoined from enforcing the expanded RICO provision to the extent it includes violations of the Florida Election Code relating to irregularities or fraud involving issue petition activities as applied to Mr. Simmons, Florida's law

30

enforcement agencies maintain an arsenal of criminal provisions that remain enforceable against bad actors and fraudsters. *See, e.g.*, §§ 104.185, 104.186, 104.187, Fla. Stat. Accordingly, Plaintiff Simmons has carried his burden on all four prerequisites to preliminary relief.

III

This Court next considers whether Plaintiffs must secure a bond in furtherance of the preliminary injunction. Rule 65(c) provides that a "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). But "it is well-established that 'the amount of security required by the rule is a matter within the discretion of the trial court . . . [, and] the court may elect to require no security at all.'" *BellSouth Telecomms. v. MCImetro Access Transmission Servs.*, 425 F.3d 964, 971 (11th Cir. 2005) (alteration in original) (quoting *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. Unit B 1981)). Moreover, "[w]aiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right." *Complete Angler, LLC v. City of Clearwater*, 607 F. Supp. 2d 1326, 1335 (M.D. Fla. 2009). Here, considering that the challenged law's unlawful impact on Plaintiff's First Amendment rights weighs against requiring a bond, this Court waives the bond requirement.

IV

Having determined a preliminary injunction is warranted, this Court addresses whether it will stay that injunction pending appeal. Stays pending appeal are governed by a four-part test: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Venus Lines Agency v. CVG Industria Venezolana De Aluminio, C.A.*, 210 F.3d 1309, 1313 (11th Cir. 2000) (applying the same test). Because this test is so similar to the four-part test for establishing entitlement to preliminary injunctive relief, courts rarely stay a preliminary injunction pending appeal. So too here. Because no exceptional circumstances justify staying this Order pending appeal, this Court shall not do so. *Contrast with Brenner v. Scott*, 999 F. Supp. 2d 1278, 1292 (issuing a rare stay of a preliminary injunction given the public interest in stable marriage laws across the country). Defendants have every right to appeal, and this Court sees no reason to delay Defendants in seeking an appeal by requiring them to move to stay under Rule 62.

\* \* \*

Accordingly,

**IT IS ORDERED**:

1. Plaintiffs' motion for preliminary injunction, ECF No. 92, is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** with respect to Plaintiff Jordan Simmons's vagueness claim challenging the expanded definition of "racketeering activity." The balance of the motion is **DENIED**.

2. Defendant Uthmeier and Defendant Susan Lopez must take no steps to enforce section 895.02(8)(d), Florida Statutes (2025), against Jordan Simmons until otherwise ordered. This Order binds these Defendants and their officers, agents, servants, employees, attorneys, and successors in and office—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

   **SO ORDERED on June 4, 2025.**

   **s/Mark E. Walker**
   **Chief United States District Judge**
