**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

LEAGUE OF WOMEN VOTERS OF
FLORDIA, *et al.*,

        *Intervenor-Plaintiffs*,

  v.

CORD BYRD, *et al.*,

        *Defendants*.

No.: 4:25-cv-00211-MW-MAF

# INTERVENOR-PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION

## **TABLE OF CONTENTS**

Page

INTRODUCTION ...............................................................................................1

ARGUMENT .....................................................................................................1

    I.    The League Plaintiffs Have Standing to Challenge HB 1205. .............1

        A.    Individual Plaintiffs Have Alleged Concrete Harms and Have Standing. ...............................................................................3

        B.    Plaintiffs the League and LULAC Have Associational Standing. ...............................................................................5

        C.    Plaintiffs the League and LULAC Have Organizational Standing. ...............................................................................9

    II.    Plaintiffs Are Substantially Likely to Succeed on the Merits.............10

CONCLUSION ...............................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*,
  103 F.4th 765 (11th Cir. 2024) ................................................................. 2, 7

*Am. Ass'n of People with Disabilities v. Herrera*,
  690 F. Supp. 2d 1183 (D.N.M. 2010) ........................................................... 15

*Am. Const. L. Found., Inc. v. Meyer*,
  120 F.3d 1092 (10th Cir. 1997) ................................................................ 12, 13

*Brown v. Louisiana*,
  383 U.S. 131 (1966) ........................................................................................ 12

*Buckley v. ACLF*,
  525 U.S. 182 (1999) ................................................................................ 12, 13

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ............................................................................................ 12

*Citizens for Police Accountability Political Comm. v. Browning*,
  572 F.3d 1213 (11th Cir. 2009) ...................................................................... 14

*Doe v. Stincer*,
  175 F.3d 879 (11th Cir. 1999) .................................................................... 7, 10

*Dream Defs. v. Governor of the State of Fla.*,
  57 F.4th 879 (11th Cir. 2023) .......................................................................... 9

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ........................................................................................ 10

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
  901 F.3d 1235 (11th Cir. 2018) ...................................................................... 12

*Garcia v. Stillman*,
  661 F. Supp. 3d 1168 (S.D. Fla. 2023) ............................................................. 9

*In re Georgia SB 202*,
  622 F. Supp. 3d 1312 (N.D. Ga. 2022) ............................................................ 12

*Harrell v. The Florida Bar*,
  608 F.3d 1241 (11th Cir. 2010) ...................................................................3

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ...................................................................................10

*Henry v. Att'y Gen., Ala.*,
  45 F.4th 1272 (11th Cir. 2022) ....................................................................5

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ..............................................................................9, 10

*Jacobson v. Fla. Sec'y of State*,
  974 F.3d 1236 (11th Cir. 2020) ..............................................................7, 11

*League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*,
  716 F. Supp. 3d 1236 (N.D. Fla. 2024) .....................................................14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ....................................................................................2

*New Ga. Project v. Raffensperger*,
  2021 WL 12300689 (N.D. Ga. 2021) ........................................................14

*Pittman v. Cole*,
  267 F.3d 1269 (11th Cir. 2001) ...................................................................3

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984) ..................................................................................14

*Spence v. Washington*,
  418 U.S. 405 (1974) ..................................................................................12

*Tenn. State Conf. of NAACP v. Hargett*,
  420 F. Supp. 3d 683 (M.D. Tenn. 2019) ...................................................14

*Texas v. Johnson*,
  491 U.S. 397 (1989) ..................................................................................12

**Other Authorities**

U.S. Const. amend. I ....................................................................... 3, 4, 5, 12

iii

# INTRODUCTION

Defendants' Opposition does little more than present a parade of hypothetical horribles unsupported by any provable facts. Rather than contest the *impact* of HB 1205, Defendants assert that so drastic a measure is needed to save Floridians from themselves and their neighbors. Yet the historical record does not support Defendants' allegations of widespread fraud, and the relatively minor issues Defendants do identify cannot, as a constitutional matter, remotely justify the heavy fines, criminal penalties, and other restrictions on speech prescribed by HB 1205.

# ARGUMENT

### I.    The League Plaintiffs Have Standing to Challenge HB 1205.

As Defendants' own cited case makes clear, "the Constitution doesn't require chapter and verse; as relevant here, [Article III] requires a plaintiff to credibly allege 'at least some facts' that demonstrate she is 'able and ready'" to do what a challenged provision precludes. *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 774 n.3 (11th Cir. 2024) (Opp. 11). And this requirement is "most loosely applied" where, as here "First Amendment rights are involved, because of the fear that free speech will be chilled even before the law, regulation, or policy is enforced." *See also Pittman v. Cole*, 267 F.3d 1269, 1283 (11th Cir. 2001) (citation omitted). As described below, the declarations submitted by Plaintiffs in connection with their Motion easily clear that bar.

1

Defendants dismiss Plaintiffs' fear of exposure and intrusion into their private lives, arguing that it is too vague and speculative to demonstrate injury-in-fact (Opp. 11). But that argument falls apart upon even a cursory reading of the declarations submitted by each of the four League Plaintiffs. Plaintiffs have clearly alleged numerous specific First Amendment harms. *See Harrell v. The Florida Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010) ("[I]t is well-established that an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences," and in such an instance, "the injury is self-censorship.").

LULAC has alleged that HB 1205's restrictions will "cut off a crucial channel for [LULAC's] members to reach out to voters" and "inevitably harm LULAC by preventing it from mobilizing members or volunteers," and that those restrictions have forced LULAC to decide not to collect petition forms in the foreseeable future. Proaño Decl. ¶¶ 15, 19, 24, 27. The League has alleged that the new law will cause it to lose volunteer petition gatherers and thereby lessen the scope of its outreach efforts. LWVFL Decl. ¶¶ 39, 43–44. Ms. Chandler has "already stopped collecting petitions to ensure that [she] do[es] not accidentally violate" HB 1205's vague and overbroad provisions, and despite wishing "to continue gathering petitions in support of initiatives [she] care[s] about," she "will cease to collect petition forms." Chandler Decl. ¶¶ 13, 14, 17. For similar reasons, Ms. Scoon—who "value[s] [her]

2

privacy and safety" and "cannot accept the risks associated with making that information publicly available"—also "do[es] not plan to continue collecting petitions at all if HB 1205 goes into effect." Scoon Decl. ¶¶ 16, 23.

Moreover, even if that prior-submitted evidence were somehow insufficient to establish concrete injuries, Defendants miss the mark by assuming Plaintiffs are unable to provide further evidence in support of standing, as this Court permitted them to do. Plaintiffs are planning to submit additional declarations prior to the June 26 deadline to make even clearer the weakness of Defendants' position with respect to injury. Taking these additional declarations into account, the question of standing is not especially close.

**A. Individual Plaintiffs Have Alleged Concrete Harms and Have Standing.**

"To determine whether a plaintiff bringing a First Amendment free speech claim established an imminent injury, we simply ask whether the operation or enforcement of the government policy would cause a reasonable would-be speaker to self-censor—even where the policy falls short of a direct prohibition against the exercise of First Amendment rights." *Henry v. Att'y Gen., Ala.*, 45 F.4th 1272, 1288 (11th Cir. 2022) (cleaned up and citation omitted). Here, the harm of self-censorship is clear: Individual Plaintiffs Ms. Debra Chandler and Ms. Cecile Scoon have each expressly declared that they have previously circulated over 25 petitions in connection with past ballot initiatives, are able and wish to circulate over 25 petitions

3

in the future, and will not do so as a direct result of HB 1205's restrictions, including due to risks associated with its draconian criminal penalty regime. *See generally* Chandler Decl. ¶¶ 12, 25, 28, Dkt. No. 174–3; Scoon Decl. ¶¶ 6, 12, 13, 23, Dkt. No. 174–4. That is more than enough to meet their burden.

Defendants' claim that Plaintiffs have not "identified a circulator who won't circulate petitions but for the Circulator Affidavit provision" (Opp. 10–11) is demonstrably false. Ms. Chandler, in no uncertain terms, has averred that "[s]ince HB 1205's enactment," she has "not collected any petition forms," and that she "do[es] not plan to register as a petition circulator" "[a]s a result of [her] concerns" around "provid[ing] [her] home address on an affidavit accompanying every petition." Chandler Decl. ¶¶ 12, 25, 28. Defendants also conveniently omit Ms. Chandler's testimony that she has gathered "hundreds of petitions" over the course of her career, has already gathered "somewhere in the neighborhood of 40 to 50 petitions" in support of FDH and RTCW, and hopes to "substantially increase [her] efforts to collect petitions very soon." Chandler Decl. ¶¶ 6, 10, 14. Defendants' argument that Ms. Chandler somehow does not have standing because she did not explicitly state that she would collect "more than twenty-five signed petitions," but

4

"won't do it because of the Circulator Affidavit provision" (Opp. 11), is therefore frivolous on its face.[1]

Similarly, Ms. Susan Aertker has decided not to register as a circulator due to fears for her personal safety. Aertker Decl. ¶ 9. She is familiar with the political violence taking place across the United States, most notably the recent killing of a Minnesota Democratic lawmaker and her spouse by a man apparently motivated by political extremism. Aertker Decl. ¶ 9. Ms. Aertker worries that she too could be targeted for her political beliefs and involvement in abortion rights activism.

**B. Plaintiffs the League and LULAC Have Associational Standing.**

Defendants' claim that the League and LULAC have failed to name members and as a result cannot establish associational standing is unavailing. Plaintiffs need not name every volunteer to establish associational standing. The case law they cite themselves makes clear that Plaintiffs are not required to name these members for the purpose of establishing associational standing. *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999) (organizations not required to "name the members on whose behalf suit is brought") (Opp. 11); *Am. All. for Equal Rts.,* 103 F.4th at 773 (plaintiff's

---

[1] In a time marred by political violence, such concerns related to privacy are of course warranted. The hypocrisy of Defendants' challenge is striking; this is the very same legislature that, just this month, passed a bill that exempted legislators from public disclosure requirements concerning some of the very same information they now criticize the League Plaintiffs for seeking to safeguard. Fla. SB 268, Reg. Sess. (amending Fla. Stat. § 119.071). Worse, Defendants trumpet their callousness toward those engaged in the direct democratic process by choosing to include—in a public court filing—a permanent website link to the address of Ms. Chandler, who attested to being frightened by the potential public disclosure of her private information alongside information about political causes she supports.

5

"identification of its affected members by the pseudonyms Owner A, Owner B, and Owner C poses no bar to its standing to sue") (Opp. 11).

Nor is *Jacobson v. Florida Secretary of State* (Opp. 11–12) helpful. 974 F.3d 1236 (11th Cir. 2020). To start, five of the six plaintiff organizations in that litigation "failed to even allege" that they had members *at all*. *Id.* at 1249. The sole remaining organization could not demonstrate standing for the separate reason that it set forth only conclusory allegations, *unsupported by any proof*, that voters and candidates in Florida would suffer some undescribed injury from the challenged law. Here, the League and LULAC have testified that their members regularly volunteered to circulate petitions supporting ballot initiatives in the past but are now unwilling to do so (or, in the case of noncitizen members, are *wholly precluded* from doing so) because of HB 1205. *See generally* LWVFL Decl. ¶¶ 13, 24, 27, 52–55, Dkt. No. 174-1; Proaño Decl. ¶ 16–18, 26–27, Dkt No. 174-2. That is all that is required.

The additional declarations from Plaintiffs' volunteers and members will demonstrate Plaintiffs' associational standing even more clearly. As one example, Pam Militello, a League member who has previously circulated over 25 petitions in connection with a ballot initiative, attested that she will no longer volunteer to circulate petitions or register as a circulator to collect over 25 signed petitions as a result of HB 1205's requirement that such volunteers register and sign a circulator's affidavit with each form. *See* Militello Decl. ¶ 12. She is particularly concerned that

6

under the new law, her personal information (most egregiously, her home address) will be made a matter of public record alongside information on the initiative she registered for. Ms. Militello "ha[s] [her] family's safety to think of, and it just wouldn't be worth all the associated risks" to register as a circulator under the new law. *Id.* In an era of increasing political violence, these fears are far from speculative. Her harm is therefore not only imminent, but actual: Ms. Militello ***has already been forced to opt out of the political process***.

So has another League member, Monica Elliott. Like Ms. Militello, Ms. Elliott has circulated more than 25 ballot initiative petitions for initiatives in the past but will not register as a circulator so she can collect more than 25 signed petitions moving forward, also due to HB 1205's restrictions. Ms. Elliott similarly does not want her privacy to be "invaded"—and her safety jeopardized—by the public disclosure of her personal information alongside information on the initiative for which she submitted petitions, and "[she] do[es] not want to take on the risk of being punished for an honest mistake" under the new law's overbroad criminal penalty regime. *See* Elliott Decl. ¶ 9.

The League and LULAC members' retreat or exclusion from the arena of political advocacy as a result of HB 1205 is precisely the type of chilled speech that courts regularly recognize as constituting concrete harm. *See Garcia v. Stillman*, 661 F. Supp. 3d 1168, 1177 (S.D. Fla. 2023) (allegation that restrictions would limit

7

plaintiff's ability to advocate before the government was sufficient for standing purposes). This is more than sufficient for purposes of associational standing. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342–43 (1977); *Dream Defs. v. Governor of the State of Fla.*, 57 F.4th 879, 887 (11th Cir. 2023) (finding associational standing where members "have engaged and continue to engage in self-censorship in response to [the challenged provision]"). The harms that LULAC and League members face—self-censoring and opting out of the political process— are detailed in their declarations. Proaño Decl. ¶¶ 15, 19, 24–26, 27; LWVFL Decl. ¶¶ 39, 43–44; Chandler Decl. ¶¶ 12, 25, 28, Dkt. No. 174–3; Scoon Decl. ¶¶ 6, 12, 13, 23.

Additionally, Defendants' suggestion that Plaintiffs cannot establish associational standing because their volunteers purportedly "aren't members" of the League or LULAC is unconvincing. Opp. 11. Indeed, the declarations from Individual Plaintiffs and Ms. Militello and Ms. Elliott demonstrate that LWVFL volunteers are also members—this, in and of itself, undermined Defendants' claim. And the declarations submitted by LWVFL and LULAC show that both organizations rely on members who serve as volunteer circulators but have now chosen not to because of HB 1205. *See, e.g.*, LWVFL Decl. ¶¶ 14, 32 45, 51; Proaño Decl. ¶¶ 8, 17, 18.

Finally, Defendants' charge that the organizations have no "indicia of membership" is simply incorrect. Opp. 11. The declarations show that members participate in meaningful ways in mission-driven efforts related to petition collection—thereby clearly demonstrating the "indicia of membership" recognized by the Eleventh Circuit. *See Stincer*, 175 F.3d at 885 (quoting *Hunt*, 432 U.S. at 344 (1977)). The League regularly holds educational trainings for its members and engages with them substantively at statewide conventions, including by involving them in the process of approving by-laws and electing new officers. *See* LWVFL Decl. ¶¶ 5, 15, 46. Similarly, LULAC operates entirely through volunteers and has developed trainings and new membership cards for its members. Proaño Decl. ¶¶ 5–6, 12, 26.

### C. Plaintiffs the League and LULAC Have Organizational Standing.

Defendants make no effort to contest Plaintiffs' showing of organizational standing, and for good reason: they cannot. The declarations submitted thus far make clear that HB 1205 has impacted the League and LULAC's "core business activities." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024); *See, e.g.*, LWVFL Decl. ¶¶ 21, 45–46 (under HB 1205, the League will be forced to immediately stop ongoing petition work on behalf of the Medicaid and Clean Water initiatives and divert volunteer time—the League's most important resource—and resources from other organizational priorities to give members guidance on HB 1205); Proaño Decl.

9

¶ 17–18, 27 (HB 1205 has significantly limited the volunteer base LULAC can draw on for petition gathering and forced it to forego petition gathering altogether).

As Defendants' own cited case law makes clear, no more is needed to demonstrate organizational standing. *See Jacobson*, 974 F.3d at 1250 ("[O]ur precedent holds that an organization has standing to sue on its own behalf if the defendant's illegal acts . . . [force] the organization to divert resources to counteract those illegal acts.") (citing cases) (cleaned up) (Opp. 11–12).

## II.  Plaintiffs Are Substantially Likely to Succeed on the Merits.

The League Plaintiffs incorporate by reference the legal arguments raised in the papers submitted by other Plaintiffs and briefly address the following merits points.

First, throughout their Opposition, Defendants argue that it "isn't speech" that is regulated by HB 1205 because anyone—including noncitizens and nonresidents—"can still speak about initiative petitions in Florida." (Opp. 14–15). Defendants contend that what is prohibited is not speech, but rather the act of "taking and then delivering signed petitions," which they characterize as "mere conduct." (Opp. 14–15, 19, 21–23.) But the Supreme Court in *Buckley* rejected that view, noting that "[p]etition circulation is the less fleeting encounter" as compared to the handbilling in *McIntyre*, "for the circulator must endeavor to persuade electors to sign the petition" and "that endeavor, we observed in *Meyer,* 'of necessity involves both

the expression of a desire for political change and a discussion of the merits of the proposed change.'" *Buckley v. ACLF*, 525 U.S. 182, 199 (1999) (comparing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)). And to the extent there remains any doubt about whether conduct can qualify as speech, both the Supreme Court and the Eleventh Circuit have made clear that it can. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989) (protection of free speech "does not end at written word"); *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1241 (11th Cir. 2018) (charity's distribution of food in public park was expressive conduct).

Although Defendants make much of the Supreme Court's cursory discussion of Colorado's affidavit requirement in *Buckley*, they neglect to mention its non-binding nature and in fact draw precisely the wrong conclusion from that case, which invalidated Colorado's requirement that petition circulators wear identification badges on the grounds that it would lead to "recrimination and retaliation" and discourage[] participation in the petition circulation process by forcing name identification without sufficient cause." *Id*. at 200. So too here, where multiple declarants have raised concerns about the risk of harassment stemming from being publicly linked to a specific initiative or political viewpoint, stating that it would prevent them from collecting petitions altogether. *See* Militello Decl. ¶¶ 12–14, 20; Aertker Decl. ¶ 9; Elliott Decl. ¶ 9; Scoon Decl. ¶¶ 14–16; Chandler Decl. ¶¶ 25–

11

28. That this concern was not present in *Buckley* is clear based on the Circuit court's opinion, "[t]here is little, if anything, in the record to support plaintiffs' claim that the affidavit requirement significantly burdens political expression by decreasing the pool of available circulators." *Am. Const. L. Found., Inc. v. Meyer*, 120 F.3d 1092, 1099 (10th Cir. 1997).

Moreover, the Affidavit Requirement, as written, requires petition circulators to fill out their name and address on each petition prior to *collecting* those petitions. In effect, the Affidavit Requirement functions much like the Badge Requirement in *Buckley* that was struck down by the Court precisely because if "force[s] circulators to reveal their identities at the same time they deliver their political message." *Buckley*, 525 U.S. 198–99. The Court should therefore reject Defendants' assertion that *Buckley* undermines Plaintiffs' anonymity argument. (Opp. 22).

Third, Defendants' contention that none of the Plaintiffs "have a constitutional right to associate with whomever they want" is unsupported by the law they cite. *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) does not stand for that point—to the contrary, the Supreme Court in that case recognized two distinct types of constitutional protection for association. And *Citizens for Police Accountability Political Committee v. Browning*, 572 F.3d 1213 (11th Cir. 2009), had nothing to do with the right to associate— that case involved a challenge to a Florida statute that prohibits soliciting voters within 100 feet of polling places.

12

Fourth, Defendants say that constitutional harms may not be "stacked," and that the Court must analyze the challenges to each provision separately. (Opp. 31–32). But Plaintiffs have not suggested that the Court simply count up constitutional harms and rule on that basis alone. Although the Court can and should continue to analyze each provision separately, it may also consider the cumulative effects of HB 1205 on Plaintiffs. Certainly, in other contexts, courts have analyzed the cumulative impact of an omnibus law on the plaintiffs, and nothing prevents the Court from so doing here. *See Tenn. State Conf. of NAACP v. Hargett*, 420 F. Supp. 3d 683, 710 (M.D. Tenn. 2019) (analyzing cumulative burdens of law restricting voter registration drives); *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 716 F. Supp. 3d 1236, 1238 n.2 (N.D. Fla. 2024) (considering in tandem impact of multiple provisions governing drop-box use); *New Ga. Project v. Raffensperger*, 2021 WL 12300689, at *8 (N.D. Ga. 2021) (in right-to-vote context, rejecting motion to dismiss claim that multiple provisions of SB 202 "inflict[] severe burdens on Georgia's voters through each individual restriction and the cumulative effect of the measures"); *Am. Ass'n of People with Disabilities v. Herrera*, 690 F. Supp. 2d 1183, 1219 (D.N.M. 2010) (rejecting motion to dismiss claim that four different provisions of new voter registration law, "in the aggregate," harmed plaintiffs' right to vote).

## **CONCLUSION**

For these reasons, this Court should enjoin enforcement of the Challenged Provisions in the League Plaintiffs' Preliminary Injunction Motion.

Dated: June 24, 2025

Respectfully submitted,

*s/ Pooja Chaudhuri*
POOJA CHAUDHURI**
pooja@statedemocracydefenders.org
SPENCER KLEIN**
spencer@statedemocracydefenders.org
SOFIA FERNANDEZ GOLD**
sofia@statedemocracydefenders.org
NORMAN EISEN**
norman@statedemocracydefenders.org
TIANNA MAYS*
tianna@statedemocracydefenders.org
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE, Suite 15180
Washington, DC 20003
Telephone: (202) 594-9958

GEORGE E. MASTORIS*
gmastoris@winston.com
MATTHEW OLSEN*
molsen@winston.com
MICHELLE TUMA*
mtuma@winston.com
TYLER DATO*
tdato@winston.com
SAMANTHA OSAKI*
sosaki@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166

Telephone: (202) 294-6700

GERALD E. GREENBERG
Florida Bar No. 440094
ggreenberg@gsgpa.com
SHANE GRANNUM
Florida Bar No. 1055050
sgrannum@gsgpa.com
GELBER SCHACHTER & GREENBERG,
P.A. One Southeast Third Avenue,
Suite 2600 Miami, FL 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

*Pro hac vice* applications forthcoming
** *Pro hac vice granted*
*Counsel for LWVFL Intervenor-Plaintiffs*

15

## LOCAL RULE 7.1(F) CERTIFICATION

The undersigned certifies that this memorandum complies with word limits set forth in N.D. Fla. Loc. R. 7.1(F), and contains 3198 words which includes the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

s/ Pooja Chaudhuri
POOJA CHAUDHURI**
pooja@statedemocracydefenders.org

*** Pro hac vice granted*
*Counsel for All Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 24, 2025, I electronically filed the foregoing through the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Pooja Chaudhuri
POOJA CHAUDHURI**
pooja@statedemocracydefenders.org

*** Pro hac vice granted*
*Counsel for All Plaintiffs*
