# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS OF
FLORDIA, *et al.*,

> *Intervenor-Plaintiffs*,

v.

CORD BYRD, *et al.*,

> *Defendants*.

No.: 4:25-cv-00211-MW-MAF

## NOTICE OF CROSS-APPEAL BY LEAGUE OF WOMEN VOTERS OF FLORIDA, LEAGUE OF WOMEN VOTERS OF FLORIDA EDUCATION FUND, INC., LEAGUE OF UNITED LATIN AMERICAN CITIZENS, CECILE SCOON AND DEBRA CHANDLER

Pursuant to 28 U.S.C. § 1291 and Rules 3 and 4 of the Federal Rules of Appellate Procedure, Plaintiffs League of Women Voters of Florida and League of Women Voters of Florida Education Fund, Inc. (together, "LWVFL"), League of United Latin American Citizens, and two members (as well as the former Co-Presidents) of LWVFL, Cecile Scoon and Debra Chandler (collectively "League Plaintiffs") hereby give notice of their cross-appeal to the United States Court of Appeals for the Eleventh Circuit from the order entered by the district court on July 8, 2025, denying in part Plaintiffs' second motion for preliminary injunction. See Order (ECF No. 283) (attached as Ex. 1). Plaintiffs appeal the judgments in favor

of Defendant Cord Byrd, Defendant James Uthmeier, Defendants the Supervisors

of Elections, and Defendants the State Attorneys.

Dated: August 1, 2025          Respectfully submitted,

*s/ Pooja Chaudhuri*
POOJA CHAUDHURI**
pooja@statedemocracydefenders.org
SPENCER KLEIN**
spencer@statedemocracydefenders.org
SOFIA FERNANDEZ GOLD**
sofia@statedemocracydefenders.org
NORMAN EISEN**
norman@statedemocracydefenders.org
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE, Suite 15180
Washington, DC 20003
Telephone: (202) 594-9958

GERALD E. GREENBERG
Florida Bar No. 440094
ggreenberg@gsgpa.com
SHANE GRANNUM
Florida Bar No. 1055050
sgrannum@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, FL 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

GEORGE E. MASTORIS*
gmastoris@winston.com
MATTHEW OLSEN*
molsen@winston.com
MICHELLE TUMA*
mtuma@winston.com
TYLER DATO*

tdato@winston.com
SAMANTHA OSAKI*
sosaki@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (202) 294-6700

* *Pro hac vice* applications forthcoming
** *Pro hac vice granted*
*Counsel for League Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on August 1, 2025, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which transmits a notice of electronic filing to all counsel of record.

<u>/s/ Spencer Klein</u>
Spencer Klein**
Democracy Defenders Fund
*Counsel for League Plaintiffs*

**Pro Hac Vice Granted

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**FLORIDA DECIDES HEALTHCARE,
INC., et al.,**

*Plaintiffs/Intervenor-Plaintiffs,*

v.                                          Case No.: 4:25cv211-MW/MAF

**CORD BYRD, et al.,**

*Defendants/Intervenor-Defendant.*

_____/

## ORDER ON MOTIONS FOR PRELIMINARY INJUNCTION[1]

This case involves a challenge to several recently enacted amendments to Florida's laws governing citizen ballot initiatives. Plaintiffs include several sponsors[2] and supporters[3] of citizen initiatives who work for active petition-gathering campaigns seeking to place proposed constitutional amendments on the ballot for next year's general election in Florida. This Court previously ruled on an

---

[1] This Court conducted a hearing on an expedited basis on June 30, 2025. The challenged provisions went into effect on July 1, 2025. Accordingly, recognizing that time is of the essence, this Court is issuing a truncated Order on the pending motions.

[2] Namely, Smart & Safe Florida (Smart & Safe), Florida Decides Healthcare, Inc. (FDH), and FloridaRighttoCleanWater.org a/ka/ Florida Right to Clean Water.

[3] Including the League of Women Voters of Florida and the League of Women Voters of Florida Education Fund, Inc., (together, referred to as the League of Women Voters), the League of United Latin American Citizens (LULAC), Cecile Scoon, and Debra Chandler—collectively referred to as the League Plaintiffs, along with Melissa Martin, Poder Latinx, Yivian Lopez Garcia, and Humberto Orjuela Prieto.

earlier round of motions for preliminary injunction that targeted provisions that went into effect immediately in May 2025. ECF No. 189. Now Plaintiffs move to preliminarily enjoin Defendants' enforcement of additional provisions that take effect on July 1, 2025—namely, new eligibility requirements for petition circulators, including a state residency and citizenship requirement, a registration requirement for unpaid petition circulators who gather more than 25 signed petitions, affidavit and disclosure requirements for petition circulators, and a three-month moratorium on signature verification. ECF Nos. 165, 169, 173, 175.[4]

For the reasons set out below, this Court grants their motions for preliminary injunction in part and denies the motions in part.

I

Under Rule 65 of the Federal Rules of Civil Procedure, a district court may grant a preliminary injunction "only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*,

---

[4] Plaintiffs Poder Latinx, Humberto Orjuela Prieto, and Yivian Lopez Garcia filed a notice of joinder with respect to the League Plaintiffs' and the Right to Clean Water's motions for preliminary injunction, along with additional evidence to support their standing for preliminary injunctive relief. ECF No. 214.

234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam). The movant must

clearly carry the burden of persuasion as to these four prerequisites. *United States v.*

*Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983).

This Court first begins with whether Plaintiffs have shown a substantial

likelihood of success on the merits because, typically, if a plaintiff cannot "establish

a likelihood of success on the merits," this Court "need not consider the remaining

conditions prerequisite to injunctive relief." *Johnson & Johnson Vision Care, Inc. v.*

*1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). And because standing is

always "an indispensable part of the plaintiff's case," this Court begins its merits

analysis with standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). [5]

## A

First, this Court addresses those claims for which no Plaintiffs have

demonstrated standing for purposes of a preliminary injunction.

To start, Plaintiff FDH asks this Court to preliminarily enjoin a one-time 90-

day pause on signature verification by the Supervisors of Elections as violative of

its First Amendment rights to free speech and association. *See* ECF No. 169-1 at 26.

FDH does not contend that this moratorium is chilling FDH's speech or directly

---

[5] As noted on the record at the hearing, although Defendants only challenge some of Plaintiffs' standing to seek preliminary injunctive relief as to a subset of their claims, this Court has an independent obligation to determine whether Plaintiffs have standing for each of their claims at this juncture.

3

preventing FDH from fundraising in support of its initiative, hiring petition circulators, or using volunteers to continue to gather signed petitions for the duration of the moratorium. Nor does FDH contend the moratorium has a coercive or determinative effect on the actions of third parties. *See Bennett v. Spear*, 520 U.S. 154, 169 (1997).

Instead, FDH asserts this pause in signature verification injures FDH by delaying updated verified petition counts. According to FDH, this delay in updated verified petition counts, in turn, will hamstring FDH's ability to generate enthusiasm and support, persuade donors to commit funds to FDH's cause, and ultimately, succeed in placing its initiative on the ballot next year due to the anticipated impact that this delay will have on the expectations and reactions of third parties not before this Court. *See id*. at 11. But this asserted injury is largely conjectural and flows not directly from the moratorium itself, but from its anticipated downstream effects, which almost entirely depend on the proclivities and independent actions of third parties. Simply put, FDH fails to carry its burden of persuasion that it has suffered a concrete and particularized speech or associational injury that is traceable to the Secretary and the Supervisors of Elections and redressable by an injunction prohibiting their enforcement of the moratorium. FDH's motion, ECF No. 169, is **DENIED in part** with respect to its request to enjoin the moratorium based on

FDH's failure to demonstrate a substantial likelihood of success of having standing to challenge this provision.

Next, this Court considers Plaintiffs' challenge to the affidavit requirement for petition circulators. Plaintiffs, including the League Plaintiffs, Florida Right to Clean Water, and Melissa Martin, challenge a new affidavit requirement for unpaid petition circulators, which requires such petition circulators to include their names and permanent addresses on initiative petitions and to affirm that the petition was completed and signed by the voter in their presence, that they have read the Petition Circulator's Affidavit, that the facts stated in it are true, and that, if they were paid to circulate the petition, the payment was not on a per signature basis. *See* § 100.371(3)(d), Fla. Stat. (2025); *see also* ECF No. 173 at 3; ECF No. 175 at 4. Plaintiffs contend that they, their members, and volunteers that would otherwise gather petitions on their behalf are now reasonably chilled from doing so because the affidavit requirement forces petition circulators to identify themselves and their support of the ballot initiative for which they are gathering petitions, but they do not want to disclose their personal information for fear of potential harassment by members of the public. Here, again, Plaintiffs' asserted injury—chilled speech and the impact this has on the pertinent citizen initiative campaigns and the organizations that desire to support such initiatives—is tied to the possible downstream effects of the challenged provision—i.e., disclosure of petition circulators' identities in

5

connection with a particular ballot initiative and the risk of harassment from either the government or members of the public as a result.

For this chill to amount to a cognizable injury in fact, the fear of harassment must be an objectively reasonable one.[6] *See Wilson v. St. Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 1998) ("A party's subjective fear that she may be prosecuted for engaging in expressive activity will not be held to constitute an injury for standing purposes unless that fear is objectively reasonable."). But here, to support their contention that the asserted subjective fears of harassment constitute an injury for standing purposes, Plaintiffs only point to either generalized fears of potential harassment from unidentified members of the public or instances of harassment and political violence that are wholly disconnected from their connection to the protected expression at issue in this case. *See, e.g.*, ECF No. 260-3 ¶¶ 7, 9 (declaration of Susan Aertker attesting that she was eager to gather signatures in support of the Medicaid initiative, but now she will not do so, in part due to the affidavit requirement and her fears that "someone like [the] shooter" in a recent shooting in Minnesota could target her for her support of a political cause, based on her understanding that the shooter in Minnesota "had a list of abortion rights advocates on his target list"); ECF No.

---

[6] While Plaintiffs' counsel argued at the hearing that the reasonable fear requirement for purposes of determining whether a party has standing based on a chill injury only applies in cases involving government enforcement and not disclosure of information to the public, Plaintiffs' counsel also conceded that there is "some rationality limit" when considering asserted fears based on harassment from the public.

174-2 ¶¶ 21–23 (declaration of LULAC's CEO attesting that affidavit requirement harms LULAC's citizen members because it puts these members "in a bind" if they want to engage in petition circulation but also live in a "mixed-status household" with undocumented family members, as they are now fearful that providing their information to the State "will invite harassment from state and federal authorities who will use this information to identify, arrest, and deport their undocumented family members."). But such evidence of subjective fears, without more, is insufficient to demonstrate a concrete and particularized injury in fact with respect to Plaintiffs' challenges to the affidavit requirement.[7] Accordingly, the Clean Water Plaintiffs' motion, ECF No. 173, and the League Plaintiffs' motion, ECF No. 175, are both **DENIED in part** with respect to their requests to enjoin the affidavit requirement based on these Plaintiffs' failure to demonstrate a substantial likelihood of success of demonstrating standing to challenge this provision.

---

[7] Plaintiffs' evidence in support of standing for this claim also naturally overlaps with supporting their arguments as to the merits of their challenge to the affidavit requirement, which is focused on petition circulators' interest in anonymity during and after engaging in petition circulation. But even if Plaintiffs had demonstrated standing to reach the merits of this claim, this evidence falls short of demonstrating that Plaintiffs are substantially likely to succeed on their claim that the affidavit requirement, in general, violates the First Amendment. *See John Doe No. 1. v. Reed*, 561 U.S. 186, 200–01 (2010) (differentiating between as-applied challenge to disclosure requirement involving "particularly controversial petitions" as opposed to challenge to disclosure requirement in general).

7

B

1

Next, this Court considers those claims for which at least one Plaintiff has demonstrated standing for purposes of a preliminary injunction, starting with Plaintiffs' challenge to the new eligibility requirements for all petition circulators—paid and unpaid. Plaintiffs seek to preliminarily enjoin Defendants' enforcement of the new Florida residency and U.S. citizenship requirements for petition circulators, asserting these requirements fail exacting scrutiny and violate the First Amendment.

Start with the residency requirement. Plaintiff Smart & Safe, the sponsor of a recreational marijuana ballot initiative actively engaging in petition circulation to try to get on the ballot in 2026, has submitted ample, unrebutted evidence demonstrating how the residency requirement injures it by prohibiting Smart & Safe from continuing to employ a substantial percentage of Smart & Safe's workforce of paid petition circulators. *See, e.g.*, ECF No. 166-5 ¶ 12 (declaration of Smart & Safe's paid petition circulator campaign manager attesting that Smart & Safe has told about 36% of its paid workforce not to collect petitions anymore for fear of incurring a $50,000 fine per non-resident circulator collecting petitions); *id*. ¶ 16 (noting that Smart & Safe is now collecting about a one-third of the 78,000 petition signatures per week that it collected prior to the enactment of challenged provisions). Likewise, Plaintiff Melissa Martin, herself a non-resident, is now prohibited from collecting

8

signed petitions in support of the clean water initiative for which she volunteers as campaign coordinator. *See* ECF No. 171-1 ¶¶ 2, 50. The same is true for Plaintiff Jordan Simmons, a Missouri resident who was hired to serve as FDH's Project Director in Tampa and whose duties include canvassing for signed petitions. ECF No. 14-3 ¶¶ 2, 5–6.

Plaintiffs have also demonstrated similar injuries with respect to the citizenship requirement. Individual Plaintiffs Yivian Lopez Garcia and Humberto Orjuela Prieto are both non-citizen lawful permanent residents who live in Florida, have previously worked as petition circulators or canvassers and would be working as paid petition circulators in support of the Medicaid ballot initiative now if not for the citizenship requirement. *See* ECF No. 214-1 ¶¶ 2–3, 5, 7–9, 11, 13–14; ECF No. 214-2 ¶¶ 3–4, 6, 8, 11–15.

The organizational Plaintiffs have also demonstrated that their missions are thwarted and their members are prohibited from petition circulation as a result of the residency and citizenship requirements. For example, Plaintiff Right to Clean Water has submitted unrebutted declarations of non-resident and non-citizen volunteers who have previously collected signed petitions for the clean water initiative and would continue to do so for the remainder of this election cycle but for the residency and citizenship requirements. *See* ECF No. 171-1 ¶¶ 2, 50; ECF No. 268-3 ¶¶ 2–3,

5.[8] The same is true with respect to Plaintiff FDH, who has submitted the declaration of Plaintiff Simmons, its Project Director in Tampa, a non-resident who can no longer engage in petition circulation as part of his job duties. ECF No. 14-3 ¶¶ 2, 5–6. LULAC has also submitted evidence demonstrating that it has a significant membership and volunteer base of non-citizens, including lawful permanent residents and individuals who are on work or student visas, who have previously gathered signed petitions for past initiatives and who would have done so again with respect to the Medicaid initiative if not for the citizenship requirement. *See* ECF No. 174-2 ¶¶ 15–20. Cecile Scoon, former co-president of the League of Women Voters, testified at the hearing that the League has non-citizen members who had planned to gather petition signatures this summer with respect to either the clean water or Medicaid ballot initiatives, but because of the citizenship requirement, they can no longer do so. Tr. at 85–86.[9] And Plaintiff Poder Latinx has also demonstrated

---

[8] Moreover, as sponsor of the clean water initiative, Plaintiff Right to Clean Water risks a $50,000 fine for each signed petition that is submitted by a non-resident or non-citizen petition circulator. § 100.371(4)(g), Fla. Stat.

[9] Although Ms. Scoon's testimony was more specific to demonstrate an imminent injury with respect to the League's non-citizen members, she was less precise in her testimony concerning non-resident members and the likelihood that they faced an imminent injury as a result of the Florida residency requirement. Instead, Ms. Scoon testified that she's aware of some non-resident members who supported past ballot initiatives. Tr. at 89. Without going into any specifics, Ms. Scoon testified that some of these non-resident members would have planned to support ongoing initiatives if the residency requirement was not in effect. *Id.* at 90. But given the dearth of evidence demonstrating an imminent injury in fact for any non-resident League member with respect to the residency requirement and the fact that the League is not subject to any $50,000 fine because it is not a sponsor of any ballot initiative, this Court concludes that the League Plaintiffs have not demonstrated standing to pursue preliminary injunctive relief against Defendants' enforcement of

through the unrebutted declaration of its Florida State Director, Carolina Wassmer, that over 85% of its workforce is non-citizen, including canvassers who knock on doors, and that it had planned to continue collecting signatures for the Medicaid ballot initiative this year with the help of mostly non-citizen veteran canvassers. ECF No. 214-3 ¶¶ 1, 4, 10, 13–14. Now, however, due to the citizenship requirement, Poder Latinx has suspended its petitioning work.[10] *Id*. ¶ 14.

"An organization has standing to redress an injury suffered by its members without showing an injury to the association itself." *South River Watershed Alliance, Inv.v. Dekalb Cnty, Ga.*, 69 F.4th 809, 819 (11th Cir. 2023) (citation omitted). To establish associational standing, an organizational plaintiff must show that "at least one member faces a realistic danger of suffering an injury," the interests at stake are germane to the organization's purpose, and neither the claims asserted, nor relief requested requires participation of individual members in the suit. *Id*. at 819–20.

---

the residency requirement. *See, e.g., LaCroix v. Lee Cnty., Fla.*, 819 F. App'x 839, 843 (11th Cir. 2020) (holding that plaintiff failed to demonstrate standing for pre-enforcement review given absence of particular facts demonstrating likelihood of imminent future injury). Accordingly, Plaintiff League of Women Voters's motion, ECF No. 175, is **DENIED in part** with respect to the League's challenge to the residency requirement for lack of standing.

[10] Unlike some cases where an injury is self-inflicted due to some unreasonable, subjective fear, that is not the case here. The record reflects that almost all of Poder Latinx's workforce is made up of non-citizens who are now ineligible to participate in petition circulation. Poder Latinx's decision to cease petition circulation is not a self-inflicted injury under these circumstances.

Here, each of the organizational Plaintiffs challenging the citizenship and residency requirements has demonstrated that at least one member[11] faces a realistic danger of suffering an injury—i.e., each of these organizations have at least one non-citizen or non-resident member who otherwise would participate in the organization's petition circulation efforts but may no longer do so because of the citizenship or residency requirement.

Each of these organizations has also demonstrated that their interests in this litigation are germane to their organizational purposes. Right to Clean Water, FDH, and Smart & Safe are the sponsors of the clean water, Medicaid, and recreational marijuana initiatives with the goal of placing their respective initiatives on the ballot in 2026. The mission of the League of Women Voters includes educating voters on issue of public import and advocating for policies for the public good and collecting petitions in support of citizen-led initiatives is a major tool that the League uses to further its mission. ECF No. 174-1 ¶¶ 6–7. LULAC's mission is to advance the economic condition, educational attainment, political influence, housing, health and civil rights of the Hispanic population in the United States, and as part of that

---

[11] To the extent the organizational Plaintiffs do not explicitly refer to their members as such and instead refer to them as "ambassadors," "county captains," "volunteers," "paid circulators," or "board and regional coordinators," the record demonstrates that these organizations are supported by numerous individuals possessing the means to influence the priorities and activities of these organizations, including leading, coordinating, and collecting signed petitions on their behalf, much like members of a traditional association. *See Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999); *see also White's Place, Inc. v. Glover*, 222 F.3d 1327, 1330 (2000) (citing *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1252 (5th Cir. 1995)).

mission, LULAC planned to collect petitions to support the Medicaid initiative in Florida. ECF No. 174-2 ¶¶ 2, 7–9. And Poder Latinx's mission is to help ensure that Latinx communities are "decision-makers in our democracy," with a focus in Florida on "immigrant justice, climate justice, and economic justice," achieved, in part, by collecting signatures for initiative petitions. ECF No. 214-3 ¶¶ 5–7.

Finally, inasmuch as these organizational Plaintiffs are seeking only prospective relief and litigation costs, rather than damages, neither the claims asserted nor the relief requested requires the participation of individual members. *See South River Watershed Alliance, Inc.*, 69 F.4th at 820.

Accordingly, for these reasons, Plaintiffs Right to Clean Water, FDH, and Smart & Safe have demonstrated an injury in fact for associational standing to challenge the residency requirement. Likewise, Plaintiffs Right to Clean Water, League of Women Voters, LULAC, and Poder Latinx have demonstrated an injury in fact for associational standing to challenge the citizenship requirement. And, as noted above, individual Plaintiffs Melissa Martin and Jordan Simmons have demonstrated an injury in fact with respect to the residency requirement while Plaintiffs Yivian Lopez Garcia and Humberto Orjuela Prieto have demonstrated an injury in fact with respect to the citizenship requirement.

These Plaintiffs' injuries are traceable to Defendant Byrd's, Defendant Uthmeier's, the Supervisors of Elections', and the State Attorneys' enforcement

13

authority under the statute. For instance, the Secretary has authority to refer any suspected violation of the residency or citizenship requirements committed by any individual or entity to the Attorney General for further enforcement, including instituting a civil action for injunctive relief, a restraining order, or any other appropriate order. § 100.371(11), Fla. Stat. In addition, individuals who wish to collect more than 25 petitions must register with the Department of State, overseen by Defendant Byrd, and in doing so, must disclose, under penalty of perjury, whether they are citizens and Florida residents. §§ 100.371(4)(b) and (c)7.–9., Fla. Stat. Defendant Byrd, in turn, can fine sponsors for $50,000 per non-resident or non-citizen petition circulator who is gathering signatures on behalf of the sponsor. § 100.371(4)(g), Fla. Stat. The Supervisors of Elections must invalidate any signed petition submitted by a non-resident or non-citizen.[12] § 100.371(14)(h), Fla. Stat. And the State Attorneys, and the Statewide Prosecutor under the direction of the Attorney General, are empowered to enforce criminal provisions incorporating the

---

[12] Plaintiffs Poder Latinx, Yivian Lopez Garcia and Humberto Orjuela Prieto have not sued the Supervisors of Elections or sought a preliminary injunction against them. *See* ECF No. 185 at 1 (complaint suing only Secretary of State and Attorney General). That's a problem for redressability, given that an injunction that would effectively permit non-citizens to collect signed petitions, while still allowing the Supervisors to invalidate those petitions under section 100.371(14)(h) would not provide relief for these Plaintiffs' speech injuries as the petition circulation would ultimately be a meaningless exercise if the signed petitions remain subject to invalidation based on the circulator's citizenship status. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1254–55 (11th Cir. 2020); *see also Alachua Cnty. Educ. Ass'n v. Rubottom*, 2023 WL 4188197, at *4-5 (N.D. Fla. June 26, 2023) (denying preliminary injunctive relief for lack of standing where plaintiffs did not sue state actors who remained free from any injunction that could have redressed plaintiffs' injury). Accordingly, the Poder Latinx Plaintiffs' request for relief against the citizenship requirement, ECF No. 214, is due to be **DENIED** for lack of standing.

citizenship and residency requirements. *See* §§ 104.187, 104.188(2), Fla. Stat. (2025). Given this enforcement scheme, Plaintiffs' injuries are likely to be redressed by an injunction prohibiting the Secretary, the Attorney General, the Supervisors of Elections, and the State Attorneys[13] from enforcing the residency and citizenship requirements against them. For these reasons, this Court finds, with the exception of the League of Women Voters's challenge to the residency requirement and the Poder Latinx Plaintiffs' challenge to the citizenship requirement, that these Plaintiffs have demonstrated a substantial likelihood of establishing standing to challenge the residency and citizenship requirements for petition circulators.[14]

2

Next, this Court considers Plaintiffs' standing to challenge the registration requirements for volunteer petition circulators. FDH, Right to Clean Water, the League of Women Voters, and LULAC all challenge the requirement that non-paid petition circulators register with the Department of State before collecting over 25

---

[13] As explained below, Smart & Safe does not seek an injunction against the State Attorneys, and thus, the scope of relief is narrower with respect to this Plaintiff. Nonetheless, an injunction directed at the Secretary of State, Attorney General, and Supervisors of Elections is likely to provide at least partial redress for Smart & Safe's asserted speech injuries.

[14] Inasmuch as the organizations have demonstrated associational standing, this Court does not address these Plaintiffs' alternative standing arguments based on a diversion-of-resources theory. Likewise, this Court recognizes that while Plaintiffs may have established standing to challenge particular provisions, the character of their evidence in support of standing may narrow the scope of relief if this Court determines any Plaintiff is entitled to an injunction. Standing and scope of relief are related, but different, and this Court intends to frame any injunction so that it does not reach broader than necessary to afford the parties relief to which they may be entitled.

signed petitions.[15] With respect to the League of Women Voters and LULAC, these Plaintiffs root their standing argument in the asserted chill based on a generalized fear of harassment that this Court has already found to be unreasonable with respect to the affidavit requirement. *See, e.g.*, ECF No. 174-1 ¶¶ 36-39; ECF No. 174-2 ¶¶ 22-23. Accordingly, for the same reasons this Court finds these Plaintiffs failed to demonstrate standing with respect to the affidavit requirement, this Court also finds the League of Women Voters and LULAC have not demonstrated standing for purposes of seeking a preliminary injunction with respect to the registration requirement. Their motion, ECF No. 175, is **DENIED in part** for lack of standing with respect to the registration requirement.[16]

FDH and Right to Clean Water, on the other hand, have demonstrated that non-paid petition circulators who would otherwise gather over 25 petitions in

---

[15] This challenge includes the requirement to register with the Secretary of State, the requirement that petitions gathered in violation of this section can be invalidated and not counted toward the total number of verified petitions necessary to make it on the ballot in 2026, and criminal penalties for gathering petitions in violation of the registration requirement. *See, e.g.* §§ 100.371(4)(a), 100.371(14)(h), 104.188(2), Fla. Stat.

[16] Alongside the registration requirements, the League Plaintiffs and LULAC also challenge the requirement that un-registered individuals use a separate petition form when gathering fewer than 25 petitions. But these Plaintiffs have failed to demonstrate how this requirement—rather than the asserted fears concerning the loss of anonymity and general objections to registration—injures them in any way. This Court will not attempt to fill in the blanks for Plaintiffs where they have failed to develop their own arguments and evidence concerning standing. Accordingly, this Court finds the League and LULAC have not demonstrated that they are substantially likely to have standing to challenge the requirement that un-registered individuals must use a different form when collecting petition signatures. Their motion, ECF No. 175, is **DENIED in part** with respect to the request to preliminarily enjoin Defendants' enforcement of § 100.371(3)(e), Fla. Stat.

support of their initiatives are chilled from doing so due to the additional burden the registration requirement imposes before volunteers can continue gathering petitions and the potential criminal liability that could result if they violate the law's requirements. *See, e.g.*, ECF No. 168-1 ¶¶ 20-25; ECF No. 171-7 ¶¶ 14-17. This asserted injury is sufficiently concrete and particularized. Moreover, the very real threat of criminal penalties for violating the requirement to pre-register before gathering more than 25 signed petitions is objectively reasonable. On top of this, the chill flowing from the registration requirement is substantially likely to impact FDH and Right to Clean Water's ability to gather enough signed petitions to be placed on the 2026 ballot, particularly when both initiative sponsors rely so heavily on the efforts of volunteer petition circulators.

FDH and Right to Clean Water's injuries are traceable to the Secretary, who is tasked with creating the system of registration for non-paid petition circulators, *see* § 100.371(4)(c)6., Fla. Stat., and the Supervisors of Elections and the Secretary, who may not count a petition submitted by an unregistered volunteer in violation of the registration requirement towards the sponsor's verified petition count, *see* § 100.371(14)(h), Fla. Stat. FDH and Right to Clean Water have also demonstrated that their injuries are traceable to the State Attorneys, who are tasked with enforcing the criminal provisions prohibiting unregistered petition gathering in violation of the registration requirement, *see* § 104.188(2), Fla. Stat. (creating third-degree felony

17

for individuals who collect more than 25 petitions without registering as petition circulators under section 100.371(4)(a)), and the Attorney General, who has authority to institute civil enforcement proceedings with respect to suspected violations of the registration requirement, *see* § 100.371(11), Fla. Stat. In light of this enforcement scheme, FDH's and Right to Clean Water's injuries are likely to be redressed by an injunction prohibiting the Secretary, the Supervisors of Election, the State Attorneys, and the Attorney General from enforcing the registration requirements against them and their volunteer petition circulators. For these reasons, this Court finds that FDH and Right to Clean Water have demonstrated a substantial likelihood of establishing standing to challenge the registration requirements.

Having determined which Plaintiffs have demonstrated standing to seek preliminary injunctive relief, this Court now turns to the substantive merits of Plaintiffs' claims, beginning with their challenges to the residency and citizenship requirements for petition circulators.

C

1

Plaintiffs challenge the residency and citizenship requirements as violative of the First Amendment for placing an unconstitutionally severe burden on core political speech. According to Plaintiffs, the residency and citizenship requirements effectively ban all non-residents and all non-citizens, regardless of legal status, from

18

engaging in core political speech in the form of petition circulation in Florida, and the State has failed to demonstrate that such an overbroad restriction on protected speech is narrowly tailored to the State's asserted interests in combatting fraud in the initiative petition process. This Court agrees and concludes that Plaintiffs are substantially likely to succeed on the merits of their First Amendment claims challenging the residency and citizenship requirements.

As this Court recognized in its prior Order on Plaintiffs' first motion for preliminary injunction, ECF No. 189 at 18–19, the circulation of petitions amounts to "core political speech," as it "involves both the expression of a desire for political change and a discussion of the merits of the proposed change."[17] *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988). Even though "[s]tates allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process," *Buckley v. ACLF, Inc.*, 525 U.S. 182, 191 (1999) (citing *Biddulph v. Mortham*, 89 F.3d 1491, 1494, 1500–01 (11th Cir. 1996)), when a restriction "significantly inhibit[s] communication with voters about proposed political change," *Buckley*, 525

---

[17] This Court rejects Defendants' contention that the residency and citizenship requirements only regulate non-expressive conduct—collecting and delivering signed petitions—rather than speech. The Supreme Court has held, without qualification, that "[p]etition circulation . . . is core political speech," *Buckley*, 525 U.S. at 186. Petition circulation necessarily involves *collecting* a voter's signature on an issue petition and *delivering* the signed petition to the appropriate official so that it may be verified. That's the whole game—persuade as many voters as possible to sign petitions and deliver them in time to actually count toward the initiative sponsor's goal to get on the ballot. This Court rejects Defendants' invitation to separate conduct from speech when the Supreme Court has demanded no such qualification with respect to petition circulation.

U.S. at 192, and poses a "severe burden on speech," *id*. at 192 n.12, it must be narrowly tailored to serve a compelling state interest to avoid violating the First Amendment.

In *Meyer* and *Buckley*, the Supreme Court emphasized the burdens on the direct one-on-one communication between petition gatherers and voters. *See, e.g.*, *id*. at 199 (noting that challenged name-badge requirement compelled "personal name identification at the precise moment when the circulator's interest in anonymity is greatest"); *id*. at 194–95 (quoting *Meyer* and noting that registration requirement for petition circulators limited "the number of voices who will convey the initiative proponents' message and, consequently, cut down the size of the audience proponents can reach"). In turn, the Eleventh Circuit has identified a handful of circumstances where *Meyer*'s call for heightened scrutiny applies to restrictions on the initiative process—namely, (1) where a state enacts initiative regulations that are content based or have a disparate impact on certain political viewpoints; (2) where a state applies facially neutral regulations in a discriminatory manner; and (3) where a state impermissibly burdens the free exchange of ideas about the objective of an initiative proposal. *Biddulph*, 89 F.3d at 1500.

The residency and citizenship requirements challenged here directly implicate that third category of circumstances warranting heightened scrutiny. Indeed, all but one Circuit Court to have addressed analogous restrictions with respect to residency

requirements have found such a broad restriction on core political speech is subject to (and frequently fails) heightened scrutiny under *Meyer*. *See, e.g.*, *Pierce v. Jacobsen*, 44 F.4th 853, 862–63 (9th Cir. 2022) (holding that Montana failed to demonstrate residency requirement for petition circulators was narrowly tailored to prevent fraud, protect integrity of initiative process, or protect interest in self-governance); *We the People PAC v. Bellows*, 40 F.4th 1, 22–23 (1st Cir. 2022) (affirming preliminary injunction and concluding Maine failed to demonstrate residency requirement for petition circulators was narrowly tailored to protecting the integrity of elections or serving State's "grassroots interests"); *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1030 (10th Cir. 2008) (holding that Oklahoma failed to demonstrate its ban on non-resident petition circulators was narrowly tailored to protect the integrity of the initiative process); *but see Initiative & Referendum Institute v. Jaeger*, 241 F.3d 614, 617 (8th Cir. 2001) (concluding that North Dakota's residency requirement for petition circulators did not violate First Amendment). As explained below, this Court agrees with the majority of circuit courts to have addressed the issue and finds the outlier Eighth Circuit's reasoning in *Jaeger* unpersuasive.

The record in this case demonstrates what a severe burden both the residency and citizenship requirements for petition circulation place on Plaintiffs' and their members', employees', and volunteers' core political speech. As counsel for Smart

& Safe argued at the hearing, initiative sponsors are looking for "closers"—folks who can effectively speak with and persuade as many Florida voters as possible to sign their initiative petitions. To do that, they rely on effective and efficient communicators from around the country, including Florida residents who may not be citizens. *See, e.g.*, ECF No. 166-1 ¶¶ 6–9 (declaration of professional petition circulator collecting petitions for Smart & Safe describing team of 20 non-resident petition circulators in Florida with prior experience as petition circulators and high validity rate); ECF No. 166-5 ¶¶ 13–14, 16 (declaration of manager of Smart & Safe's paid petition circulator campaign describing how residency requirement prevents her from hiring most effective and experienced petition circulators, limits the pool of potential hires, and significantly reduces the number of signed petitions gathered each week); ECF No. 220 ¶¶ 5, 7–13, 15–16 (declaration of green-card holder and longtime resident of Florida who is passionate about Florida's waters, has engaged in petition circulation on behalf of Right to Clean Water's initiative, and would continue to do so if this citizenship requirement were enjoined). But now, as a result of the challenged provisions, the non-resident Plaintiffs are directly prohibited from engaging in core political speech—petition circulation—and the organizational Plaintiffs have lost entire swaths of potential employees and volunteers to this State-imposed silence during an active campaign cycle with an impending deadline to qualify for the 2026 ballot.

Given such a severe burden on the free exchange of ideas about the petition initiatives, Defendants must demonstrate that the residency and citizenship requirements are narrowly tailored to furthering a compelling government interest. *See Buckley*, 525 U.S. at 206 (Thomas, J., concurring) ("When a State's rule imposes severe burdens on speech or association, it must be narrowly tailored to serve a compelling interest . . . ."). Defendants maintain that the residency and citizenship requirements are necessary to combat fraud in the petition initiative process due to the difficulty in investigating potential fraud when petition circulators lack ties to Florida. To be sure, investigating and combatting fraud in the initiative process is certainly a compelling interest—the question is whether a complete ban on non-residents and non-citizens, even lawful permanent residents, from engaging in petition circulation is narrowly tailored to furthering this interest.

Here, the record demonstrates a dramatic mismatch between the State's interest in combatting fraud in the initiative process and limiting the pool of potential petition circulators to U.S. citizens who are Florida residents. Defendants assert these eligibility requirements are narrowly tailored because they still permit non-residents and non-citizens to speak on all manner of topics. According to Defendants, the challenged provisions only prevents non-residents and non-citizens from collecting and delivering signed petitions—in other words, this is a regulation of conduct, not speech.  As noted, *supra*, Defendants' conduct-not-speech argument

23

misses the mark and ignores Supreme Court precedent. *Buckley*, 525 U.S. at 186 ( "Petition circulation . . . is core political speech . . . ."). Moreover, the Supreme Court has rejected a similar argument in *Meyer*. 486 U.S. at 424 ("That appellees remain free to employ other means to disseminate their ideas does not take their speech through petition circulators outside the bounds of First Amendment protection . . . . That [Colorado's prohibition on paid circulators] leaves open 'more burdensome' avenues of communication, does not relieve its burden on First Amendment expression.").

Defendants' reliance on the single, outlier decision concerning residency requirements, *Jaeger*, is also misplaced. In short, the Eighth Circuit's reasoning in *Jaeger* to uphold North Dakota's residency requirement is non-binding, factually distinguishable, and unpersuasive. *See Bellows*, 40 F.4th at 18 (discussing *Jaeger* and calling decision into doubt); *compare Jaeger*, 241 F.3d at 617 (considering alternative forms of speech left available to nonresidents in upholding non-resident ban) *and Meyer*, 486 U.S. at 423 (rejecting argument that burden on speech is permissible "because other avenues of expression remain open to appellees"). And, as Plaintiffs' counsel noted on the record at the hearing, petition initiative campaigns, by all accounts, have had a much easier time getting on the ballot in North Dakota as compared to Florida, even though a residency requirement had been in place in North Dakota for almost 20 years before anyone challenged it. *See Jaeger*,

24

241 F.3d at 615–17 (noting that "[s]ince the Secretary of State began keeping statistics on the success rate of signature campaigns in 1985, it appears that approximately 70% of the . . . petitions circulated have qualified to be placed on the ballot. This high success rate demonstrates that no severe burden has been placed on those wishing to circulate petitions."). Here, on the other hand, the record is replete with evidence demonstrating the extremely challenging effort an initiative sponsor must undertake to have any chance of success in reaching the ballot in Florida, even without residency and citizenship requirements severely limiting the pool of potential petition circulators. In sum, *Jaeger* does not move the ball.

Finally, Defendants' primary evidence to support the need for the citizenship and residency requirements to combat fraud is a double-edged sword because it undercuts Defendants' argument that these restrictions are narrowly tailored. Defendants rely on multiple reports from the State's Office of Election Crimes and Security to demonstrate instances of suspected fraud, active investigations, and burdens on state investigations when targets are located out of state. The reports highlight a particular problem—unlawful pay-per-signature schemes—which Florida's election crimes office believes to be the primary motivator for the suspected fraud. *See* ECF No. 103-2 at 10 ("The pay-per-signature compensation model incentivizes this type of fraud by encouraging paid signature gatherers to turn in as many forms as possible."); ECF No. 103-3 at 10 ("[I]n many of OECS'

25

investigations there was some evidence that companies were paying signature gather[ers] per signature . . . . This type of compensation model incentivizes fraud by encouraging paid signature gatherers to turn in as many forms as possible."); ECF No. 103-4 at 3 ("This illegal scheme is likely driving the petition fraud outlined above. If a circulator is paid per signature, circulators are incentivized to forge as many signatures as possible to make a quick and easy buck. OECS has referred a handful of pay-per-petition cases to law enforcement and prosecutors.").

The reports also explain that the difficulty in combatting this fraud incentivized by pay-per-signature schemes has to do with "a lack of recordkeeping and cooperation" on behalf of initiative sponsors and their contractors and subcontractors. *Id*.; *see also* ECF No. 103-2 at 8 ("Florida law does not require sponsors' contractors and subcontractors to comply with demands for accounting made by the Department of State, and PCI Consultants appears to have been less than helpful to Florida law enforcement agencies, even when faced with a subpoena. The State's ability to execute the subpoena has been hampered by the fact that PCI Consultants is not a registered business entity in Florida.").

Ultimately, Defendants' own evidence demonstrates that the complete ban on all non-residents and non-citizens, paid and unpaid, is not narrowly tailored to furthering the State's interest in combatting fraud in the initiative petition process. For starters, the reports do not indicate that any non-citizens are engaging in fraud

while gathering signed petitions. *See* ECF No. 267-2 ¶ 17 ("I am unaware of any investigations involving non-citizen petition circulators[.]"). Instead, Defendants can only point to evidence that some non-citizens have allegedly voted illegally, ECF No. 103-2 at 26, four non-citizens have had issues in the voter registration context while working for third-party voter registration organizations, ECF No. 246 at 8, and one non-citizen illegally signed two initiative petitions, ECF No. 267-2 ¶ 17. Based on these isolated instances of non-citizens allegedly behaving badly in other contexts within the universe of election regulations, Defendants urge this Court to assume there must also be a problem with non-citizen fraudsters who engage in petition circulation. But mere assumptions are no substitute for actual evidence demonstrating that it is necessary to burden Plaintiffs' ability to communicate their messages to meet the State's concerns. *See Meyer*, 486 U.S. at 426. Likewise, for non-residents, Defendants fail to justify a complete ban where Defendants' own evidence indicates narrower solutions. *See, e.g.*, ECF No. 103-4 at 3 (suggesting "[r]eforms strengthening corporate registration requirements and accounting mechanism (and enforcement of the same) would facilitate the accountability called for by current law"); ECF No. 267-2 at 8–9 (suggesting state law enforcement agents could also comply with state law regarding issuing subpoenas to out-of-state nonparties to assist in investigations); ECF No. 103-4 at 3 (suggesting pay-per-signature schemes are driving petition fraud).

This Court recognizes that the State has great leeway in regulating the initiative petition process. And this makes sense—if the State is going to allow for constitutional amendments by citizen initiatives, there needs to be rules. But here, the State has categorically barred entire classes of people from participating in the core political speech that is central to this process. Moreover, the State has failed to demonstrate that this severe burden on speech is narrowly tailored to furthering its compelling interest in investigating and combatting fraud in the petition initiative process. Accordingly, for the reasons set out above, this Court concludes that Florida's provisions prohibiting any non-residents and non-citizens, paid or unpaid, from circulating petitions for citizen initiatives in Florida impose a severe burden on political expression that the State has failed to justify, and thus Plaintiffs are substantially likely to succeed on their claims that these provisions violate the First Amendment.[18]

## 2

Next, this Court considers Plaintiffs' challenges to the requirement that unpaid petition circulators register with the Secretary of State before collecting more than 25 signed petitions. Plaintiffs challenge the registration provisions under a few

---

[18] Having concluded that Plaintiffs are substantially likely to succeed on the merits of their First Amendment claims, this Court need not address the alternative theories challenging the constitutionality of these provisions, such as whether the citizenship requirement also violates the Equal Protection Clause of the Fourteenth Amendment.

overlapping theories, none of which persuade this Court, at this juncture, that they are substantially likely to succeed on the merits.

First, Plaintiffs argue the registration requirements violate the First Amendment by imposing a severe burden on volunteers' ability to engage in anonymous speech. *See* ECF No. 169-1 at 20–21 (discussing *Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 154 (2002)); ECF No. 173-1 at 31. But given the Supreme Court's recognition that anonymity interests may justifiably give way to "the special state interest in protecting the integrity of a ballot-initiative process," *Watchtower Bible*, 536 U.S. at 167, this Court is not persuaded that Plaintiffs are substantially likely to succeed on the merits of their theory that the registration requirements unconstitutionally burden Plaintiffs' speech in this way. *See also John Doe No. 1 v. Reed*, 561 U.S. 186 (2010) (rejecting broad-based challenge to compelled disclosure of signatory information on referendum petitions).

Next, Plaintiffs contend that the registration requirement imposes such a severe burden on petition circulation by creating additional hurdles before volunteers may collect more than 25 signed petitions, that it is subject to, and fails, exacting scrutiny under *Meyer* and *Buckley*. This argument depends, in part, on characterizing the registration requirement as a prior restraint on protected speech and equating the process of registration to other classic examples of prior restraints. However, this

29

Court is not persuaded that Plaintiffs are substantially likely to succeed on their novel application of prior restraint cases to the facts of this case. Nor is this Court persuaded that the additional effort volunteers must put in to continue gathering signed petitions after exceeding the 25-petition threshold poses such a severe burden on speech that the provision is subject to exacting scrutiny. The tenor of Plaintiffs' evidence concerning these additional efforts, both in the declarations and in the testimony at the hearing on the motions, suggested *any* burden on volunteers with respect to petition circulation is a step too far. Not so. *See Buckley*, 525 U.S. at 191. In short, Plaintiffs have not demonstrated, at this juncture, that the registration requirements pose an impermissibly severe burden on speech.

Finally, Plaintiff Right to Clean Water also claims the registration requirement is void for vagueness in violation of the Fourteenth Amendment. However, this Court is persuaded that Defendants' proffered construction is the only reasonable and readily apparent reading of the statute—i.e., that the 25-petition threshold applies per initiative, per election cycle. *See* ECF No. 246 at 26–28. In other words, this Court is not persuaded that Right to Clean Water is substantially likely to succeed on the merits of its vagueness claim.

For these reasons, Plaintiffs motions, ECF Nos. 169 and 173, are **DENIED in part** with respect to their challenges to the registration requirements for failure to demonstrate a substantial likelihood of success on the merits.

II

Having determined that Plaintiffs are substantially likely to succeed on the merits of their First Amendment challenges to the residency and citizenship requirements, this Court considers the remaining factors for preliminary injunctive relief. First, this Court agrees that Plaintiffs face irreparable injury because the residency and citizenship requirements effectively silence them and their members and employees who are now ineligible to engage in petition circulation. The provisions force Plaintiffs to choose between curtailing their First Amendment rights to engage in core political speech via petition circulation or risk invalidation of verified petitions, crippling civil penalties, and further enforcement actions. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *accord Honeyfund.com v. Governor of Fla.*, 94 F.4th 1272, 1283 (11th Cir. 2024).

The balance of the equities and the public interest also favor preliminary relief. The irreparable injuries Plaintiffs face are "not outweighed by any threatened harm to Florida because the government has no legitimate interest in enforcing an unconstitutional law," and "an injunction is not contrary to the public interest because it is in the public interest to protect First Amendment rights." *Honeyfund.com*, 94 F.4th at 1283 (internal quotation marks omitted). Defendants'

31

argument that preliminary relief will hamstring the State from stopping petition fraud, forgery, and bad actors is unpersuasive. Even if the Defendants are enjoined from enforcing the prohibition on non-residents and non-citizens from engaging in petition circulation, Florida's law enforcement agencies maintain an arsenal of criminal provisions that remain enforceable against bad actors and fraudsters. *See, e.g.*, §§ 104.185, 104.186, 104.187, 942.01–06, Fla. Stat. Accordingly, Plaintiffs have carried their burden on all four prerequisites to preliminary relief.

### III

This Court next considers whether Plaintiffs must secure a bond in furtherance of the preliminary injunction. Rule 65(c) provides that a "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). But "it is well-established that 'the amount of security required by the rule is a matter within the discretion of the trial court . . . [, and] the court may elect to require no security at all.'" *BellSouth Telecomms. v. MCImetro Access Transmission Servs.*, 425 F.3d 964, 971 (11th Cir. 2005) (alteration in original) (quoting *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. Unit B 1981)). Moreover, "[w]aiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right." *Complete Angler, LLC v.*

32

*City of Clearwater*, 607 F. Supp. 2d 1326, 1335 (M.D. Fla. 2009). Here, considering that the challenged law's unlawful impact on Plaintiffs' First Amendment rights weighs against requiring a bond, this Court waives the bond requirement.

IV

Having determined a preliminary injunction is warranted, this Court addresses whether it will stay that injunction pending appeal. Stays pending appeal are governed by a four-part test: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Venus Lines Agency v. CVG Industria Venezolana De Aluminio, C.A.*, 210 F.3d 1309, 1313 (11th Cir. 2000) (applying the same test). Because this test is so similar to the four-part test for establishing entitlement to preliminary injunctive relief, courts rarely stay a preliminary injunction pending appeal. So too here. Because no exceptional circumstances justify staying this Order pending appeal, this Court shall not do so. *Contrast with Brenner v. Scott*, 999 F. Supp. 2d 1278, 1292 (N.D. Fla. 2014) (issuing a rare stay of a preliminary injunction given the public interest in stable marriage laws across the country). Defendants have every right to appeal, and this Court sees

33

no reason to delay Defendants in seeking an appeal by requiring them to move to stay under Rule 62.

V

Finally, this Court considers the scope of the preliminary injunction to which Plaintiffs are entitled. The Supreme Court recently held that district courts lack authority to universally enjoin the enforcement of an executive or legislative policy. *See Trump v. CASA, Inc.*, 606 U.S. ---, 2025 WL 1773631, at *6 (2025). In other words, this Court cannot enjoin Defendants' enforcement of the residency and citizenship requirements against anyone, anywhere. Instead, the scope of relief afforded herein is limited to as-applied relief to the parties now before this Court with standing to seek preliminary injunctive relief.

The challenged provisions work an unconstitutional restriction as applied to Plaintiffs' speech by prohibiting non-citizen and non-residents from gathering signed petitions on behalf of FDH, Smart & Safe, and Right to Clean Water,[19] by silencing the individual non-resident petition circulators[20] who are Plaintiffs in this case, and by preventing the organizational Plaintiffs' members who are non-residents or non-

---

[19] Again, this Court recognizes that, among the initiative sponsors who are Plaintiffs, only Right to Clean Water challenges the citizenship requirement.

[20] As noted *supra*, because Poder Latinx and the individual non-citizen Plaintiffs did not also sue to enjoin the Supervisors of Elections from invalidating petitions submitted by non-citizens, they lack standing to challenge the citizenship requirement for purposes of a preliminary injunction. These Plaintiffs included the only individual Plaintiffs in this case who are not U.S. citizens.

34

citizens from engaging in the core political speech of petition circulation. This State-imposed silence is enforced through the Secretary's pre-screening of petition circulators' residency and citizenship status as applied to individuals who circulate more than 25 petitions on behalf of FDH, Smart & Safe, and Right to Clean Water, §§ 100.371(4)(b), (4)(c)7.–8., Fla. Stat., the invalidation of petitions submitted by non-residents and non-citizens on behalf of FDH, Smart & Safe, and Right to Clean Water, *id*. § 100.371(14)(h), the Secretary's imposition of $50,000 fines for each non-resident that FDH, Smart & Safe, and Right to Clean Water knowingly allow to collect petitions on their behalf and each non-citizen that Right to Clean Water knowingly allows to collect petitions on its behalf, *id*. § 100.371(4)(g), the threat that the Secretary may refer suspected violations to the Attorney General for further enforcement action, *id*. § 100.371(11), and the Attorney General's and State Attorneys' authority to enforce criminal prohibitions with respect to violating the registration requirements as applied to non-resident and non-citizen petition circulators who collect petitions on the Plaintiff sponsors' belahf, §§ 104.187 and 104.188(2), Fla. Stat.

Accordingly, to afford complete relief to the parties with standing to sue in this case, the Secretary and the Attorney General are enjoined from enforcing the prohibition on non-residents from gathering signed petitions on behalf of FDH, Smart & Safe, and Right to Clean Water's ballot initiatives and from enforcing the

prohibition on non-citizens from gathering signed petitions on behalf of Right to Clean Water's ballot initiative and as applied to the League of Women Voters's and LULAC's non-citizen members who gather signed initiative petitions. Likewise, the Supervisors of Elections are enjoined from invalidating petitions submitted by non-residents on behalf of FDH, Smart & Safe, and Right to Clean Water, and from invalidating initiative petitions submitted by non-citizens on behalf of Right to Clean Water and as applied to the League of Women Voters's and LULAC's non-citizen members who gather signed initiative petitions. Finally, the Attorney General and State Attorneys are enjoined from seeking civil or criminal penalties to enforce the prohibition on non-residents and non-citizens collecting signed petitions as applied to FDH, Right to Clean Water, Melissa Martin, the League of Women Voters, and LULAC.[21]

Accordingly,

**IT IS ORDERED**:

1. Plaintiff Smart & Safe Florida's motion for preliminary injunction, ECF No. 165, is **GRANTED.**

---

[21] Smart & Safe did not sue any state attorneys, and thus, is not entitled to an injunction prohibiting their criminal enforcement of the registration requirement to the extent it incorporates the residency requirement for petition circulation. Nonetheless, inasmuch as the relief Smart & Safe is entitled to affords Smart & Safe partial redress, Smart & Safe still has standing to seek preliminary injunctive relief against the Secretary, Attorney General, and Supervisors of Elections.

2. Defendant Byrd, Defendant Uthmeier, and Defendant Supervisors of Elections must take no steps to enforce sections 100.371(4)(b)3., 100.3714(c)8., 100.3714(g), 100.371(11), 100.371(14)(h), 104.187, and 104.188(2), Florida Statutes (2025), against Smart & Safe Florida and non-residents who gather signed petitions on Smart & Safe Florida's behalf. This Order binds these Defendants and their officers, agents, servants, employees, attorneys, and successors in and office—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.[22]

3. Plaintiff FDH's second motion for preliminary injunction, ECF No. 169, is **GRANTED in part** with respect to FDH's First Amendment challenge to the residency requirement. The balance of the motion is **DENIED**.

4. Defendant Byrd, Defendant Uthmeier, Defendant Supervisors of Elections and Defendant State Attorneys must take no steps to enforce sections 100.371(4)(b)3., 100.3714(c)8., 100.3714(g), 100.371(11), 100.371(14)(h), 104.187, and 104.188(2), Florida Statutes (2025), against Florida Decides Healthcare, Inc., and non-residents who gather signed petitions on Florida Decides Healthcare, Inc.'s behalf. This Order binds these Defendants and their

---

[22] Inasmuch as Smart & Safe Florida has not sued any state attorneys, this injunction does not include the state attorneys with respect to their authority to enforce §§ 104.187 and 104.188(2), Fla. Stat.

officers, agents, servants, employees, attorneys, and successors in and office—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

5. Right to Clean Water and Melissa Martin's motion for preliminary injunction, ECF No. 173, is **GRANTED in part** with respect to Plaintiffs' First Amendment challenge to the residency and citizenship requirements. The balance of the motion is **DENIED**.

6. Defendant Byrd, Defendant Uthmeier, Defendant Supervisors of Elections, and Defendant State Attorneys must take no steps to enforce sections 100.371(4)(b)2.–3., 100.3714(c)7.–8., 100.3714(g), 100.371(11), 100.371(14)(h), 104.187, and 104.188(2), Florida Statutes (2025), against FloridaRighttoCleanWater.org a/k/a Florida Right to Clean Water, Melissa Martin, and non-citizens and non-residents who gather signed petitions on Right to Clean Water's behalf. This Order binds these Defendants and their officers, agents, servants, employees, attorneys, and successors in and office—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

7. The League of Women Voters Plaintiffs' motion for preliminary injunction, ECF No. 175, is **GRANTED in part** with respect to the League's and LULAC's First

Amendment challenge to the citizenship requirements. The balance of the motion is **DENIED**.

8.  Defendant Byrd, Defendant Uthmeier, Defendant Supervisors of Elections, and Defendant State Attorneys must take no steps to enforce sections 100.371(4)(b)2., 100.3714(c)7., 100.371(11), 100.371(14)(h), 104.187, and 104.188(2), Florida Statutes (2025), as applied to the League of Women Voters, the League of United Latin American Citizens, and either organization's non-citizen members who gather signed initiative petitions. This Order binds these Defendants and their officers, agents, servants, employees, attorneys, and successors in and office—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

9.  The Poder Latinx Plaintiffs' notice of joinder, ECF No. 214, construed as a motion for preliminary injunction, is **DENIED** for lack of standing.

**SO ORDERED on July 8, 2025.**

<u>**s/Mark E. Walker**</u>
**United States District Judge**