# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

FLORIDA DECIDES HEALTHCARE, INC., et al.,

    *Plaintiffs/Intervenor-Plaintiffs*,

v.

CORD BYRD, in his official capacity as Secretary of State of Florida, et al.,

    *Defendants/Intervenor-Defendant.*

No. 4:25-cv-211-MW-MAF

## THE SECRETARY AND ATTORNEY GENERAL'S MOTION TO DISMISS THE LEAGUE OF WOMEN VOTERS PLAINTIFFS' OPERATIVE COMPLAINT

## INTRODUCTION

The Secretary and Attorney General move to dismiss Plaintiffs' operative complaint, May 30, 2025. Doc.167. The complaint engages in shotgun pleading. Each Plaintiff lacks standing to challenge House Bill 1205. And most of Plaintiffs' challenges fail to state claims upon which relief can be granted. This Court should therefore grant the State's motion to dismiss under Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6).

## BACKGROUND

Plaintiffs challenge six categories of HB1205 provisions. Their challenges break down like this:

| Count | Claim | Challenged Provisions |
|---|---|---|
| Count One | First Amendment Political Speech | **Petition Circulator Eligibility** provisions for non-residents, non-citizens, volunteers, and felons<br><br>**Circulator Affidavit** provisions<br><br>**Ten-Day Return Time** provisions<br><br>**Criminal** provisions<br><br>**Fines** provisions<br><br>**OECS Investigation** provisions |
| Count Two | Free Association | **Petition Circulator Eligibility** provisions for |

| | | |
|---|---|---|
| | | non-residents, non-citizens, volunteers, and felons<br><br>**Circulator Affidavit** provisions<br><br>**Ten-Day Return Time** provisions<br><br>**Criminal** provisions<br><br>**Fines** provisions<br><br>**OECS Investigation** provisions |
| Count Three | Vagueness | **Petition Circulator Eligibility** provisions for non-residents, non-citizens, volunteers, and felons<br><br>**Circulator Affidavit** provisions<br><br>**Ten-Day Return Time** provisions<br><br>**Criminal** provisions<br><br>**OECS Investigation** provisions |
| Count Four | Overbreadth | **Petition Circulator Eligibility** provisions for non-residents, non-citizens, volunteers, and felons<br><br>**Circulator Affidavit** provisions |

|  |  | **Ten-Day Return Time** provisions |
|---|---|---|
|  |  | **Criminal** provisions |
|  |  | **Fines** provisions |
|  |  | **OECS Investigation** provisions |
| Count Five | Equal Protection – Different Treatment of Non-Citizens | **Petition Circulator Eligibility** provisions for non-citizens |

Please note that the State uses the naming conventions from its two preliminary injunction responses. Doc.105; Doc.246. This is for the sake of uniformity. And, relatedly, it's because the five complaints before this Court use five different naming conventions.

Here, the League of Women Voters Plaintiffs' naming conventions mostly align with the State's. But for ease, please note that Plaintiffs' "petition circulator definition," "eligibility requirements," "disclosure requirements," "registration requirements," and "personal use petition restrictions" categories are all subsumed in the State's **Petition Circulator Eligibility** provisions.

The **OECS Investigation** (Office of Election Crimes and Security Investigation) provisions weren't addressed in the earlier preliminary injunction motions, but the provisions' aims and standards are clear. Fla. Stat. § 100.371(14)(g) ("For any reporting period in which the percentage of petition forms deemed invalid by the supervisor exceeds a total of 25 percent of the petition forms

4

received by the supervisor for that reporting period, the supervisor shall notify the Office of Election Crimes and Security.").

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed when a plaintiff lacks standing to sue. *Gesten v. Stewart Law Grp., LLC*, 67 F. Supp. 3d 1356, 1357 (S.D. Fla. 2014). Under Rule 12(b)(6), a complaint, or a count in the complaint, may be dismissed for a failure to state a claim upon which relief can be afforded. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). And under Rule 8, a complaint can be dismissed for shotgun pleading. *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018).

On a motion to dismiss, a court must accept well-pleaded factual allegations as true and make reasonable inferences in a plaintiff's favor. *Support Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1202-03 (N.D. Fla. 2020). That's different from conclusory allegations, formulaic recitations of legal elements, and labels—those aren't well-pleaded factual allegations and shouldn't be accepted as true. *Id.*

## **ARGUMENT**

Plaintiffs' complaint engages in shotgun pleading. Plaintiffs themselves lack standing to challenge HB1205. And Plaintiffs fail to state claims upon which relief can be granted.

### I.  **Plaintiffs Engage in Shotgun Pleading**

For each of Plaintiffs' five counts, Plaintiffs "repeat, reallege, and incorporate the allegations in [the] paragraphs above as though fully set forth herein." Doc.167 ¶¶ 133, 140, 145, 151, 156. When a complaint "employs a multitude of claims and incorporates by reference all of its factual allegations into each claim, making it nearly impossible for" the defendant "and the Court to determine with any certainty which factual allegations give rise to which claims for relief," that's shotgun pleading. *Jackson*, 898 F.3d at 1356. That alone justifies dismissal, because it violates the general rules for pleading. *See generally* Fed. R. Civ. P. 8(a), (d).

Plaintiffs shouldn't be given leave to amend, either. The plaintiffs groups in this case already had numerous chances to perfect their pleadings, and this Court imposed a pleading deadline of August 11. Doc.343. Allowing even more pleadings, past the deadline, invites more motion practice and does a disservice to the timely resolution of this case. *Rudder v. Wyrosdick*, 3:21-cv-1001, 2022 U.S. Dist. LEXIS 248615, at *3 (N.D. Fla. Sept. 7, 2022) ("A district court may deny leave to amend because of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

6

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." (cleaned up)).

## II. Plaintiffs Lack Standing

From what has been alleged, all four Plaintiffs—the League groups jointly, LULAC, Ms. Scoon, and Ms. Chandler—have issues with standing.

**A. The League.** Despite seeking statewide relief, the League never alleges that it has members in each county and judicial circuit. And it never alleges that such members wish to circulate citizen-initiative petitions—and would do so, but for HB1205. Instead, the League uses probabilistic standing: it maintains that because it has a lot of members, it probably has members in every county and circuit. *See, e.g.*, Doc.167 ¶ 15 ("The League has 29 local Leagues across the State of Florida, from Pensacola to the Keys, and thousands of members statewide.").

Probabilistic standing, however, has been rejected by both the U.S. Supreme Court and the Eleventh Circuit. *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-98 (2009); *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1204-05 (11th Cir. 2018). And because probabilistic standing falls short of the constitutional mark, the League hasn't established that it can obtain relief against every supervisor, in every county, and every state attorney, in every judicial circuit. *E.g.*, Doc.283 at 14 n.12 (denying Poder Latinx's preliminary injunction motion, given that it failed to sue the supervisors).

**B. LULAC.** LULAC also improperly uses probabilistic standing. Doc.167 ¶ 18 ("LULAC Florida, LULAC's state arm, has thousands of members and 17 councils

7

across the state, which include adult and young adult councils."). It doesn't clearly allege that it has members in every county and every judicial circuit who wish and plan to circulate petitions—but for HB1205.

Not only that, LULAC hasn't directly engaged in petition circulation in the past. Nor does it have clear plans to do so in the future. LULAC further alleges that it "never directly collected petitions in Florida before," and before the enactment of HB1205, it merely "planned to mobilize its members to gather signatures for the Florida Medicaid Expansion Initiative." Doc.167 ¶ 19. The complaint includes no allegations concerning what those future plans were, what those events would look like, or where those events would take place. That's not good enough for standing. *See LaCroix v. Lee County*, 819 F. App'x 839, 842-43 (11th Cir. 2020) ("speculative" plans that lack "expected times, topics, locations, or surrounding context" isn't good enough for standing); *Gale Force Roofing & Restoration v. Brown*, 4:21-cv-246, 2021 U.S. Dist. LEXIS 206848, at *5 (N.D. Fla. June 29, 2021) ("In short, the complete absence of factual allegations showing Plaintiff's 'unambiguous intention at a reasonably foreseeable time to engage in a course of conduct arguably affected with a constitutional interest,' requires this Court to dismiss Plaintiff's Complaint.").

**C. Ms. Scoon and Ms. Chandler.** Given the shotgun pleading, it's not entirely clear which HB1205 provisions Ms. Scoon and Ms. Chandler are challenging. For example, in count five, all four Plaintiffs—including Ms. Scoon and Ms. Chandler—challenge HB1205's ban of non-citizen petition collection under the Equal Protection

8

Clause. Doc.167 ¶¶ 156-64. But both Ms. Scoon and Ms. Chandler are U.S. citizens, and aren't implicated by the ban. Doc.167 ¶ 20 (Ms. Scoon is "a U.S. citizen and a registered voter in Bay County, Florida"); Doc.167 ¶ 21 (Ms. Chandler is "a U.S. citizen and a registered voter in Palm Beach County").

**D. Issues with Specific HB1205 Categories.** There are still more standing-related issues. Consider the following:

- **Petition Circulator Eligibility.** As a reminder, these provisions affect non-residents, non-citizens, volunteers, and felons. But Plaintiffs never allege (or identify) any non-residents, non-citizens, or felons who are part of their organizations and had specific plans to circulate petitions—but for HB1205. Doc.167 ¶ 90 (not alleging this). *League of Women Voters of Fla., Inc. v. Byrd*, 4:23-cv-216, 2024 U.S. Dist. LEXIS 93765, at *13 (N.D. Fla. Feb. 13, 2024) ("All Plaintiffs had to do was identify a single member with a disqualifying felony conviction who had collected or handled voter registration applications in the past and planned to do it now but for the challenged provision.").

  When it comes to volunteers, moreover, this Court already noted Plaintiffs' standing issues. Doc.283 at 16 ("the League of Women Voters and LULAC have not demonstrated standing for purposes of seeking a preliminary injunction with respect to the registration requirement"). And the complaint includes no factual allegations that make a challenge to this provision plausible.

- **Circulator Affidavit.** This Court already indicated that Plaintiffs likely lack standing to challenge this provision. Doc.283 at 7 ("based on these Plaintiffs' failure to demonstrate a substantial likelihood of success of demonstrating standing to challenge this provision"). And the complaint includes no factual allegations that make a challenge to this provision plausible.

- **Ten-Day Return Time.** These provisions don't cause Plaintiffs any injury, because the provisions only affect petition sponsors, and

9

Plaintiffs aren't petition sponsors. Fla. Stat. § 100.371(7)(a) ("the sponsor is liable for the following fines").

- **Criminal.** Aside from the racketeering definition, the provisions in this category: (1) prevent retaining or copying information from a signed petition; and (2) prevent fraudulently signing or filling in missing information from completed petitions. Doc.105 at 4.

  In their complaint, however, Plaintiffs never allege that they copy or retain sensitive voter information (like social security numbers or driver's license numbers) from completed petitions. Doc.167 ¶¶ 105-06 (not alleging this). Nor have they, in this pre-enforcement challenge, demonstrated "that copying or retaining completed initiative petitions" is "constitutionally protected activity." Doc.189 at 11.

  Indeed, Plaintiffs expressly allege that they *don't* fraudulently sign or fill in missing information from completed petitions, which cuts against their standing to challenge the provisions. *E.g.*, Doc.167 ¶ 82 (volunteers "confirm that collected petitions have been properly completed, and if petitions have not been completed properly, they attempt to contact the voter to urge them to fill out a new form or correct their incomplete form"); Doc.167 ¶ 103 ("the League has trained its volunteers to never fill in missing information on a completed form and to instead contact the voter to physically fill in the information themselves").

- **Fines.** Again, HB1205 imposes fines for (1) fraudulently signing or filling in missing information from completed petitions; (2) violating the **Ten-Day Return Time** provision; and (3) sending voters pre-filled petitions. Doc.105 at 3. Standing issues for the first two have already been discussed above.

  When it comes to pre-filled petitions, Plaintiffs never allege that they engage in such action. Doc.167 ¶ 80 ("The League specifically instructs their volunteers to have each voter fill out the petition form and not to fill out the form for a voter.").

- **OECS Investigation.** Based on the facts alleged, Plaintiffs haven't established that their fear of investigation is objectively reasonable.

10

> *Wilson v. St. Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 1998); *League of Women Voters of Fla., Inc. v. Byrd*, 4:23-cv-216, 2023 U.S. Dist. LEXIS 237881, at *10 (N.D. Fla. July 11, 2023) (faulting the plaintiffs for failing to allege that the "people they" assist with registration circulation "will report them on false grounds" or fill in petitions with inaccurate information, or that the Office of Election Crimes and Security, "based on those false grounds, bring actions against them"); *see also* Doc.167 ¶ 85 (touting that the League "perfected its collection processes").
>
> It's also unclear how Plaintiffs' challenge is redressable. Even without HB1205, the Office of Election Crimes and Security is free to engage in any investigation. Fla. Stat. § 97.022(1)(b) (the office has the power to "[i]nitiat[e] independent inquiries and conduct[] preliminary investigations into allegations of election law violations or election irregularities in this state").

In short, Plaintiffs' complaint is speckled with standing-related problems. The complaint should be dismissed under Rule 12(b)(1).

### III. Plaintiffs Fail to State Claims

Separately, from what can be gleaned from the Plaintiffs' shotgun pleading, Plaintiffs fail to state claims upon which relief can be granted.

**A. Count One (Political Speech).** Plaintiffs allege that all six HB1205 categories infringe upon their free speech rights under the First Amendment.

As an initial matter, the State recognizes that this Court held that the **Petition Circulator Eligibility** provisions that prevent non-residents and non-citizens from collecting signed petitions implicate political speech. While the State disagrees, it doesn't advance its contrary arguments in this motion.

11

That said, the **Petition Circulator Eligibility** provisions concerning volunteer circulators don't touch speech. This Court indicated that the State has the better of the arguments, and the complaint itself is devoid of factual allegations that make the claim plausible. Doc.283 at 29 ("In short, Plaintiffs have not demonstrated, at this juncture, that the registration requirements pose an impermissibly severe burden on speech.").

The **Circulator Affidavit** provisions don't violate the First Amendment, either. The Supreme Court in *Buckley v. American Constitutional Law Foundation* approved such provisions. 525 U.S. 182, 188-89, 197-200 (1999).

As for the **Ten-Day Return Time** and **Fines** provisions, at the preliminary injunction stage, this Court already held that such provisions survive First Amendment scrutiny. Doc.189 at 22 ("the challenged deadline and fine provisions are subject only to rational basis review"). The factual allegations in the complaint don't change that—they don't make out a plausible First Amendment claim against the provisions.

Nor do Plaintiffs allege plausible claims against the **Criminal** and **OECS Investigation** provisions. After all, no political speech is implicated when someone fraudulently signs or fills in a petition, copies a driver's license number or social security number, or engages in voter misconduct and irregularities. HB1205's investigatory and punitive provisions are part of the State's "arsenal of safeguards" that comply with the First Amendment. *Buckley*, 525 U.S. at 205.

**B. Count Two (Association).** Plaintiffs' First Amendment association claim doesn't add anything to the mix. It's virtually indistinguishable from their First

Amendment political speech claim. Both claims involve allegations of volunteers interacting with voters, and volunteers interacting with the named plaintiffs. Plaintiffs' associational concerns can therefore be advanced in their political speech claim. *See, e.g., Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1217 n.6 (11th Cir. 2009) ("Plaintiffs contend that the Florida statute also infringes some on their First Amendment right to engage in political association. But even if true, the additional infringement has no material affect on the analysis otherwise applicable here; so we discuss it no further.").

To the extent that Plaintiffs assert that *Anderson-Burdick* balancing applies to the standalone free association claim, the Eleventh Circuit already rejected that approach in citizen-initiative cases. *Biddulph v. Mortham*, 89 F.3d 1491, 1500 n.10 (11th Cir. 1996). After all, "the Constitution contains no universal 'cost-benefit balancing' provision." *Lichtenstein v. Hargett*, 83 F.4th 575, 593 (6th Cir. 2023).

**C. Count Three (Vagueness).** Plaintiffs next contend that all but the **Fines** provisions are vague. That said, as far as the State can tell, Plaintiffs only assert ambiguities in the **Petition Circulator Eligibility**, **OECS Investigation**, and **Criminal** provisions. Plaintiffs' shotgun pleading includes no vagueness-related allegations against the **Circulator Affidavit** and **Ten-Day Return Time** provisions.

One of the purported ambiguities is in the **Criminal** provisions' racketeering definition. Doc.167 ¶ 149. The State recognizes that this Court found that provision vague, and the State won't challenge that ruling in this motion.

13

Plaintiffs then contend that the volunteer **Petition Circulator Eligibility** provisions are vague. Doc.167 ¶ 149. But this Court held that the provisions aren't vague, and Plaintiffs offer no contrary allegations that turn their vagueness claim into a plausible one. Doc.283 at 30 ("this Court is persuaded that Defendants' proffered construction is the only reasonable and readily apparent reading of the statute—i.e., that the 25-petition threshold applies per initiative, per election cycle").

Then, turning to the **Criminal** provisions, Plaintiffs contend that it's unclear what "collecting petition forms *on behalf of a sponsor*" means. Doc.167 ¶ 149. But the meaning is obvious. "On behalf of a sponsor" means *for the sponsor*. After all, when a volunteer registers to circulate petitions with the State, he indicates which citizen initiative he's collecting petitions for. Fla. Stat. § 101.371(4)(c)(1) (registration applications must include "[t]he information required to be on the petition form under s. 101.161, including the ballot summary and title as received by the Secretary of State").

Plaintiffs next contend that they don't know what "cop[ying] or *retain[ing] a voter's personal information, such as* the voter's Florida driver license number, Florida identification card number, social security number, or signature" means. *See* Doc.167 ¶ 149. Again, the meaning is obvious. "Copying" and "retaining" means *keeping* or *duplicating*. And voter's personal information is the voter's Florida driver license number, Florida identification card number, social security number, or signature. That's the same kind of information that a voter must put on the new petition forms. Fla. Stat. § 100.371(3)(c).

14

Then Plaintiffs contend that they don't know what "*fill[ing] in missing information on a signed petition*" means. Doc.167 ¶ 149. This isn't a strong argument. Again, when a voter signs a petition, he must include on the form a first name, last name, middle name, address, city, zip code, county, and then a signature, among other information. If a voter doesn't fill in these sections, it would be "missing information." One Office of Election Crimes and Security report stated that a petition circulation subcontractor would take partially completed forms and then "use a website to verify personal identifying information" and "fill in the missing information" where "incomplete." Doc.103-2 at 9.

As their last contention, Plaintiffs point to the **OECS Investigation** provisions, saying that they don't know what "percentage of petition forms deemed invalid by the supervisor" means. Doc.167 ¶ 149. The relevant portion states that:

> For any reporting period in which the percentage of petition forms deemed invalid by the supervisor exceeds a total of 25 percent of the petition forms received by the supervisor for that reporting period, the supervisor shall notify the Office of Election Crimes and Security.

Fla. Stat. § 100.371(14)(g). The provision is clear on its face. If the supervisor "receive[s]" one hundred "petition forms" during a reporting period, and if he "invalid[ates]" thirty, the supervisor must notify the Office of Election Crimes and Security. That's because a thirty percent invalidity rate exceeds HB1205's twenty-five percent rate.

15

**D. Count Four (Overbreadth).** Plaintiffs argue that all six HB1205 categories are overly broad. To establish a facial overbreadth claim, a plaintiff must establish that a law "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *United States v. Hansen*, 599 U.S. 762, 770 (2023) (cleaned up). In other words, the plaintiff must present a "lopsided ratio"—identifying unconstitutional applications of the law, compared to constitutional applications. *Id.*

Plaintiffs' complaint doesn't do that. Their complaint identifies no constitutional applications of challenged provisions, nor does the complaint weigh them against the purportedly unconstitutional applications. Instead, Plaintiffs merely conclude that the provisions "are substantially overbroad and have the effect of chilling constitutionally permissible speech." Doc.167 ¶ 154. Nor do Plaintiffs explain how specific HB1205 provisions—like the **OECS Investigation** provisions, and the **Criminal** provisions' bans on fraudulently signing forms—implicate protected speech.

That's insufficient to state an overbreadth claim. *See, e.g.*, *Yellowhammer Fund v. Marshall*, 733 F. Supp. 3d 1167, 1198 (M.D. Ala. 2024) (dismissing an overbreadth claim, noting that the complaint didn't allege any constitutional applications of the challenged law); *Ala. State Conf. of the NAACP v. Marshall*, 746 F. Supp. 3d 1203, 1241-42 (N.D. Ala. 2024) ("SB 1 regulates *conduct*. It does not regulate any speech associated with the prohibited conduct," and "Plaintiffs have not plausibly alleged that SB 1 penalizes a substantial amount of speech that is constitutionally protected.").

**E. Count Five (Equal Protection).** To the extent Plaintiffs allege an as-applied challenge to HB1205's **Petition Circulator Eligibility** provisions for non-citizens, the provisions fall under the Equal Protection Clause's political function exception. The exception "applies to laws that exclude aliens from positions intimately related to the process of democratic self-government." *Bernal v. Fainter*, 467 U.S. 216, 220 (1984). As the Supreme Court put it, the "rationale behind the political-function exception is that within broad boundaries a State may establish its own form of government and limit the right to govern to those who are full-fledged members of the political community." *Id.* at 221.

Here, "[b]allot initiatives are the quintessential form of direct democracy." *OPAWL v. Yost*, 118 F.4th 770, 777-78 (6th Cir. 2024). Plaintiffs agree: "direct democracy has played a vital role in Florida's political landscape," and "direct democracy has served as a crucial tool by which Floridians have constitutionalized some of their most treasured rights." Doc.167 ¶ 1.

In other words, petition circulators are "nonelective" "positions" that "participate directly in the formulation, execution," and "review" of "public policy." *Sugarman v. Dougall*, 413 U.S. 634, 647 (1973). Thus, "excluding non-citizens from certain activities can advance a compelling interest when those activities form part of the process of democratic self-government." *OPAWL*, 118 F.4th at 777-78 (cleaned up); *see also Bluman v. FEC*, 800 F. Supp. 2d 281, 287 (D.D.C. 2011) (Kavanaugh, J.) (upholding restrictions on foreign nationals contributing to political campaigns).

17

The non-citizen prohibition also makes sense. True, non-citizens who work for the government may collect and handle sensitive voter information. But those workers undergo background checks. *E.g.*, Fla. Stat. § 448.09. Plaintiffs haven't clearly alleged that they conduct background checks of its workers or volunteers. *E.g.*, Doc.167 ¶ 93.

Given that the political function exception applies, Plaintiffs' claim should be dismissed. *Bluman*, 800 F. Supp. 2d at 283 (granting a motion to dismiss).

## **CONCLUSION**

For these reasons, the State's motion should be granted.

Dated: August 12, 2025

JAMES UTHMEIER
  *Attorney General*

/s/ William H. Stafford III
William H. Stafford III
  SPECIAL COUNSEL
Sara E. Spears
  ASSISTANT ATTORNEY GENERAL
Complex Litigation Division
OFFICE OF THE ATTORNEY GENERAL
PL-01, The Capitol
Tallahassee, Florida 32399
(850) 414-3785
William.Stafford@myfloridalegal.com
Sara.Spears@myfloridalegal.com
ComplexLitigation@myfloridalegal.com

*Counsel for Florida Attorney General*

Respectfully submitted,

Bradley R. McVay (FBN 79034)
  Deputy Secretary of State for Legal
  Affairs & Election Integrity
Ashley Davis (FBN 48032)
  General Counsel
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough Street
Tallahassee, Florida 32399
(850) 245-6511
Brad.mcvay@dos.fl.gov
Ashley.davis@dos.fl.gov

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
Michael Beato (FBN 1017715)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St. Suite 500
Tallahassee, Florida 32301
(850) 270-5938
mjazil@holtzmanvogel.com
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com

*Counsel for the Secretary*

## **LOCAL RULES CERTIFICATIONS**

As required by Local Rule 5.1 and 7.1, I certify that this response contains 3.679 words and complies with this Court's word count, spacing, and formatting requirements.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## **CERTIFICATE OF SERVICE**

I certify that on August 12, 2025, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil