# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS OF
FLORIDA, *et al.*,

               *Intervenor-Plaintiffs*,

   v.

CORD BYRD, et al.,

               *Defendants*.

No.: 4:25-cv-00211-MW-MAF

# INTERVENOR-PLAINTIFFS' OPPOSITION TO
# DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................1

FACTUAL BACKGROUND........................................................1

    A.   Challenged Provisions........................................2

I.    Plaintiffs Do Not Engage in "Shotgun Pleading."............................6

II.    Plaintiffs Have Sufficiently Alleged Standing. ...............................9

    A.   Defendants' Generalized Standing Arguments with Respect to the Organizational Plaintiffs Fail. ...................................10

    B.   Plaintiffs Have Adequately Alleged Standing with Respect to Each of the "Specific HB 1205 Categories" Identified by Defendants in the Motion ........................................................13

    C.   LWVFL and LULAC Have Also Sufficiently Pled Organizational Standing. .......................................................21

III.    Plaintiffs Plead Valid Causes of Action Under Rule 12(b)(6). ..................22

    A.   Plaintiffs Plead a Valid First Amendment Political Speech Claim (Count I) ....................................................23

    B.   Plaintiffs Plead a Valid Freedom of Association Claim (Count II)....26

    C.   Plaintiffs Plead a Legally Cognizable Vagueness Claim (Count III) .27

    D.   Plaintiffs Plead a Legally Cognizable Overbreadth Claim (Count IV) ............................................................30

    E.   Plaintiffs Allege a Cognizable Equal Protection Claim (Count V) ....31

CONCLUSION ................................................................33

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrams v. CIBA Specialty Chems. Corp.*,
   2008 WL 4183344 (S.D. Ala. Sep. 10, 2008) ....................................8

*Alabama State Conf. of NAACP v. Marshall*,
   746 F.Supp.3d 1203 (N.D. Ala. 2024).............................................31

*Am. Coll. of Emergency Physicians v. Blue Cross & Blue Shield of
   Ga.*,
   833 Fed.Appx. 235 (11th Cir. 2020).........................................11, 16

*Bernal v. Fainter*,
   467 U.S. 216 (1984)........................................................................32

*Biddulph v. Mortham*,
   89 F.3d 1491 (11th Cir. 1996) ......................................................27

*Bluman v. FEC*,
   800 F.Supp.2d 281 (D.D.C. 2011)..................................................33

*Bruni v. City of Pittsburgh*,
   824 F.3d 353 (3d Cir. 2016) ....................................................30, 33

*Buckley v. American Constitutional Law Foundation, Inc.*,
   525 U.S. 182 (1999)............................................................24, 25, 26

*Carn v. Cooke, Cameron, Travis & Co., P.C.*,
   2019 WL 8301975 (N.D. Ala. June 4, 2019) ...................................7

*Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*,
   2025 WL 2253935 (11th Cir. Aug. 7, 2025) .............................22, 23

*Citizens for Police Accountability Political Comm. v. Browning*,
   572 F.3d 1213 (11th Cir. 2009) ....................................................27

*Collins v. Yellen*,
   594 U.S. 220 (2021)........................................................................13

*DeVito v. Palm Beach County*,
2023 WL 6407224 (S.D. Fla. Oct. 2, 2023) ......................................................30

*Dream Defenders v. DeSantis*,
553 F.Supp.3d 1052 (N.D. Fla. 2021) ...........................................................9, 29

*Fla. Action Comm., Inc. v. Seminole Cnty.*,
212 F.Supp.3d 1213 (M.D. Fla. 2016).........................................................28, 29

*Fla. State Conf. of NAACP v. Lee*,
566 F.Supp.3d 1262 (N.D. Fla. 2021) .........................................................14, 22

*Florida NAACP v. Byrd*,
680 F.Supp.3d 1291 (N.D. Fla. 2023) ..............................................................33

*Ga. Republican Party v. SEC*,
888 F.3d 1198 (11th Cir. 2018) ........................................................................11

*Gale Force Roofing & Restoration v. Brown*,
2021 WL 4958101 (N.D. Fla. June 29, 2021) ..............................................12, 19

*Garcia v. Stillman*,
668 F.Supp.3d 1307 (S.D. Fla. 2023) ...............................................................15

*Jackson v. Bank of Am., N.A.*,
898 F.3d 1348 (11th Cir. 2018) .......................................................................7, 8

*LaCroix v. Lee County*,
819 Fed.Appx. 839 (11th Cir. 2020)..................................................................12

*League of Women Voters of Fla., Inc. v. Byrd*,
2023 WL 11759735 (N.D. Fla. July 11, 2023)...................................................20

*League of Women Voters of Fla., Inc. v. Byrd*,
2024 WL 2668856 (N.D. Fla. Feb. 13, 2024) ..............................................16, 17

*League of Women Voters of Fla., Inc. v. Lee*,
566 F.Supp.3d 1238 (N.D. Fla. 2021) ...............................................................17

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..........................................................................................13

*McAllister v. Clark Cnty.*,
   746 F.Supp.3d 918 (D. Nev. 2024).................................................30

*NAACP v. Alabama*,
   357 U.S. 449 (1958).....................................................................27

*NAACP v. Button*,
   371 U.S. 415 (1963).....................................................................27

*Nat'l Parks Conservation Ass'n v. Norton*,
   324 F.3d 1229 (11th Cir. 2003) ...................................................15

*OPAWL v. Yost*,
   118 F.4th 770 (6th Cir. 2024) ......................................................33

*PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd*,
   711 F.Supp.3d 1325 (N.D. Fla. 2024) .....................................14, 22

*Reprod. Health Servs. v. Strange*,
   204 F.Supp.3d 1300 (M.D. Ala. 2016).........................................20

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
   547 U.S. 47 (2006).......................................................................13

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009).....................................................................11

*Suncoast Waterkeeper v. City of Gulfport*,
   2017 WL 1632984 (M.D. Fla. May 1, 2017) ................................16

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).....................................................................18

*United States v. Stevens*,
   559 U.S. 460 (2010).....................................................................30

*Upside Foods, Inc. v. Simpson*,
   2025 U.S. Dist. LEXIS 85699 (N.D. Fla. Apr. 25, 2025) .....9, 10, 12, 17

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977).......................................................................9

iv

*Weiland v. Palm Beach Cty. Sheriff's Office*,
792 F.3d 1313 (11th Cir. 2015) ..................................................................7

*Wilson v. St. Bar of Ga.*,
132 F.3d 1422 (11th Cir. 1998) ...............................................................20

*Yelapi v. DeSantis*,
525 F.Supp.3d 1371 (N.D. Fla. 2021) ......................................................20

*Yellowhammer Fund v. Marshall*,
733 F. Supp. 3d 1167 (M.D. Ala. 2024)....................................................30

## Statutes

Fla. Stat. § 97.012(15).................................................................................5

Fla. Stat. § 100.371(3)(d)(1) .......................................................................3

Fla. Stat. § 100.371(3)(e) ............................................................................3

Fla. Stat. § 100.371(4)................................................................................2

Fla. Stat. § 100.371(4)(a) .........................................................................2, 3

Fla. Stat. § 100.371(4)(c) ............................................................................2

Fla. Stat. § 100.371(7)(a) .........................................................................3, 4

Fla. Stat. § 100.371(8)..............................................................................4, 5

Fla. Stat. § 100.371(9)................................................................................5

Fla. Stat. § 100.371(14)(d) ..........................................................................4

Fla. Stat. § 100.371(14)(g) ..........................................................................4

Fla. Stat. § 100.371(14)(h) ........................................................................4, 5

Fla. Stat. § 100.371(f)(9)............................................................................4

Fla. Stat. § 104.185(2)................................................................................4

## Other Authorities

Fed. R. Civ. P. 8 .........................................................................................6

Fed. R. Civ. P. 8(a)................................................................................7

Fed. R. Civ. P. 8(a)(2).............................................................................6

Fed. R. Civ. P. 12(b)(1).......................................................................9, 11

Fed. R. Civ. P. 12(b)(6)...........................................................................22

U.S. Const. amend. I.........................................................................*passim*

U.S. Const. amend. V.............................................................................2, 5

U.S. Const. amend. XIV ....................................................................2, 4, 5, 6

## INTRODUCTION

The Court should deny Defendants' motion to dismiss Plaintiffs'[1] First Amended Complaint ("FAC") (ECF No. 167). Defendants' perfunctory arguments fail to meet the threshold warranting dismissal, and sometimes contradict themselves or prior rulings.

First, Defendants argue that the FAC cannot satisfy the notice pleading standard, but fatally undermine their position by creating a chart laying out Plaintiffs' claims. Next, Defendants advance a series of challenges to Plaintiffs' standing. Some of these contradict this Court's prior holdings in this case; others mischaracterize the applicable legal standards and misapprehend the factual allegations of the FAC. None are persuasive. Finally, Defendants half-heartedly advocate dismissal for failure to state a claim, but most of their challenges are not suitable for resolution at the motion to dismiss stage, and others lack any serious legal support. This Court should not lend any credence to Defendants' feeble and unpersuasive efforts to dismiss Plaintiffs' case. The motion should be denied.

## FACTUAL BACKGROUND

Following the passage of HB 1205, Plaintiffs joined this lawsuit as intervenors

---

[1] Including the League of Women Voters of Florida and the League of Women Voters of Florida Education Fund, Inc., (together, referred to as the "League" or "LWVFL"), the League of United Latin American Citizens ("LULAC," together, with LWVFL, the "Organizational Plaintiffs"), Cecile Scoon, and Debra Chandler (together, "Individual Plaintiffs")—collectively referred to as Plaintiffs.

1

on May 14, 2025. ECF No. 88. On May 30, Plaintiffs amended their prior pleading, filing the operative FAC. ECF No. 167.

## A.    Challenged Provisions

The FAC has five counts. The counts allege violations of the First, Fifth, and Fourteenth amendments.

**Count I:** Plaintiffs allege that the provisions of HB 1205 individually and cumulatively burden their right to core political speech under the First and Fourteenth Amendments. FAC ¶¶ 4–5; 133–39. The FAC specifies which provisions of HB 1205 impose burdens on Plaintiffs' core political speech and details how these provisions impact each Plaintiff.

- Fla. Stat. § 100.371(4)(a), 100.371(4)(c): expands the definition of "petition circulator" to cover all volunteers who collect more than 25 petitions from non-family members. Circulators must register with the Secretary of State, provide their driver's license or identification card number and the last four digits of their SSN for every registration application, and complete state training. FAC ¶¶ 41–46, 50–51 (describing provision), ¶¶ 89, 116–18, 122–23 (describing chilling effect on Plaintiffs' speech). Fla. Stat. § 100.371(4)(b): enacts a categorical ban on all non-citizens, out-of-state residents, and those with felony convictions from participating in the petition collection process altogether. FAC ¶ 47

2

(describing provision), ¶ 90 (provision would ban LWVFL members in these categories who collect petitions), ¶ 117 (provision would ban non-citizen or out-of-state LULAC members who want to collect petitions).

- Fla. Stat. §§ 100.371(3)(d)(1), 100.371(3)(e): requiring "petition circulators" to sign an affidavit for each petition form they collect, listing their name, permanent address, and petition circulator bar code. FAC ¶¶ 52–54 (describing provision), ¶¶ 92–94, 116–18, 123 (describing chilling effect).

- Fla. Stat. § 895.02(8); Classifying "[a] violation of the Florida Election Code relating to irregularities or fraud involving issue petition activities" as a state RICO predicate. FAC ¶ 68 (describing provision), ¶ 107 (describing chilling effect).

- Fla. Stat. §§ 100.371(3)(e), 100.371(4)(a): classifying as a third-degree felony the collection, delivery, or possession of more than 25 signed petition forms from non-family members without registering as a petition circulator. FAC ¶¶ 55–58 (describing provision and burdens), ¶¶ 95, 123 (describing chilling effect).

- Fla. Stat. § 100.371(7)(a): mandating that each signed petition form be submitted to the supervisor of elections in the county where the voter

3

resides within ten days of signing. FAC ¶¶ 59–64 (describing provision), ¶¶ 83, 96–100 (describing chilling effect).

- Classifying as a third-degree felony: (1) filling in missing information on a signed petition, Fla. Stat. §§ 100.371(8), 104.185(2) and (2) copying or retaining petitions containing a voter's personal information, Fla. Stat. § 100.371(f)(9). HB 1205 also classifies "[a] violation of the Florida Election Code relating to irregularities or fraud involving issue petition activities" as a state RICO predicate. Fla. Stat. §§ 97.012(15), 895.02(8); FAC ¶¶ 61–68 (describing provisions); *id.* at ¶¶ 101–02, 104–107, 124 (describing chilling effect).

- Fla. Stat. §§ 100.371(14)(d), 100.371(14)(g), 100.371(14)(h): Subjecting organizations and individuals that turn in too many "invalid forms" to investigations by the Office of Election Crimes and Security. FAC ¶¶ 74–76 (describing provision), ¶¶ 104, 108–12 (describing chilling effect).

- Fla. Stat. § 100.371(7)(a): Imposing fines on sponsor organizations. FAC ¶ 77 (describing provision); *id.* at ¶¶ 100, 113 (describing chilling effect on LWVFL's petition gathering activities arising from breakdown of trusted partnerships with sponsors, leading sponsors to no longer rely on the League for petition efforts).

4

**Count II:** Under Count II, Plaintiffs challenge the same provisions of HB 1205 as in Count I, but on the basis that they violate freedom of association under the First and Fourteenth Amendments. *Id.* at ¶¶ 141–42. The FAC describes how each provision impacts Plaintiffs' ability to rely on and associate with a larger pool of petition gatherers. *See, e.g.*, *id.* at ¶ 117 (eligibility restrictions impact LULAC's ability to "rely" on and "interface" with non-citizen and out-of-state petition gatherers), ¶¶ 90–94, 104 (LWVFL loses volunteers and connections to communities as a result of HB 1205's eligibility restrictions, abbreviated timeframe to return signed petitions, and potential exposure to investigations and liability).

**Count III:** Plaintiffs allege that three provisions of HB 1205 are vague under the Due Process Clause of the Fifth and Fourteenth Amendments. These are: (1) Fla. Stat. § 100.371(8) ("fills in *missing information*") (emphasis added); (2) Fla. Stat. § 100.371(9) ("*copies* or *retains* a voter's personal information, *such as* the voter's Florida driver license number, Florida identification card number, social security number, or signature) (emphasis added); and (3) Fla. Stat. § 895.02(8) ("any *irregularities* or fraud involving . . . issue petition activities") (emphasis added). *Id.* at ¶¶ 67, 70, 73, 102, 106, 107, 146.

Given Defendants' definitional clarifications and this Court's rulings, three vagueness challenges in the FAC have been resolved: (1) the phrase "on behalf of a sponsor" excludes organizations like the LWVFL that only promote petition efforts

(Second Prelim. Inj. Hr'g Tr. 176:17–18 (June 30, 2025), ECF No. 278; *see id.* at 246:18–24)); (2) the 25-petition requirement, which Plaintiffs challenged as vague, is applied "per initiative per cycle" (*id.* at 246:5–7, 247:4–12; Order on Mots. for Prelim. Inj. at 30, ECF No. 283); and (3) to "invalidate" a petition under Section 100.371(14)(h) means that the supervisor of elections would exclude it from "the total number of verified petitions necessary to make it on the ballot in 2026" (PI Order, ECF No. 283 at 16 n.15; *id.* at 14 n.12).

**Count IV:** Under Count IV, Plaintiffs challenge as overbroad every provision challenged in the other counts. Plaintiffs allege that these provisions regulate a substantial swath of protected speech in relation to any potentially legitimate applications, including by investigating and prosecuting minor clerical errors by volunteer petition gatherers. FAC ¶¶ 47, 55–56, 66, 70–73, 151–55.

**Count V:** Under Count V, Plaintiffs allege that the non-citizen restriction violates the Equal Protection Clause of the Fourteenth Amendment. *Id.* ¶¶ 157–64; *see also id.* ¶¶ 19, 117 (LULAC has non-citizen members who would collect petitions but for the flat ban), *id.* ¶ 90 (LWVFL has non-citizen members who collect petitions).

## I.    Plaintiffs Do Not Engage in "Shotgun Pleading"

Defendants contend that the Complaint should be dismissed because it amounts to a "shotgun pleading" in violation of Fed. R. Civ. P. 8. As even the lone

case they cite makes clear, this argument—which is premised primarily on the fact that Plaintiffs engaged in the ubiquitous practice of reincorporating and realleging factual allegations for each of their five claims—is trivial at best. Defs.' Mot. to Dismiss Pls.' Am. Compl. at 6, ECF No. 360 ("Br.").

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint only improperly engages in "shotgun pleadings" where it "fail[s] to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). Here, however, Defendants included in their brief a table delineating each count alleged in the Complaint, the claim made in each count, and the provisions of HB 1205 implicated by each. Br. at 2–4; *see also* FAC ¶¶ 40–77. That they could do so underscores the absurdity of Defendants' argument that the Complaint violates notice pleading requirements.[2] *See Carn v. Cooke, Cameron, Travis & Co., P.C.*, 2019 WL 8301975, at *5 (N.D. Ala. June 4, 2019) (rejecting shotgun pleading

---

[2] Defendants' contention that the Complaint should be dismissed *without leave to amend* because of this purported impropriety is not only ludicrous on its face; it also directly contradicts the Court's holding in *Jackson*, which made clear that "[i]n dismissing a shotgun complaint for noncompliance with Rule 8(a), a district court **must** give the plaintiff 'one chance to remedy such deficiencies.'" 898 F.3d 1348, 1358 (11th Cir. 2018) (emphasis added) (citations omitted). Indeed, and unlike in *Jackson*, Defendants did not file a motion for a more definite statement and in fact never previously raised this issue.

argument where defendant failed to "explain specifically just how or why [the defendant] might actually be confused").

In pressing their position, Defendants rely exclusively on *Jackson v. Bank of Am., N.A.*, 898 F.3d at 1356. *See* Br. at 6. But in *Jackson*, the Eleventh Circuit found the complaint deficient because it was "***nearly impossible*** . . . to determine with any certainty which factual allegations give rise to which claims for relief." 898 F.3d at 1356 (emphasis added). The operative complaint in *Jackson* looked very different than that here: *Jackson* contained only twenty-five introductory paragraphs, most of which were wholly immaterial to the claims, and then followed those up with *sixteen separate counts* comprising 100 paragraphs, each of which simply re-alleged prior paragraphs. *See* Complaint, *Jackson v. Bank of N.Y. Mellon* (S.D. Ala. 2016) (No. 16-0062-CG-M), ECF No. 17. Here, the Complaint lists only five counts—less than a third of those in *Jackson*—and the preceding factual allegations are all material to each of the five counts. *See id.* (distinguishing *Jackson* on both of these grounds); *Abrams v. CIBA Specialty Chems. Corp.*, 2008 WL 4183344, at *4 n.9 (S.D. Ala. Sep. 10, 2008). There is no substantial ambiguity concerning which allegations are applicable to which claims: the Complaint alleges each Defendant's role in the enforcement or execution of the challenged provisions of HB 1205, and the remaining allegations apply to all Defendants. *See* FAC ¶¶ 22–25.

8

## II.    Plaintiffs Have Sufficiently Alleged Standing

"To establish standing at the motion to dismiss stage, a plaintiff must allege (1) that it has suffered an injury-in-fact that is (2) traceable to the defendants and that (3) can likely be redressed by a favorable ruling." *Upside Foods, Inc. v. Simpson*, 2025 U.S. Dist. LEXIS 85699, at *6–7 (N.D. Fla. Apr. 25, 2025) (citation omitted). As demonstrated below, Plaintiffs easily satisfy these standards as to each claim. Moreover, if plaintiffs establish standing as to one plaintiff on a particular claim, the inquiry ends. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264, 264 n.9 (1977).

To successfully allege standing "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," because at this stage the court must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Dream Defs. v. DeSantis*, 553 F.Supp.3d 1052, 1076 (N.D. Fla. 2021) (Walker, J.) (citation omitted) (cleaned up). Indeed, even plaintiffs who were unable to establish standing at the preliminary injunction stage[3] may still meet the far lower bar for standing on a motion to dismiss.

---

[3] This makes sense: at the preliminary injunction stage, and particularly on an expedited timeline, a plaintiff may not have the time to flesh out the sufficient *evidentiary* showing to satisfy the heightened standard, even if it is more than able to provide "general factual allegations of injury" for purposes of surviving a motion to dismiss. *Upside Foods*, 2025 U.S. Dist. LEXIS 85699, at *7–8 (noting the difference between evidence for preliminary injunctive relief, and general factual allegations for surviving a motion to dismiss.).

*Id.* at *8. Of course, a plaintiff that establishes standing at the preliminary injunction stage by definition meets the Rule 12(b)(1) standard. *Upside Foods*, 2025 U.S. Dist. LEXIS 85699, at *7–8.

### A. Defendants' Generalized Standing Arguments with Respect to the Organizational Plaintiffs Fail

Before discussing whether the Organizational Plaintiffs have adequately pled standing to challenge specific provisions of HB 1205 (they have), Defendants suggest that LULAC and LWVFL lack standing to bring *any* such challenge. Br. at 7. They are wrong.

Defendants' argument is twofold: first, that Organizational Plaintiffs are improperly relying on what Defendants call "probabilistic standing," and second, that LULAC's allegations regarding its plans to circulate petitions are too "speculative" because LULAC has not itself circulated petitions in the past. Br. at 7 –8. However, the Court's Preliminary Injunction Order, which held that the Organizational Plaintiffs had standing and were entitled to an injunction barring enforcement of HB 1205's citizenship requirements, already disposed of both these questions in Plaintiffs' favor. ECF No. 283 at 13.

Of course, even if the Court had never issued its PI Order, Defendants' generalized standing arguments still fall short. Regarding Defendants' assertions regarding "probabilistic standing," no court has suggested that organizational plaintiffs seeking to enjoin challenged provisions must, at the motion to dismiss

stage, locate members in every county and judicial circuit. *See* Br. at 7. To the contrary, as pertains to statewide Defendants, Plaintiffs need only allege that one member was affected statewide. Defendants' citation to the Court's PI Order relies on a strange mischaracterization of this Court's holding. In the cited footnote, the Court determined that for purposes of *redressability* (not injury, the requirement with which probabilistic standing is concerned), a different Plaintiff group altogether— not the League or LULAC—was required to sue the Supervisors of Elections, which it had not yet done. *See* ECF No. 283 at 14 n.12. Plaintiffs have expressly sued both the State Attorneys and Supervisors of Elections. *See generally* FAC.

The two cases cited by Defendants do not help them. Neither was decided on a motion to dismiss, but rather on a full evidentiary record: *Georgia Republican Party* in a proceeding "analogous to a motion for summary judgment," and *Summers* after a trial on the merits. *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1201 (11th Cir. 2018) (cited in Br. at 7); *Summers v. Earth Island Inst.*, 555 U.S. 488, 499-500 (2009) (cited in Br. at 7). Indeed, the Eleventh Circuit—in a case which was decided after, and cites directly to, its decision in *Georgia Republican Party*—expressly rejected Defendants' implication that LWVFL and LULAC must "name names" to survive a motion to dismiss on Rule 12(b)(1) grounds. *See Am. Coll. of Emergency Physicians v. Blue Cross & Blue Shield of Ga.*, 833 Fed. Appx. 235, 240 n.8 (11th Cir. 2020). As the court put it, "*requiring specific names at the motion to dismiss*

11

*stage is inappropriate*." *Id.* at 241 n.8 (emphasis added). Defendants' papers make no mention of that categorical—and dispositive—holding.

In any event, neither LWVFL nor LULAC is relying on "probabilistic standing" anyway. To the contrary, both LULAC and LWVFL have specifically pled that they (1) have non-citizen members, out-of-state resident members, and, specific to LWVFL, members with felony convictions who (2) have engaged in, or have concrete plans to engage in, the circulation of petitions. FAC ¶¶ 90, 117. At the pleading stage, identifying categories of members who have been or will be harmed by the conduct at issue is more than sufficient to meet Article III's injury requirement. *See Upside Foods*, 2025 U.S. Dist. LEXIS 85699, at *8 (general allegations of standing sufficient).

As for Defendants' contention that LULAC's allegations are too "speculative" to support a claim, Br. at 8, their own cases say otherwise. In *Gale Force Roofing & Restoration v. Brown*, (cited in Br. at 8), this court explicitly recognized that standing is adequately pled by a plaintiff's allegation that it "*intends* to" engage in the "prohibited [action]." 2021 WL 4958101, at *3 (N.D. Fla. June 29, 2021) (emphasis added) (cited in Br. at 8). That is precisely what LULAC has alleged here. FAC ¶¶ 19, 114–18. *LaCroix v. Lee County* is even further afield: there, plaintiff, a street preacher challenging the constitutionality of county-sponsored ordinances barring the public at large from entering privately permitted events, failed to offer *any*

allegations that he intended to enter and speak at any such event. 819 Fed.Appx. 839, 844 (11th Cir. 2020).

Finally, Defendants half-heartedly contend that they do not understand which provisions of HB 1205 Ms. Scoon and Ms. Chandler challenge. This is a mere rehash of their risible "shotgun pleading" argument, which is dealt with in Section I, *supra*. Defendants' sole argument with respect to the Individual Plaintiffs is that Individual Plaintiffs are challenging the ban's citizenship requirement even though they are both US citizens.[4] Br. at 9. But "the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the [specific] provision of law that is challenged." *Collins v. Yellen*, 594 U.S. 220, 243 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Where—as here—there is at least "one party with standing," that "is sufficient to satisfy Article III's case-or-controversy requirement," and the Court need look no further. *See Rumsfeld v. F. for Acad. & Institutional Rts, Inc.*, 547 U.S. 47, 53 n.2 (2006).

### B. Plaintiffs Have Adequately Alleged Standing with Respect to Each of the "Specific HB 1205 Categories" Identified by Defendants in the Motion

Defendants also refer to a grab-bag of "standing-related issues" they fail to tie to any particular plaintiff or discuss in any detail. It appears that Defendants claim

---

[4] Defendants do not appear to be challenging Individual Plaintiffs' standing with respect to other provisions, nor could they. *See, e.g.*, FAC ¶¶ 20, 21, 122–24.

that both LULAC and LWVFL have failed to plead associational standing with respect to a number of provisions under HB 1205. Once again, Defendants are mistaken.

To demonstrate associational standing, organizations must plead that "[1] the interests at stake are germane to the organization[s'] purpose, and [2] neither the claim[s] asserted nor the relief requested requires the participation of individual members in the Lawsuit," as "[3] [their] members would otherwise have standing to sue in their own right." *PEN Am. Ctr.*, *Inc. v. Escambia Cnty. Sch. Bd*, 711 F.Supp.3d 1325, 1330 n.7 (N.D. Fla. 2024); *Fla. State Conf. of NAACP v. Lee*, 566 F.Supp.3d 1262, 1277 (N.D. Fla. 2021) (citation omitted).

As to the first prong, the League's core principles are centered on encouraging civic participation, increasing understanding of major policy issues, and advocating for legislative changes and policies for the public good—and it is also one of the preeminent petition circulation/collection organizations in the state of Florida. FAC ¶¶ 15–17. LULAC's mission is to advocate for Latino communities, their civil rights, and their rights to civic participation, including through ballot initiatives. *Id.* ¶¶ 18–19. The League has already been forced to stop circulating completed petitions indefinitely. *See Id.* ¶¶ 89, 105. LULAC must now forego its plan to collect signatures to support the Medicaid Initiative, stifling the core volunteer and mobilization work that is central to its mission. *Id.* ¶¶ 114–17. By directly impeding

14

Organizational Plaintiffs' work on the ballot initiative process, Defendants have undermined Organizational Plaintiffs' ability to carry out activities that further their stated purpose.

As to the second prong, the claims and relief requested do not require participation of individual members in order to benefit them. That is because if the Court grants the requested relief—i.e., if it strikes the offending provisions of HB 1205—"it can reasonably be supposed that the remedy . . . will inure to the benefit of those members of the association actually injured." *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1244 (11th Cir. 2003) (citation omitted).

As to the third and final prong of associational standing, Organizational Plaintiffs clearly allege that their members have suffered—and will continue to suffer—First Amendment harms under HB 1205's draconian regime. "[I]t is well-established that an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression to avoid enforcement consequences. In such an instance, the injury is self-censorship." *Garcia v. Stillman*, 668 F.Supp.3d 1307, 1316 (S.D. Fla. 2023). That is exactly what Plaintiffs have alleged here. FAC ¶¶ 53, 57, 58, 92, 101, 107, 143, 154 (describing the chilling effect on speech as a direct result of HB 1205); *id.* ¶¶ 107, 109, 110, 118, 154 (describing the uncertainty, fear, and intimidation experienced by members under HB 1205, preventing them from engaging in the initiative process). Plaintiffs also assert that

such restrictions are "substantially overbroad and have the effect of chilling constitutionally permissible speech," by significantly interfering with Plaintiffs' ability to rely on volunteers for petition circulation. *Id.* ¶¶ 117, 154.

These allegations are sufficient to demonstrate standing at this juncture. Defendants' arguments to the contrary as to each challenged provision fall flat.

***Nonresident, Non-citizen, and Felony Restrictions ("Petition Circulator Eligibility")***. Defendants contend that Plaintiffs' pleadings should have specifically identified non-residents, non-citizens, and felons who circulate (or plan to circulate) petitions. Br. at 9. But that is not the standard on a motion to dismiss. *See Am. College of Emergency Physicians v. Blue Cross & Blue Shield of Ga.*, 833 Fed.Appx. 235, 240 n.8 (11th Cir. 2020) (Organizational plaintiffs "need not name names to establish standing . . . [i]n other words, requiring specific names at the motion to dismiss stage is inappropriate.") (cleaned up).

Organizational Plaintiffs have alleged that certain of their members are nonresidents, non-citizens, and/or individuals with felony convictions—and that they rely on these members to collect signed petitions. *See, e.g.*, FAC ¶¶ 90, 117, 158. That suffices at this stage. *See Suncoast Waterkeeper v. City of Gulfport*, 2017 WL 1632984, at *6–7 (M.D. Fla. May 1, 2017). Defendants lean exclusively on cases decided in the context of an evidentiary hearing or on summary judgment and thus wholly inapposite here. *See League of Women Voters of Fla., Inc. v. Byrd*, 2024

WL 2668856, at *1–2 (N.D. Fla. Feb. 13, 2024) (stating summary judgment standard) (cited in Br. at 9, 11); ECF No. 283 (finding that plaintiffs lacked standing for purposes of their preliminary injunction motion) (cited in Br. at 9, 12).

*__Circulator Affidavit__*: Defendants argue that the Court already indicated that Plaintiffs do not have standing to challenge the Affidavit Provision. Br. at 9 (citing ECF No. 283). But Defendants may not rely on the Court's preliminary injunction order to argue Plaintiffs lack standing on a motion to dismiss. *See Upside Foods*, 2025 U.S. Dist. LEXIS 85699, at *6–7. Defendants also assert that the Complaint includes no factual allegations rendering plausible a challenge to this provision. This, too, is false: Plaintiffs state clearly that the affidavit requirements will "create a significant chilling effect on volunteers" due to uncertainty and will "discourage League volunteers from participating in the citizen petition process." FAC ¶ 92; *see also id.* ¶¶ 93, 95. No more is required. *League of Women Voters of Fla., Inc. v. Lee*, 566 F.Supp.3d 1238, 1248 n.4 (N.D. Fla. 2021).

*__Pre-Registration Requirement__*: Outside of a single oblique reference under a bullet point titled "Petition Circulator Eligibility," Defendants do not appear to raise any issues with Plaintiffs' standing to challenge the registration provision. *See* Br. at 9. This tactic of avoidance is a wise one given the ample allegations in the FAC that support the chilling effect of these requirements on LWVFL, LULAC, and the

Individual Plaintiffs. FAC ¶¶ 89, 91–92, 116–18, 122–23. These averments are more than sufficient at the pleading stage.

**_Ten-Day Return Time_**: Defendants contend that Plaintiffs cannot be hurt by the ten-day return provision because they are not petition sponsors. But this myopic focus on nomenclature misses the mark, as Plaintiffs have raised sufficient facts to state a plausible claim that they too will be harmed by the impact that ten-day return timeline will have on the petition process. Specifically, Organizational Plaintiffs allege they will suffer reputational injury should sponsors be forced to pay fines because Organizational Plaintiffs' volunteers have returned petitions after the deadline, as well as practical harm as sponsors forced to pay such fines seek out other partners. FAC ¶¶ 96–100.[5]

**_Criminal Provisions_**: Defendants first suggest that Plaintiffs lack standing to challenge the statute's prohibition upon retaining and copying information from a signed petition because "Plaintiffs never allege that they copy or retain _sensitive_ voter information." (emphasis added). Br. at 10. But the insertion of the word "sensitive" (which appears nowhere in the statute's applicable provision) in Defendants' brief gives away the game: those are two different propositions. Although Plaintiffs do not specifically plead that they will copy "sensitive"

---

[5] Reputational harm is a classic example of an "intangible harm" that "qualif[ies] as concrete injur[y] under Article III." _TransUnion LLC v. Ramirez_, 594 U.S. 413, 414 (2021).

information, they state that the League had planned to retain the names of petition signers and their counties of residence so as to contact voters who filled out their petition form incorrectly. FAC ¶ 106. Because such information might qualify as "personal" (the word *actually* used in the statute), and because "[t]he use of 'such as' in conjunction with 'retains personal information' [in HB 1205] is also vague and undefined," the League's belief that its "efforts to submit accurate and complete petition forms will be stymied" is certainly enough to confer standing. *Id*.

Defendants also argue that there can be no injury here because Plaintiffs "*don't* fraudulently sign or fill in missing information[.]" Br. at 10 (emphasis in original). But as Defendants' own cited case law makes clear, Plaintiffs are not required to allege that they have in the past or will in the future violate HB 1205 in order to have standing to challenge these provisions: "In the First-Amendment realm, plaintiffs do not have to expose themselves to enforcement in order to challenge a law." *Gale*, 2021 WL 4958101, at *1. Plaintiffs have adequately alleged that the "host of severe and burdensome penalties" imposed by HB 1205 are vague and overbroad, leaving Plaintiffs uncertain as to whether and when they are subject to felony liability. FAC ¶¶ 65, 69. Again, this is more than enough.

**_Fines_**: The holding in *Gale* also puts paid to Defendants' contention that because "Plaintiffs never allege that they engage in [pre-filled petitions]" (Br. at 10), they cannot be injured by the prospect of fines related to pre-filled petitions. Again,

19

however, Plaintiffs need not expose themselves to legal penalty to have standing; all they must show at this stage is a "realistic danger of sustaining direct injury as a result of the statute's operation or enforcement." *Reprod. Health Servs. v. Strange*, 204 F.Supp.3d 1300, 1316 (M.D. Ala. 2016). Here, Plaintiffs have plausibly alleged that the fines provision will harm their reputation and put the League's valuable partnerships with sponsors at risk. FAC ¶¶ 100. They have also explained why the "missing information" ban will impede their work with disabled voters and their ability to satisfy the ten-day-turnaround time. *Id.* ¶¶ 102–04. No more is required.

**<u>OECS Investigation</u>**: Defendants first claim that Plaintiffs must establish that their fear of investigation is objectively reasonable. Again, this is not the standard at the motion to dismiss stage. Rather, Plaintiffs need only plead the plausibility of these investigations' chilling effect. *Yelapi v. DeSantis*, 525 F.Supp.3d 1371, 1377 (N.D. Fla. 2021). They have done so here. *See, e.g.*, FAC ¶¶ 104, 108, 110.[6]

Defendants also ask how Plaintiffs' challenge to the mandatory investigation provision is redressable.[7] *See* Br. at 11. The answer is easy to glean from the

---

[6] Once again, the cases cited by Defendants were decided at other stages and thus have no bearing with respect to the burden on Plaintiffs at the pleadings stage. *See Wilson v. St. Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 1998) (stating inapplicable summary judgment standard) (Br. at 11); *League of Women Voters of Fla., Inc. v. Byrd*, 2023 WL 11759735, at *2 (N.D. Fla. July 11, 2023) (deciding motion for preliminary injunction) (Br. at 11).

[7] Notably, this provision appears to be the only one Defendants challenge on redressability grounds. As for traceability, Defendants remain completely silent and

Complaint. Plaintiffs have alleged that the ten-day return deadline makes it substantially more likely that they will be unable to reach a 75% validity rate, and that any failure to meet this rate will trigger a mandatory OECS investigation which stifles speech. FAC ¶¶ 108-10. Defendants' only rejoinder is that OECS separately possesses the ability to engage in an investigation even outside the scope of HB 1205, but that is wholly irrelevant: what matters is that the statute's investigation provisions *require* OECS to conduct a preliminary investigation upon a referral from a supervisor of elections. FAC ¶ 75. This turns the ever-present possibility of an investigation into a certainty should Plaintiffs fail to clear the statutory threshold—an injury which could surely be redressed by eliminating that provision.

### C.    LWVFL and LULAC Have Also Sufficiently Pled Organizational Standing

Although Defendants are silent on the topic, the Court may find standing for Organizational Plaintiffs on the alternative ground that they have alleged organizational standing.[8] The test is a permissive one: an organization has standing so long as the challenged law affects the organization in any tangible way—for

---

thus concede that Plaintiffs' allegations are sufficient to satisfy standing's third prong across the board.

[8] The Court heard evidence at the PI hearing on Plaintiffs' ability to establish diversion of resources. *See, e.g.*, Ex. A, LWVFL Decl. ¶¶ 26, 45–48, ECF No. 174-1; Ex. B, LULAC Decl. ¶¶ 24, 26, 36, ECF No. 174-2; Chandler Decl. ¶ 35, ECF No. 174-3. Accordingly, should the Court find that amendments to the Complaint are appropriate, Plaintiffs could easily add further factual allegations in support of organizational standing which are in many cases already in the record.

example, if the law "impedes [the organization's] ability to attract members, to raise revenues, or to fulfill its purposes," or requires the organization to divert resources. *Fla. State Conf. of NAACP*, 566 F.Supp.3d at 1277 (citation omitted). As the Complaint makes clear, HB 1205's provisions strike at the heart of Organizational Plaintiffs' core mission, preventing them from fulfilling their stated purpose of democratic advocacy on behalf of their members. *See id.* The new statute has reduced both LWVFL and LULAC's pool of volunteers, FAC ¶¶ 91–92, 117–18, and forced Organizational Plaintiffs to divert substantial resources to ensuring both their own compliance with HB 1205 (potentially including conducting costly criminal background checks on each of its members) and to training and guiding members through each step of an extensive registration process. *See* FAC ¶¶ 41, 46, 89, 93. These allegations are independently sufficient to demonstrate standing at the pleading stage. *See PEN Am. Ctr., Inc.*, 711 F.Supp.3d at 1330 n.8.

## III.   Plaintiffs Plead Valid Causes of Action Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), "[a]t the pleading stage, all a plaintiff must do is provide a short and plain statement of the claim showing that the pleader is entitled to relief . . . [the court does] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*, 2025 WL 2253935 at *4 (11th Cir. Aug. 7, 2025) (cleaned up). The court must accept the

allegations in the complaint as true and construe them in the light most favorable to plaintiffs. *Id.* at *3.

Here, Defendants' 12(b)(6) superficial and underdeveloped arguments overlook the numerous detailed factual allegations backing each of Plaintiffs' claims. Defendants erroneously rely throughout on this Court's decision to deny Plaintiffs' preliminary relief as a basis for granting the motion to dismiss. For a preliminary injunction, Plaintiffs had the burden of introducing evidence sufficient for the Court to find that Plaintiffs were substantially likely to prevail on the merits. ECF No. 283 at 2. In contrast, Defendants' Motion here must be denied if Plaintiffs' general factual allegations, accepted as true, state a claim.

### A.   Plaintiffs Plead a Valid First Amendment Political Speech Claim (Count I)

Defendants concede the sufficiency of the FAC's factual allegations regarding whether the categorical ban on non-residents and non-citizens circulating petitions violates Plaintiffs' members' First Amendment rights to political speech. Br. at 11. Nor do Defendants challenge the chilling effect claim as to individuals with felony convictions serving as petition circulators.

Citing the Court's ruling against Plaintiffs on their motion for preliminary injunction, Defendants first argue that the FAC "itself is devoid of factual

allegations" to make a plausible claim that the volunteer registration provisions "touch speech." Br. at 12.[9]

Defendants' reliance on the Court's preliminary injunction ruling is a not a sufficient basis for dismissal given that the Court only ruled that Plaintiffs had not proven their case "at this juncture." ECF No. 283 at 29, 30. Moreover, Plaintiffs sufficiently allege that the pre-registration requirements will chill their members' speech, *i.e.*, having to submit registration applications for each petition, undergo mandatory training, and disclose sensitive personal information, each burdens members' collection of initiative petitions, which is undisputably speech. The complaint further alleges these burdens deter Plaintiffs' members from even becoming petition circulators and create fears regarding privacy invasions, effectively chilling protected political speech. FAC ¶¶ 40, 53, 91, 118.

Defendants next take aim at the affidavit provisions, and posit only that these provisions "don't violate the First Amendment" because the Supreme Court in *Buckley v. American Constitutional Law Foundation, Inc.* purportedly "approved" such provisions. 525 U.S. 182 (1999); Br. at 12. However, Defendants mischaracterize *Buckley. Buckley* noted that Colorado had a requirement that

---

[9] Defendants characterize this provision as "petition circulator eligibility provisions concerning volunteer circulators." Plaintiffs assume that this is referring to the requirement that volunteers collecting more than 25 signed petitions from non-family members register as circulators.

required circulators to complete an affidavit before they turned over completed forms. The affidavit could be completed after the circulator had engaged with the voter. This requirement had been unsuccessfully challenged below but was not before the Supreme Court. *Buckley*, 525 U.S. at 198–99. The requirement that was squarely before the Supreme Court in *Buckley* and that the Court found unconstitutional was that the circulator wear a badge with their name. The important distinction, and what created the First Amendment violation, is that the circulators must "reveal their identities at the same time they deliver their political message." *Buckley*, 525 U.S. at 199. The same is true of HB 1205's affidavit provision.

Defendants also contend that the First Amendment political speech claims relating to the 10-day requirement and the fines should be dismissed because the Court ruled against Plaintiffs on the motion for preliminary injunction. Br. at 12. Again, Defendants conflate the preliminary injunction standard with that governing a motion to dismiss. The proper inquiry here is whether Plaintiffs have alleged facts supporting their contention that the 10-day and fines provisions chill core political speech—which they have done. FAC ¶¶ 83, 96–100, 113.

Finally, Defendants seek to dismiss Plaintiffs' claims regarding the criminal penalties and OECS investigation provisions. Br. at 12. As the complaint clearly alleges, these provisions effectively bar Plaintiffs' members from participating in petition collection—themselves acts of core political speech—altogether. FAC ¶¶

25

101–02, 104–12, 124. Rather than address these allegations head-on, Defendants again misapply *Buckley* in arguing that the "punitive provisions are part of the State's 'arsenal of safeguards' that comply with the First Amendment." Br. at 12. But *Buckley* does not say that the State's interest in safeguarding the ballot initiative process always justifies restrictions. It holds the opposite—it struck down three provisions Colorado placed on the ballot-initiative process, despite that interest. 525 U.S. at 186–87.

### B.    Plaintiffs Plead a Valid Freedom of Association Claim (Count II)

Defendants' argument with respect to Count II—that Plaintiffs' associational claim "doesn't add anything to the mix" and is "virtually indistinguishable" from Count I, Br. at 12–13 —not only fails to articulate any grounds for dismissal, but also ignores Plaintiffs' well-pled allegations and flies in the face of fundamental principles of constitutional law.

First, Plaintiffs raise specific, standalone allegations challenging HB 1205's violation of their associational rights that go beyond mere duplication of their speech claims. *See, e.g.*, FAC ¶¶ 90, 92, 94. They explain that the provisions of HB 1205 not only restrict speech but also restrict the ability of people to join together and participate in direct democracy. FAC ¶ 143. "Effective advocacy of both public and private points of view . . . is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the

26

freedoms of speech and assembly." *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). Second, the freedom of association is distinct from a "literal conception of freedom of speech, petition, or assembly." *NAACP v. Button*, 371 U.S. 415, 430 (1963). And there can be no doubt that Plaintiffs raise a cognizable claim under it. *See supra* Section III.B. Defendants' cited cases do not say otherwise and are, at any rate, inapplicable. *See Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1216–17 (11th Cir. 2009) (articulating plaintiffs' burden at preliminary injunction stage); *Biddulph v. Mortham*, 89 F.3d 1491, 1500 n.10 (11th Cir. 1996) (expressly noting that plaintiff did not raise a freedom of association claim).[10]

## C. Plaintiffs Plead a Legally Cognizable Vagueness Claim (Count III)

Defendants' arguments for dismissal of Plaintiffs' vagueness claims similarly fall flat. To start, Defendants cite no legal precedent whatsoever. *See* Br. at 13–15. All that Defendants do is raise conclusory assertions that the challenged provisions are clear on their face because the State says so. This is not enough. At this stage, all a plaintiff must plead is that the language in a statute is so vague that "those who enforce or those who are subject to its enforcement must necessarily guess at its

---

[10] Defendants also contend that the *Anderson-Burdick* balancing test should not apply to this claim. Br. 13. What test applies is not an issue to be resolved on a motion to dismiss.

meaning and differ as to its application." *Fla. Action Comm., Inc. v. Seminole Cnty.*, 212 F.Supp.3d 1213, 1224 (M.D. Fla. 2016) (cleaned up).

Plaintiffs here more than adequately allege the same types of deficiencies recognized by courts as the hallmarks of vagueness. They allege that HB 1205's provisions leave them to "speculate at their own peril as to what conduct is prohibited or permissible," FAC ¶ 148, and explain the impermissible ambiguities in each challenged provision. FAC ¶¶ 69–73, 149. Plaintiffs summarize each of the allegations of vagueness below:

- *Fills in Missing Information*. The statute does not define "missing information," thus leaving Plaintiffs to guess whether they would be subject to felony liability if they "help[] a blind or disabled voter to correct a date or add a missing county." FAC ¶ 70.

- *Copies or retains*. The Law does not define what it means to "retain" a voter's personal information, or "specify how long a volunteer may possess personal information" before it is deemed "retain[ed]." FAC ¶ 71. And "for any reason other than to provide such information to the sponsor," leaves an open question about whether a volunteer can still retain a voter's petition form if they plan to simply turn in the form directly to the supervisor, rather than to the sponsor. FAC ¶ 72.

- *Irregularities*. The FAC alleges that this term could mean "any deviation from standard procedures, including unintentional mistakes, minor administrative errors, or technical violations that do not involve criminal intent." FAC ¶ 73. Defendants do not contest that this provision is vague.

Plaintiffs' allegations are similar to those in *Florida Action Committee*, where the court denied a motion to dismiss because the challenged ordinance failed to identify with specificity where it applied, contained criminal penalties without a scienter requirement, and invited arbitrary enforcement. 212 F.Supp.3d at 1214–25. As described, Plaintiffs here plead parallel—and even more detailed—facts: they identify multiple undefined phrases (e.g., "for any reason other than to provide such information to the sponsor," "retain" a voter's personal information," "irregularities") that are facially unclear; they describe conflicting potential interpretations that replicate the "guess at its meaning" problem condemned in *Florida Action Committee*; and they identify draconian criminal penalties without a scienter requirement. 212 F.Supp.3d at 1224. Accordingly, Plaintiffs have adequately pled facts to survive dismissal. *See, e.g.*, *Id.* at 1223–24 ("[I]t is enough at the pleading stage for the plaintiff to allege sufficient factual material to allow the Court to reasonably infer that the contested law is unconstitutionally vague."); *Dream Defs.*, 553 F.Supp.3d at 1097 (same).

29

### D.    Plaintiffs Plead a Legally Cognizable Overbreadth Claim (Count IV)

Defendants next seek to dismiss Plaintiffs' overbreadth claim. A law is overbroad under the First Amendment when "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (citation omitted). Courts have found that it is premature to address overbreadth at the 12(b)(6) stage because courts typically need a factual record, not just allegations, to assess how much a regulation captures protected speech compared to legitimate subjects of regulation. *See e.g.*, *Bruni v. City of Pittsburgh*, 824 F.3d 353, 374 (3d Cir. 2016) (reversing dismissal on overbreadth because it was premature); *McAllister v. Clark Cnty.*, 746 F.Supp.3d 918, 940 & n.124 (D. Nev. 2024) (denying motion to dismiss on overbreadth as premature while denying plaintiffs' motion for preliminary injunction on overbreadth) (collecting cases); *DeVito v. Palm Beach County*, 2023 WL 6407224, at *8 (S.D. Fla. Oct. 2, 2023) ("clearly premature" to resolve First Amendment overbreadth claim at motion to dismiss stage). Defendants assert that Plaintiffs do not allege facts to support a claim under this standard. Br. at 16. This is incorrect. As described above, Plaintiffs' FAC explains how the challenged provisions regulate protected speech, and these alleged infringements make up a substantial part of the provisions' applications. FAC ¶¶ 54, 90, 91, 94 (Definition, Affidavit, Registration, and Personal Use Restriction), ¶¶ 65–73, 96–

107 (Vague Criminal Penalties), ¶¶ 62–63 (10-day return), ¶¶ 74–76, 108–12 (Investigations); ¶ 113 (Fines), ¶¶ 47–48, 90 (Eligibility Requirements).

Instead of identifying any valid applications of HB 1205, Defendants claim that it was *Plaintiffs'* duty to formulate potentially valid applications of the law. The cases Defendants cite to support this novel proposition, however, say no such thing. *See Yellowhammer Fund v. Marshall* 733 F. Supp. 3d 1167, 1198 (M.D. Ala. 2024) (dismissing overbreadth claim where complaint contained no "factual contentions or legal arguments aside from the allegations and arguments underlying the as-applied challenge"); *Alabama State Conf. of NAACP v. Marshall*, 746 F.Supp.3d 1203, 1242 (N.D. Ala. 2024) (holding that statute "regulate[d] conduct . . . not any speech associated with the prohibited conduct.").

Here, by contrast, Plaintiffs have plausibly alleged that HB 1205 regulates speech, not conduct, *see supra* at III.A, and the Court has found that HB 1205 regulates core political speech. ECF No. 189 at 18–19. Plaintiffs need not do Defendants' job for them and affirmatively allege what valid applications of the law may exist to satisfy the 12(b)(6) pleading standard.

### E.    Plaintiffs Allege a Cognizable Equal Protection Claim (Count V)

Count V alleges that LWVFL and LULAC have members and rely on volunteers who are non-citizens to help in petition gathering and that the ban in HB 1205 on non-citizens serving as circulators violates the Equal Protection Clause.

31

FAC ¶¶ 156–64. This Court has already granted a preliminary injunction on the non-citizen ban because it violates the First Amendment.

Nonetheless, Defendants have moved to dismiss Count V, arguing that this restriction falls within the "political function exception." Br. at 17. That exception has no applicability here. The lead case Defendants rely upon, *Bernal v. Fainter*, does not advance their cause. 467 U.S. 216 (1984). In *Bernal*, the Court reiterated that "[a]s a general matter, a state law that discriminates based on the basis of alienage can be sustained only if it can withstand strict judicial scrutiny. 467 U.S. at 219. The Court stated that there was a "narrow" political function exception to the general rule for important "elective and nonelective" government positions "whose operations go to the heart of representative government." *Id.* at 221 (quotation omitted).

Here, petition circulators are not "positions whose operations go to the heart of representative government." They are more like notaries, which fall outside of the exception as held in *Bernal*. *Id* at 222–27.[11] Similarly, like *Florida NAACP v. Byrd*,

---

[11] Defendants acknowledge that "non-citizens who work for the government may collect and handle sensitive voter information," Br. at 18, but try to distinguish them on the grounds that these employees must undergo background checks to determine that they are lawfully in the United States. However, even if *Bernal* applied to non-governmental employees like the volunteers here, it would not help Defendants' case. If the legislature wished to simply bar non-citizens without lawful status from petition circulation, it could have simply narrowed the non-citizen ban to that specific class.

where this Court rejected the argument that the political function exception applies to third party voter registration organizations, volunteer petition circulators cannot "participate directly in the formulation, execution, or review of broad public policy." 680 F.Supp.3d 1291, 1312 (N.D. Fla. 2023). Thus, the appropriate test is strict scrutiny.

Defendants cite two cases involving a different context—a ban on financial contributions to political campaigns—where defendants satisfied strict scrutiny. Br. at 17 (citing *OPAWL v. Yost,* 118 F.4th 770 (6th Cir. 2024)); *Bluman v. FEC*, 800 F.Supp.2d 281 (D.D.C. 2011). But the narrow tailoring component of strict-scrutiny analysis is "rigorous and fact-intensive," and therefore unsuited to a motion to dismiss. *See Bruni v. City of Pittsburgh*, 824 F.3d 353, 374 (3d. Cir. 2016). The non-citizen ban therefore fails strict scrutiny and violates the Equal Protection Clause.

## CONCLUSION

For these reasons, this Court should deny Defendants' Motion to Dismiss.

Dated: August 26, 2025                    Respectfully submitted,

                                          */s/ George Mastoris*
                                          GEORGE MASTORIS**

                                          GEORGE E. MASTORIS**
                                          gmastoris@winston.com
                                          TYLER DATO**
                                          tdato@winston.com

33

MATTHEW OLSEN*
molsen@winston.com
SAMANTHA OSAKI*
sosaki@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (202) 294-6700

POOJA CHAUDHURI
pooja@statedemocracydefenders.org
SPENCER KLEIN**
spencer@statedemocracydefenders.org
SOFIA FERNANDEZ GOLD**
sofia@statedemocracydefenders.org
NORMAN EISEN**
norman@statedemocracydefenders.org
TIANNA MAYS (pro hac vice forthcoming)
tianna@statedemocracydefenders.org
DEMOCRACY DEFENDERS FUND 600
Pennsylvania Ave. SE, Suite 15180
Washington, DC 20003 T
Telephone: (202) 594-9958

GERALD E. GREENBERG
Florida Bar No. 440094
ggreenberg@gsgpa.com
SHANE GRANNUM
Florida Bar No. 1055050
sgrannum@gsgpa.com
GELBER SCHACHTER & GREENBERG,
P.A. One Southeast Third Avenue,
Suite 2600 Miami, FL 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

*Pro hac vice applications forthcoming
** Pro hac vice granted
Counsel for Intervenor-Plaintiffs

34

## <u>LOCAL RULE 7.1(F) CERTIFICATION</u>

The undersigned certifies that this memorandum complies with word limits set forth in N.D. Fla. Loc. R. 7.1(F), and contains 7,808 words which includes the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

*/s/ George Mastoris*
GEORGE MASTORIS**
gmastoris@winston.com

*** Pro hac vice granted*
*Counsel for Intervenor-Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 26, 2025, I electronically filed the foregoing through the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ George Mastoris*
GEORGE MASTORIS**
gmastoris@winston.com

*** Pro hac vice granted*
*Counsel for Intervenor-Plaintiffs*