# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

| | |
|---|---|
| FLORIDA DECIDES HEALTHCARE, INC., et al., *Plaintiffs/Intervenor-Plaintiffs*, <br><br> v. <br><br> CORD BYRD, in his official capacity as Secretary of State of Florida, et al., *Defendants/Intervenor-Defendant*. | No. 4:25-cv-211-MW-MAF |

# THE SECRETARY AND ATTORNEY GENERAL'S SUMMARY JUDGMENT MOTION AGAINST THE FLORIDA DECIDES HEALTHCARE PLAINTIFFS

1

## Memorandum

The Secretary and Attorney General move for summary judgment against the Florida Decides Healthcare Plaintiffs' challenges to House Bill 1205. Plaintiffs lack standing for a number of their challenges. As for the challenges themselves, they're mostly legal arguments that fail as a matter of law. Otherwise, the challenges lack the evidence necessary to overcome summary judgment.

The State's motion should therefore be granted.

## Background

**A.** Plaintiffs challenge a number of categories of House Bill 1205 provisions. Their challenges break down like this:

| Count | Claim | Challenged Provisions |
|---|---|---|
| Count One | First Amendment Political Speech | **Petition Circulator Eligibility** provisions for non-residents, non-citizens, volunteers, and felons<br><br>**Ten-Day Return Time** provisions<br><br>**Fines** provisions<br><br>**Criminal** provisions<br><br>**Petition Completion** provisions<br><br>**Verification** provisions |
| Count Two | Free Association | **Petition Circulator Eligibility** provisions for non-residents, non- |

| | | |
|---|---|---|
| | | citizens, volunteers, and felons<br><br>**Ten-Day Return Time** provisions<br><br>**Fines** provisions<br><br>**Criminal** provisions<br><br>**Petition Completion** provisions<br><br>**Verification** provisions |
| Count Three | Overbreadth | **Petition Circulator Eligibility** provisions for non-residents, non-citizens, volunteers, and felons<br><br>**Criminal** provisions |
| Count Four | Vagueness | **Criminal** provisions (minus section 104.185(2)) |
| Count Five | Equal Protection | **Verification** provisions |

Note that the State uses the naming conventions from its two preliminary injunction responses and motion to dismiss. This is for the sake of uniformity. Relatedly, it's because the five complaints before this Court use five different naming conventions.

Here, Plaintiffs' naming conventions mostly align with the State's. But, for the sake of clarity, note that:

- Plaintiffs' "petition circulator eligibility" and "volunteer circulator registration" categories are subsumed in the **Petition Circulator Eligibility** categories.

3

- **Criminal** provisions remain the same, and include the racketeering definition, retention prohibition, and prohibitions on fraudulently signing or filling in missing information on completed petitions.

- Plaintiffs' "fines" provisions are split between the **Ten-Day Return Time** category (for delivery fines) and **Fines** category (for everything else, like fines for pre-filling forms and fraudulently signing and filling in missing information).

There are a few new categories in the most recent complaint. They include the **Petition Completion** provisions (what Plaintiffs call "voter PII disclosures"), which require voters to fill in their name, address, and other information on a petition. Fla. Stat. § 100.371(3)(c). And the **Verification** provisions concern the supervisors' costs to verify signed petitions and costs to mail voters notice that their signatures were used on signed petitions. *E.g.*, Fla. Stat. § 100.371(14)(f).

**B.** It's undisputed: there's petition fraud in Florida's citizen-initiative process. The Office of Election Crimes and Security documented instances of fraud during the past two years. Doc.470-1; Doc.470-2; Doc.470-3. Its reports were sent to the Florida Legislature. The reports' findings were referenced and incorporated into HB1205's legislative facts. *E.g.*, Fla. HB1205 ll.234-357. In brief, the reports detail:

- Thousands of untimely submitted petitions, resulting in tens of thousands of dollars in fines. Doc.470-2 at 11; Doc.470-3 at 16.
- Circulators fraudulently filling out petitions and forging signatures. Doc.470-1 at 9-11.
- Circulators filling in information on signed petitions. Doc.470-1 at 9.
- Circulators arrested for identity theft. Doc.470-2 at 6.

4

- Out-of-state circulation entities stonewalling law enforcement's investigations of petition fraud. Doc.470-1 at 7-8.
- Circulators facing fraud charges in other states. Doc.470-1 at 8.
- Non-citizens arrested for violating Florida's election laws. Doc.470-1 at 26.

Problems with non-citizen, non-resident, and volunteer circulators are particularly acute. Non-citizens, by being non-citizens, are "difficult to locate and investigate," given their ties to other countries. Doc.470-4 at 6. The same is true for non-residents, so much so that petition sponsors' "practice of hiring out-of-state companies for the signature gathering process significantly hampers the State's ability to investigate and prosecute election crimes related to initiative petitions." Doc.470-4 at 4 (detailing an instance). Despite this, there are "open" investigations of non-resident circulators suspected of committing fraud, Doc.470-4 at 5, Doc.470-7 at 2, and recently, two circulators have been arrested for petition fraud, Doc.470-5 at 1-2, Doc.470-6 at 1, Doc.470-7 at 1-2. All of these issues are magnified for volunteer circulators, who don't provide any registration or contact information to the State or petition sponsors. Law enforcement is also aware of Smart & Safe volunteers who were flagged for potentially committing fraud. Doc.470-4 at 5-6.

## **Legal Standard**

Summary judgment is appropriate when material facts aren't in dispute and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment for the defendant is also appropriate when the plaintiff hasn't presented

5

evidence to support his claims. *E.g.*, *Briggs v. Michaels Stores, Inc.*, 8:24-cv-378, 2024 U.S. Dist. LEXIS 221879, at *2 (M.D. Fla. Dec. 9, 2024) ("A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case.").

## Argument

Summary judgment is appropriate. Plaintiffs haven't established standing as to some of their challenges against HB1205. Regardless, for most of Plaintiffs' challenges, they fail as a matter of law, or lack the evidence needed to overcome summary judgment.

### A. Plaintiffs Lack Standing for Many of Their Challenges.

Below are Plaintiffs' standing issues for several HB1205 challenges.

- **Petition Circulator Eligibility.** As a reminder, these provisions affect non-residents, non-citizens, volunteers, and felons. Aside from non-residents, like Mr. Simmons, Plaintiffs don't "identify a single member" or circulator who's a non-citizen, volunteer, or felon "who had collected or handled" petitions "in the past and planned to do it now but for the challenged" HB1205 "provision[s]." *League of Women Voters of Fla., Inc. v. Byrd*, 4:23-cv-216, 2024 U.S. Dist. LEXIS 93765, at *13 (N.D. Fla. Feb. 13, 2024). Nor have Plaintiffs shown that these individuals circulate petitions in every county and every judicial circuit.

- **Criminal.** Aside from the racketeering definition, the provisions in this category: (1) prevent retaining or copying information from a signed petition; and (2) prevent fraudulently signing or filling in missing information from completed petitions.

    In the complaint, Plaintiffs neither allege that they retain information from signed petitions, nor fraudulently sign or fill in missing

6

information. Nor have Plaintiffs produced any evidence that suggests otherwise.

- **Fines.** Again, HB1205 imposes fines for (1) fraudulently signing or filling in missing information from completed petitions; (2) violating the **Ten-Day Return Time** provision; and (3) sending voters pre-filled petitions.

    In the complaint, Plaintiffs neither allege that they fraudulently sign or fill in missing information, nor send voters pre-filled petitions. Nor have Plaintiffs produced any evidence that suggests otherwise.

- **Petition Completion.** This provision requires *voters* to put information on a petition form, like their name, address, and identifying information.

    The problem for Plaintiffs is that none of them fall within this provision's ambit. Mr. Simmons, as a Missouri resident and non-Florida voter, isn't impacted by this provision. He can't sign the form and disclose information. Mr. Emerson "already signed a petition in support of the proposed Amendment," Doc.413 ¶ 21, and likely signed the older version of the petition form, which didn't require as much information from voters. Florida Decides Healthcare, of course, isn't a voter and can't fill out petitions. Nor have Plaintiffs specifically identified voters who want to sign their petitions—but for these provisions.

In short, Plaintiffs have some standing issues.

**B.    Plaintiffs' Challenges Fail.**

Standing aside, Plaintiffs' challenges still fail.

**1. Count One (Political Speech).** Plaintiffs contend that several HB1205 categories—the **Petition Circulator Eligibility**, **Ten-Day Return Time**, **Fines**, **Criminal**, **Petition Completion**, and **Verification** provisions—violate the First Amendment's protections for political speech. That simply isn't so.

7

The Eleventh Circuit recently determined that the **Petition Circulator Eligibility** provisions for non-citizens and non-residents likely don't violate the First Amendment: "H.B. 1205's residency and citizenship requirements do not restrict any speech elements of the petition-circulation process." *Fla. Decides Healthcare, Inc. v. Fla. Sec'y of State*, 25-12370, 2025 U.S. App. LEXIS 23431, at *14 (11th Cir. Sept. 9, 2025).

The same would be true for the volunteer provisions. Like the non-citizen and non-resident provisions, the volunteer provisions don't "bar" volunteers "from distributing petition forms to Florida voters, or from otherwise engaging those voters in informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues." *Id.* at *15 (cleaned up). This Court reached a similar decision during the second round of preliminary injunction briefing: "Plaintiffs have not demonstrated, at this juncture, that the registration requirements pose an impermissibly severe burden on speech." Doc.283 at 30. Plaintiffs haven't presented any new evidence that undercuts that decision.

As for the **Ten-Day Return Time** and **Fines** provisions, at the preliminary injunction stage, this Court already held that such provisions survive First Amendment scrutiny. Doc.189 at 22. Plaintiffs haven't produced any evidence that contradicts that decision.

Nor do the **Criminal** provisions violate the First Amendment. After all, no political speech is implicated when someone fraudulently signs or fills in a petition, copies a driver's license or social security number, or engages in voter misconduct and

8

irregularities. HB1205's punitive provisions are part of the State's "arsenal of safeguards" that comply with the First Amendment. *Buckley v. Am. Const. L. Found.*, 525 U.S. 182, 205 (1999). And "[t]he newly enacted provisions of HB 1205 will assist" the Office of the Attorney General "in prosecuting violations of Florida's election code by enabling law enforcement to locate, investigate, and interview petition circulators who engage in fraudulent practices." Doc.470-7 at 2.

The **Petition Completion** provisions touch no speech. Plaintiffs haven't established that any specific voters were deterred from signing their petition due to these provisions. That's for good reason: dictating how governmental forms are to be filled out is part of the "state's power to regulate the initiative process in general." *Biddulph v. Mortham*, 89 F.3d 1491, 1498 n.7 (11th Cir. 1996). Plus, there's no First Amendment right to petition-signing secrecy. *Doe v. Reed*, 561 U.S. 186, 199 (2010).

For that matter, the **Verification** provisions don't infringe on political speech. Plaintiffs' allegations only "go[] so far to show that the process" of petition verification "has become more expensive and less efficient." Doc.189 at 21. The Eleventh Circuit already rejected this line of argument:

> Biddulph solely contends that Florida's process is burdensome because it is unpredictable and imposes unnecessary costs on initiative sponsors. But the Constitution does not require Florida to structure its initiative process in the most efficient, user-friendly way possible. The facts and arguments presented here do not require us to apply strict First Amendment scrutiny to Florida's initiative process.

*Biddulph*, 89 F.3d at 1500-01. Tellingly, Plaintiffs *didn't* allege (and haven't proven) that they *couldn't* cover the supervisors' verification costs. At most, they said that they "may be unable to meet" an "enormous expenditure." Doc.413 ¶ 160.

Nor are the **Verification** provisions "content-based" regulations, as Plaintiffs contend. A content-based regulation of speech turns on the "topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). It "draws distinctions based on the message a speaker conveys." *Id.*

Florida law makes no content-based distinctions. Verification costs don't turn on ideas or messages. Say that a group wants to enshrine a right to smoke. That group's content—its message about smoking—doesn't dictate the verification costs. Instead, if the group goes through a *local* referendum, it's subject to one cost formula, and if it goes through the citizen-initiative process for the *state* constitution, it's subject to another cost formula. The distinction turns on something other than content.

And rational reasons support the distinction Florida makes between local referenda and citizen initiatives. The State's Office of Election Crimes and Security reports detail concerns about the citizen-initiative process. HB1205 also requires supervisors to engage in more anti-fraud measures for citizen-initiatives such as notifying voters, through the mail, that petitions were signed in their name. Fla. Stat. § 100.371(14)(e). These additional steps, among other things, explain the difference in cost. Put another way, the law being challenged includes the more-than-rational reasons for the distinctions.

10

Summary judgment should be granted on count one.

**2. Count Two (Association).** Plaintiffs' First Amendment association claim doesn't add anything to the mix. It's virtually indistinguishable from their First Amendment political speech claim. Both claims involve allegations of circulators interacting with voters, and circulators interacting with the named plaintiffs. Plaintiffs' associational concerns can therefore be advanced in their political speech claim. *See, e.g., Citizens for Police Accountability Pol. Comm. v. Browning*, 572 F.3d 1213, 1217 n.6 (11th Cir. 2009) ("Plaintiffs contend that the Florida statute also infringes some on their First Amendment right to engage in political association. But even if true, the additional infringement has no material affect on the analysis otherwise applicable here; so we discuss it no further.").

To the extent that Plaintiffs assert that *Anderson-Burdick* balancing applies to the standalone free associational claim, the Eleventh Circuit already rejected that approach in citizen-initiative cases. *Biddulph*, 89 F.3d at 1500 n.10. After all, "the Constitution contains no universal 'cost-benefit balancing' provision." *Lichtenstein v. Hargett*, 83 F.4th 575, 593 (6th Cir. 2023).

**3. Count Three (Overbreadth).** Plaintiffs argue that the **Petition Circulator Eligibility** and **Criminal** provisions are overly broad. To establish a facial overbreadth claim, a plaintiff must establish that a law "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *United States v. Hansen*, 599 U.S. 762, 770 (2023) (cleaned up). In other words, the plaintiff must present a "lopsided ratio"—

11

identifying unconstitutional applications of the law, compared to constitutional applications. *Id.*

Plaintiffs don't, and can't, do that. The **Petition Circulator Eligibility** provisions and **Criminal** provisions only regulate conduct, not speech. *See Fla. Decides Healthcare*, 2025 U.S. App. LEXIS 23431, at *19 (cleaned up, so stating for the non-citizen and non-resident provisions). It's extremely doubtful that the provisions are even "expressive conduct." *See id.* Regardless, Plaintiffs haven't presented a lopsided ratio, showing constitutional applications of the provisions being outweighed by unconstitutional applications.

**4. Count Four (Vagueness).** Plaintiffs contend that the **Criminal** provisions—concerning the racketeering definition and retention provision—are vague.

Putting aside the racketeering definition, the retention provision isn't vague. It's clear: it prevents "a person collecting petition forms on behalf of a sponsor of an initiative petition" from copying or retaining sensitive information on a completed petition, like "the voter's Florida driver license number, Florida identification card number, social security number, or signature."

Even so, Plaintiffs rely on the preliminary injunction decision in *NAACP v. Byrd*, which dealt with Senate Bill 7050's retention provision. 680 F. Supp. 3d 1291, 1320 (N.D. Fla. 2023); Doc.413 ¶ 142. But that decision was vacated after the final order on the merits. 4:23-cv-215, Doc.345 at 26-27 (N.D. Fla. Aug. 8, 2025).

As such, Plaintiffs' vagueness challenge against the retention provision fails as a matter of law.

**5. Count Five (Equal Protection).** Finally, Plaintiffs argue that the **Verification** provisions violate the Equal Protection Clause. Plaintiffs contend that these provisions create disparate treatments between petition sponsors, on one hand, and candidates seeking to appear on the ballot by petition and sponsors of local referenda, on the other hand.

Plaintiffs' claim doesn't work. If a law "neither burdens a fundamental right nor targets a suspect class," it "will" be "uph[e]ld" "so long as it bears a rational relation to some legitimate end." *United States v. Skrmetti*, 145 S. Ct. 1816, 1828 (2025) (cleaned up). Here, the provisions should be upheld.

There's no burden on fundamental rights. In this case, Plaintiffs have no fundamental right to low-cost verification. *Biddulph*, 89 F.3d at 1500-01 ("the Constitution does not require Florida to structure its initiative process in the most efficient, user-friendly way possible").

Nor is "state petition sponsor" a suspect class, like race.

Rational basis applies and is met for the reasons explained in count one's content-regulation discussion. Summary judgment should be granted on this claim.

## Conclusion

For these reasons, the State's motion should be granted.

Dated: September 30, 2025

JAMES UTHMEIER
  *Attorney General*

/s/ William H. Stafford III
William H. Stafford III
  SPECIAL COUNSEL
Sara E. Spears
  ASSISTANT ATTORNEY GENERAL
Complex Litigation Division
OFFICE OF THE ATTORNEY GENERAL
PL-01, The Capitol
Tallahassee, Florida 32399
(850) 414-3785
William.Stafford@myfloridalegal.com
Sara.Spears@myfloridalegal.com
ComplexLitigation@myfloridalegal.com

*Counsel for Florida Attorney General*

Respectfully submitted,

Ashley Davis (FBN 48032)
  General Counsel
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough Street
Tallahassee, Florida 32399
(850) 245-6511
Ashley.davis@dos.fl.gov

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
Michael Beato (FBN 1017715)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St. Suite 500
Tallahassee, Florida 32301
(850) 270-5938
mjazil@holtzmanvogel.com
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com

*Counsel for the Secretary*

**Local Rules Certifications**

As required by Local Rule 5.1, 7.1, and 56.1, I certify that this motion contains 2,593 words and complies with this Court's word count, spacing, and formatting requirements.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

**Certificate of Service**

I certify that on September 30, 2025, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil