# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

FLORIDA DECIDES HEALTHCARE, INC., et al.,

*Plaintiffs/Intervenor-Plaintiffs*,

v.

No. 4:25-cv-211-MW-MAF

CORD BYRD, in his official capacity as Secretary of State of Florida, et al.,

*Defendants/Intervenor-Defendant.*

# THE SECRETARY AND ATTORNEY GENERAL'S SUMMARY JUDGMENT MOTION AGAINST THE LEAGUE OF WOMEN VOTERS PLAINTIFFS

1

## Memorandum

The Secretary and Attorney General move for summary judgment against the League of Women Voters Plaintiffs' challenges to House Bill 1205. Plaintiffs lack standing for a number of their challenges. As for the challenges themselves, they're mostly legal arguments that fail as a matter of law. Otherwise, the challenges lack the evidence necessary to overcome summary judgment.

The State's motion should therefore be granted.

## Background

**A.** Plaintiffs challenge six categories of HB1205 provisions. Their challenges break down like this:

| Count | Claim | Challenged Provisions |
|---|---|---|
| Count One | First Amendment Political Speech | **Petition Circulator Eligibility** provisions for non-residents, non-citizens, volunteers, and felons<br><br>**Circulator Affidavit** provisions<br><br>**Ten-Day Return Time** provisions<br><br>**Criminal** provisions<br><br>**Fines** provisions<br><br>**OECS Investigation** provisions |
| Count Two | Free Association | **Petition Circulator Eligibility** provisions for |

2

| | | |
|---|---|---|
| | | non-residents, non-citizens, volunteers, and felons<br><br>**Circulator Affidavit** provisions<br><br>**Ten-Day Return Time** provisions<br><br>**Criminal** provisions<br><br>**Fines** provisions<br><br>**OECS Investigation** provisions |
| Count Three | Vagueness | **Petition Circulator Eligibility** provisions for non-residents, non-citizens, volunteers, and felons<br><br>**Circulator Affidavit** provisions<br><br>**Ten-Day Return Time** provisions<br><br>**Criminal** provisions<br><br>**OECS Investigation** provisions |
| Count Four | Overbreadth | **Petition Circulator Eligibility** provisions for non-residents, non-citizens, volunteers, and felons<br><br>**Circulator Affidavit** provisions |

|  |  | **Ten-Day Return Time** provisions |
|---|---|---|
|  |  | **Criminal** provisions |
|  |  | **Fines** provisions |
|  |  | **OECS Investigation** provisions |
| Count Five | Equal Protection – Different Treatment of Non-Citizens | **Petition Circulator Eligibility** provisions for non-citizens |

Note that the State uses the naming conventions from its two preliminary injunction responses and motion to dismiss. This is for the sake of uniformity. Relatedly, it's because the five complaints before this Court use five different naming conventions.

Here, Plaintiffs' naming conventions mostly align with the State's. But for ease, note that Plaintiffs' "petition circulator definition," "eligibility requirements," "disclosure requirements," "registration requirements," and "personal use petition restrictions" categories are all subsumed in the State's **Petition Circulator Eligibility** provisions.

The **OECS Investigation** (Office of Election Crimes and Security Investigation) provisions weren't addressed in the earlier preliminary injunction motions, but the provisions' aims and standards are clear. Fla. Stat. § 100.371(14)(g) ("For any reporting period in which the percentage of petition forms deemed invalid by the supervisor exceeds a total of 25 percent of the petition forms

4

received by the supervisor for that reporting period, the supervisor shall notify the Office of Election Crimes and Security.").

**B.** It's undisputed: there's petition fraud in Florida's citizen-initiative process. The Office of Election Crimes and Security documented instances of fraud during the past two years. Doc.470-1; Doc.470-2; Doc.470-3. Its reports were sent to the Florida Legislature. The reports' findings were referenced and incorporated into HB1205's legislative facts. *E.g.*, Fla. HB1205 ll.234-357. In brief, the reports detail:

- Thousands of untimely submitted petitions, resulting in tens of thousands of dollars in fines. Doc.470-2 at 11; Doc.470-3 at 16.
- Circulators fraudulently filling out petitions and forging signatures. Doc.470-1 at 9-11.
- Circulators filling in information on signed petitions. Doc.470-1 at 9.
- Circulators arrested for identity theft. Doc.470-2 at 6.
- Out-of-state circulation entities stonewalling law enforcement's investigations of petition fraud. Doc.470-1 at 7-8.
- Circulators facing fraud charges in other states. Doc.470-1 at 8.
- Non-citizens arrested for violating Florida's election laws. Doc.470-1 at 26.

Problems with non-citizen, non-resident, and volunteer circulators are particularly acute. Non-citizens, by being non-citizens, are "difficult to locate and investigate," given their ties to other countries. Doc.470-4 at 6. The same is true for non-residents, so much so that petition sponsors' "practice of hiring out-of-state companies for the signature gathering process significantly hampers the State's ability to investigate and prosecute election crimes related to initiative petitions." Doc.470-4

5

at 4 (detailing an instance). Despite this, there are "open" investigations of non-resident circulators suspected of committing fraud, Doc.470-4 at 5, Doc.470-7 at 2, and recently, two circulators have been arrested for petition fraud, Doc.470-5 at 1-2, Doc.470-6 at 1, Doc.470-7 at 1-2. All of these issues are magnified for volunteer circulators, who don't provide any registration or contact information to the State or petition sponsors. Law enforcement is also aware of Smart & Safe volunteers who were flagged for potentially committing fraud. Doc.470-4 at 5-6.

## Legal Standard

Summary judgment is appropriate when material facts aren't in dispute and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment for the defendant is also appropriate when the plaintiff hasn't presented evidence to support his claims. *E.g.*, *Briggs v. Michaels Stores, Inc.*, 8:24-cv-378, 2024 U.S. Dist. LEXIS 221879, at *2 (M.D. Fla. Dec. 9, 2024) ("A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case.").

## Argument

Summary judgment is appropriate. Plaintiffs haven't established standing as to some of their challenges against HB1205. Regardless, for all of Plaintiffs' challenges,

6

they fail as a matter of law, or lack the evidence needed to overcome summary judgment.

### A. Plaintiffs Lack Standing for Many of Their Challenges.

Below are Plaintiffs' standing issues for several HB1205 challenges.

- **Petition Circulator Eligibility.** As a reminder, these provisions affect non-residents, non-citizens, volunteers, and felons. But Plaintiffs haven't produced any evidence that any non-residents, non-citizens, or felons are part of their organizations and had specific plans to circulate petitions—but for HB1205. Doc.431 ¶ 90 (not alleging specific plans). *League of Women Voters of Fla., Inc. v. Byrd*, 4:23-cv-216, 2024 U.S. Dist. LEXIS 93765, at *13 (N.D. Fla. Feb. 13, 2024) ("All Plaintiffs had to do was identify a single member with a disqualifying felony conviction who had collected or handled voter registration applications in the past and planned to do it now but for the challenged provision.").

    When it comes to volunteers, moreover, this Court already noted Plaintiffs' standing issues. Doc.283 at 16 ("the League of Women Voters and LULAC have not demonstrated standing for purposes of seeking a preliminary injunction with respect to the registration requirement"). Plaintiffs haven't produced any new evidence that undercuts that decision.

- **Circulator Affidavit.** This Court already indicated that Plaintiffs likely lack standing to challenge this provision. Doc.283 at 7 ("based on these Plaintiffs' failure to demonstrate a substantial likelihood of success of demonstrating standing to challenge this provision"). Plaintiffs haven't produced any new evidence that undercuts that decision.

- **Ten-Day Return Time.** These provisions don't cause Plaintiffs any injury, because the provisions only affect petition sponsors, and Plaintiffs aren't petition sponsors. Fla. Stat. § 100.371(7)(a) ("the sponsor is liable for the following fines").

- **Criminal.** Aside from the racketeering definition, the provisions in this category: (1) prevent retaining or copying information from a

signed petition; and (2) prevent fraudulently signing or filling in missing information from completed petitions. Doc.105 at 4.

Plaintiffs haven't produced any evidence that they copy or retain sensitive voter information (like social security numbers or driver's license numbers) from completed petitions. Doc.431 ¶¶ 105-06 (not alleging this). Nor have they, in this pre-enforcement challenge, demonstrated "that copying or retaining completed initiative petitions" is "constitutionally protected activity." Doc.189 at 11.

Indeed, Plaintiffs expressly contend that they *don't* fraudulently sign or fill in missing information from completed petitions, which cuts against their standing to challenge the provisions. *E.g.*, Doc.431 ¶ 82 (volunteers "confirm that collected petitions have been properly completed, and if petitions have not been completed properly, they attempt to contact the voter to urge them to fill out a new form or correct their incomplete form"); Doc.431 ¶ 103 ("the League has trained its volunteers to never fill in missing information on a completed form and to instead contact the voter to physically fill in the information themselves").

- **Fines.** Again, HB1205 imposes fines for (1) fraudulently signing or filling in missing information from completed petitions; (2) violating the **Ten-Day Return Time** provision; and (3) sending voters pre-filled petitions. Doc.105 at 3. Standing issues for the first two have already been discussed above.

  When it comes to pre-filled petitions, Plaintiffs haven't shown that they engage in such action. Doc.431 ¶ 80 ("The League specifically instructs their volunteers to have each voter fill out the petition form and not to fill out the form for a voter.").

- **OECS Investigation.** Plaintiffs haven't produced evidence that establishes that their fear of investigation is objectively reasonable. *Wilson v. State Bar*, 132 F.3d 1422, 1428 (11th Cir. 1998); *League of Women Voters of Fla., Inc. v. Byrd*, 4:23-cv-216, 2023 U.S. Dist. LEXIS 237881, at *10 (N.D. Fla. July 11, 2023) (faulting the plaintiffs for failing to allege that the "people they" assist with registration circulation "will report them on false grounds" or fill in petitions with inaccurate information, or that the Office of Election Crimes and

8

> Security, "based on those false grounds, bring actions against them"); *see also* Doc.431 ¶ 85 (touting that the League "perfected its collection processes").
>
> It's also unclear how Plaintiffs' challenge is redressable. Even without HB1205, the Office of Election Crimes and Security is free to engage in any investigation. Fla. Stat. § 97.022(1)(b) (the office has the power to "[i]nitiat[e] independent inquiries and conduct[] preliminary investigations into allegations of election law violations or election irregularities in this state").

In short, Plaintiffs have some standing issues.

### B.  Plaintiffs Fail to State Claims.

Standing aside, Plaintiffs' challenges still fail.

**1. Count One (Political Speech).** Plaintiffs allege that all six HB1205 categories infringe upon their free speech rights under the First Amendment.

But the Eleventh Circuit recently determined that the **Petition Circulator Eligibility** provisions for non-citizens and non-residents likely don't do that: "H.B. 1205's residency and citizenship requirements do not restrict any speech elements of the petition-circulation process." *Fla. Decides Healthcare, Inc. v. Fla. Sec'y of State*, 25-12370, 2025 U.S. App. LEXIS 23431, at *14 (11th Cir. Sept. 9, 2025).

The same would be true for the volunteer provisions. Like the non-citizen and non-resident provisions, the volunteer provisions don't "bar" volunteers "from distributing petition forms to Florida voters, or from otherwise engaging those voters in informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues." *Id.* at *15 (cleaned up). This

9

Court reached a similar decision during the second round of preliminary injunction briefing: "Plaintiffs have not demonstrated, at this juncture, that the registration requirements pose an impermissibly severe burden on speech." Doc.283 at 30. Plaintiffs haven't presented any new evidence that undercuts that decision.

So too with the **Circulator Affidavit** provisions. The U.S. Supreme Court spoke favorably about such petition affidavits. *Buckley v. Am. Const. L. Found.*, 525 U.S. 182, 188-89, 197-200 (1999). These affidavits don't violate the First Amendment.

As for the **Ten-Day Return Time** and **Fines** provisions, at the preliminary injunction stage, this Court already held that such provisions survive First Amendment scrutiny. Doc.189 at 22 ("the challenged deadline and fine provisions are subject only to rational basis review"). That makes sense: return deadlines and fines on fraudulently filling out petitions don't involve the exchange of political ideas. Plaintiffs haven't produced any evidence that suggests otherwise.

The same is so for the **Criminal** and **OECS Investigation** provisions. After all, no political speech is implicated when someone fraudulently signs or fills in a petition, copies a driver's license number or social security number, or engages in voter misconduct and irregularities. HB1205's investigatory and punitive provisions are part of the State's "arsenal of safeguards" that comply with the First Amendment. *Buckley*, 525 U.S. at 205. And "[t]he newly enacted provisions of HB 1205 will assist" the Office of the Attorney General "in prosecuting violations of Florida's election code by

10

enabling law enforcement to locate, investigate, and interview petition circulators who engage in fraudulent practices." Doc.470-7 at 2.

**2. Count Two (Association).** Plaintiffs' First Amendment association claim doesn't add anything to the mix. It's virtually indistinguishable from their First Amendment political speech claim. Both claims involve allegations of volunteers interacting with voters, and volunteers interacting with the named plaintiffs. Plaintiffs' associational concerns can therefore be advanced in their political speech claim. *See, e.g., Citizens for Police Accountability Pol. Comm. v. Browning*, 572 F.3d 1213, 1217 n.6 (11th Cir. 2009) ("Plaintiffs contend that the Florida statute also infringes some on their First Amendment right to engage in political association. But even if true, the additional infringement has no material affect on the analysis otherwise applicable here; so we discuss it no further.").

To the extent that Plaintiffs assert that *Anderson-Burdick* balancing applies to the standalone free association claim, the Eleventh Circuit already rejected that approach in citizen-initiative cases. *Biddulph v. Mortham*, 89 F.3d 1491, 1500 n.10 (11th Cir. 1996). After all, "the Constitution contains no universal 'cost-benefit balancing' provision." *Lichtenstein v. Hargett*, 83 F.4th 575, 593 (6th Cir. 2023).

**3. Count Three (Vagueness).** Plaintiffs next contend that all but the **Fines** provisions are vague. That said, as far as the State can tell, Plaintiffs only assert ambiguities in the **Petition Circulator Eligibility**, **OECS Investigation**, and

11

**Criminal** provisions. Plaintiffs' pleading includes no vagueness-related allegations against the **Circulator Affidavit** and **Ten-Day Return Time** provisions.

One of the purported ambiguities is in the **Criminal** provisions' racketeering definition. Doc.431 ¶ 149. The State recognizes that this Court found that provision vague, and the State won't challenge that ruling in this motion.

Plaintiffs then contend that the volunteer **Petition Circulator Eligibility** provisions are vague. Doc.431 ¶ 149. But this Court held that the provisions aren't vague, and Plaintiffs offer no contrary evidence. Doc.283 at 30 ("this Court is persuaded that Defendants' proffered construction is the only reasonable and readily apparent reading of the statute—i.e., that the 25-petition threshold applies per initiative, per election cycle").

Then, turning to the **Criminal** provisions, Plaintiffs contend that it's unclear what "collecting petition forms '*on behalf of a sponsor*'" means. Doc.431 ¶ 149 (emphasis added). But the meaning is obvious. "On behalf of a sponsor" means *for the sponsor*. After all, when a volunteer registers to circulate petitions with the State, he indicates which citizen initiative he's collecting petitions for. Fla. Stat. § 100.371(4)(c)1. (registration applications must include "[t]he information required to be on the petition form under s. 101.161, including the ballot summary and title as received by the Secretary of State").

Plaintiffs next contend that they don't know what "cop[ying] or *retain[ing] a voter's personal information, such as* the voter's Florida driver license number, Florida

12

identification card number, social security number, or signature" means. *See* Doc.431 ¶¶ 67 (citing statutory text), 149 (making relevant allegations) (emphasis added). Again, the meaning is obvious. "Copying" and "retaining" means *keeping* or *duplicating*. And "voter's personal information" is the voter's Florida driver license number, Florida identification card number, social security number, or signature. That's the same kind of information that a voter must put on the new petition forms. Fla. Stat. § 100.371(3)(c).

Then Plaintiffs contend that they don't know what "*fill[ing] in missing information*" on a signed petition means. Doc.431 ¶ 149 (emphasis added). This isn't a strong argument. Again, when a voter signs a petition, he must include on the form a first name, last name, middle name, address, city, zip code, county, and then a signature, among other information. If a voter doesn't fill in these sections, it would be "missing information." One Office of Election Crimes and Security report stated that a petition circulation subcontractor would take partially completed forms and then "use a website to verify personal identifying information" and "fill in the missing information" where "incomplete." Doc.470-1 at 9.

As their last contention, Plaintiffs point to the **OECS Investigation** provisions, saying that they don't know what "percentage of petition forms deemed invalid by the supervisor" means. Doc.431 ¶ 149. The relevant portion states that:

> For any reporting period in which the percentage of petition forms deemed invalid by the supervisor exceeds a total of 25 percent of the

13

petition forms received by the supervisor for that reporting period, the supervisor shall notify the Office of Election Crimes and Security.

Fla. Stat. § 100.371(14)(g). The provision is clear on its face. If the supervisor "receive[s]" one hundred "petition forms" during a reporting period, and if he "invalid[ates]" thirty, the supervisor must notify the Office of Election Crimes and Security. That's because a thirty percent invalidity rate exceeds HB1205's twenty-five percent rate.

This claim (aside from the racketeering definition) fails as a matter of law.

**4. Count Four (Overbreadth).** Plaintiffs argue that all six HB1205 categories are overly broad. To establish a facial overbreadth claim, a plaintiff must establish that a law "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *United States v. Hansen*, 599 U.S. 762, 770 (2023) (cleaned up). In other words, the plaintiff must present a "lopsided ratio"—identifying unconstitutional applications of the law, compared to constitutional applications. *Id.*

Plaintiffs don't, and can't, do that. As explained in the count-one discussion, these provisions only regulate conduct, not speech. *See Fla. Decides Healthcare*, 2025 U.S. App. LEXIS 23431, at *19 (cleaned up, so stating for the non-citizen and non-resident provisions). It's extremely doubtful that the provisions are even "expressive conduct." *See id.* Regardless, Plaintiffs haven't presented a lopsided ratio, showing constitutional applications of the provisions being outweighed by unconstitutional applications.

**5. Count Five (Equal Protection).** To the extent Plaintiffs assert an as-applied challenge to HB1205's **Petition Circulator Eligibility** provisions for non-citizens, the provisions fall under the Equal Protection Clause's political function exception. The exception "applies to laws that exclude aliens from positions intimately related to the process of democratic self-government." *Bernal v. Fainter*, 467 U.S. 216, 220 (1984). As the Supreme Court put it, the "rationale behind the political-function exception is that within broad boundaries a State may establish its own form of government and limit the right to govern to those who are full-fledged members of the political community." *Id.* at 221.

Here, as Plaintiffs repeatedly emphasize, "[b]allot initiatives are the quintessential form of direct democracy." *OPAWL v. Yost*, 118 F.4th 770, 778 (6th Cir. 2024). Or, to use Plaintiffs' own words, "direct democracy has played a vital role in Florida's political landscape," and "direct democracy has served as a crucial tool by which Floridians have constitutionalized some of their most treasured rights." Doc.431 ¶ 1.

In other words, petition circulators are "nonelective" "positions" that "participate directly in the formulation, execution," and "review" of "public policy." *Sugarman v. Dougall*, 413 U.S. 634, 647 (1973). Thus, "excluding non-citizens from certain activities can advance a compelling interest when those activities form part of the process of democratic self-government." *OPAWL*, 118 F.4th at 777-78 (cleaned up); *see also Bluman v. FEC*, 800 F. Supp. 2d 281, 287 (D.D.C. 2011) (Kavanaugh, J.) (upholding restrictions on foreign nationals contributing to political campaigns).

15

The non-citizen prohibition also makes sense. True, non-citizens who work for the government may collect and handle sensitive voter information. But those workers undergo background checks. *E.g.*, Fla. Stat. § 448.09. Plaintiffs haven't clearly established that they conduct background checks of their workers or volunteers. *E.g.*, Doc.431 ¶ 93.

Given that the political function exception applies, summary judgment should be granted, as a matter of law, on count five.

## **Conclusion**

For these reasons, the State's motion should be granted.

Dated: September 30, 2025

JAMES UTHMEIER
  *Attorney General*

/s/ William H. Stafford III
William H. Stafford III
  SPECIAL COUNSEL
Sara E. Spears
  ASSISTANT ATTORNEY GENERAL
Complex Litigation Division
OFFICE OF THE ATTORNEY GENERAL
PL-01, The Capitol
Tallahassee, Florida 32399
(850) 414-3785
William.Stafford@myfloridalegal.com
Sara.Spears@myfloridalegal.com
ComplexLitigation@myfloridalegal.com

*Counsel for Florida Attorney General*

Respectfully submitted,

Ashley Davis (FBN 48032)
  General Counsel
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough Street
Tallahassee, Florida 32399
(850) 245-6511
Ashley.davis@dos.fl.gov

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
Michael Beato (FBN 1017715)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St. Suite 500
Tallahassee, Florida 32301
(850) 270-5938
mjazil@holtzmanvogel.com
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com

*Counsel for the Secretary*

**Local Rules Certifications**

As required by Local Rule 5.1, 7.1, and 56.1, I certify that this motion contains 3,141 words and complies with this Court's word count, spacing, and formatting requirements.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

**Certificate of Service**

I certify that on September 30, 2025, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil