# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF FLORIDA, INC., *et al.*,<br><br>  *Intervenor-Plaintiffs,*<br><br>v.<br><br>CORD BYRD, in his official capacity as Secretary of the State of Florida, *et al.*,<br><br>  *Defendants.* | No. 4:25-cv-00211-MW-MAF |

## **DECLARATION OF KAREN PATRICIO**

I, Karen Patricio, hereby declare and state as follows:

1. I am over eighteen years old, and I have personal knowledge of the facts set forth in this Declaration. I could and would testify competently to those facts if called to be a witness in this case.

2. I am a member of the League of United Latin American Citizens ("LULAC") and have been a member for just under a year. I am also the District Director of three LULAC councils in Central Florida, based out of Orange County. There are over 30 members in these councils who are actively involved in LULAC events, meetings, and outreach efforts. I was inspired to join LULAC because I appreciate its work to empower Latinos and advocate for their civil rights, and I wanted to do my part to address the lack of resources available to Latinos in Florida.

3. LULAC has participated in petition collecting in the past. Individual LULAC councils may organize their own petition collection efforts, but the different councils also work together.

When LULAC does any kind of community outreach, we often meet people who wish to join and volunteer for LULAC. In this way, the work of petition circulation allows us to expand as an organization.

4. Before LULAC stopped its petition circulation work, it facilitated meetings and developed new trainings in response to HB 1205, to address members' confusion and worries. We did this work instead of pursuing our regular programs on other topics that are important to our members. In fact, we have had to set up and run a separate monthly meeting to address issues our members are having with HB 1205 and other new laws, consuming time that would otherwise be spent advocating for causes important to our membership.

5. By volunteering to collect petitions, other LULAC members and I have also helped LULAC reach a broader audience. This is especially true in parts of Florida that are very rural and where people may not have consistent access to the internet, radio, or television, and may therefore be unaware of policies that impact their lives or initiatives that could make their lives better. And even people who do follow the news have a lot to learn from these face-to-face, one-on-one conversations with LULAC members about ballot initiatives.

6. I started volunteering to collect petitions about ten years ago, while still in high school. I collected more than 25 petitions for Amendment 4 of 2024 (the Right to Abortion Initiative), and Amendment 4 of 2018 (the Voting Restoration Amendment). I have collected petitions at festivals and local markets in Orlando, Apopka, Kissimmee, and Sanford. If I was able to collect petitions in the future, I would collect on behalf of initiatives supporting immigrant rights, prison reform, LGBTQ rights, labor reform, and workers' rights. I would most likely collect petitions at festivals and markets and on college campuses in the Orlando and Apopka areas.

7. Whenever I have collected petitions, I have been impressed by the genuine curiosity and interest of the people with whom I've spoken. I've enjoyed associating with members of my community in this way, and I've found it to be deeply fulfilling to be able to provide them with more information about initiatives that could help them. Connecting with others over shared causes has been a meaningful experience for me.

8. In my many years as a volunteer, I have never seen or heard of any volunteer circulator—let alone a LULAC volunteer—committing or attempting to commit election fraud.

9. I am a non-citizen DACA recipient. Because of my status, I am wholly barred from circulating petitions again.

10. LULAC relies on people, like me, who are not citizens of the United States. By barring LULAC from working with people like me, HB 1205 has decreased the number of LULAC members who are able or willing to collect petitions. The law has taken away some of our best volunteers—including bilingual volunteers who are uniquely situated to provide information on ballot initiatives to non-English speakers.

11. LULAC relies, too, on non-residents to advance its mission. For example, I have a friend who is getting her master's degree in Florida but is a resident of another state. She is passionate about environmental causes and has in the past collected petitions for the Right to Clean Water Initiative. She had plans to do so again. But like me, she is barred by HB 1205 from circulating petitions. So are her classmates who remain residents of other states. HB 1205 bars LULAC from relying on and associating with young, energetic non-resident students like my friend, making it even harder to recruit new volunteers.

12. LULAC also relies on members with felony convictions who have not had their voting rights restored to circulate petitions. These people, too, have historically helped LULAC reach a broader audience. And they also are now barred from doing this work.

13. The law is extremely dangerous, especially for vulnerable communities, because it puts your personal information, including your address, out in the public and invites people to target you because of your beliefs or activism. I know people who are eligible to register to collect petitions but have decided not to collect more than 25 because they do not want to have to register with the government and risk having someone find their address online and target them for their social advocacy.

14. LULAC works very hard to protect its members and their personal information. It cannot, in good conscience, ask its members to risk their safety and privacy by circulating petitions.

15. The United States is supposed to be different than other countries because here, at least historically, you did not need to obtain permission from the government in order to use your voice to advocate for causes you believe in. HB 1205 changes that. It takes away one of the things that makes this country great.

16. On principle, I oppose HB 1205 because it makes it more dangerous for my fellow LULAC members and all other members of my community to exercise their free speech rights.

17. If the law is stricken, I will start to collect petitions again.

Executed this 27th day of October 2025 in <u>Orlando</u>, Florida.

*[Signature]*

Karen Patricio