# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS OF FLORIDA, INC., *et al.*,

   *Intervenor-Plaintiffs,*

v.

CORD BYRD, in his official capacity as Secretary of the State of Florida, *et al.*,

   *Defendants.*

No. 4:25-cv-00211-MW-MAF

## **DECLARATION OF LYDIA MEDRANO**

I, Lydia Medrano, hereby declare and state as follows:

1. I am over eighteen years old, and I have personal knowledge of the facts set forth in this Declaration. I could and would testify competently to those facts if called to be a witness in this case.

2. I am a member of the League of United Latin American Citizens ("LULAC") and have been for 25 years. I served on LULAC's National Board of Directors for many years, and I currently serve as LULAC's District Director in Tampa, Florida.

3. I became a member and volunteer for LULAC because as an organization dedicated to advancing civil rights for the Latino community, LULAC gives me a platform to advocate for my community. LULAC's mission is to advance the economic condition, educational attainment, political influence, housing, health and civil rights of Latino Americans. A key way in which it

advances its mission is by encouraging more participation in the democratic process—including in petition circulation.

4. In the past, I regularly circulated petitions and collected more than 25 signed petitions. I collected petitions for initiatives concerning women's rights, such as Amendment 4 of 2024 (the Right to Abortion Initiative), and Amendment 4 of 2018 (the Voting Restoration Amendment). It used to be an easy process to collect petitions and help others participate in the democratic process.

5. I had planned to collect petitions in support of the Florida Decides Healthcare initiative. Specifically, I planned to gather petitions at public events, including street fairs and parades in the Tampa area, and would have collected alongside other LULAC volunteers. I believe in this initiative because many members of the Latino community struggle to afford healthcare. This initiative will help my community and all Floridians. I would have wanted to spread the word about this initiative by collecting petitions for it.

6. But now, because of House Bill 1205 ("HB 1205"), I will no longer volunteer to circulate petitions because doing so carries significant risks that I am unwilling to take.

7. In particular, I will not circulate petitions because I will not subject myself to third-degree felony liability. I cannot be sure that the people signing petitions are telling me the truth. Someone could try to give me false information to try to get LULAC or me in trouble because of my politics or because they oppose LULAC's mission to help Latinos. Alternatively, someone might not mean to do so, but still accidentally give me false information.

8. In my 25 years as a LULAC volunteer, I have not seen or heard of a LULAC volunteer—or any volunteer for that matter—committing election fraud. I do not see any purpose

for these criminal provisions other than to intimidate volunteers and suppress petition collection efforts. That is very unfair.

9. HB 1205 is already successfully preventing people from circulating petitions with its complex rules and confusing, threatening language. Our Latino advocates are now afraid to express their opinions via their petition circulation efforts.

10. I also will not circulate petitions because I do not want my personal information to be publicly available alongside information on causes I support. Someone I meet while collecting petitions who does not like my political views could then find where I live. I have heard about the political violence happening throughout this country and state. And it only seems to be getting worse and worse. I also know that minorities are often targeted. I want to do whatever is good for my people and this country. But we are living in a divided country with extreme political views and hatred toward the Latino community. I don't want my name and address to be associated online with any cause I care about. The prevalence of political violence today makes me extremely concerned that people would find me on the database created by HB 1205 and target me for my views.

11. I also oppose the registration requirement on principle. I do not believe that the government should require people to make their addresses public in order to express their free speech rights via their advocacy activities. I firmly object to this governmental overreach as a matter of principle. I further oppose it because it makes it dangerous for me to help my community and advocate for causes I believe deeply in.

12. HB 1205 unfairly bars LULAC members who are not citizens or residents of Florida from volunteering to circulate petitions, including members of my own LULAC chapter.

These people are deeply embedded members of their communities. HB 1205 violates these members' right to use their voices to create political change.

13. HB 1205 also unfairly bars people who have been convicted of a felony but have not had their voting rights restored from volunteering. These people have paid their dues to society by completing their sentences and often offer differing viewpoints from other Floridians based on their unique life experiences.

14. The ten-day deadline to deliver the petitions to the Supervisor of Elections is too short, overwhelming, and unnecessary. Based on my experiences circulating petitions, I do not believe ten days is a sufficient amount of time to collect and submit signed petitions.

15. If HB 1205 is stricken, I will start to collect petitions again.

Executed this 27th day of October 2025 in Tampa, Florida.

*L Pedroso*

Lydia Medrano