**IN THE UNITED STATES COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

FLORIDA DECIDES
HEALTHCARE, INC., et al.,

     *Plaintiffs*,

     v.

FLORIDA SECRETARY
OF STATE, et al.,

     *Defendants*.

Case No. 4:25-cv-00211-MW-MAF

**[PROPOSED] STATEMENT OF INTEREST OF THE CIVIL RIGHTS CLINIC AT HOWARD UNIVERSITY SCHOOL OF LAW, SENATOR LAVON BRACY DAVIS, SENATOR TRACIE DAVIS, REPRESENTATIVE MICHELE RAYNER, REPRESENTATIVE RASHON YOUNG, REPRESENTATIVE ASHLEY GANTT, FLORIDA STATE CONFERENCE OF THE NAACP, COMMON CAUSE, AND EQUAL GROUND EDUCATION FUND**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES                                                          ii

INTRODUCTION                                                                  1

PROCEDURAL BACKGROUND                                                         2

ARGUMENT                                                                      5

   A.  Protecting political speech is the core function of the First Amendment.  6

   B.  The First Amendment protects conduct intertwined with speech.  8

   C.  The residency and citizenship requirements of H.B. 1205 are not narrowly tailored and do not survive strict scrutiny.  14

CONCLUSION                                                                   16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*,
  564 U.S. 721 (2011).............................................................................14
*Biddulph v. Mortham*,
  89 F.3d 1491 (11th Cir. 1996)......................................................10, 11
*Burson v. Freeman*,
  504 U.S. 191 (1992) .............................................................................6
*Campbell v. Buckley*,
  203 F.3d 738 (10th Cir. 2000)). .........................................................12
*Citizens United v. FEC*,
  558 U.S. 310 (2010) ..........................................................................5, 6
*Davila v. Gladden*,
  777 F.3d 1198 (11th Cir. 2015)...........................................................14
*Eu v. S.F. Cnty. Democratic Cent. Comm.*,
  489 U.S. 214 (1989) .............................................................................6
*FEC v. Cruz*,
  596 U.S. 289 (2022); .............................................................................7
*Fisher v. Univ. of Tex. at Austin*,
  570 U.S. 297 (2013) ...........................................................................14
*Fla. Decides Healthcare Inc. v. Fla. Sec. of State*,
  No. 25-12370, 2025 WL 3738554 (11th Cir. Sept. 9, 2025). ...............5
*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
  901 F.3d 1235 (11th Cir. 2018).................................................... 8, 10
*Free Speech Coal., Inc. v. Paxton*,
  606 U.S. 461 (2025) ...........................................................................15
*Holloman ex rel. Holloman v. Harland*,
  370 F.3d 1252 (11th Cir. 2004)............................................................8
*Krislov v. Rednour*,
  226 F.3d 851 (7th Cir. 2000)...............................................................13
*Libertarian Party of Va. v. Judd*,
  718 F.3d 308 (4th Cir. 2013)...............................................................13

*Meyer v. Grant*,
  486 U.S. 414 (1988). ........................................................... 6, 7, 9, 10, 11, 15, 16
*Morse v. Fredrick*,
  551 U.S. 393 (2007) .............................................................................5
*Nader v. Blackwell*,
  54 F.3d 459 (6th Cir. 2008)...............................................................13
*Pierce v. Jacobsen*,
  44 F.4th 853 (9th Cir. 2022) .............................................................16
*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ...........................................................................14
*Spence v. Washington*,
  418 U.S. 405 (1974) .............................................................................8
*Texas v. Johnson*,
  491 U.S. 397 (1989) .....................................................................6, 8, 9
*Thai Mediation Ass'n of Ala., Inc. v. City of Mobile*,
  83 F.4th 922 (11th Cir. 2023).............................................................14
*Tinker v. Des Moines Independent Community School District*,
  393 U.S. 503 (1969) .............................................................................8
*United States v. Stevens*,
  559 U.S. 460 (2010) ...........................................................................15
*Virginia v. Black*,
  538 U.S. 343 (2003) .............................................................................6
*We the People PAC v. Bellows*,
  40 F.4th 1 (1st Cir. 2022)....................................................................13
*Yes on Term Limits, Inc. v. Savage*,
  550 F.3d 1023 (10th Cir. 2008)............................................... 12, 13, 15

**Other Authorities**

H.R. 1205, 127th Leg., Reg. Sess. (Fla. 2025). .................................. 3, 15

**INTRODUCTION**

The Howard University School of Law's Civil Rights Clinic, on behalf of itself and *amici curiae* Florida Senator Lavon Bracy Davis, Senator Tracie Davis, Representative Michele Rayner, Representative RaShon Young, Representative Ashley Gantt, Florida State Conference of the NAACP, Common Cause, and Equal Ground Education Fund, submits this statement of interest to assist the Court with its analysis of the constitutionality of certain provisions of Florida H.B. 1205 (2025), which burden conduct and activity that has long been deemed protected speech under the First Amendment of the United States Constitution. This case raises important constitutional questions relating to the nature and scope of the rights protected under the First Amendment and has the potential to affect the civil and constitutional rights and liberties of the public, including members of marginalized communities that lack any other meaningful avenue to pursue and support changes to Florida law that reflect their policy preferences.

Howard University School of Law has a long-standing institutional commitment to the study, preservation, and advancement of constitutional rights, given its institutional mission and academic focus. This Clinic is joined by five Florida legislators and three nonpartisan, nonprofit organizations that have extensive experience with initiative measures in Florida, including the petition

collection process itself. *Amici* seek to highlight the broad implications of this case for the public interest.

At issue is not simply the process of signature collection, but whether the State may redefine a communicative political exchange as neutral conduct, thereby divorcing petition circulation from its very purpose of fostering changes to the Florida Constitution. The collection of signatures in support of ballot initiatives is inherently expressive as it requires dialogue and the transmission of ideas between the petition circulator and the potential signatory. Since signing petitions and soliciting signatures are integral components of core political expression, legislative restrictions that substantially burden participants seeking to engage in that process, like some of the provisions found in H.B. 1205, must be subjected to strict scrutiny. According to fundamental First Amendment principles, the State bears the burden of demonstrating that such restrictions are narrowly tailored to serve a compelling interest. Certain provisions of H.B. 1205 fail that test. By imposing steep fines and criminal penalties on participation in the ballot initiative process, the State has not merely regulated procedure; it has criminalized protected political expression. The First Amendment does not permit such an intrusion.

## PROCEDURAL BACKGROUND

On May 2, 2025, the Florida Legislature enacted H.B. 1205, which implements myriad changes to Florida's citizen-initiative process. *See generally*

2

H.R. 1205, 127th Leg., Reg. Sess. (Fla. 2025). H.B. 1205 imposes a variety of requirements and restrictions on sponsors and people who seek to support the petition collection process. H.B. 1205 bans millions of people from collecting signatures solely because they are not permanent residents of Florida, not citizens of the United States (regardless of legal status), or have a prior felony conviction and have not had their voting rights restored. It caps the number of signed petitions anyone can collect without first registering with the state. H.B. 1205 forces volunteers to disclose their names and addresses to the public when circulating petitions. Additionally, the new law requires Floridians signing petitions to expose personal identifying information, specifically their driver license number or the last four digits of their Social Security number.

Indeed, H.B. 1205 structures the petition collection process in a way that makes it difficult for initiative sponsors and petition circulators to engage in the petition collection process without incurring the risk of civil or criminal sanction. H.B. 1205 cuts the number of days to return signed petitions to government officials from 30 days to 10 days and imposes new, steep, and escalating fines in the event of noncompliance, even where any untimeliness is no one's fault. The statute squeezes petition collectors even further because, within that limited timeframe, they need to employ quality control measures to avoid being subjected to fines to comply with new delivery obligations imposed on them by H.B. 1205.

3

H.B. 1205 requires invalidating petitions for reasons unrelated to signature verification, the signer's eligibility as a Florida elector, or the accuracy of the petition form such as submitting a petition to an "ineligible" petition collector, but does not require notifying voters of petition invalidation.

H.B. 1205 further creates opportunities for state actors to unilaterally stop, disrupt, or end the initiative process. Petitions signed or collected by Plaintiffs can be invalidated through no fault of their own. H.B. 1205 disbands sponsors that fail to meet a moving signature threshold, allows ballot-eligibility questions to be relitigated in post-election contests; and expands Florida's RICO statute's definition of "racketeering activity" to include vague and undefined "irregularities" concerning initiative petitions. Finally, the complicated process for judicial review and approval of a financial impact statement layers on further delays and can result in having to stop and restart signature collection.

Between May and September 2025, several groups of plaintiffs, including Florida Decides Healthcare ("FDH"), ECF No. 1, Smart & Safe Florida, ECF No. 50, the League of Women Voters of Florida, ECF No. 86, and FloridaRighttoCleanWater.org ("RTCW"), ECF No. 116, filed suit against the Secretary of State and Attorney General, seeking declaratory and injunctive relief. The Plaintiffs' complaints alleged that certain provisions of H.B. 1205 pertaining to residency requirements, verification fees, and registration mandates impermissibly

restrict expressive conduct and core political speech in violation of the First and Fourteenth Amendments to the U.S. Constitution. Following motions to intervene on both sides—including by the Republican Party of Florida as a defendant—certain Plaintiffs sought preliminary injunctions against provisions of the bill that immediately affected them. *See*, *e.g.*, ECF No. 170.

On June 4, 2025, this Court granted in part and denied in part FDH's first motion for preliminary injunction. ECF No. 189. The plaintiff groups filed additional motions for preliminary injunction motions, which, on July 8, 2025, were granted in part with respect to the First Amendment challenge to H.B. 1205's residency requirement for petition circulators. *See* ECF No. 283. On September 9, 2025, the Eleventh Circuit issued an order staying the District Court's preliminary injunction pending appeal. *Fla. Decides Healthcare, Inc. v. Fla. Sec. of State*, No. 25-12370, 2025 WL 3738554 (11th Cir. Sept. 9, 2025). This Court denied Florida's Motion for Summary Judgment on November 5, 2025. ECF No. 529. Trial is set to begin in this case on February 9, 2026.

## ARGUMENT

Political speech, "speech that is central to the meaning and purpose of the First Amendment," receives the highest level of constitutional protection. *Citizens United v. FEC*, 558 U.S. 310, 329 (2010) (citing *Morse v. Fredrick*, 551 U.S. 393, 403 (2007)). The First Amendment protects expressive conduct as well as spoken

or written words. *Virginia v. Black*, 538 U.S. 343, 358 (2003); *see also Texas v. Johnson*, 491 U.S. 397, 404 (1989) (holding that conduct intended to "convey a particularized message" may constitute speech). H.B. 1205 directly infringes on these principles because it restricts who may collect petitions, which is protected expressive conduct because petition circulation is inherently communicative of a "desire for political change." *Meyer v. Grant*, 486 U.S. 414, 421 (1988).

Criminalizing who may engage in protected political speech triggers strict scrutiny. Certain provisions of H.B. 1205 cannot survive strict scrutiny because they impose a sweeping restriction on political speech without demonstrating that such a burden is necessary to advance the State's interest in preventing fraud in the ballot box and thus fails the narrow tailoring requirement.

**A. Protecting political speech is the core function of the First Amendment.**

Political speech lies at the heart of the First Amendment. *Citizens United*, 558 U.S. at 336. Indeed, "the First Amendment 'has its fullest and most urgent application'" to political speech. *Burson v. Freeman*, 504 U.S. 191, 196 (1992) (plurality opinion) (quoting *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989)); *accord Meyer*, 486 U.S. at 425 (political speech is "at the core of our electoral process and of the First Amendment freedoms—an area of public policy where protection of robust discussion is at its zenith") (internal citations omitted). Consistent with this principle, the Supreme Court has repeatedly

"rejected attempts to restrict campaign speech based on other legislative aims." *See generally FEC v. Cruz*, 596 U.S. 289, 305-06 (2022) (identifying several occasions where limits on political speech have been invalidated).

The Supreme Court has expressly described petition circulation as core political speech and as "interactive communication concerning political change." *Meyer*, 486 U.S. at 422 (recognizing that petition circulation inherently involves conveying political ideas and persuading others to support a proposed initiative). Petitioning is not a rote mechanical act but an important vehicle for political discourse about legislative changes such as proposed amendments to the Florida Constitution. As a core form of political speech, petitioning is entitled to the highest level of First Amendment protection.

Certain provisions of H.B. 1205 burden political speech. First, by limiting who may participate in the petition-circulation process, the Florida residency and citizenship requirements reduce the number of voices available to convey a political message and, correspondingly, "limits the size of the audience that message may reach." *Meyer*, 486 U.S. at 423. Second, by restricting participation in the circulation process, it makes it less likely that initiative proponents will obtain the number of signatures necessary to place an issue on the ballot, "thus limiting their ability to make the matter the focus of statewide discussion." *Id.* These are precisely the types of burdens that the Supreme Court has identified as

7

constitutionally significant. Most fundamentally, H.B. 1205 inflicts a direct constitutional injury by imposing criminal sanctions on non-citizens and non-residents who engage in petition circulation, preventing them from participating in a well-established form of constitutionally protected expressive conduct.

### B. The First Amendment protects conduct intertwined with speech.

Conduct is expressive where it "intends . . . to express an idea," or where it intends to "convey a particularized message," and the message which is intended to be conveyed has a great likelihood of being "understood by those who viewed it." *Johnson*, 491 U.S. at 404; *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004) (quoting *Spence v. Washington*, 418 U.S. 405, 410-11 (1974)). The message intended to be expressed by a speaker does not need to be understood precisely in order to constitute expressive conduct. *See Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1240 (11th Cir. 2018). So long as a "reasonable person would interpret [conduct] as [conveying] some sort of message," rather than interpreting conduct to convey "a specific message," then it may fall within the purview of First Amendment protection. *Id.* (quoting *Holloman*, 370 F.3d at 1270). That is why conduct as minor as wearing black armbands to demonstrate opposition to the Vietnam war, *see Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 508 (1969), and as severe as the burning of the United States flag in protest of the

actions of a presidential administration, *Johnson*, 491 U.S. at 406, have been afforded First Amendment protections.

Petition circulation is protected speech because it "involves both the expression of a desire for political change and a discussion of the merits of the proposed change," which necessarily requires "the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer*, 486 U.S. at 421-22. The act of circulating petitions is inextricably connected to the substance of the initiative itself, which contains a political message; petition circulators must explain the content of an initiative measure to potential signatories so they may determine whether they support their ideas and will sign the petition. *Id.* at 421 (explaining that petition circulators must "persuade [listeners] that the matter [in the petition] is one deserving of the public scrutiny and debate that would attend its consideration by the whole electorate."). When circulating a petition, a person is required to express the substance of the initiative contained in their petition to demonstrate that it contains an issue important enough for the electorate to vote on. Conduct that intends to encourage others to sign petitions—and participate in the political process—is protected by the First Amendment. *See Id.* at 424 (stating that limiting who may circulate petitions violates the First Amendment because it "restricts access to the most effective, fundamental . . . avenue of political discourse, direct one-on-one

communication."). The First Amendment, therefore, protects the right to circulate petitions. *Id.* at 421 (stating that petition circulation is political speech because it "in almost every case involve[s] an explanation of the nature of the proposal and why its advocates support it.").

In *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, the Eleventh Circuit held that a non-profit organization operating a weekly food sharing event to advance its mission of ending hunger was engaged in expressive conduct. 901 F.3d at 1238, 1245. The court reasoned that the plaintiff was conveying a message by giving away food—a message that asserted their belief that "everyone should have access to food as a human right." *Id.* at 1241. The court determined that because a "reasonable observer . . . would infer some sort of message [such as] one of community and care for all citizens" through the plaintiff organization's public food-sharing program, it was engaging in expressive conduct. *Id.* at 1244.

The Eleventh Circuit has suggested that laws limiting the ability to engage in discussion during the time period for petition circulation may implicate the First Amendment. *See Biddulph v. Mortham*, 89 F.3d 1491, 1498 (11th Cir. 1996) (noting that there may be a First Amendment implication stemming from the regulation of petitions where a plaintiff "complain[s] that exclusion of [their] initiative proposal limited discussion during petition circulation of whether" their

10

petition should be supported). By limiting the number of people who may circulate petitions, H.B. 1205 burdens the communication of ideas during the petition circulation process, requiring it to be subject to strict scrutiny. *See Id.* at 1498 (stating that laws which go beyond the mere "regulati[ion][of the States'] own initiative process" may "burden the communication of ideas."); *see also Meyer*, 486 U.S. at 423 (holding that a restriction unconstitutionally prohibits "political expression" where it "makes it less likely [that a group] will garner the number of signatures necessary to place the matter on the ballot, thus limiting [the] ability to make the matter the focus of statewide discussion.").

The Florida residency and citizenship requirement of H.B. 1205 prohibits entire classes of individuals from possessing, delivering, or collecting forms—all of which are conduct that would be reasonably understood by others as support of the content within a petition. This criminal ban bars classes of individuals from working as circulators. When distributing petitions to members of their community, circulators are inherently conveying a message. First, they are demonstrating that they personally support a specific reform to the Florida Constitution or to a local charter. Second, they are communicating through their actions that the specific reform included in their petition is one worthy of community support. The plaintiffs in this case are supporting statewide initiative measures in Florida to expand Medicaid, legalize marijuana, and establish a right

to clean water. People engaging with petition circulators understand that the circulators are asserting a political message and that they support the content of the petition that they are holding. The context surrounding the circulation of petitions in Florida—the choice to support a specific reform, and the subsequent effort to circulate the reform through a petition throughout their community—requires the circulator to interact with potential signatories and discuss the content of the initiative with them, which inherently requires conveying a political message and, in all likelihood, substantive political discourse.

Petition circulation constitutes political speech because the process involves "interactive communication concerning political change." *See Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1029 (10th Cir. 2008). When "the government restricts the overall quantum of speech available to the election or voting process," it places a burden not only on the person who is engaged in expressive conduct, but it also prohibits the listener from engaging with certain ideas. *Id.* (quoting *Campbell v. Buckley*, 203 F.3d 738, 745 (10th Cir. 2000)). H.B. 1205 does exactly that by excluding classes of individuals from the pool of people who may circulate petitions or otherwise support an initiative. H.B. 1205, by sharply decreasing the number of people who may circulate petitions within Florida, limits the quantity of political speech and ideas being discussed, which in turn limits the amount of political speech available to the remainder of the electorate.

12

Other circuits have applied strict scrutiny to similar restrictions. *See Nader v. Blackwell*, 54 F.3d 459, 475 (6th Cir. 2008) (stating that "petition circulation activity [can] constitute core political speech" and is therefore subject to strict scrutiny); *see also Yes on Term Limits, Inc.*, 550 F.3d at 1028 (stating that a law restricting non-residents from circulating petitions is subject to strict scrutiny because it "limit[ed] the quantum of [core political speech] through its residency requirements for petition circulators."); *see also We the People PAC v. Bellows*, 40 F.4th 1, 16 (1st Cir. 2022) (affirming that prohibiting non-residents from obtaining signatures for petitions was a substantial burden on political speech because the "relevant question is whether [a] residency requirement excludes from the pool of potential circulators a sufficiently significant number of individuals . . . that could enhance the reach of [a] campaign"); *see also Libertarian Party of Va. v. Judd*, 718 F.3d 308, 317 (4th Cir. 2013) ("a consensus has emerged that petitioning restrictions like the one at issue here [which restricts nonresident petition circulators] are subject to strict scrutiny analysis."); *see also Krislov v. Rednour*, 226 F.3d 851, 862 (7th Cir. 2000) (applying strict scrutiny where a statute prohibits political candidates "from employing millions of potential advocates to carry their political message . . . places a formidable burden on [their] right to disseminate their message."); *see also Nader v. Brewer*, 531 F.3d 1028, 1036 (9th Cir. 2008) ("While the district court correctly observed that there remain millions of potential

Arizona circulators, the residency requirement nevertheless excludes from eligibility all persons who support the candidate but . . . live outside the state of Arizona. Such a restriction creates a severe burden on Nader and his out-of-state supporters' speech . . . [and therefore] strict scrutiny applies.").

Since the Florida citizenship and residency requirement provisions of H.B. 1205 restrict expressive conduct protected by the First Amendment, the Court should apply strict scrutiny to those provisions.

## C. The residency and citizenship requirements of H.B. 1205 are not narrowly tailored and do not survive strict scrutiny.

When a law burdens political speech, the State must show that the restriction furthers a "compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015) (quoting *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). This burden is exacting. Moreover, the state may not just rely on "generalized statement[s] of interests, unsupported by specific and reliable evidence." *Thai Mediation Ass'n of Ala., Inc. v. City of Mobile*, 83 F.4th 922, 931 (11th Cir. 2023) (citing *Davila v. Gladden*, 777 F.3d 1198, 1206 (11th Cir. 2015) (alteration in original)). Florida cannot meet this demanding standard. *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 316 (2013) (Thomas, J., concurring) (citation omitted). [1]

---

[1] The State's argument that H.B. 1205 is only subject to rational basis is misplaced. As the Supreme Court recently explained, certain speech that normally falls outside the

Defendants argue that H.B. 1205 was enacted in response to past incidents of fraud in the ballot initiative process. H.R. 1205 § 1(1) at 364-65. Similar justifications have been rejected by the Supreme Court. In *Meyer*, the Supreme Court rejected a similar claim that speech restrictions were necessary to protect "the integrity of the initiative process," and held that the state failed to show it was necessary to limit citizens' speech to achieve its interest. *Meyer*, 486 U.S. at 426. Certain provisions of H.B. 1205 impose sweeping restrictions that burden core political speech. They cannot satisfy the narrow tailoring requirement where Defendants have not provided compelling evidence of fraud taking place during the ballot initiative process. *Meyer* makes it clear that a state's interest in protecting the integrity of the initiative process does not justify such prohibition when the state has "failed to demonstrate that it is necessary to burden [the] ability to communicate [a] message," particularly when there has been "no evidence . . . offered to support [a] speculation" of fraud. *Id.*

There is no indication that, as a class, non-citizens and non-residents are more likely to engage in fraudulent petition collection practices than Florida residents and citizens. *Yes on Term Limits, Inc.*, 550 F.3d at 1029 (finding that

---

scope of protected speech—such as "obscenity, defamation, fraud, incitement, and speech integral to criminal conduct"—is subject to rational basis. *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 471 (2025) (quoting *United States v. Stevens*, 559 U.S. 460, 468 (2010)). The speech in this case, i.e., political speech and expressive conduct, clearly falls within the scope of the First Amendment, so strict scrutiny is the appropriate standard.

evidence of a handful of non-resident petition circulators does not support a class-wide inference that non-resident circulators are more likely to engage in fraud). Additionally, these provisions of H.B. 1205 are substantially over-inclusive. They broadly suppress political speech of countless individuals who merely wish to engage in core political expression, thereby "reducing the quantity of expression." *Meyer*, 486 U.S. at 419. H.B. 1205 includes a variety of other requirements and restrictions that target the alleged underlying fraudulent conduct being engaged in by petition collectors.

Circuit courts across the country have consistently rejected residency-based restrictions on political participation as incompatible with narrow tailoring under strict scrutiny. *Pierce v. Jacobsen*, 44 F.4th 853, 863 n.6 (9th Cir. 2022) (listing cases from the Fourth, Sixth, Seventh, and Tenth circuits that have ruled similarly). Because Florida has failed to demonstrate that H.B. 1205 is necessary or precisely drawn to address the alleged concerns animating its passage, the statute cannot survive strict scrutiny.

## CONCLUSION

For these reasons, the Florida residency and citizenship requirement provisions of H.B. 1205 unlawfully and impermissibly infringe upon core political speech protected by the First Amendment and threaten the integrity of Florida's initiative process. Those provisions burden political speech, undermining the very

16

speech the Constitution most vigorously protects and therefore triggers strict scrutiny that H.B. 1205 cannot withstand. Accordingly, because of the unjustified restriction on participation in the petition process, this Court should invalidate those provisions and declare them unconstitutional. Such a ruling would preserve the rights of Floridians and promote the integrity of the democratic process.

Date: February 6, 2026                              Respectfully submitted,

                                                    /s/    James Slater
                                                    James Slater
                                                    Florida Bar No. 111779
                                                    Slater Legal PLLC
                                                    113 S. Monroe Street
                                                    Tallahassee, FL 32301
                                                    (404) 458-7283
                                                    james@slater.legal

                                                    /s/    Kristen Clarke
                                                    Kristen Clarke*
                                                    John M. Powers*
                                                    Howard University School of Law
                                                    Civil Rights Clinic
                                                    2900 Van Ness Street NW
                                                    Washington, DC 20008
                                                    Kristen.Clarke@howard.edu
                                                    John.Powers@howard.edu
                                                    (202) 806-8082

                                                    * Pro hac vice application forthcoming