IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| FLORIDA DECIDES HEALTHCARE, INC., *et al.*,<br><br>*Plaintiffs-Intervenors*,<br><br>v.<br><br>CORD BYRD, in his official capacity as Secretary of the State of Florida, *et al.*,<br><br>*Defendants*. | Case No.: 4:25cv211-MW/MAF |

### **FDH PLAINTIFFS'[1] SUPPLEMENTAL BRIEF ON DX. 2, 3, AND 4**

The Secretary of State plans to offer at least the bodies of the 2023 Annual OECS Report (DX 2), the 2024 Annual OECS Report (DX 3), and the 2024 Interim OECS Report into evidence for the truth of the matters asserted therein. FDH Plaintiffs ("Plaintiffs") submit this brief to supplement discussion during trial regarding the admissibility of DX 2, 3, and 4 (the "OECS Reports" or the "Reports"). Plaintiffs' initial motion,[2] *see* ECF No. 609, primarily addressed the Reports' lack of trustworthiness under Rule 803(8)(B), which is an issue on which Plaintiffs bear the

---

[1] The FDH Plaintiffs are Florida Decides Healthcare, Mitchell Emerson, and Jordan Simmons.

[2] Plaintiffs' motion referred to DX 2 as OECS's October 2024 report. It is instead OECS's January 2024 report. Plaintiffs object to all three OECS reports for the reasons set out here.

burden. It is the Secretary's burden, however, to demonstrate admissibility. Confounding the Secretary's effort are myriad instances of hearsay-with-hearsay, summaries of the activities of third-party entities and private individuals, and preliminary assessments—none of which qualify as proper public-record content—that are punctuated with the OECS's bias and sensationalized claims and commentary. For these reasons, and as discussed below, the Secretary cannot meet his burden to show that the Reports are admissible as public records.

## BACKGROUND

### I. The OECS's Statutory Mandate Under Fla. Stat. § 97.022.

DX 2, 3, and 4 are reports created by Florida's Office of Election Crimes and Security (OECS). That office has a statutory duty to "submit a report" to the Governor and legislative leaders "[b]y January 15" with "information on investigations of alleged election law violations or election irregularities conducted during the prior calendar year." Fla. Stat. § 97.022(7). The statute carefully circumscribes the contours of this annual report: it "must include the total number of complaints received and independent investigations initiated and the number of complaints referred to another agency" by OECS. *Id.* It must also provide, "[f]or each alleged violation or irregularity investigated":

> (a) The source of the alleged violation or irregularity;
> (b) The law allegedly violated or the nature of the irregularity reported;
> (c) The county in which the alleged violation or irregularity occurred;

2

(d) Whether the alleged violation or irregularity was referred to another agency for further investigation or prosecution and, if so, to which agency; and;

(e) The current status of the investigation or resulting criminal case.

*Id.*

## II. DX 2, 3, and 4 contain far more than the content required by Fla. Stat. § 97.022.

Despite the narrow scope of OECS's mandate. DX 2, 3, and 4 contain far more than the content described in Fla. Stat. § 97.022. Instead, the Reports are lengthy compilations of information from a range of outside sources, as described below.

- **DX 2** is a 359-page long report dated January 15, 2024. It includes a narrative introduction, executive summary, and conclusion; a list of complaints received by OECS; and an appendix reproducing various documents, including press releases by other state entities, letters sent to and from the Secretary of State's office, and a September 2005 report from a federal commission.

- **DX 4** is a 447-page long "Supplemental Interim Report" dated December 20, 2024, that consists of:

    o A cover letter signed by Brad McVay;

    o A revised version of an October 11, 2024 "Interim Report" that includes:

        ▪ A narrative account of issues related to petition circulation, including summaries of statements purportedly made by "multiple Supervisors of Elections and individual Florida electors," *see* DX 4 at 9, Florida law enforcement officials, *see id.* at 12–16, individuals suspected of election-related crimes, *see id.* at 14, and the Kansas Attorney General, *see id.* at 13, among others;

3

- - - A description of a so-called "audit" of validated petitions, *see id.* at 16-25;[3]

  - A 421-page appendix that includes reproductions of correspondence between OECS and FDLE, complaint forms and correspondence sent to the Department of State and various Supervisors, letters from Supervisors to OECS, arrest reports, proffers made by third parties to entities other than OECS and other criminal records, news articles that contain statements by various parties, a reporter's tweet, correspondence between the Department of State and initiative sponsors, and a settlement agreement between the Department of State and an initiative sponsor.

- **DX 3** is a 942-page long "Annual Report" dated January 15, 2025, that purports to "build[] on" DX 4. *See* DX 3 at 1. It contains:

  - A cover letter signed by Brad McVay;

  - A narrative Executive Summary that in part repeats information in DX 4 and includes a statement of its (hearsay) purpose "to summarize its preliminary findings and reemphasize the need for more effective regulation of petition circulation," summaries of activities and statements by entities and individuals outside of OECS, a description of OECS's "audit," a note of how that audit's "results" featured prominently in litigation, and how the OECS contributed an articulation of state interests to federal lawsuit over SB 7050 (by reference to the OECS's 2023 Annual Report);[4]

  - A list of complaints received by OECS;

---

[3] This portion of DX 4 contains the "audit" described in Dr. Michael Herron's testimony. Tr. 795:20–900:11.

[4] DX4 at 22 ("OECS Director Andrew Darlington testified by way of a written declaration in the [SB 7050] federal trial, articulating the state interests behind certain provisions of the bill," citing *id.* at 905 (Declaration of Andrew Darlington citing 2023 Annual OECS Report, in paragraph 7)).

4

- o A 766-page appendix that appears to reproduce the material included in DX 4's appendix and that also includes information unrelated to initiative petitions and statements by third parties.

## ARGUMENT

I. **The Reports constitute hearsay that do not fall within Rule 803(8)'s exception.**

Rule 803(8) excepts from Rule 802's general prohibition on hearsay public records that set out "(i) the office's activities, (ii) a matter observed while under a legal duty to report[,] . . . or (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation," Fed. R. Evid. 803(8)(A), unless the party opposing admission "show[s] that the source of information or other circumstances indicate a lack of trustworthiness," *id.* 803(8)(B).[5] Plaintiffs' initial motion explained why the Reports should be excluded pursuant to subpart (B).[6] *See* ECF No. 609 at 2–11. The Reports should also be

---

[5] Based on counsel's argument, Defendants appear to offer the Reports as public records, not business records. The Reports could not be admissible as business records, because that exception "cannot be used as a 'back door' to introduce evidence that would not be admissible under Rule 803(8)(B)." *United States v. Brown*, 9 F.3d 907, 911 (11th Cir. 1993) (per curiam) (interpreting an earlier version of Rule 803(8)).

[6] As it relates to subpart (B), the trustworthiness analysis is not necessarily about whether a record was prepared in bad faith. Rather, the question is simply whether the record is trustworthy. Thus, the *Beech* factors address—separate from bias— issues such as the skill or experience of the investigators or whether a hearing was held. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 n.11 (1988). Put otherwise, a record prepared incompetently but in good faith may still be untrustworthy. In this

excluded pursuant to subpart (A), because they do not fall within any of three categories of admissible public records, as construed by the Eleventh Circuit.

### A. The Reports do not set out OECS's activities consistent with the Eleventh Circuit's construction of Rule 803(8)(A)(i).

Subpart (A)(i) encompasses only "routine, objective observations, made as a part of the everyday function of the agency." *United States v. Reyes*, 406 F. App'x 405, 408 (11th Cir. 2010) (per curiam) (internal quotation marks and citation omitted); *see, e.g.*, *Clowers v. Onewest Bank FSB*, No. 1:11-CV-2085-CAP, 2014 WL 12496806, at *3 (N.D. Ga. Jan. 22, 2014) (admitting FDIC master purchase agreement under Rule 803(8)(A)(i)). In contrast, the Reports contain narratives of investigations into alleged fraud, commentary on those investigations, and an audit of petitions the OECS claims should not have been validated. The Reports do not fall within Rule 803(8)(A)(i).

The Reports are also inadmissible insofar as they do not detail OECS's activities—instead, they detail the activities of sponsors, voters, supervisors, and the FDLE. "Rule 803(8)(A) clearly does not provide a hearsay exception for statements or records, even if prepared by a public office or agency, which sets forth the activities of a separate, distinct public office or agency." *United States v. Jefferson*, No. 1:07CR209, 2009 WL 2447845, at *2 (E.D. Va. Aug. 8, 2009).

---

regard, Dr. Herron testified at length regarding multiple, fundamental errors in the OECS audit methodology. *See generally* Tr. 804:9–876:24.

### B. The Reports do not consist of matters observed while under a legal duty to report, pursuant to Rule 803(8)(A)(ii).

Like those records that set out an office's activities, subpart (A)(ii) similarly requires that the public record be something that is "routinely and mechanically kept." *United States v. Santos*, 947 F.3d 711, 725 (11th Cir. 2020) (citation omitted). While the portions of the Report listing complaints received by OECS might be routinely kept, the narrative introductions, description of OECS's novel "audit," and lengthy appendices are not. Thus, for the same reasons the Reports fall outside Rule 803(8)(A)(i), they likewise fall outside Rule 803(8)(A)(ii).

Defendants suggest that the report contains information that other agencies are legally required to report to OECS, because public records may go beyond the preparer's personal knowledge as long as the information came from "someone with a duty to report the matter to a public official." *Mamani v. Sanchez Bustamante*, 968 F.3d 1216, 1243 (11th Cir. 2020) (citation omitted). This is key: "information reported[,] . . . gathered[,] or observed by third parties with no duty to report" is hearsay—even if included in a report prepared by a public entity. *Id.* And failing to assess whether the information originated from an entity with a duty to report "constitutes an abuse of discretion per se." *Id.*

No entity appears to have a legal duty to report the information contained in the Reports to OECS. For example, the FDLE has no legal duty to report the results of its investigations to OECS. *See generally* Fla. Stat. § 943.03. Indeed, Director

Pratt confirmed that OECS only recently began tracking the outcomes of cases it refers to the FDLE. ECF No. 609-1 at 13 (Deposition of Florida Office of the Secretary of State Rep. Jillian Pratt at 125:10–20). Nor are voters under any legal duty to lodge reports with OECS. And the Supervisors likewise are under no legal obligation to report suspected petition fraud to OECS. Though Fla. Stat. § 100.371(14)(g) requires Supervisors to report circulators who have an invalidity rate of more than 25%, HB 1205 created that requirement, which did not exist at the time the Reports were created. And while Fla. Stat. § 104.42(1) *permits* Supervisors to report suspected fraud in voting or voter registration, the statute is permissive and does not address petitions. *Id.* ("The supervisor of elections is authorized to investigate fraudulent registrations and illegal voting and to report his or her findings to the local state attorney and the Office of Election Crimes and Security.").

To satisfy subpart (A)(ii), Defendants must identify the source of the legal duty they assert requires the Supervisors, FDLE, or any other entity to report the information repeated by OECS therein. They have not done so. *See, e.g.*, *Bacho v. Rough Country, LLC*, No. 3:14-cv-40-TCB, 2016 WL 4607880, at *7 (N.D. Ga. 2016) (finding Rule 803(8)(A) inapplicable when there was "no indication" by the proponent that a document was created "pursuant to a legal duty to report").

8

### C. The Reports do not consist of factual findings from a legally authorized investigation pursuant to Rule 803(8)(A)(iii).

The Reports also do not fall within subpart (A)(iii)'s allowance for "factual findings from a legally authorized investigation." Investigations within the Rule's ambit "are written after . . . investigations that follow established procedures." *Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1348 (11th Cir. 2020).

More importantly, "a finding . . . is necessarily something more than a mere recitation of evidence." *Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 302 (11th Cir. 1989) (citation omitted). But that is all the Reports are: they are recitations of evidence and allegations collected by *other* agencies. *Mamani*, 968 F.3d at 1241 ("[F]or the public-records exception to apply, the report must contain factual findings that are based upon the knowledge or observations of the preparer of the report, as opposed to a mere collection of statements from a witness." (internal quotation marks and citation omitted)); *MSC Mediterranean Shipping Co. SA, Geneva v. Metal Worldwide, Inc.*, 884 F. Supp. 2d 1277, 1282 (S.D. Fla. 2012) ("[T]hese records do not fall into the public records exception to the hearsay rule because they consist of a collection of statements from a witness as opposed to the agent's own observations and knowledge").

Plus, even if the Reports qualified as factual findings from legally authorized investigations, the preliminary nature of those investigations take the Reports outside Rule 803(8)'s ambit. The Eleventh Circuit has excluded reports that

9

"contained only 'proposed' findings," explaining that "Rule 803 makes no exception for tentative or interim reports subject to revision [or] review." *Toole v. McClintock*, 999 F.2d 1430, 1434–35 (11th Cir. 1993).[7] But as OECS's enabling statute explains, OECS is authorized *only* to "conduct preliminary investigations." Fla. Stat. § 97.022(2). Consistent with that mandate, the OECS Reports contain only "preliminary results." ECF No. 103-2 at 5. Thus, given their tentative nature, the Reports fall outside Rule 803(8)(A).

The audit described in DX 4 and referenced in DX 3 similarly fails to qualify as an investigation. The audit did not "follow established procedures." *Crawford*, 977 F.3d at 1348. OECS has never conducted such investigations of petitions that had been validated by Supervisors, and the corporate representatives of each Supervisors' office implicated testified that the audit was unusual. ECF No. 597-4 at 51 (Deposition of Osceola County SOE Rep. Caitlin Germaine at 43:14–20); ECF No. 597-5 at 51 (Deposition of Orange County SOE Rep. Lucy Melendez at 43:14–22); ECF No. 597-6 at 59 (Deposition of Palm Beach County SOE Rep. Alison Novoa at 52:10–16); *see also* Tr. 805:11-806:9 (Dr. Herron, testifying that OECS audit report did not contain the type of data typically contained in election sequestration audits).

---

[7] For the same reason, DX 2 and 4, which are interim reports of OECS's preliminary findings, are doubly inadmissible.

10

Further, even if the "audit" represented an investigation, it was not legally authorized. The audit falls outside the scope of Fla. Stat. § 97.022(7) or OECS's other legally authorized activities. Yes, OECS is authorized to conduct preliminary investigations. *Id.* § 97.022(1)(b), (2). But those investigations must concern "alleged violations." *Id.* § 97.022(2). For the audit, the Supervisors of Elections validated the considered petitions; nobody had alleged that they were fraudulent. Indeed, the Supervisors, not the OECS, are tasked by law with evaluating signatures on petition forms. Fla. Stat. § 100.371(14)(b).

Simply put, the audit was not legally authorized and did not follow established procedures. Even if it were trustworthy, it falls outside Rule 803(8)(A)(iii)'s ambit.

## II.    Even if Rule 803(8) applies to the Reports, the hearsay-within-hearsay included within them must be excluded under Rule 805.

All hearsay is inadmissible unless an exception applies. Fed. R. Evid. 802. Hearsay-within-hearsay is excluded unless each "layer" of hearsay conforms with an exception. Fed. R. Evid. 805.

As applied to a document that otherwise meets the public records exception, this means that hearsay statements contained in the public record are excluded unless another exception applies. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19MD2885, 2021 WL 848074, at *3 (N.D. Fla. Mar. 7, 2021) (excluding portion of Criminal Investigation Division report containing witness statements); *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009) ("[P]lacing otherwise

11

inadmissible hearsay statements by third-parties into a government report does not make the statements admissible." (citation omitted)); *Roxbury-Smellie v. Fla. Dep't of Corr.*, 324 F. App'x 783, 785 (11th Cir. 2009) (affirming district court's determination that "[interview notes] did not fall into the public records exception because they were not a factual finding made by the EEOC investigator, but rather a record of the interviews conducted by the EEOC investigator"). In short, the public records exception does not allow government records to be used as a vector to infect the record with hearsay because the logic of the exception is that statements that would otherwise be hearsay are rendered reliable if they are made by a public official under a duty of law to make an accurate record.

Here, the OECS Reports are replete with double hearsay.[8] For example, the December 2024 version of the OECS report sets out newspaper articles from pages 189–207. The first article contains at least triple hearsay, such as a reporter's statement about the Kansas Attorney General's statement about an arrest in Kansas. *See, e.g.*, DX 4 at 190–91. The fact that OECS appended these hearsay materials to

---

[8] FDH Plaintiffs will present, in court, highlighted copies of specific portions of the OECS report iterations that contain hearsay-within-hearsay. In addition to the language they highlight specifically, Plaintiffs object to the various appendices as constituting hearsay-in-hearsay. Plaintiffs have also objected to the reports on relevance grounds, as the reports contain a large amount of extraneous information about OECS's work unrelated to initiative petitions. Plaintiffs do not highlight portions of the reports that are irrelevant, understanding that the Court can thresh its way around the large amounts of chaff in these reports.

12

its reports or referenced them in the body of the report does not render them admissible.

Regardless of whether the Court concludes that the "outer" layer of hearsay falls within the public records exception, it should exclude the hearsay-within-hearsay contained in those reports, highlighted in pink in the attachments to this filing.

## CONCLUSION

For all these reasons, DX 2, 3, and 4 are not admissible as public records. The Court should deny their admission in full or, at minimum, exclude the impermissible hearsay-within-hearsay contained within them.

Dated: February 18, 2026                  Respectfully submitted,

s/ Frederick S. Wermuth                   Matletha Bennette, Fla. Bar No. 1003257
Frederick S. Wermuth                      Krista Dolan, Fla. Bar No. 1012147
Florida Bar No. 0184111                   SOUTHERN POVERTY LAW CENTER
Quinn B. Ritter                           PO Box 10788
Florida Bar No. 1018135                   Tallahassee, FL 32302-2788
King, Blackwell,                          Telephone: (850) 408-4840
Zehnder & Wermuth, P.A.                   Matletha.bennette@splcenter.org
25 E. Pine Street
Orlando, FL 32801                         Avner Shapiro*
Telephone: (407) 422-2472                 Bradley E. Heard*
Facsimile: (407) 648-0161                 Nicholas Taichi Steiner*
fwermuth@kbzwlaw.com                      SOUTHERN POVERTY LAW CENTER
qritter@kbzwlaw.com                       1101 17th St NW Ste 550
                                          Washington, DC 20036
                                          Avner.shapiro@splcenter.org
                                          bradley.heard@splcenter.org
                                          nick.steiner@splcenter.org

13

Ben Stafford*
ELIAS LAW GROUP LLP
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
bstafford@elias.law

Emma Olson Sharkey*
Harleen K. Gambhir*
ELIAS LAW GROUP LLP
250 Massachusetts Ave. NW, Suite 400
Washington, D.C. 20001
Telephone: 202-968-4490
eolsonsharkey@elias.law
hgambhir@elias.law

*Admitted *Pro hac vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

/s/ *Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No. 0184111

*Attorney for Plaintiffs*