**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

FLORIDA DECIDES HEALTHCARE, INC,)
et al.,                        )
                               )
            Plaintiffs,        ) Case No: 4:25cv211
                               )
        v.                     ) Tallahassee, Florida
                               ) February 20, 2026
CORD BYRD, in his official     )
capacity as Secretary of State )
of Florida, et al.,            )
                               )
                               ) 8:31 AM
            Defendants.        ) Volume VIIII
_____)

**TRANSCRIPT OF BENCH TRIAL PROCEEDINGS
BEFORE THE HONORABLE MARK E. WALKER
UNITED STATES CHIEF DISTRICT JUDGE
(Pages 2175 through 2202)**

Court Reporter:            MEGAN A. HAGUE, RPR, FCRR, CSR
                           111 North Adams Street
                           Tallahassee, Florida 32301
                           megan.a.hague@gmail.com

*Proceedings reported by stenotype reporter.
Transcript produced by Computer-Aided Transcription.*

2176

**APPEARANCES:**
**For Plaintiffs Florida Decides Healthcare:**

                        King Blackwell Zehnder & Wermuth PA
                        By:  FREDERICK STANTON WERMUTH
                             QUINN RITTER
                             Attorneys at Law
                             fwermuth@kbzwlaw.com
                             qritter@kbzwlaw.com
                        25 East Pine Street
                        Orlando, Florida 32801

                        Elias Law Group
                        By:  BEN STAFFORD
                             Attorney at Law
                             bstafford@elias.law
                        1700 Seventh Avenue
                        Suite 2100
                        Seattle, Washington 98101

                        Southern Poverty Law Center
                        By:  AVNER MICHAEL SHAPIRO
                             KRISTA A. DOLAN
                             Attorney at Law
                             avner.shapiro@splcenter.org
                             krista.dolan@splcenter.org
                        3710 Raymond Street
                        Chevy Chase, MD 20815

                        Elias Law Group
                        By:  HARLEEN K. GAMBHIR
                             Attorney at Law
                             hgambhir@elias.law
                        250 Massachusetts Avenue
                        Suite 400
                        Washington, DC 20001


**For Intervenor Plaintiff Safe & Smart:**
                        Stearns Weaver Miller
                        By:  GLENN BURHANS, JR.
                             HANNAH E. MURPHY
                             CHRISTOPHER R. CLARK
                             Attorneys at Law
                             gburhans@stearnsweaver.com
                             hmurphy@stearnsweaver.com
                             crclark@stearnsweaver.com
                        106 East College Avenue, Suite 700
                        Tallahassee, Florida 32301

**APPEARANCES (cont'd):**

**For Intervenor Plaintiff League of Women Voters of Florida, et al:**

                              Democracy Defenders Fund
                              By:  SPENCER KLEIN
                                   JACOB KOVAS-GOODMAN
                                   Attorneys at Law
                              pooja@statedemocracydefenders.org
                              spencer@statedemocracydefenders.org
                              jacob@democracydefenders.org
                              600 Pennsylvania Avenue SE
                              Unit 15180
                              Washington, DC 20003

                              Winston & Strawn, LLP
                              By:  GEORGE E. MASTORIS
                                   TYLER MATTHEW DATO
                                   SAMANTHA I. OSAKI
                                   NATHAN C. GREESS
                                   JOHANNA RAE HUDGENS
                                   Attorneys at Law
                              gmastoris@winston.com
                              tdato@winston.com
                              sosaki@winston.com
                              ngreess@winston.com
                              jhudgens@winston.com
                              200 Park Avenue
                              New York, New York 10166

**For Intervenor Right to Clean Water:**

                              Campaign Legal Center
                              By:  ROBERT BRENT FERGUSON
                                   HEATHER JEAN SZILAGYI
                                   ELLEN MARGARET BOETTCHER
                                   ALEXIS DENAE GRADY
                                   WILLIAM "LIAM" KYLE HANCOCK, III
                                   MELISSA LAUREN NEAL
                                   Attorneys at Law
                              bferguson@campaignlegalcenter.org
                              hszilagyi@campaignlegalcenter.org
                              eboettcher@campaignlegalcenter.org
                              agrady@campaignlegalcenter.org
                              whancock@campaignlegalcenter.org
                              mneal@campaignlegalcenter.org
                              1101 14th Street NW
                              Suite 400
                              Washington, DC 20005

**APPEARANCES (cont'd):**

**For Defendant James Uthmeier:**

           Florida Attorney General's Office
           By:  WILLIAM STAFFORD, III
               SARA SPEARS
               MARYSSA SAVANNAH-LYNN HARDY
               Attorneys at Law
           sara.spears@myfloridalegal.com
           william.stafford@myfloridalegal.com
           maryssa.hardy@myfloridalegal.com
           119 South Monroe Street, Suite 500
           Tallahassee, Florida 32301

**For Defendant Cord Byrd:**

           Holtzman Vogel Baran, et al.
           By:  MOHAMMAD O. JAZIL
               MARTIN C. WOLK
               RANDALL M. RABAN
               Attorneys at Law
               mjazil@holtzmanvogel.com
               mwolk@holtzmanvogel.com
               rraban@holtzmanvogel.com
           119 South Monroe Street, Suite 500
           Tallahassee, Florida 32301

           Florida Department of State
           By:  ASHLEY DAVIS
               General Counsel
               ashley.davis@dos.myflorida.com
           R.A. Gray Building
           500 South Bronough Street
           Tallahassee, Florida 32399

**For Defendant Intervenors Republican Party:**

           Shutts & Brown, LLP
           By:  TARA PRICE
               BENJAMIN GIBSON
               Attorneys at Law
               tprice@shutts.com
               bgibson@shutts.com
           215 South Monroe Street
           Suite 804
           Tallahassee, Florida 32301

2179

**APPEARANCES (cont'd):**

**For Defendant Supervisors of Elections:**

```
                          GrayRobinson PA
                          By:  ANDY V. BARDOS
                               JAMES T. MOORE JR.
                               Attorneys at Law
                               andy.bardos@gray-robinson.com
                               tim.moore@gray-robinson.com
                          301 South Bronough Street
                          Suite 600
                          Tallahassee, Florida 32301

                          Office of the Supervisor of Elections
                          Miami-Dade County
                          By:  OREN ROSENTHAL
                               Attorney at Law
                               oren.rosenthal@votemiaimidade.gov
                          2700 NW 87 Avenue
                          Miami, Florida 33172
```

**P R O C E E D I N G S**

(Call to Order of the Court at 9:03 AM on Friday, February 20, 2026.)

THE COURT:  All right.  We are back on the record in Case Number 4:25cv211.

We were wrapping things up yesterday for the eighth day of trial, but we needed to circle back to close the loop on an evidentiary issue, and I wanted the parties to make sure that they had adequate time to verify that all the exhibits that they intended to be admitted were admitted.

So let's start there.

I'll only pause to note it's rather sad to look out in the courtroom and there only be a handful of lawyers as opposed to 40 lawyers.  It's like somebody hit the courthouse with a neutron bomb.

Mr. Jazil, did you have a chance to go back and review the exhibits that the various defense -- defendants sought to admit and verify that everything that you sought to be admitted was admitted?

MR. JAZIL:  Your Honor, we had a chance to look at the list from last night.  Exhibits 2, 3, and 4, which were the subject of our evidentiary discussion, are on the list.  My understanding is those were admitted subject to the Court's rulings.  To the extent --

THE COURT:  2, 3, and 4 were -- portions of those were admitted consistent with my ruling, although I still have two additional things to address with those.

MR. JAZIL:  Understood, Your Honor.  I just want to make sure -- we've attempted to try to move them in, and they are subject to the Court's --

THE COURT:  I initially said they were conditionally admitted.  I then admitted them in part with the parameters that I announced.

MR. JAZIL:  Understood, Your Honor.

Other than that, we have no issues.  Thank you, Your Honor.

We rest.

THE COURT:  Turning to the plaintiffs' counsel.

MR. WERMUTH:  We had, I guess, objected outright to DX 4, which is the interim report, and then, obviously, subject to your --

THE COURT:  And what I said with that was to the extent -- and I'm not trying to be cute by half -- you know, too cute by half, but it's -- and probably nobody would ever accuse me of that, he says bitterly about his college experience.

But circling back to the Interim Report 4 -- folks, it's been a long week -- couple of weeks -- Interim Report 4, I don't think that -- and I didn't rule or in any way suggest that you can simply wholesale adopt something that was otherwise

inadmissible.

What I said was to the extent there's additional information in the interim report that falls within the ambit of what I said would come in as a public record under 803(8), that -- anything additional within, again, the limited scope of what I said would fall within that exception would come in because it was incorporated by reference.

I don't find that the public records exception would require you to cut-and-paste everything from the interim report in there, and so, moreover, I'd note that there's a serious limitation on what I've admitted.  I've effectively said that the numbers consistent with the reporting requirement -- and I went over what information was required to be reported and those numbers.

I have not gone back and compared the interim report to say, These additional reporting numbers that were consistent with -- in the final report -- the charts that I admitted, there's some other information that would be consistent with that in the interim report that was incorporated by reference. That's all that I ruled.

I'm not saying that you are wrong.  Your objection stands.  I want to again reiterate the very limited scope of what I admitted.

And let's go ahead and have a few brief additional comments about 803(8).  I've noted, and I think correctly so,

that it's not -- doesn't parallel what is or is not a government record.  I mean, these -- it's a given that a lot of this stuff is government records generated by the government.

It also isn't the same thing -- does it fall within the ambit of Chapter 119 under Florida law.  Is it a public record?

It is a limited exception.

And I had said, Mr. Wermuth, that you had the better of the argument in that regard.

It's a limited exception, and so let's talk about what's an exception.  Hearsay is not admissible because it's unreliable.  And simply because you stamp something called "government document" doesn't suddenly make it reliable hearsay, and 803(8) doesn't say that.

803(8) says if you meet these very specific criteria, then the information has the hallmarks of reliability such that we are going to let something in that would otherwise not be admissible in trial.

That's -- so we shouldn't lose sight that this is an exception to -- and it's -- it's an exception to hearsay.

The second thing, again -- and I'm not going to go through and reread the rule.  803(8) has very specific criteria about what comes in.  It doesn't say every government document comes in, everything the government relied on in that document comes in.  It's a very narrow exception, and consistent with

that and consistent with, I think, well-established case law, I've said all the underlying data and hearsay within hearsay, et cetera, is not admissible.

But if you meet those requirements -- and I found that that narrow set of information and data that I said fell within the ambit of 803(8) does come in.  I've also recognized that that narrow set of data that comes in through 808 may include some additional information, because we haven't gone back and done sort of a mirror comparison of that limited information I let in versus what's in the interim report.  If this were a jury trial, we would have had to have done that.

Quite frankly, what would have been best is to have done this in limine and have the Court review, redact, and then we'd have a redacted report that has very limited information.  But for -- because it's a bench trial and because I think I've articulated the limited scope of what comes in -- I think it's consistent with the law -- I told the parties that that's what I was going to do.

So your objection to the preliminary report and preliminary -- if all they were seeking was to introduce a preliminary report, you'd win on that argument.  Because it was incorporated by reference, that doesn't mean the whole report comes in, but only consistent with what I said would be -- come in under 803(8).  To the extent it wasn't in the final report, it comes in because it was incorporated by reference.

I'm sort of talking in a cycle and repeating myself, but I want to make plain that that was my ruling.

So let me start there.  Does anybody have any questions?

And both sides -- the government says everything comes in, and all the underlying data comes in, and quadruple hearsay comes in and 803(8) is big enough to incorporate any document ever prepared by any government agency or collected by the government agency from the beginning of time.  I get it.  I've categorically rejected that argument as to the scope of 803(8).

Likewise, I've rejected the plaintiffs' arguments that if a lot of the report or a bunch of the report doesn't come in under 803(8), none of it comes in.  So some can come in, the case law makes plain.  Just because you exclude part of it or even a lot of it doesn't mean none of it comes in.

I also have said it's trickier -- because you've also got to consider 403 and other Rules of Evidence, it's a lot trickier if there is a jury present.  I don't think -- unless I did a lot of markups and we took 400 pages and we ended up with 5 pages, I'm not sure that it would have been possible in a jury trial for me to have taken very small portions of this report and given it to them.  There would have been some other issues with that.

But this is a bench trial, and both this Court as well as any reviewing court is capable of looking at and following

what I said.  I'm considering the very limited nature of what I'm considering.

So that's what I've done.  I think I've fairly articulated what is or is not coming in, but I want to make sure that neither party has any confusion about what it is that I think I'm considering when you are drafting your closing arguments.

Mr. Jazil.

MR. JAZIL:  No confusion, Your Honor.  I understand your ruling.

Thank you.

THE COURT:  Mr. Wermuth.

MR. WERMUTH:  No confusion.  I understand your ruling.

THE COURT:  Okay.

Then let me -- and having -- harkening back to the we've got broad categories buckets -- I said I'm excluding all the underlying data and hearsay within hearsay, because you don't just import that through 803(8).

I then -- in addition to saying sort of that information, I've also excluded -- having considered trustworthiness and applying the factors under *Beech Aircraft* I found -- and, of course, the factors under *Beech Aircraft*, that is, *Beech Aircraft,* the case, is not exhaustive.

Considering those factors, including the timeliness of the investigation, the skill and experience, possible bias,

whether a hearing was held, whether it is a sound methodology, all of those things, I excluded the findings as it relates to the statewide extrapolation of errors of the 16-plus percent, and I relied on those factors, and I relied on the testimony of the plaintiffs' expert in that regard that it wasn't a sound methodology, coupled with the other factors.  And I emphasize that even the rebuttal expert from the defense acknowledged that it was not even designed to be unbiased.

So for all those reasons, I found that it should be excluded.  So the underlying data is, some of the ultimate conclusions and charts are, as it relates to that.

So what we had left was those very narrow sets of charts reporting the data that -- the number of complaints -- and I realize that it says you -- they called them reports.  I understand that defense in shorthand was calling it complaints.

But the number of complaints, the number of prosecutions, the outcome of the prosecutions, where they were, that's the information that I was letting in under 803(8), because I found that just collecting that raw data, considering the *Beech Aircraft* factors and additional factors, bore the indicia of -- I guess I should say the plaintiffs did convince me that it lacked trustworthiness, that data, and it was consistent with the obligation to report and so forth.  So it fell within the ambit of 803(8).  So that's the limited universe of stuff that I let in.

There was a secondary argument from the defense which I want to circle back to, and I -- I'm not sure if it's explicit or implicit in terms of arguments by Mr. Jazil -- about the Supervisors' underlying documents where they were reporting something to the OECS.

And so it wasn't entirely clear to me whether, Mr. Jazil, you were arguing that independent of the report and, Judge, we disagree, but you ruled about what you ruled about all the underlying data and so forth and limited the universe of what falls under the ambit of 803(8) -- I couldn't tell if you were arguing independent of that, Setting aside the OECS report, we believe that the Supervisors' reports themselves independently would come in under 803(8).

Did I understand that correctly?

MR. JAZIL:  Your Honor, you did.

I was making a two-part argument.  One was they independently come in under 803(8).  The other was the complaints themselves should come in for nonhearsay purposes, because, as we heard from Ms. Pratt's testimony, there are sort of a trigger to get the OECS going.  And so the fact that there was a complaint is important in itself just to show that we've got a trigger, and we got going.

THE COURT:  Riddle me this -- it's undisputed there were complaints.  They've never said there weren't complaints. I'm letting in the total number of complaints.

Why does the information in the complaints, which is nothing more than rank hearsay -- setting aside whether or not it separately comes in under 803(8), why does the information come in?

Mr. Jazil, I -- I'm not going to take umbrage with a lawyer trying to get in evidence, but it seems to me all of this stuff is just trying to backdoor in massive amounts of hearsay under the guise that it's reliable.

I guess what's troubling to me most is the suggestion -- I'll circle back to what I said during the course of the trial.  This idea that somebody makes a complaint about something, so, therefore, it's reliable because only -- I mean, people have all kinds of motives.  In fact, Ms. Pratt acknowledged some people may file a complaint because they are trying to undermine the petition process.

I mean, we had this -- the state attorney you put on talked about, When I came into office in 2021, we had this explosion of complaints.  Well, wonder of wonders -- when this entire country was obsessed with voter fraud and that's all -- one group of folks were talking about this in this country ad nauseam for 12 months, wonder of wonders people start seeing fraud everywhere and filing reports.

So this idea that a report is filed, which could be anything -- and as Ms. Pratt said, some of these were reports that didn't even relate to petitions; some of them related to

other things; some of them have no basis.  I mean, this idea that we are going to then just wholesale bring in all this information because, Judge, we are not offering it for the truth of the matter asserted; we're offering it to prove that a complaint was made, when it's undisputed that the complaints were made and I allowed a report to come in that compiled the number of complaints that were filed -- so that's where I'm lost.

MR. JAZIL:  I understand, Your Honor.

And, Your Honor, I don't know from memory whether or not the OECS reports themselves compile every single number of complaints that an SOE submitted.

So I guess what I would use them for in the closing is if I can't find a nice, neat chart that says that we got complaints from 65 Supervisors related to these particular provisions of the Florida Statutes, I'd like to at least be able to cite to the complaints in the appendices to say that we got complaints from Supervisors in Leon, Broward, et cetera.

THE COURT:  So, Judge, we have an incomplete report from the OECS, and I want to create my own report and go back and do any own analysis to add to or otherwise amplify what you admitted over the plaintiffs' objections through the reports?

MR. JAZIL:  No, Your Honor.

It's a failing on my part.  I don't know if I remember off the top of my head whether or not every single report has a

catalog of which counties provided complaints, and so to the extent that I don't, I'd like to be able to --

THE COURT:  Ms. Pratt -- that's why we have witnesses. Ms. Pratt --

MR. JAZIL:  Sure.

THE COURT:  That's called evidence, and it comes in through a document or a witness.  And Ms. Pratt testified -- she said, I can't say it was all 67.  I believe -- she said something along the lines, I thought -- that I think it was, like, 65.  It was almost all of them, but I can't say definitely it was all 67.

Didn't she testify to that?

MR. JAZIL:  She did.

THE COURT:  All right.  We are going to stick with the evidence that was admitted.  So, no, you can't go back and glob on facts that are not properly before this Court for things excluded.

Now let's talk about the reports, the secondary argument that the Supervisors' reports themselves fall within the ambit of 803(8).

Ms. Pratt was asked -- and, again, kudos to her for not embellishing, guessing, or making stuff up, which apparently is the trend now when people take the stand, but she didn't do that, and I commend her for that.

She was asked specifically, What is the authority that

requires the Supervisors to make these reports?  "I don't know" is the answer.  Kudos to her for being honest.

Nobody has referenced, cited, or otherwise acknowledged any rule.  The closest I can come is 100.371(14)(g), which has a very limited reporting requirement for any reporting period in which the percentage of petition forms deemed invalid by the Supervisors exceeds a total of 25 percent.  There is a very narrow, niche reporting requirement for Supervisors under that subsection.

Where's the authority that says that every problem you identify, any suspected fraud, any suspected issue has to be reported?

MR. JAZIL:  Your Honor, I don't have it at my fingertips.

I asked Supervisor Earley the question in his cross-examine, Do you have a duty to report these issues to the Department of State?  And I believe his answer was, Yes.

Again, I can brief this as part of the closing.

THE COURT:  I need to figure out what evidence is in front of me.  Therein lies the problem.

MR. JAZIL:  Sure.

THE COURT:  And so -- I mean, I literally have all these Supervisors -- we have Mr. Bardos here, a lawyer, and we've talked around it, and we've talked about, chapter and verse, all these provisions and what they require.  My ruling is

that nobody has shown me any reporting requirement that would require the Supervisors to report everything, other than that one limited exception that I suggested.

And these reports clearly, based on -- and I admitted one as an example so that any appellate court will have an example of a report -- has nothing to do with the 25 percent requirement.  It has to do with the fact that somebody locally calls and reports, for example, that they didn't sign a petition and we investigated it.

803(A), last time I checked, doesn't it -- it doesn't just say "if you do, in fact, generate a report."  Isn't it -- I mean, it has to be matters observed while under a legal duty to report; correct?

MR. JAZIL:  Yes, Your Honor.

THE COURT:  All right.  Well, there is no legal duty generally to report, and, therefore, I'm sustaining the objection that on the alternative basis the individual reports come in under 803(A).

MR. JAZIL:  Understood, Your Honor.

THE COURT:  Thank you.

As my law clerk pointed out, there is an "or," but there's also no suggestion that this was a -- factual findings from a legally authorized investigation.

Supervisors, while they certainly can report things, that doesn't fall within the ambit of the -- in the disjunctive.

I didn't address that, because nobody has suggested otherwise, and it's inapplicable.

All right.  The final issue are the -- is the information regarding the, quote, "audit," close quote, of validated petitions.

Let me first say that Ms. Pratt has testified and what's before this Court through her testimony is that, We and the OECS were concerned that it was under -- that petitions that were invalid were being validated based on admissions, mismatched information, or other noncompliance with Florida Statutes.

She's then testified that, We picked three different counties.  We selected a subset of petitions to look at.  We tried to isolate petitions associated with one of several categories of folks that we would view as more suspicious, both including fraudsters, those associated with fraudsters, that is, identified with fraudsters, or those that had a high rate of invalidity.  They then chose a subset of those petitions to look at and compare the signatures.

And the conclusion, as I understood it, was that, We preliminarily believed that based on this review, this anecdotal evidence that we arrived at, that we believe that this requires further study, because we think based on our sampling that there could be a bigger problem with validation by the Supervisors, and it warrants further study, and, in fact, we are going to do

more study.  That's one level.  There's more to it than that.

But that's evidence that's come in before me.  It's evidence that this Court can consider through her testimony that, in fact, there has been a -- this sampling, and we have evidence that folks may be validating petitions at a higher rate, and that we believe the signature match-up may be a bigger problem than otherwise thought or reflected in the reporting of the Supervisors of Elections.

Certainly information that's properly before me that I certainly can weigh and consider for purposes of, There is a problem that's already been identified, which is bad petitions, and then, We think that there may be a bigger problem and we are continuing the investigation and our sampling suggests that we may need to address this problem further.

Mr. Jazil, do you agree -- through Ms. Pratt's testimony, that's definitely in front of me; correct?

MR. JAZIL:  Yes, Your Honor.

THE COURT:  Here's my concern when we are talking about 803(8), because -- again, I want to harken back.  The issue is whether or not part of a report is going to come in, and some of it is coming in based on the duty to report and the information that I've talked about in any related information that was incorporated by reference.

Setting aside Mr. Wermuth's argument that it was preliminary findings that warrant further study and,

therefore -- even though the preliminary findings were incorporated in the final report, they are preliminary in nature and, therefore, shouldn't be considered under 803(8).  I understand that argument.

But setting that aside, my concern with all of this -- and when I'm applying the factors under *Beech Aircraft*, as well as other factors that I can consider, since it's a nonexhaustive list, the whole goal here is to decide whether things are trustworthy such that they could be relied on.

And we had testimony from the plaintiffs' first expert about problems with the methodology, not only with the statewide methodology, but he was asked specifically about these three counties and how they were selected, how the individuals were selected to be focused, and how the petitions were -- and I understand from the defense perspective, Judge, well, part of his opinion was he didn't have information to render an opinion.

But -- and, again, if the Eleventh Circuit thinks otherwise -- I understand that plaintiffs may be held to a different standard in terms of the statistics they produce at trial, notwithstanding even the limitations they have in obtaining discovery.

I cited the SB 90 case where Judge Pryor engaged -- in the majority opinion in that case engaged in an independent statistical analysis and decided that the sampling that was there was not reliable even though that information -- no other

information was available.

Here the other information is available, and we have something called an audit. And this is my biggest problem both with the prior issue regarding the statewide numbers, as well as what's implied in this section of it.

Audit -- CPAs do audits. It's a term of art, just as fobbing off numbers and percentages is a term of art because it's percentages based on some statistical analysis. So we've got an entity that's sending information over to the Florida Legislature under the guise that, We were calling it an audit. We're engaging and we're putting in percentages and numbers, and we are then extrapolating from that.

That's statistics. That's an audit. There's a methodology that applies, and so we -- it may be biased; it may be based on how we selected; it may not be mathematically sound, but we get to use this, send it to the Legislature, and everybody gets to rely on it to suggest that these are valid numbers, not that there's just a valid concern.

That's why I said the anecdotal evidence comes in, the testimony of Ms. Pratt comes in and what she did. That -- then that becomes an issue of weight, what weight do I give what Ms. Pratt did in her sampling in the anecdotal evidence.

This is not a question of what weight do I give it. This is a threshold question of is it even admissible, and is it admissible under 803(8), that part of the report labeled as an

audit which suggests -- adds this patina of reliability by the way we -- by throwing in numbers and stuff. And that's exactly what 803 charges me with the responsibility, as the gatekeeper of evidence, to decide: Does it meet the test under 803(8)?

And I can just -- I'm just -- I don't think it's going to come as a surprise to anybody. While it's relevant; it was entirely permissible for the State to do this, to take samplings; it's entirety permissible for them to say, Based on our samplings, we think there is a problem; we need to further investigate it. All that evidence is in front of us.

But these numbers suggesting that this reflects the actual percentage or problems or the underreporting of invalidity is just junk science. It's nonsense. It has no basis in statistics and in -- Dr. Herron has pointed out every layer of problems with trying to extrapolate information from this.

Ms. Pratt herself said, We weren't trying to be mathematicians. And that's what I have in front of me is the State's own witness comes in and says, Well, we're not mathematicians. This isn't what we do.

But you are sending the Legislature statistics and saying that this means something and we should -- it has this patina of strength and reliability because we are calling it an audit. If you are going to do an audit, it has to be an audit -- if you want it to come in under 803(8), it has to be an

audit based on a legitimate methodology, not just some sampling where we are trying to determine maybe we need to look at this further. Maybe we need to look at it further because we've found a small sample of signatures that didn't match, absolutely that evidence is in front of me.

But the next step is what this report purports to do, which is to suggest we are assigning values to these things to suggest a specific percentage of underreporting and problems, and that's what I categorically reject applying the factors under *Beech Aircraft*.

So, therefore, I am not going to include or accept the conclusions drawn other than, There's a problem and we need to study it further, when she studied for it. I was not going to require Ms. Pratt to read every number in the charts on pages 15, 16, and 17, and 18 -- I'm sorry -- 16, 17 -- 15, 16, and 17 in the record. So you are free to give those as examples, because she talked about them and -- most of the numbers she acknowledged. She just didn't go through every number. And I'm not talking about invalidity rates. I'm talking about the --

MR. JAZIL: The raw numbers.

THE COURT: -- the raw numbers that she -- and a number of them, again, she testified to, but I wasn't going to force her to testify to every raw number.

Moreover, it would be unfair to the defense. I didn't

rule on it until today.  Clearly, the defense could have had her read every raw number into the record.  So I'm not -- this isn't a heads, you lose; tails, you lose.  So I'm certainly going to allow y'all to do that.

But it's the conclusions drawn, other than the general conclusion that, Based on our sampling, we think there's a problem, which came from her testimony and it requires further study.

And it's entirely appropriate for the Legislature to consider that somebody has been told, We went back behind the Supervisor of Elections for a handful of self-selected petitions in a handful of counties, and we found signatures that didn't match that they matched.  So we think there's a problem with the Supervisor of Elections, how they are validating it, and we need to look at it further.

That came in through Ms. Pratt, and that certainly is appropriately before this Court, but the balance of it is not.

Does anybody require any further clarification of this Court's ruling?

MR. JAZIL:  No, Your Honor.  Thank you.

THE COURT:  Mr. Wermuth?

MR. WERMUTH:  No, I understand your ruling.

THE COURT:  Okay.

All righty.  Anything else that anybody believes you need from me before you -- before we close and y'all then go

start working on your closing arguments?

MR. WERMUTH:  I don't believe so.

MR. JAZIL:  Nothing from us, Your Honor.

Thank you.

THE COURT:  All right.  I do appreciate all y'all's hard work.

On a personal note, I know that we broke early some, and I know that wasn't ideal, especially since we had a lot of lawyers outside of the state that came in from D.C., Chicago, New York and so forth.  I'm sorry to inconvenience everybody.

I do appreciate Mr. Jazil and Mr. Wermuth offering to continue the trial when I found out that my father had gone into hospice care last Friday.  He, of course, died before I could get there on Friday, so I had family member matters to take care this week.

So I know we broke a couple of days early, and I know that inconveniences.  My apologies.  I tried to balance making sure that everybody put on their case and that we didn't unnecessarily drag out this case with the need to address personal matters.  So thank you for the kindness you extended to me last Friday, and I apologize to the extent I inconvenienced anyone.

MR. WERMUTH:  Sorry for your loss.

MR. JAZIL:  Your Honor, our condolences.

THE COURT:  Court is in recess.

Thank you.

(Proceedings concluded at 9:38 AM on Friday, February 20, 2026.)

* * * * * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. Any redaction of personal data identifiers pursuant to the Judicial Conference Policy on Privacy is noted within the transcript.


/s/ Megan A. Hague                        2/20/26

Megan A. Hague, RPR, FCRR, CSR            Date
Official U.S. Court Reporter