**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

FLORIDA DECIDES HEALTHCARE,
INC., et al.,

       *Plaintiffs*,

    v.

CORD BYRD, in his official capacity as
Secretary of State of Florida, et al.,

       *Defendants*.

Case No. 4:25-cv-211-MW-MAF

**FDH AND LEAGUE PLAINTIFFS' JOINT RESPONSE TO STATE
DEFENDANTS' SUGGESTION OF MOOTNESS**

FDH and League Plaintiffs submit this expedited response in accordance with

the Court's April 3 Order, ECF No. 673, to explain why the Florida Legislature's

amendment of HB 1205's Racketeering Definition does not moot FDH and League

Plaintiffs' challenges under Counts I-IV of their respective operative complaints.

## I. BACKGROUND

HB 1205 imposed new racketeering liability on individuals who commit,

attempt to commit, conspire to commit, or solicit, coerce, or intimidate another

person to commit "[a] violation of the Florida Election Code relating to irregularities

or fraud involving issue petition activities." Fla. Stat. § 895.02(8)(d) (2025). FDH

and League Plaintiffs challenged this provision as impermissibly burdening their

First Amendment speech and association rights, *see* ECF No. 413 at 71, 76; ECF No. 431 at 49–51, as unconstitutionally overbroad, *see* ECF No. 413 at 81; ECF No. 431 at 53–55, and as unconstitutionally vague, *see* ECF No. 413 at 84; ECF No. 431 at 51–53.

FDH Plaintiffs then sought and obtained a preliminary injunction prohibiting enforcement of section 895.02(8)(d). *See* ECF No. 189 at 23–33. Based on the record before it at the preliminary injunction stage, the Court held that Plaintiff Jordan Simmons had "demonstrated a substantial likelihood of success of on the merits of his vagueness claim challenging section 895.02(8)(d)'s expanded definition of 'racketeering activity.'" *Id.* at 29. In light of the evidence and argument presented by the Plaintiffs at that time, the Court focused primarily on the Racketeering Definition's extension of liability to petition-related "irregularities," *see, e.g., id.* at 23–26, though it also noted that Plaintiffs had challenged the Racketeering Definition on other grounds such as overbreadth as well, *see id.* at 27–29. At trial, Plaintiffs adduced extensive evidence in support of their claims that the Racketeering Definition violates their First Amendment speech and association rights, is unconstitutionally vague, and is unconstitutionally overbroad. *See, e.g.*, Trial Tr. at 63:7–14, 63:14–65:9, 128:15–129:15, 135:18–23, 135:24–136:4, 197:11–23, 259:25–17, 266:17–268:9, 362:19–363:19, 377:17–379:9; 1567:3–1568:1, 1668:22–1669:12, 1709:10–24, 2153:2–9, 2155:7–16, 2156:15–18, 2157:8–21,

2158:21–2159:8. FDH and League Plaintiffs reiterated these arguments in post-trial briefing. *See* ECF No. 667 at 70–73, 76, 164–65, 181–83, 190–92, 194–200; ECF No. 668 at 55–57, 184–92.

On April 1, 2026, after submission of post-trial briefing, the Governor signed HB 991, which amended HB 1205's Racketeering Definition to instead make it a first-degree felony "to commit, to attempt to commit, to conspire to commit, or solicit, coerce, or intimidate another person to commit . . . [a]ny crime . . . under" "Section 104.185, s. 104.186, s. 104.187, or s. 104.188, relating to issue petition activities." ECF No. 671-2 at 32–35 (H.B. 991, Ch. 2026-26 § 30) (striking section 895.02(8)(d) but adding section 895.02(8)(a)(2)). The next day, the State Defendants filed a suggestion of mootness that highlighted HB 991's striking of section 895.02(8)(d) but made no mention of the same legislation's creation of a new section 895.02(8)(a)(2) that, like prior section 895.02(8)(d), imposes racketeering liability on various kinds of issue petition activities. *See* ECF No. 671. The State Defendants claimed that "Plaintiffs' challenges to the Racketeering Definition are now moot" given HB 991's repeal of section 895.02(8)(d). *Id.*

## I.    ARGUMENT

This Court should reject the State Defendants' suggestion of mootness. It is well established that "alterations to legislative enactments . . . do not automatically strip federal courts of viable cases." *Horton v. City of St. Augustine*, 272 F.3d 1318,

3

1326 (11th Cir. 2001). While "alterations may moot a case to the extent they remove certain challenged features, [they] do not moot a case if they leave other challenged features substantially undisturbed." *Id.* (citing cases); *see also Butler v. Ala. Jud. Inquiry Comm'n*, 261 F.3d 1154, 1158 (11th Cir. 2001) (holding challenge to ethical canon was "live" despite subsequent modification because pending controversy remained as to narrowed canon). Federal courts retain jurisdiction—even where an amendment "narrow[s] the scope of events which will be governed" by the challenged statute—if "[i]t is reasonable to expect that the alleged constitutional violations resulting from the enforcement of the first version of the [statute] will continue with the enforcement of the new version." *Horton*, 272 F.3d at 1327 (citation modified).

Here, the Legislature has not removed HB 1205's threat of liability under Florida's RICO statute to petition circulators and the organizations for which they work; rather, it simply *confirmed* that such liability extends to a number of different issue-petition activities that were already punishable as felonies under HB 1205, including the Registration Restrictions and Petition Fill-In Felony, which were (and will continue to be) RICO predicate acts. It is thus "reasonable to expect that the alleged constitutional violations resulting from the enforcement of [HB 1205's Racketeering Definition as to First Amendment speech and association, vagueness, and overbreadth] will continue with enforcement of" the provision as amended by

4

HB 991. *Id.* at 1327. During trial, Plaintiffs presented copious evidence that the threat of criminal liability under Florida's racketeering statute severely burdened and chilled their protected speech and association. *See* Tr. at 63:7–14 (FDH's Organizing Director explaining that volunteers' concern regarding racketeering liability led volunteerism to drop and was "a huge factor" in FDH suspending its volunteer circulation program altogether); *id.* at 135:18–136:5 (Mr. Simmons explaining that he would have stopped working for FDH even if paid circulation had continued because he did not "want a RICO charge"); *id.* at 362:19–363:19 (Organizing Director of People Power for Florida describing concerns from volunteers regarding racketeering liability); *id.* at 377:20–378:3 (explaining that People Power for Florida will not mobilize volunteers for FDH if HB 1205's challenged provisions stay in place due to concern about criminal liability); *id.* at 1566:21–1568:1 (President of the League of Women Voters of Florida testifying that she would recommend against League volunteers collecting petitions due to the Racketeering Definition).

Likewise, the undisputed trial testimony demonstrated that the threat of racketeering charges has severely chilled the protected First Amendment activity of the League Plaintiffs and its members. As LWVFL President Jessica Lowe-Minor testified, "racketeering sounds very scary," and as an organization, LWVFL "[does not] want any of our members to have anxiety about things that the League is doing or that anything that we're involved in would be part of a racketeering investigation

5

or charges." Tr. at 1567:3–8. Ms. Scoon echoed these concerns, explaining that it "would be extremely hurtful and damaging to the individual and the entire League and all of our efforts" for a prosecutor to bring racketeering "allegations against an individual League member or the League itself." Tr. at 1669:6–9. Ms. Scoon further emphasized that "no League member wants to face felony charges, RICO charges." Tr. at 1679:15–16.  Ms. Lowe-Minor testified that she personally will not circulate petitions because of the RICO Provision. *Id.* at 1709:22–24. These constitutional harms will persist under HB 991's amended version of the Racketeering Definition.

As noted above, HB 991's amended version of the Racketeering Definition continues to impose racketeering liability for violations of the Petition Fill-In Felony, Fla. Stat. § 104.185, and the Registration Restrictions, Fla. Stat. §§ 104.187, 104.188. HB 991 simply confirms (and exacerbates) the constitutional violations wrought by these HB 1205 provisions. First, petition circulators who violate one of these provisions face up to *thirty years* of imprisonment for potential violations of the Registration Restrictions and Petition Fill-In Provision which are themselves vague and impossible to comply with. ECF No. 668 at 177–80 (Registration Restrictions), 195–98 (Fill-In Provision). Second, HB 991 also confirms that sponsors like FDH and the League face prosecution and even punishment under Florida's RICO statute, which will also chill those organizations' rights. Fla. Stat. §§ 104.186, 104.187, 104.188; ECF No. 668 at 52–55, 63–65. If, for instance, just two

6

LWVFL volunteers each collect thirty signed petition forms without registering, an enterprising prosecutor might very well bring charges against LWVFL itself for engaging in a "pattern" of racketeering activity.

As Plaintiffs demonstrated at trial, the potential for such draconian penalties has already severely chilled speech. *See, e.g.*, ECF No. 667 at 27–32, 47–48, 51, 61–62, 68, 71, 75–76, 81–82, 86–87, 94, 98–101, 138–42, 161–63; ECF No. 668 at 20, 47–54, 63–65, 95–101, 147–49; 197–98. Not only do individual volunteers now face up to thirty years in jail for failing to register as a circulator or helping someone fill in a petition, but that conduct might also trigger racketeering charges against the organizations whose work they support. Fla. Stat. § 895.02(5); *cf.* H.B. 1205 § 4, 2025 Leg. (Fla. 2025). This alone is a death knell for the idea of volunteer petition circulation. *See*, *e.g.*, Tr. 1679:16–17 ("Nobody wants to bankrupt the League with having to defend criminal charges or any other fines.").

The Racketeering Definition imposes increased criminal liability not only for violations of these provisions but also for activity "to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit" violations of them. Fla. Stat. § 892.02(8) (2026). This broad imposition of criminal liability poses the same threat of First Amendment burden, vagueness, and overbreadth as under HB 1205's version of the Racketeering Definition. In sum, "although [the Racketeering Definition] was amended, the gravamen of [FDH

7

Plaintiffs'] trio of major constitutional complaints . . . are nearly identical, unresolved, and not fundamentally altered." *Horton*, 272 F.3d at 1329. "Thus, a live controversy remains . . . ." *Id.*

The Eleventh Circuit has rejected a claim of mootness in a case very similar to the one presented here. In *Horton v. St. Augustine*, a street performer challenged a municipality's ordinance restricting performances in the city center, on the grounds that the ordinance was vague, overbroad, and an invalid time, place, and manner restriction. *See* 272 F.3d at 1321–23. After the trial court preliminarily enjoined the ordinance as unconstitutionally vague, the city amended the ordinance by striking certain words mentioned in the court's order and adding new words. *See id.* at 1323– 26. On appeal, the Eleventh Circuit held that the amendment did not moot the plaintiff's suit because (1) the plaintiff's "vagueness challenge was not limited to the areas of [the original ordinance] excised by" the amendment and (2) "[i]n addition to vagueness issues, [the plaintiff] raised myriad arguments" challenging the ordinance on other grounds. *Id.* at 1328. Similarly here, FDH and League Plaintiffs' vagueness challenge to the Racketeering Definition is not limited to the areas excised by HB 991. Plaintiffs' evidence on HB 1205's Racketeering Definition extended beyond the vagueness of the term "irregularities"; it also focused more broadly on the uncertainty as to whether the actions of a single volunteer or sponsor could give rise to liability for others supporting the initiative. *See, e.g.*, Tr. at 63:10–65:9 (FDH's

8

Organizing Director explaining that she could not provide volunteers with clear answers about potential criminal liability for the volunteer or the organization); FDH PX 506 (email from FDH volunteer raising similar concerns). And FDH and League Plaintiffs have challenged the Racketeering Definition on other constitutional grounds beyond vagueness. *See* ECF No. 667 at 164–65 (First Amendment speech rights); *id.* at 181–83 (First Amendment association rights); *id.* at 190–92 (First Amendment overbreadth) (explaining that the Racketeering Definition is unconstitutionally overbroad in part because "severe consequences flow not just to the person [committing] the alleged 'violation,' but to anyone who the State deems to 'conspire' with such person, or who 'solicit[ed], coerce[d], or intimidate[d] another person to commit' such violation, [Fla. Stat] § 895.02(8), [such that] the practical effect is to subject the entire ecosystem of initiative activity to potential first-degree felony exposure"); ECF No. 431 ¶ 68—69 (unconstitutional vagueness and overbreadth), *id.* ¶ 107 (First Amendment speech and associational rights). Thus, HB 991's amendment does not moot the persistent constitutional harms posed by the Racketeering Definition.

Relevant here, the *Horton* Court also considered "the City's history of legislating repeatedly in an effort to curb activity" in the city center. *Id.* at 1328. The Court concluded that because such legislation was "likely to recur," the City's amendment did "not remove [the court's] power to hear its case." *Id.* (citing *Friends*

9

*of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 189 (2000); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n. 11 (1982); *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1256 (11th Cir. 2001)). Similarly here, Florida has legislated repeatedly to constrict its citizen initiative process, as detailed in FDH Plaintiffs' post-trial brief and the parties' joint stipulations. *See* ECF No. 667 at 15; ECF No. 596 at 25–27. Indeed, rather than simply repeal the extension of racketeering liability to petition circulation activities, the Legislature enacted new post-trial legislation seeking to curb petition circulation activity. HB 991's amendments do not remove this Court's power to hear Plaintiffs' challenge to the Racketeering Definition.

For the foregoing reasons, FDH and League Plaintiffs submit that their challenges to the Racketeering Definition are not moot.

Dated: April 8, 2026                    Respectfully submitted,

/s/ George E. Mastoris                  s/ Frederick S. Wermuth
GEORGE E. MASTORIS**                    Frederick S. Wermuth
gmastoris@winston.com                   Florida Bar No. 0184111
SOFIA ARGUELLO**                        Quinn B. Ritter
sarguello@winston.com                   Florida Bar No. 1018135
JOHANNA RAE HUDGENS**                    King, Blackwell,
jhudgens@winston.com                    Zehnder & Wermuth, P.A.
TYLER DATO**                            25 E. Pine Street
tdato@winston.com                       Orlando, FL 32801
SAMANTHA OSAKI**                        Telephone: (407) 422-2472
sosaki@winston.com                      Facsimile: (407) 648-0161
NATHAN C. GREESS**                      fwermuth@kbzwlaw.com

10

ngreess@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (202) 294-6700

SPENCER KLEIN**
spencer@statedemocracydefenders.org
POOJA CHAUDHURI**
pooja@statedemocracydefenders.org
SOFIA FERNANDEZ GOLD**
sofia@statedemocracydefenders.org
NORMAN EISEN**
norman@statedemocracydefenders.org
TIANNA MAYS*
tianna@statedemocracydefenders.org
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE
Suite 15180
Washington, DC 20003
Telephone: (202) 594-9958

JON GREENBAUM**
jgreenbaum@justicels.com
JUSTICE LEGAL STRATEGIES
PLLC
P.O. Box 27015
Washington, D.C. 20038
Telephone: (202) 601-8678

GERALD E. GREENBERG
Florida Bar No. 440094
ggreenberg@gsgpa.com
SHANE GRANNUM
Florida Bar No. 1055050
sgrannum@gsgpa.com
GELBER SCHACHTER &
GREENBERG, P.A.
One Southeast Third Avenue
Suite 2600

qritter@kbzwlaw.com

Matletha Bennette, Fla. Bar No. 1003257
Krista Dolan, Fla. Bar No. 1012147
SOUTHERN POVERTY LAW CENTER
PO Box 10788
Tallahassee, FL 32302-2788
Telephone: (850) 408-4840
Matletha.bennette@splcenter.org

Avner Shapiro*
Bradley E. Heard*
Nicholas Taichi Steiner*
SOUTHERN POVERTY LAW CENTER
1101 17th St NW Ste 550
Washington, DC 20036
Avner.shapiro@splcenter.org
bradley.heard@splcenter.org
nick.steiner@splcenter.org

Ben Stafford*
ELIAS LAW GROUP LLP
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
bstafford@elias.law

Emma Olson Sharkey*
Harleen K. Gambhir*
ELIAS LAW GROUP LLP
250 Massachusetts Ave. NW, Suite 400
Washington, D.C. 20001
Telephone: 202-968-4490
eolsonsharkey@elias.law
hgambhir@elias.law

*Admitted *Pro hac vice*

*Attorneys for FDH Plaintiffs*

11

Miami, FL 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

\* *Pro hac vice* applications
forthcoming
\*\* *Pro hac vice* granted

*Counsel for League Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

/s/ *Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No. 0184111

*Attorney for Plaintiffs*